**No. 26-10155-D**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

WILLIAM LEE LAWSHE,
*Plaintiff-Appellant,*

v.

MIKAYLA PRESTON,
and
KATHLEEN DULLY,
*Defendants-Appellees.*

Appeal from the United States District Court for
the Middle District of Florida, Jacksonville
Division

3:24-cv-00044-MMH-MCR

**APPELLANTS' OPENING BRIEF**

**LAW OFFICES OF NOONEY,
ROBERTS, HEWETT, AND
NOWICKI**

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 0077974
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
*Counsel for Appellant*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with 11th Cir. R. 26.1-1, Appellant— William Lawshe—certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1. William Lawshe, Plaintiff/Appellant

2. Kathleen Dully, Defendant/Appellee

3. Mikayla Preston, Co-Defendant/Appellee

4. Jane A. Restani, Judge, United States Court of International Trade

5. Marcia Morales Howard, United States District Judge

6. Monte C. Richardson, United States Magistrate Judge

7. Michael K. Roberts, Attorney for Plaintiff/Appellant

8. Jami M. Kimbrell, Attorney for Defendant/Appellee

9. John Wilson, Attorney for Defendant/Appellee

10. Howell, Buchan & Strong, Attorneys for Defendant/Appellee

11. Matthew J. Carson, Attorney for Co-Defendant/Appellee

/s/ Michael K Roberts
Attorney

**STATEMENT REGARDING ORAL ARGUMENT**

The court should grant oral argument. The Fourth and Fourteenth Amendment clearly prohibit the fabrication of inculpatory evidence and the knowing use of fabricated evidence to incriminate innocent persons. See generally, *Aguirre-Jarquin v. Seminole Cnty*., 158 F.4th 1276 (11th Cir. 2025); see generally *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004)

This case involves the use of knowingly unreliable medical opinions of a state Child Protection Team physician and a St. Johns County Sheriff's detective to establish probable cause of possession of child pornography. Both the physician and the detective knew that the method was false or otherwise not scientifically reliable for the purpose of establishing the probable age of individuals depicted in digital photographs. Mr. Lawshe was arrested, charged and prosecuted on the basis of this knowingly false forensic evidence. In fact, the subject images depicted verified adults.

The evidence suggests that this is not an isolated circumstance, but rather that St Johns County Sheriff's Office and prosecutors regularly employ this knowingly unreliable scientific method to charge and prosecute criminal defendants. The Court's consideration of this matter is imperative to not only rule on the merits of Mr. Lawshe's case but to ensure that the rights of other criminal defendants are not violated.

i

**TABLE OF CONTENTS**

Certificate of interested persons and corporate disclosure statement .................. C-1

Statement regarding oral argument ..................................................................i

Table of Citations ............................................................................. iv

Statement of Jurisdiction ..................................................... vi

Statement of the Issues ...................................................... 1

Statement of the Case ........................................................ 2

    I.    Origin of Criminal Investigation - The Cybertip…………………………...2

    II.    The Image………………………………………………………..……3

    III.    Origin of Image……………………………………………………....3

    IV.    No Evidence to Support Material Element of the Crime…………….…4

    V.    Lack of Investigation…………………………………………………4

    VI.    Consultation with Child Protection Team………………………….5

    VII.    First Affidavit for Search Warrant…………………………………7

    VIII.    Compliance with Search Warrant………………………………..8

    IX.    Second Consult with Child Protection Team………….……………9

    X.    Second Search Warrant Application………………….……….9

    XI.    Procedural Posture ………………………………………...11

Standard of review ...................................................................13

Summary of argument ...........................................................14

Argument .............................................................................16

    A. Dully fabricated inculpatory evidence……………….…………….16

    B. Preston's search violated the fourth amendment and is not protected by qualified immunity…………………………………………………29

    C. Preston's arrest violated the fourth amendment and is not protected by qualified immunity…………………………………………………34

Conclusion ........................................................................ 42

Certificate of compliance ............................................................. 43

# TABLE OF CITATIONS

CASES:

*Aguirre-Jarquin v. Seminole Cnty.*, 158 F.4th 1276 (11th Cir. 2025)………16,24,25

*Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21-22 (M.D. Fla 2023)………………………………………………………………………...25

*Alcocer v. Mills*, 800 Fed. Appx. 860, 866 (11th Cir. 2020)………………………..36

*Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016)…………………...16

*Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1360 (11th Cir. 2021)…………………………………………………………………………….vi

*Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991)…………………………………………………………………………28

*Crosby v. Monroe County,* 394 F.3d 1328, 1333(11th Cir. 2004)..........................30

*Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020)…………..…………4, 29

*Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021).........................29

*Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986)………...36

*Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019)……………………………13

*Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003)……………………….30

*Hooks v. Brewer*, 818 F. App'x 923, 929-30 (11th Cir. 2020)…………………..31

*Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004)..………36, 37, 39

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242-43 (11th Cir. 2003)……………………………………………………………………………13

*Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992)…………………………………………………………………………13

*Paez v. Mulvey*, 915 F 3d 1276, 1287 (11th Cir. 2019)………………………………29

*Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011)……………………………………………………………….…….13

*Rankin v. Evans*, 133 F.3d 1425 (1998)……………………………………….36

*Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977)…………………………16

*Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007)................................35

*Tillman v. Coley,* 886 F.2d 317, 321 (11th Cir. 1989)…………………………36, 37

*Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326 (M.D. Fla. 2015)…………28

*Washington v. Rivera,* 939 F.3d 1239 (11th Cir. 2019)…………………………….37

*Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003)…………………………………………………………………………....13

*United State v. Kirk*, 781 F.2d 1498,1502-03 (11th Cir. 1986)……………………13

STATUTES:

§ 827.071(5), Fla. Stat............... .............................................................................4

28 U.S. Code § 1291………………………………………………………....vi

42 U.S.C. § 1983……………………………………………………………..11


OTHER CITED AUTHORITY:

"The Difficult Issue of Age Assessment on Pedo-Pornographic Material" <u>Forensic Science International</u> 183 (2009) e21–e24)………………………………………22

**STATEMENT OF JURISDICTION**

The Courts of Appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States 28 U.S. Code § 1291. A decision is final when it "resolve[s] all litigation on the merits and leave[s] nothing for the court to do but execute the judgment." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1360 (11th Cir. 2021) Here, the district court's order granting final summary judgment disposed of all claims. Therefore, this Court has jurisdiction to review the final judgement.

# STATEMENT OF THE ISSUES

Mr. Lawshe alleges that Dr. Kathleen Dully knowingly fabricated forensic medical evidence that images which he possessed depicted female children under the age of 18. These opinions were unreliable and false. Despite knowing that Dully's forensic reports were false and unreliable, Det. Mikayla Preston used the fabricated evidence to establish probable cause for a search warrant and arrest.

The district court granted summary judgment in favor of Dully and Preston finding that the reports were not false or inculpatory. Additionally, the district court ruled that a reasonable officer in Preston's position, could rely on knowingly unreliable forensic reports to establish probable cause. Lawshe believes that both rulings were in error.

(1) Was there a genuine dispute that Dully's opinions were false and inculpatory?

(2) Can law enforcement officers use knowingly unreliable forensic evidence to establish probable cause?

## STATEMENT OF THE CASE

### I. Origin of Criminal Investigation - The CyberTip

On February 20, 2023, St. Johns County Sherriff's Office received the CyberTip Report #153739160 from the National Center for Missing and Exploited Children (NCMEC). ECF 67-1 (Affidavit for Search Warrant, February 28, 2023) The CyberTip, which was originated by an electronic service provider identified that William Lawshe was in possession of a single image, described by the provider as the "lascivious exhibition" of a "prepubescent minor." ECF 67-2 (CyberTip Report). NCMEC characterized the content in the CyberTip as "CP-unconfirmed."[1] [2] Id.

A supervisor, Sergent Eugine Tolbert, initially evaluated the report and recognized Mr. Lawshe as a law enforcement officer. ECF 67-3 at 29: 1-3 (Tolbert Depo.). Because investigators cannot rely solely on NCMEC CyberTip reports to establish probable cause[3], the case was assigned to Det. Mikayla Preston for investigation. ECF 67-3 at 7: 13-15, 36: 7-15 (Tolbert Depo.) At that time, he informed Preston that Mr. Lawshe was a law enforcement officer. ECF 67-3 at 29:22

---

[1] Unconfirmed "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted." ECF 67-5 at 22: 18-24 (NCMEC Corp. Rep. Depo.)

[2] Plaintiff does not dispute that he possessed pornographic images. Mr. Lawshe has testified that he had struggled with low libido and erectile dysfunction for years and had been medically treating for this condition. He was open with his wife about this use of pornography.

[3] Somewhere around 50 percent of CyberTips are not actionable by looking at the image. ECF 67-3 at 35: 7-19 (Tolbert Depo.).

– 30:3 (Tolbert Depo.). Det. Preston had been a detective for only a "couple of months." ECF 67-6 at 88:2 – 89:1 (Preston March Depo.). She had not completed training and had no specialized training in distinguishing images of minor children from those of adults. Id.

## II. The Image

The model in the image was not portrayed as or pretending to be a minor. ECF 67-6 at 62: 7-25 (Preston March Depo.) Det. Preston admits that some people, including other detectives, could have interpreted the individual depicted in the subject image as at least 18 years old. ECF 67-6 at 93: 6-23 (Preston March Depo.) Although Preston claims she felt the image was "CSAM," other detectives thought the model was potentially an adult. ECF 67-6 at 96: 12-19, 101: 5-16, 172:20 – 173: 9, 169: 2-17, 181: 1-13 (Preston March Depo.) see also ECF 67-4 at 65: 7-13. (Greene Depo.).

## III. Origin of Image

When reviewing the subject image, Det. Preston observed a watermark of "metart.com" on the image. Preston acknowledged that the water mark could have been a sign of ownership or a notification of who to contact if there were questions about the image. ECF 67-6 at 30: 3-24 (Preston March Depo.) Preston knew that virtually all models published on public pornographic websites are represented to the public as being adults. ECF 67-6 at 67:23 – 68:1(Preston March Depo.).

3

Representations that a model is a verified adult is an important factor in establishing probable cause ECF 67-3 at 26: 1-12 (Tolbert Depo.).

**IV.    No Evidence to Support Material Element of the Crime**

A conviction for the crime of possession of child pornography requires proof that the defendant knowingly possess a photograph or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child. § 827.071(5), Fla. Stat. *Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020).

Det. Preston never believed that Mr. Lawshe knew the image depicted a minor. In fact, she testifies that any guess as to his knowledge or opinion of the model's age would require her to "speculate," something she was unwilling to do. ECF 67-6 at 172:20 – 174:9 (Preston March Depo.).

**V.    Lack of Investigation**

Despite the ambiguous nature of the image, Preston never went to the website watermarked on the subject image (metart.com) to investigate or identify the model. ECF 67-6 at 55: 3-14 (Preston March Depo.) When asked why she did not go to the website to further her investigation, Det. Preston simply replies, "I don't know." ECF 67-6 at 67: 4-9, 185:25 – 186:13 (Preston March Depo.).

In other investigations of NCMEC CyberTips, Preston has visited pornographic websites as part of her investigation. ECF 67-6 at 66:18 – 76:9, 145: 1-17 (Preston March Depo.) Furthermore, Preston admits that she could have easily

4

verified that the subject model was on the website. ECF 67-6 at 68:21 – 69:1 (Preston March Depo.). Preston further admits that she was aware that federal law requires producers and publishers of child pornography to maintain age documentation for models. ECF 67-6 at 141: 15-21 (Preston March Depo.).

A reasonable investigation of possession of CSAM, under these circumstances, would include visiting the website identified on the images themselves. ECF 67-4 at 46: 13-19 (Greene Depo.); ECF 67-7 at 40:20-24 (Camden Depo.). Investigators are trained to attempt to identify suspected victims of child sexual abuse and every effort should be made to identify the victim in this type of case. ECF 67-3 at 46: 5-8 (Tolbert Depo); ECF 67-4 at 61: 15-24 (*Greene* p. 61 ln. 15-24).

Tolbert described Preston's failure to attempt to identify the model as "sloppy police work." ECF 67-3 at 46: 9-16 (Tolbert Depo). Her colleague, Det. Greene expressed regret over the investigation and admitted that Preston should have "gone through things a little more", including visiting the website. ECF 67-4 at 14: 2-13, 46: 13-20 (Greene Depo.).

## VI.	Consultation with Child Protection Team

Rather than make any attempt to identify the alleged "victim," Detective Preston took the image to Dr. Kathleen Dully, a pediatrician employed with the UF Child Protection Team (CPT). This was the custom when there was disagreement

among detectives about the age of a subject model. ECF 67-6 at 96: 7-27 (Preston March Depo.); ECF 67-4 at 43:2 – 44:4 (Greene Depo)

On February 22, 2023, Dully presented Preston with a report and her opinion on the age of the model depicted in image attached to the CyberTip. ECF 67-9 at 1 (Dully Reports) Dully's opinions are as follows: "This female child appears younger than 18 years of age. She would have reached this genital appearance of SMR IV at 12-15 years of age. She does not appear to be shaved as her anterior pubic hair is still present."  Id.

At the time Dr. Dully wrote this letter, she knew there was no reliable scientific method to determine or estimate the chronological age of a model from a digital photograph. ECF 67-10 at 45:19 – 46:18  (Dully April Depo).  In fact, it is not scientifically reliable to use SMR to determine the age of models depicted in pornographic images on the internet. ECF 67-10 at 46: 13-18, 30:9-19 (Dully April Depo)

At the time Dully produced the written report, she informed Preston that her opinions were not reliable medical opinions as to the age of the individual depicted. ECF 67-10 at 47: 12-17; ECF 67-11 at 12:18 – 13:1 (Dully June Depo.)

Despite this warning, Preston interpreted and used Dully's report as expert medical opinion of the age of the model in question. ECF 67-6 at 124:23 – 125:2, 126:1-13 (Preston March Depo.). Tolbert relied on Dully's opinion as expert

opinions on the age of the model. ECF 67-3 at 58:18-21, 59: 4-21 (Tolbert Depo). Assistant State Attorney Kaitlyn Payne understood Dully's to be a reliable opinion of age. ECF 82-8 at 2-3 (Payne Affidavit).

## VII.    First Affidavit for Search Warrant

On February 28th, 2023, Preston swore out an affidavit in support of a search warrant. To establish probable cause, the affidavit cites three sources of information: (1) The NCMEC CyberTip (2) Dr. Dully's report and (3) Preston's alleged knowledge of a known prior criminal publication of CSAM on the website met-art.com. ECF 67-1 (Affidavit, February 28, 2023) [4]

This Affidavit contains material false and/or misleading statements. Furthermore, she omitted material exculpatory evidence. Preston did not attach or include the subject image. Id.

1. Preston omits from her affidavit that NCMEC specifically categorized the image as "unconfirmed" child pornography. This categorization meant that NCMEC determined that the image depicted a model of indeterminant age. ECF 67-5 at 22: 18-24 (NCMEC Corp. Rep. Deposition)

2. Preston knew that the ESP's description in the CyberTip report that the model was "A2" (pre-pubescent) was false at the time she included this information in the probable cause affidavit. ECF 67-6 at 34:15 – 36:11 (Preston March Depo.).

3. Preston omits that there was a material disagreement among detectives about whether the image depicted an adult. ECF 67-1 (Affidavit, February 28, 2023)

---

[4] Preston did not include her subjective opinion of the age of the individual depicted in the CyberTip. ECF 67-1 (Affidavit, February 28, 2023)

4. Preston knew that Dr. Dully's opinion was not a reliable medical opinion as to the model's age. Despite that, Preston included the report in the Affidavit as though it contained reliable opinions. ECF 67-10 at 47: 12-17; ECF 67-11 at 12:18 – 13:1 (Dully June Depo.)

5. Preston has no personal knowledge about whether or not there is a known history of illegal content on this site. When questioned, she states that she got the information from a "google" search. ECF 67-12 at 30: 3-19 (Preston Nov. Depo.) She cannot recount any details of the source or the accuracy of this statement. In fact, she freely acknowledges, specifically regarding the history of metart.com, "you can't believe everything you read on google." Id. Not even Preston believed the statement made about metart.com was reliable. Id.

6. Preston did not know any ICAC investigators who had encountered this website in past investigations. Under oath, Preston identifies Det. Greene as the ICAC investigator she refers to. ECF 67-6 at 51 (Preston March Depo.) However, Det. Greene denies any part in a past investigation of this site and any personal reliable knowledge of whether illegal content has ever been published on met-art.com. ECF 67-4 at 52-35, 80:24 – 81:4, 87:22 – 88:11 (Greene Depo.).

Based on these false statements and omissions of exculpatory evidence, the judge executed the Search Warrant.

## VIII.    Compliance with Search Warrant

Based on the Affidavit of Preston, the search warrant was issued to the service provider. ECF 67-13 (Affidavit Probable Cause, April, 12, 2023) On March 3rd, 2023, SJSO received compliance from the ESP, containing all digital information stored in Mr. Lawshe's cell phone cloud storage. ECF 67-13 (Affidavit Probable Cause, April, 12, 2023)

From review of the contents, Preston identified two additional photographs from the same photoshoot which was the subject of the CyberTip. Id. These images

depicted the same model in different poses. ECF 67-9 at 2 (Dully Reports) These are identified as files 0059 and 0065(1). Id.  In addition to these images, Det. Preston identified another image of who she believed was the same person depicted in the CyberTip image. ECF 67-6 at 234:17 – 235:7 (Preston March Depo). This image is identified as ycbLVVFQ_0.jpg. Id. This model was later identified by the name "Melania D." ECF 67-8 (Age Verification Documents).

Finally, Preston identified an additional image which she characterized as CSAM.  This image depicted a model's body from the knees to the stomach, along with a partially exposed vagina.   The image is cut off and does not show the model's face or breasts. ECF 67-6 at 157:20 – 158:5 (Preston March Depo.) This image is "Screenshot_20230122_174408_DuckDuckGo.jpg." Id.  Preston cannot articulate what caused her to believe that this model was a minor. ECF 67-6 at 158-159 (Preston March Depo.). This image contained a website, QR code and identified the model as "Sanija." ECF 67-6 at 224-229, 244-245 (Preston March Depo) This model also went by the stage name of Kacey Lane. ECF 67-8 (Age Verification Documents).

## IX.    Second Consult with Child Protection Team

Preston brought these additional images to Dr. Dully for evaluation. Again, Dr. Dully opined that the model initially depicted in NCMEC CyberTipline Report#153739160 was a minor. ECF 67-9 at 2 (Dully Reports). As to the model

Sanija/Kacey Lane, Dully opinioned that because there appeared to be no pubic hair development, the model was SMR I, pre-pubescent, and therefore appeared developmentally less than 9-13.5 years old. ECF 67-9 at 3 (Dully Reports).

## X. Second Search Warrant Application

After taking these images to Dr. Dully for review, Preston sought a search warrant for Mr. Lawshe's home. ECF 67-13 (Affidavit April 12, 2023) This was granted on the same knowingly false evidence of probable cause as presented before, including Dr. Dully's reports Id. Upon execution of the warrant, no additional images of CSAM were identified by SJSO.

Thereafter, Preston determined that there was probable cause to arrest Mr. Lawshe and effectuated that arrest. ECF 67-14 (Arrest Report) He was charged with images 0059, 0065(1) and screenshot_20230122_174408_DuckDuckGo.jpg. ECF 67-15 (Charging Document)

During the criminal case, Lawshe's criminal defense team met with Det. Greene to investigate the subject images. ECF 67-4 at 33:12 – 35:11 (Greene Depo). It took Det. Greene approximately 20-30 minutes to locate both models on two or three websites. Id. All information needed to locate the models on the internet was available and included on the images, themselves. Id. Each of the websites described the subject model as a verified adult and purported to comply with federal age verification laws. Id.

After the meeting with Det. Greene, Mr. Lawshe's criminal defense team contacted the website's records' custodian (published on the website) and promptly received records documenting that the models' were over the age of 18 at the time of the respective photoshoots. ECF 67-8 (Age Verification Documents). The custodian also provided photographs of the models holding their passports. Id.

This age verification information was readily available, prior to the arrest. ECF 67-3 at 54: 14-24 (Tolbert Depo.); ECF 67-4 at 41: 6-11 (Greene Depo.) Even Det. Preston admits that she had all of the information that she needed to reach out to met-art.com's record custodian to request age verification information prior to making the arrest. ECF 67-6 at 147:12-18 (Preston March Depo.)

After Mr. Lawshe's criminal defense team presented the age verification documents of the two models to the Assistant State Attorney, all charges were dropped. ECF 67-16 (Emails to ASA and Nolle Proscequi)

## XI. Procedural Posture

Lawshe brought the present suit pursuant to 42 U.S.C. § 1983, alleging that Dully had fabricated inculpatory evidence in violated of the Fourteen Amendment ECF 26 (Amended Complaint). Additionally, Lawshe claimed that Preston' search and arrest violated the Fourth Amendment as she used knowingly false information to obtain a search warrant and lacked probable cause for both the search and arrest. ECF 26 (Amended Complaint).

Lawshe moved for Partial Summary Judgment against Preston and Dully on the issue of the constitutional violations and qualified immunity. ECF 66; ECF 67. Both Preston and Dully moved for summary judgement. ECF 83; ECF 85. The district court granted summary judgment in favor of both Defendants. ECF 103 (Order on MSJ). As to Dully, the district court ruled that "no reasonable juror could conclude that Dully offered false inculpatory evidence." ECF 103 at 10 (Order on MSJ). As to Preston, the district court found that she was entitled to qualified immunity, as she acted as a reasonably objective officer would have under like circumstances. ECF at 18, 21 (Order on MSJ). This appeal ensued.

## STANDARD OF REVIEW

The Circuit Court should review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1242-43 (11th Cir. 2003).

In seeking summary judgement, the moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011).

Where there is a genuine dispute of material fact or when multiple sets of inferences can be drawn from the facts, summary judgment is not appropriate. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) ("If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment.").

## SUMMARY OF ARGUMENT

It is unlawful for state actors to knowingly incriminate a suspect by fabricating inculpatory forensic evidence. During the investigation of this matter, Dully wrote multiple forensic reports which used Sexual Maturity Rating (SMR) as a basis to estimate that individuals shown in digital pornographic images were children under the age of 18. At the time, Dully knew that the use of SMR to estimate age was unreliable and not supported by medical science.

Despite this and in direct conflict with the evidence, the district court found that no reasonable person could interpret Dully's reports as false inculpatory evidence. A reasonable reading of the plain language of Dully's reports could lead a reasonable person to interpret them as forensic evidence of age. Likewise, multiple law enforcement officers, including Det. Preston, understood Dully's reports to be inculpatory expert evidence as to the age of the individuals depicted. To the extent that reports were inculpatory, they were false. Therefore, summary judgment is not appropriate.

In respect to the claims against Preston, it is clearly established that law enforcement officers cannot rely on false or knowingly unreliable evidence to establish probable cause for either a search or an arrest. The district court acknowledged Preston likely acted with a reckless disregard for the truth by including dubious and false accusations of met-art.com's prior publishing of child

pornography. However, the district court erred by finding no fault on Preston's part for including Dully's false inculpatory reports in her probable cause affidavit, despite the fact that Preston was told that the reports were not reliable forensic evidence of the individual's age by Dully herself.

In disposing of the case on qualified immunity, the district court ruled, as a matter of law, that an objectively reasonable officer *could have relied* on Dully's forensic opinions to establish probable cause that the individuals were, in fact, under the age of eighteen. This finding flies in the face of Fourth Amendment jurisprudence. The district court ignored substantial evidence that probable cause was based on information Preston knew was false or at least unreliable.

Finally, in evaluating probable cause, an officer may not unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to her or electing not to obtain easily discoverable facts that might tend to exculpate a suspect. There is a genuine dispute of the record evidence that Preston ignored readily available information and failed to conduct an objectively reasonable investigation. Had she done so, exculpatory evidence was readily available. Any reasonably prudent officer would have recognized the need for further investigation to clarify the existence of probable cause. The Court should reverse and remand for further proceedings on the merits.

**ARGUMENT**

**A. Dully Fabricated Inculpatory Evidence**

There is a genuine dispute of material fact as to whether Dully fabricated incriminating forensic opinions in violation of the due process clause of the Fourteenth Amendment. The Due Process Clause is implicated when a state actor offers false inculpatory evidence that the State uses to incriminate a suspect. *Aguirre-Jarquin v. Seminole Cnty.*, 158 F.4th 1276, 1298 (11th Cir. 2025) (citing *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977)). Thus, "an acquitted criminal defendant may bring a fabricated evidence claim against state actors if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." ECF 103 at 9 (MSJ Order). citing *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016).

Lawshe claims that Dully fabricated forensic reports which offered opinions that the individuals depicted in the investigated images were minors. see generally ECF No. 66 (Mot. For Partial Summ. J. Against Def. Dully). Dully's reports utilize Sexual Maturity Rating (SMR) as a basis to form these opinions of age. Dully admits that, at the time she produced these reports, she knew the use of SMR to determine age was not scientifically reliable. Despite this knowledge, Dully provided these reports to law enforcement who used them to establish probable cause. Dully denied

16

this allegation, arguing that she did not offer willfully or knowingly false information in her reports. ECF 85 at 11-12, 22-24 (Dully MSJ)

Despite the record evidence and reasonable inferences drawn from it, the district court ruled that "no reasonable juror could conclude that Dully offered false inculpatory evidence." ECF 103 at 10 (MSJ Order). Specifically, the district court found that Dully only offered an opinion about the "apparent age" of the individuals depicted in the subject images and that "no reasonable juror could conclude that Dully was opining as to the actual age of those depicted." ECF 103 at 10-11 (MSJ Order). This conclusion represents reversable error.

First, a plain reading of each report's language could lead a reasonable person to believe that Dully was offering an expert medical opinion on the probable age of the individuals depicted. The reports are printed on UF Child Protection Team letterhead and Dully's signature appears over a list of professional qualifications in forensic medicine. ECF 67-I at 1 (Dully Reports).

The first of these reports examines the original CyberTip image. Dully states: "This female child appears younger than 18 years of age." Id. This is a simple, uncomplicated sentence, with a plain and obvious meaning.

It appears in the context of anatomical descriptions and purports to be supported by a clinical SMR along with an estimated chronological age range. Dully writes of the CyberTip image: "She would have achieved this developmental genital

17

appearance of SMR IV at 12-15 years of age." Id. This sentence, in context, provides the purported medical support for the opinion on age. Dully actually describes the age of the individual in three separate ways: (1) repeatedly referring to the model as a "child" (2) stating that she "appears younger than 18 years of age" and (3) providing the SMR estimated age range of 12-15 years of age.  If words matter, at all, Dully conveyed the idea that the person depicted was a minor.

When reviewing additional images of the same model, 0059 and 0065(1) on April 5th, Dully writes: "you have shown me two additional images of the same female child [CyberTip] and these confirm my previous determination that she is depicted to be at most SMRIII or IV and therefore again ≤12-15 years of age." Id at 2.  This is confirmation of her opinion about the age of the individual. Like all medical opinions it may not be definitive or absolute but at the very least, a reasonable person might understand this to mean that Dully had determined that the subject model, depicted in these images, was less than 12-15 years of age.

Despite this plain and straightforward language, the district court ruled that no reasonable person could possibly interpret Dully's reports as offering an opinion of the depicted individuals' ages. In dismissing what seems to be an obvious reading of the reports, the district court claims that Lawshe "zeroes in" on the phrase "female child" and "plucks it from its context." ECF 103 at 11 (Order on MSJ). The district court argues that use of the words "appear" and "depict" to describe the image

change the meaning of the forensic opinion. In somewhat *missing the forest for the trees*, the district court cites dictionary definitions of common words such as "appear" and "appearance," "show" and "depict." ECF 103 at 11, footnote 13 (Order on MSJ). However, all persons or objects "appear" in images. Likewise, images "show" objects or people. After all, an image is only a representation of its subject – not the subject itself. When describing photographs accurately, verbs like depict, show, or appear are necessary, they are not "modifiers" as suggested by the district court. These words distinguish an examination of *an image* as opposed to *the individual herself.* [5]

1. **Law Enforcement's Inculpatory Interpretation and Use of Reports**

Contrary to the district court's interpretation of the reports, multiple law enforcement officers, including Preston understood Dully's opinions were inculpatory evidence of age. Preston has admitted she "believed Dr. Dully was a reliable source of information in estimating the age of the individuals in these images." ECF 83 at 3 (Preston MSJ) Preston testifies that she considered Dr. Dully to be an expert in determining age and relied on Dully's opinions to make an age determination in this case. ECF 67-6 at 124:23 – 125:2, 126:1-13 (Preston March

---

[5] The use of SMR in a clinical setting to evaluate children's development is reliable. Its use to evaluate photographs to determine age, is not. ECF 66-5 (Krugman Report) But even in a clinical setting, SMR is always an evaluation of the "appearance" of certain developmental markers.

Depo.). This explains Preston's inclusion of the opinions in her affidavit. ECF 67-1 (Affidavit Feb. 28, 2023)

Det. Tolbert, Preston's supervisor, also understood that Dully was offering expert medical opinion of the age of the individual's depicted. He testifies that he "puts a great deal of weight" on her opinion and relied on her determinations of age in making probable cause decisions. ECF 67-3 at 58:18-21, 59: 4-21 (Tolbert Depo).

Kaitlynn Payne the prosecutor states that "I also understood that Dr Kathleen Dully with the First Coast Child Protective Team had reviewed the image and opined, in part, that "[t]his female child appears younger than 18 years of age. During my time prosecuting internet crimes against children cases, we routinely and regularly relied on Dr. Dully's *opinions regarding the ages* of individuals in these types of images" ECF 82-8 at 2-3 (Payne Affidavit). (emphasis added)

There is substantial record evidence to support a jury verdict that the reports were *understood and used* as inculpatory evidence by law enforcement. In reality, the question is not whether a reasonable juror could interpret Dully's reports in an inculpatory manner. The more precises question is whether juror could believe that law enforcement, or a judicial officer, relied on the reports as evidence of probable cause that the Lawshe possessed images of minors. This fact is not in controversy. In any event, there is at least a genuine dispute as to the reasonable interpretation of Dully's reports.

### 2. Opinions of "Apparent Age" are a Fabrication

In deciding this case, the district court decision turns on the distinction between opinions of "actual age" and what the court describes as opinions of the "apparent age." ECF 103 at 10 (Order on MSJ). However, the term "apparent age" is not found or defined in any of Dully's various reports. The closest thing to a description of this term comes in sworn testimony in this case, over two years after the reports were produced.[6] Dully stated that her reports are "not an opinion about chronological age, it is an opinion about the apparent appearance of the image and what its age may be. It's not the same thing." ECF 67-10 at 23: 10-14 (Dully April Depo.). To be clear, it is exactly the same thing and it is exactly the thing that Dully knows is unsupported by medical science. All SMR evaluations, whether in person or by photograph, are based on the appearance of certain defined developmental markers.

Dr. Scott Krugman, an expert in child abuse medicine, reviewed and interpreted the reports produced by Dr. Dully. In his report he states:

> a) The opinions, determinations or estimations of age expressed in the 3 written reports, dated February 22, 2023, April 5, 20023 and April 5, 2023 are not supported by medical science.
>
> b) The limitations and risks of using Tanner Staging or Sexual Maturity Rating (SMR) to estimate chronological age based on digital images is well documented. The method is understood to

---

[6] Dully points to no scientific article or treatise which supports or defines opinions of "apparent age." There is good reason to believe that this a term invented solely to defend and indefensible practice and the allegations of this case.

be unreliable and unscientific, especially with SMR ratings of III and above. ECF 66-5 (Krugman Report)

Whether couched in terms of appearance or depictions, the opinions expressed in the reports, *as written*, are not supported by reliable medical science. To support his opinions, Krugman cites to peer reviewed studies testing the medical reliability of determining, among post pubertal individuals, whether they have reached the 18-year age threshold or not. ECF 66-5 (Krugman Report) ("The difficult issue of age assessment on pedo-pornographic material" *Forensic Science International,* 183 (2009) e21–e24). The researchers found that "it is nearly impossible to say that adults who look like subadults are indeed adults. Id. Despite this, the authors note that "*some experts still recklessly pronounce ages*." Id. (emphasis added)

Dully concedes that she "used SMR to evaluate the appearance of the individual in the image and provide an estimated age range." ECF 85 at 4 (Dully MSJ); see also ECF 67-10 at 61:20 – 62:21 (Dully April Depo.) At the time, Dully knew that "the use of a SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image" ECF 85 at 7 (Dully MSJ); ECF 67-10 at 46:13-18 (Dully April Depo.); ECF 67-10  at 45:19 – 46:18 (Dully April Depo.)

When asked if the "appearance of age" is a basis upon which to make a determination of a person's actual age, Dully answers "No, that's what the

investigation is for. ECF 67-10 at 30: 9-19 (Dully April Depo). But Dully *was* the investigation. As such, she was obligated to give scientifically reliable information.

### 3. False Opinions not just Unreliable Opinions

Dully understood that the ages of the models were "indeterminate" from a medical perspective and concedes this much. ECF 75 P.12 (Dully Response to Lawshe MSJ); 67-11 at 52:2 (Dully June Depo.). According to Dully, law enforcement only brought her "borderline kids to be looked at…" ECF 67-10 at 33: 23-24 (Dully April Depo) She acknowledges that these were age indeterminate individuals and she fully understood that she had the ability to tell law enforcement that she could not help them with medical opinions about age. ECF 67-10 at 67 (Dully April Depo).

In other words, Dully had a choice. She could have written a report stating from a medical forensic perspective there were no reliable opinions she could offer: the ages were "indeterminate." This would have been the truth.

Instead, Dully chose to write reports which described the individuals as children who appeared (or were depicted as, or shown to be) under the age of 18. She offered age ranges of $\leq$9-13.5 and $\leq$12-15. This is not a matter of semantics. These opinions were false and they were inculpatory.

### 4. Knowingly Unreliable is the Equivalent of Falsity

In ruling in favor of Dully, the district court writes that "though Lawshe finds Dully's methodology unreliable, unreliability is not equivalent to falsity." ECF 103 at 12 (Order on MSJ) This pronouncement is unsupported by any citation to law. To the contrary, Due Process does not allow forensic experts to create and submit incriminating forensic reports which they know are unreliable. *Aguirre-Jarquin v. Seminole Cnty.*, 158 F.4th 1276 (11th Cir. 2025). The district court's ruling in this regard was in error.

The case of *Aguirre* is instructive. Id. *Aguirre* involved allegations that an FDLE forensic fingerprint expert had fabricated a false match with the plaintiff in an underlying criminal investigation and prosecution. As observed by the district court, "the Eleventh Circuit recently clarified that 'the purposeful failure to properly verify the results of a positive comparison' constituted 'the absence of a step required to report incriminating forensic evidence' and this was a 'fabrication of a forensic result.'" ECF 103 at 12 (Order on MSJ) citing *Aguirre*, 158 F.4th at 1299.

The entire dispute in *Aguirre* (as it pertained to fabrication of evidence) was over whether there was sufficient evidence of *reliability* of the forensic fingerprint match and whether this unreliability was willful. In denying summary judgment, the district court cited evidence "that the print lacked sufficient reliable characteristics to make a positive identification and found that "Birks [the fingerprint examiner]

24

knew the match was false or harbored serious doubts about the veracity of her findings." *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21-22 (M.D. Fla 2023) affirmed in part and reversed in part by *Aguirre-Jarquin v. Seminole Cnty*., 158 F.4th 1276 (11th Cir. 2025). Knowingly or recklessly reporting unreliable forensic evidence is the equivalent of fabricating evidence. Id.

The district court attempts to distinguish Aguirre by finding that "even constructed in Lawshe's favor, the record does not show that Dully deviated from a required process in authoring her reports. ECF 103 at 12 (Order on MSJ). However, the fingerprint examiner in Aguirre maintained that her report was reliable. The court in *Aguirre* found that the failure to follow proper steps for verification created *an inference* that the forensic examiner knew that the reports were unreliable. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21-22 (M.D. Fla 2023) affirmed in part and reversed in part by *Aguirre-Jarquin v. Seminole Cnty*., 158 F.4th 1276 (11th Cir. 2025). No such inference is required here. Dully has admitted that the reports were unreliable as to the age of the depicted individuals.

However, even if such an inference is necessary, Dr. Krugman, a board-certified child abuse expert, testifies that Dully violated the applicable standard of care in offering these opinions. ECF 76-7 at 29-30 (Krugman Depo). There is a genuine issue of material fact that Dully *knowingly* violated applicable standards.

**5. The Basis, not just the Method, for the Opinions was False.**

Even accepting the term "apparent age," the evidence supports that the opinions of appearance were false. The appearance of pubic hair is a major factor in assessing an individual's SMR. ECF 67-10 at 72: 6-11 (Dully April Depo); ECF 67-10 at 78:25 – 80:8 (Dully April Depo); ECF 67-11 at 1-17, 70-37 (Dully June Depo.). In all three reports, Dr. Dully offers the opinion that the models "do not appear to be shaved." This is clearly false or, at least, there is a factual dispute about the veracity of this statement.

When originally confronted with image 0059, which is an image from the same photoshoot as the original CyberTip image, Dully was asked if the model had groomed her pubic hair. She answered, "she may have and so -- you know, maybe, yeah." ECF 67-11 at 16: 1-4 (Dully June Depo.). Dully later admitted that pubic hair does not naturally grow in the way depicted in this photograph. ECF 67-11 at 31:21 – 32:3. This raises an inference that the pubic hair has been modified. Failure to accurately describe the photographs, in this context, could be interpreted as a reckless disregard for the truth

The district court, in granting summary judgment, found that "this argument is contradicted by the record" and cites to Dully's dubious recanting of the prior admission, "No.. she does not appear to be shaved." ECF 103 at 9, footnote 11, citing

ECF 67-11 at 73:1-11 (Dully June Depo.). Contradictions in evidence do not support summary judgment on a particular issue, they prevent it.

Remarkably, Dully believes another image (*ycbLVVFQ_0.jpg*) depicts an older version of the Melania D. shown in files 0059 and 0065(1). Dully writes that the model has potentially grade IV or V (adult) breasts but rates her as SMR I or pre-pubescent – simply because she doesn't appear to have pubic hair. ECF 67-9 at 3 (Dully Reports); ECF 67-11 at 70:7 – 71:3 (Dully June Depo.). Her opinions totally ignore the obvious probability that the model has engaged in grooming for cosmetic purposes ECF 67-10 at 78:25 – 80:8 (Dully April Depo) In reviewing this opinion, Krugman testifies that this discrepancy "just doesn't make any sense." ECF 76-7 at 29:4-6 (Krugman Depo). Again, such testimony could support a finding of reckless disregard for accuracy and truth.

Finally, as to the "DuckDuckGo" screenshot, Dully relies solely on the lack of pubic hair in an image that shows neither the model's face nor breasts. ECF 67-9 at 3 (Dully Reports): ECF 72-2-4 (charged images). Dr. Krugman has opined that "the absence of visible pubic hair, in a digital photograph, does not, in and of itself, support an opinion that a female is SMR I." ECF 66-5 (Krugman Report). Despite the medical standard of care, Dully pronounces the model partially depicted in the subject image to be SMR I, or pre-pubescent. ECF 67-9 (Dully Reports). Given the cut-off nature of this image, this is a maliciously false opinion.

### 6. The Opinions were Intentionally or Recklessly Misleading

The district court writes that "the record does not support a conclusion that her [Dully's] statements were willfully misleading."[7] ECF 103 at 12 (Order on MSJ). This is incorrect. When asked if she understood how "a person might interpret that [her April 5 report] as you saying that this person is a child, an actual child?" Dully testifies "*Well, I hope so, yes*, but I don't know that." ECF 67-11 at 51: 17-22.

Without explanation, the district court finds this testimony only to be "probative of negligence." ECF 103 at 12 (Order on MSJ). This is not a reasonable interpretation of this answer. It is axiomatic that when one "hopes" their actions will produce a certain outcome, the realization of that outcome is intentional. [8] Dully knew that the methods she employed were unreliable. She had to know that people would interpret these reports as inculpatory. Not only were the methods unreliable, but her observations regarding the basis of those methodologies were false. Review of the images revealed to Dully that the CyberTip model was indeed groomed. The constellation of facts presented in the records create a reasonable inference that Dully presented knowingly or recklessly false inculpatory evidence. For purposes

---

[7] The district court finds that the fact Dully informed Preston that the opinions were not reliable means that she could not have intended to deceive. This is only one interpretation. First, the material deception when others, not Preston, relied on the written report. Second, the evidence is perfectly consistent with an inference that Dully and Preston conspired to violate Mr. Lawshe's rights. See ECF 26 ¶83.

[8] See "hope" https://www.merriam-webster.com/dictionary/hope (to want something to happen or be true)

of summary judgment, whether a defendant has been willfully blind will depend on the circumstances and, like intent itself, will generally be a question of fact for the factfinder af trial.[9] *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) Summary Judgment should be reversed.

## B. PRESTON'S SEARCH VIOLATED THE FOURTH AMENDMENT AND IS NOT PROTECTED BY QUALIFIED IMMUNITY

The evidence shows that Det. Preston made multiple false statements in her affidavits which constitute a reckless disregard for the truth. These recklessly false and misleading statements were necessary to the finding of probable cause.

For purposes of qualified immunity, it is clearly established that officers cannot knowingly make false statements in a warrant application where those misstatements are necessary to probable cause. *Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021). Furthermore, it is clearly established that intentionally or recklessly omitting material information from a warrant affidavit violates the Fourth Amendment. *Paez v. Mulvey*, 915 F 3d 1276, 1287 (11th Cir. 2019) If there is evidence that a false statement was included in the affidavit with a reckless disregard for the truth, then the court must consider whether probable cause would have existed without the offending statements. Id.

---

[9] The district court cites to Dr. Krugman's testimony of Dully's intent. However, intent and state of mind are not proper areas for expert testimony. *See Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326 (M.D. Fla. 2015)

The matter of whether Mr. Lawshe possessed the pornographic images has never been disputed. However, in order to establish probable cause, Preston was required to present facts and circumstances within her knowledge and based on reasonably trustworthy information that would lead a reasonably prudent person to believe the subject image depicted *a child under 18 years of age,* and that Mr. Lawshe *knew* the model was under the age of 18. *Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020) (interpreting Florida's criminal statute regrading possession of child pornography.); *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) (Probable cause exists if the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing a criminal offense.) "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends on the elements of the crime." *Crosby v. Monroe County,* 394 F.3d 1328, 1333(11th Cir. 2004).

Preston cited the following evidence in her warrant affidavit as establishing probable cause: (1) the CyberTip which advised that Lawshe "uploaded one (1) image of possible CSAM"; (2) an excerpt of the February 22, 2023 report of Dully, which included a description of the CyberTip image; (3) the "met-art.com" watermark, given that mat-art.com "has a known history of displaying CSAM

30

images of teenage girls and CSAM content the this site has been encountered by other investigators in past investigations." ECF 103 at 15 (Order on MSJ); ECF 67-1, 67-13 (Affidavits)

A reckless disregard for the truth may be inferred where the affiant "should have recognized the error, or at least harbored serious doubts" about her representations. ECF 103 at 14 (Order on MSJ), citing *United State v. Kirk*, 781 F.2d 1498,1502-03 (11th Cir. 1986). Preston knew or should have recognized that *all three pieces of evidence* were false, misleading or untrustworthy.

### 1. False Statements about Met-art.com

First, the district court found that Preston's statements regarding met-art.com "would likely constitute a reckless disregard for the truth."[10] ECF 103 at 16 (Order on MSJ). Therefore, the district court did not consider the statement in evaluating probable cause or arguable probable cause. ECF 103 at 16 (Order on MSJ). This was correct.

### 2. Dully's Unreliable and False Reports

Excluding the statements about met-art.com, the district court incorrectly considered Preston's inclusion of Dully's reports in establishing arguable probable cause. Arguable probable cause exists when a reasonable officer in the same

---

[10] The record also contains evidence that the statement is simply false. Jeffery Douglas, the record custodian for met-art.com and licensed attorney in the State of California has affirmed that there is no history of publishing CSAM on the website. ECF 67-8 (Age Verification).

circumstances and possessing the same knowledge could have believed that probable cause existed. *Hooks v. Brewer*, 818 F. App'x 923, 929-30 (11th Cir. 2020).

There are two glaring problems with considering this evidence in the arguable probable cause analysis. First, Preston had *actual knowledge* that the opinions expressed regarding the age of the depicted individuals were not reliable forensic evidence. Prior to producing the probable cause affidavits, Dully had specifically warned Preston that the opinions were not reliable estimates of age. ECF 67-10 at 47: 12-17 (Dully April Depo.); ECF 67-11 at 12:18 – 13:1 (Dully June Depo.).

To ignore this warning and use these reports in her probable cause affidavit shows a reckless disregard for the truth. At the very least, omission of Dully's warning that these were not reliable opinions is a reckless omission.

Second, the district court's interpretation of Dully's reports is that no reasonable person could interpret her opinions as inculpatory evidence of the depicted individual's "actual age." ECF 103 at 10. If the court's finding is correct, then certainly no reasonable law enforcement officer could interpret these opinions as offering any support to a probable cause determination that the individuals were, in fact, minors. This exposes the fundamental flaw in the district court's ruling: Dully's opinions either suggest that the individuals are minors or they don't, but they cannot do both at the same time.

The truth is that Dully gave Preston *two opinions* on the age of the models: one written, one verbal. The written opinions stated that the models were below the age of 18. The verbal opinion, to the contrary, informed Preston that there was no reliable medical forensic evidence of the individuals ages.

Like Dully, Preston was presented with a choice. She could have returned to SJSO and informed her supervisors that Dully could not provide reliable medical opinions about the age of the individuals. Or she could use the written reports, which she knew were unreliable. Unfortunately for her and Mr. Lawshe, she chose the wrong path. Any qualified immunity analysis must confront this choice. No objectively reasonable officer would or should bury the truth – or at least serious doubts about the truth -  simply to establish probable cause.

### 3. Known Unreliability of the CyberTip

The NCMEC CyberTip was "unconfirmed."[11] ECF 67-2 (CyberTip) The plain meaning of the label "unconfirmed" should have raise doubts about the tip's credibility, as the source had disclaimed the accuracy of the report. "Unconfirmed" meant that NCMEC had determined the model was of an indeterminant age. ECF 67-5 at 22: 18-24 (NCMEC Corp. Rep. Deposition).

Beyond this, Preston had more reason to question the veracity of the CyberTip.  The Electronic Service Provider labeled the content as depicting a

---

[11] 50% not actionable. Not probable cause admitted without investigation

"prepubescent" minor. ECF 67-2 (CyberTip). Preston knew, prior to her application for a warrant, that this was not a true, as Preston recognized that the model was *not* "pre-pubescent." ECF 67-6 at 89:16 – 90: 17 (Preston March Depo.). This undermined the veracity of the CyberTip. ECF 67-4 at 59: 10-21 (Greene Depo.).

In light most favorable to Lawshe, the circumstances known to Preston at the time of the affidavit were: (1) An explicitly "unconfirmed" CyberTip which contained known factual errors about the model's developmental appearance (2) an image which Preston, and other SJSO detectives, agreed could be interpreted as depicting an adult, and (3) consultation with an expert who informed Preston that there was no reliable medical method of determining the age of the individuals. Even if Preston had a subjective belief that the model was under the age of 18, no reasonably objective officer would believe that probable cause existed given these facts. The district court's judgment should be reversed.

## C. PRESTON'S ARREST VIOLATED THE FOURTH AMENDMENT AND IS NOT PROTECTED BY QUALIFIED IMMUNITY

The district court erred by ignoring genuine material disputes in the record. Specifically, the district found, contrary to the factual record, that Preston took extra steps to "confirm" that the individuals in the images were minors. The district court writes:

> While Preston did not attempt to contact met-art.com's custodian of records, Preston did take extra investigatory steps to confirm that the individuals in the Images were minors. She personally reviewed the

34

> Images, received the opinion of a statutorily authorized medical professional as to the apparent age of the individuals involved in those Images, and received confirmation from her superiors as well as an assistant state attorney." ECF 103 at 22 (Order on MSJ)

The district court's statement that Preston took additional investigatory steps to "confirm that the individuals were minors" is simply not true and not supported by the evidence. Neither Preston's review of the images, consultation with other officers, or consultation with Dr. Dully *confirmed* that the individuals were minors. To the contrary, all of those investigatory steps raised doubt about whether the individuals were minors.

Review of the subject images *did not confirm* that the images depicted minors. As the district court acknowledges: "other detectives in the SJSO thought the individuals in the Images were potentially adults, and the parties agree that reasonable people could have thought the individuals were adults." ECF 103 at 20 (Order on MSJ). Ignoring this factual record, the district court impermissibly relies on its personal opinion of the images to rule in Preston's favor, noting that "to a non-expert the individuals depicted in the Images would appear childlike." ECF 103 at 22, footnote 26 (Order on MSJ). The Court cannot weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Summary judgment cannot affirmed where there is a genuine dispute of material facts. Id.

35

Consultation with Dully certainly did not "confirm" the individuals were minors. To the contrary, Dully informed Preston that her opinions could not provide a reliable basis to believe that the individuals were in fact minors. ECF 67-10 at 47: 12-17 (Dully April Depo.); ECF 67-11 at 12:18 – 13:1 (Dully June Depo.).

Approval of probable cause by supervisors and prosecutors can weigh in favor of arguable probable cause. ECF 103 at 21 (Order on MSJ. However, they do not in this case. In seeking approval for the arrest, Preston presented her superiors and ASA with her probable cause affidavit. ECF 67-6 at 199:15-21 (Preston March Depo.); ECF 82-8 at 2-3 (Payne Affidavit). This affidavit and Dully's reports contained false and misleading information which her superiors and the prosecutor relied upon. There remains a dispute as to whether her superiors would have approved of Preston's arrest had the false information not been included.[12]

### 1. Failure to Conduct a Reasonable Investigation

In establishing probable cause, an arresting officer is required to conduct a reasonable investigation. *Rankin v. Evans*, 133 F.3d 1425 (1998) quoting *Tillman v. Coley,* 886 F.2d 317, 321 (11th Cir. 1989) and *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a "cautious man' that

---

[12] The record contains a material dispute about Payne's actual impression of the images themselves. In an email directed to Lawshe's criminal attorney written after the inspection of the charged images, Payne confesses that she "sees what you mean" about the appearance of the models. This impression was given prior to any age verification documentation. The email certainly contradicts Payne's affidavit that she was convinced that the individuals depicted were under age. ECF 67-16 (Payne Emails).

further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information.").  A detective "may not close his or her eyes to facts that would help clarify the circumstances of probable cause," nor are they "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004); see also *Alcocer v. Mills*, 800 Fed. Appx. 860, 866 (11th Cir. 2020) A qualified immunity analysis must charge the officer with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances. Id.

Citing *Washington v. Rivera* the district court found that the holdings of *Kingsland* and *Tillman* do not apply to Preston. *Washington v. Rivera,* 939 F.3d 1239 (11th Cir. 2019). The court reasoned that "even if the facts are construed in Lawshe's favor, no reasonable juror could conclude that Preston (1) harbored significant doubts about Lawshe's culpability; (2) refused to consider information offered to her; or (3) was willfully blind to known facts." ECF 103 at 21 (Order on MSJ). There is both direct and circumstantial evidence which establishes a genuine dispute as to all three of these factual propositions.

37

## 2. Significant Doubts of Culpability

Preston admits that out of dozens of cases involving alleged possession of child pornography, she has never sought Dully's opinions regarding the age of an individual in any other case. ECF 67-6 at 100: 22-25, 264: 14-19 (Preston March Depo.) Other detectives doubted whether the individual depicted was a minor *and* Preston agreed that a reasonable person could interpret the individual as an adult. ECF 67-6 at 96:17-19, 101: 5-16, 169:1-13 (Preston March Depo.). Preston admits that the models were not described as minors or pretending to be minors. ECF 67-6 at 62: 7-25 (Preston March Depo.).  There was no evidence that Mr. Lawshe had sought or searched for illegal content.  ECF 67-4 at 67:24 – 68:2 (Greene Depo.).

A reasonable juror could interpret Preston's confession about the ambiguous nature of the image and her decision to consult Dully as evidence of doubt.  If there was any question of doubt, the interaction with Dully certainly should have given Preston, or any reasonable officer, a significant reason to question Mr. Lawshe's culpability: Dully told Preston that it was not possible for a medical expert to state the individuals were minors with any degree of reliability.

Not only did Preston doubt the age of the individual depicted in the images, she acknowledges a total lack of evidence to show that Lawshe believed models were minors, an element of the crime.  In fact, Preston testifies that any guess as to Mr. Lawshe's knowledge or opinion of the model's age would require her to

38

"speculate," something she was unwilling to do. ECF 67-6 at 172:20 – 174:9 (Preston March Depo). On top of this, Preston knew that Lawshe had most likely been told by the publisher that the model was an adult. ECF 67-6 at 67:23 -  68:1 (Preston March Depo). Any reasonable juror could infer from this evidence that Preston, in fact, harbored significant doubts about whether or not Mr. Lawshe was actually guilty of knowing possession of child pornography.

**3. Refusal to Consider Information, Willful Blindness to Known Facts**

The "unconfirmed" CyberTip offered Preston a significant investigative lead: the name of the publishing website, met-art.com. ECF 67-1 (Affidavit). Construing the facts in favor of Lawshe, Preston knew that met-art.com was publicly available and should have known that it purported to comply with federal age verification laws. ECF 103 at 21, footnote 24 (Order on MSJ); ECF 67-6 at 68:21 – 69:1 (Preston March Depo.); ECF 67-6 at 141:15-21 (Preston March Depo.). The evidence shows that Preston knew that investigation of the website could bring clarity to obviously ambiguous facts.  She knew that she could visit and investigate the website. ECF 67-6 at 68:21 – 69:1 (Preston March Depo.). She had done so in other investigations and yet, inexplicably, she never visited the website to identify the alleged "victims" or verify their age in this case.  ECF 67-6 at 66: 18 – 67:9; 145: 1-7 (Preston March Depo.).

Under the circumstances, a reasonable investigation would have required going to the website to discover the circumstances of the image's publication. This is the testimony of every SJSO officer who has testified. ECF 67-4 at 46: 13-19 (Greene Depo.); ECF 67-7 at 40: 20-24 (Camden Depo.); ECF 67-3 at 46: 5-8 (Tolbert Depo.). Even Preston does not contest this assertion. ECF 67-6 at 185:25 – 186:13 (Preston March Depo.). Finally, Patrick Siewert a law enforcement and computer forensic expert explicitly offers the opinion that a reasonable investigation would have included visiting the website. ECF 96-1 (Report of Siewert). This testimony creates a genuine issue of material fact regarding the constitutional sufficiency of Preston's investigation.

As noted in *Kingsland,* the arguable probable cause analysis *must charge Preston with the facts that were reasonably discoverable*. Charging Preston with possession of the facts reasonably discoverable, in addition to those she already had, she would have (1) knowledge that the image was published on a website which claims the model is an adult, (3) published on a website which claims compliance with federal age verification laws and, (4) documents provided by a licensed attorney (records custodian) that the models depicted were adults at the time of the photography. Tolbert, her supervisor, would not have approved an application for probable cause under those circumstances. ECF-3 at 67: 7-23 (Tolbert Depo.). No objectively reasonable and competent law enforcement officer

would believe that probable cause exists under those facts.[13] There was not

probable cause or arguable probable cause. Therefore, summary judgment should

be reversed.

---

[13] Preston acknowledges that the age verification documents "obviously would have changed the entirety of the investigation." ECF 67-6 at 154: 12-20 (Preston March Depo.).

# CONCLUSION

For those reasons, the Court should reverse the Order of the district court granting summary judgment in favor of Kathleen Dully and Mikayla Preston. The Court should remand for further proceedings on the merits.

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 0077974
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains a total 9660 words, not including items excluded by Rule 32(f).

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**