No. 26-10155-D

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

WILLIAM LEE LAWSHE,

*Plaintiff-Appellant*,

v.

MIKAYLA PRESTON, and
KATHLEEN DULLY

*Defendants-Appellees*

Appeal from the United States District Court
for the Middle District of Florida, Jacksonville

No. 3:24-cv-00044-MMH-MCR

## APPELLEE'S ANSWER BRIEF

Jami M. Kimbrell
Florida Bar No. 0657379
**Howell, Buchan & Strong**
2898-6 Mahan Drive
Tallahassee, FL 32308
Phone: (850) 877-7776
Email: Jami@jsh-pa.com

*Attorney for Appellee*
*Kathleen Dully*

## Statement Regarding Oral Argument

Oral argument is unnecessary because the district court correctly applied settled law, and the facts and legal arguments are adequately presented in the briefs and record.

**Table Of Contents**

Page

Statement Regarding Oral Argument ........................................................................ i

Table of Contents ...................................................................................................... ii

Table of Citations ................................................................................................... iv

Statement of the Issue .............................................................................................. 1

Statement of the Case .............................................................................................. 2

    I.    Dr. Dully's Position and Experience ......................................................... 2

    II.    The Cyber Tip and Early Investigation of the First Image ..................... 4

    III.    The Search Warrant and Dr. Dully's Review of Additional Images ......... 5

    IV.    Dr. Dully's Involvement in the Criminal Case Against Lawshe ............... 7

    V.    Course of Proceedings and Case Disposition ........................................... 9

Summary of the Argument ...................................................................................... 11

Argument ................................................................................................................. 14

    I.    Standard of Review .................................................................................. 14

        a.    Summary Judgment Standard ......................................................... 14

    II.    Lawshe failed to demonstrate any genuine issue of material fact that would preclude summary judgment ......................................................... 15

    III.    The district court's decision that Dr. Dully was entitled to qualified immunity against Lawshe's claim was proper ........................................ 20

        a.    Lawshe failed to prove that Dr. Dully violated his clearly established constitutional right ...................................................... 22

    IV.    Lawshe failed to prove that he suffered any due process injury ............. 24

        a.    Dr. Dully had no knowledge of the biological age of the

individuals depicted in the images .................................................26

  b.  Dr. Dully was acting in good faith by assisting law enforcement in their task of preventing child abuse and the proliferation of CSAM..................................................................................29

 V. Lawshe's position would create a chilling effect for all expert witnesses, particularly those involved with reports of CSAM ..................................31

Conclusion .................................................................................................33

Certificate Of Compliance .........................................................................34

Certificate Of Service.................................................................................34

# Table of Citations

**Cases**                                                                             **Page(s)**

*Arguirre-Jarquin v. Seminole Cnty.*,
158 F.4th 1276 (11th Cir. 2025) ...................12, 17-18, 22, 27

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ....................... 14-16

*Ashley v. City of New York,* 992 F.3d 128 (2021) ........................................ 27

*Beshers v. Harrison,* 495 F.3d 1260, 1265 (11th Cir. 2007) ......................... 21

*Black v. Montgomery County,* 835 F.3d 358, 371 (3d Cir. 2016) .......................... 25, 28

*Butzer v. CoreCivic, Inc.,* 2018 WL 7144481 (M.D. Fla. Dec. 5, 2018) ..................... 14

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ....................................... 14

*Cf. Ross v. James,* 861 F. App'x 770, 780 (11th Cir. 2021) ....................................29

*Daubert v. Merrel Dow Pharm., Inc.,* 509 U.S. 579, 589-90 (1993) ......................... 32

*Diaz v. Carnival Corp.,* 544 F. Supp. 3d 1352, 1360 (S.D. Fla. 2021) ..................... 32

*Eiras v. State Dep 't of Bus. & Profl Reg. Div. of Alcoholic Bevs. & Tobacco*,
239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) ..............................................21, 30

*Estate of Malkin v. Wells Fargo Bank, NA*,
998 F.3d 1186, 1193 (11th Cir. 2021) ...................................................... 14

*Gates v. Khokhar,* 884 F.3d 1290, 1296 (11th Cir. 2018) ......................................... 20

*Gilmore v. Hodges,* 738 F.3d 266, 272 (11th Cir. 2013) ............................................. 20

*Gonzalez v. Reno,* 325 F.3d 1228, 1230 (11th Cir. 2002) ............................................ 20

*Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir. 1994) .................................................. 21

*Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) ........................... 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) ........ 15

*Napue v. People of State of Ill.,* 360 U.S. 264 (1959) ............................................... 26

*Parker v. State Bd. of Regents ex rel. Fla. State Univ.,*
724 So.2d 163, 167 (Fla. 1st DCA 1998) ..................................................29

*Perez v. Suszczynski,* 809 F.3d 1213, 1222 (11th Cir. 2016) ....................................23

*Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010) ..............................................25

*Scott v. Harris,* 550 U.S. 372, 380-81 (2007) ..........................................................15

*Sierra v. Associated Marine Insts., Inc.,*
850 So.2d 582, 593 (Fla. 5th DCA 2003) ............................................30

*State v. Cayward,* 552 So. 2d 971 (Fla. 2d DCA 1989) ..............................................26

*Wade v. McDade,* 106 F.4th 1251, 1255 (11th Cir. 2024) ........................................30

*Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) ............................................15

**Statutes**

§ 768.28(9)(a), F.S. ....................................................................................................21

§ 827.071(5), F.S. ..........................................................................................................8

34 U.S.C. § 20342 ............................................................................................10, 22, 30

42 U.S.C. § 1983 ............................................................................................................9

**Rules**

Fed R. Civ. P. 56(c) .....................................................................................................14

## Statement of the Issue

I.      Whether Dr. Dully is entitled to qualified immunity from Appellant's claim against her as a matter of law at the summary judgment stage.

**Statement of the Case**

This matter arose out of an investigation into Appellant's ("Lawshe") possession of child sexual abuse materials ("CSAM") and his subsequent arrest. Dr. Dully's total involvement in this process was limited to reviewing five images, Doc. 85, *Exhibits A-E*, and authoring three single-page opinions. Doc. 85, *Exhibits F-H*. Each opinion Dr. Dully authored relied on her training and experience as a board-certified abuse pediatrician and stated that the individual pictured appeared to be under 18 years of age based on their visible anatomical signs of sexual maturity.

## I. Dr. Dully's Position and Experience.

At all times relevant to this issue, Dr. Dully was the medical director of the University of Florida Child Protection Team ("CPT"), an agency of the State of Florida. Doc. 40, ¶ 208. The CPT is an organization authorized and established by Florida Statute section 39.303 to aid state investigations into allegations of child abuse. Doc. 40, ¶ 207; Section 39.303, F.S. Dr. Dully remains employed by the University of Florida College of Medicine as the medical director of the CPT[1], which assists with suspected or advertised child maltreatment cases for much of northern Florida. Doc. 85, *Exhibit K,* 6:9-7:5.

Dr. Dully and the CPT provided their services to law enforcement—both in this matter and in other matters—gratuitously. Doc. 85, *Exhibit I*, 75:10-13; *Exhibit*

---

[1] Dr. Dully plans to retire from her position as medical director in June of 2026.

*J*, 268: 14-16. Before assuming this position, Dr. Dully worked in various occupations related to child maltreatment starting as early as 1989 when she passed the general pediatric specialty board examinations, and she proceeded to receive her board certification in child abuse pediatrics in 2009. Doc. 85, *Exhibit K,* 7:6-10:8. Starting in 1994, Dr. Dully began using the sexual maturity rating ("SMR")[2] or Tanner scale to review pornographic images to estimate the sexual maturity of the appearance of the individuals who were depicted in them. Doc. 85, *Exhibit. K,* 23:15-21. It is within the standard of care for medical professionals to use SMR when evaluating the age of a patient in any context. Doc. 85, *Exhibit L*, 27: 12-17. In fact, the SMR scale that Dr. Dully utilized when reviewing the images in this matter is the same—or at least similar to—the process that Lawshe's expert, Dr. Krugman, follows when working with law enforcement on CSAM issues. Doc. 85, *Exhibit L*, 18:17-19:17.

However, the use of SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image, so Dr. Dully did not offer any medical opinions on the actual age of the individuals in the images she examined in this matter. Doc. 85, *Exhibit K,* 46:13-18, 71:5-10. As such, the letters Dr. Dully wrote to Detective Preston spoke only to the appearance and depiction of the

---

[2] The SMR scale is a clinical assessment that grades both breast development and public hair growth on a scale of 1-5 to monitor pubertal development. [Doc. 66, p. 2]. Grade 1 being pre-pubescent and Grade 5 is fully developed. *Id*.

individuals in the images she was presented with. Doc. 85, *Exhibits F, G, and H*.

**II.      The Cyber Tip and Early Investigation of the First Image.**

On or about February 20, 2023, the St. Johns County Sheriff's Office (the "Sheriff's Office") received a cyber tip (#153739160) from the National Center for Missing and Exploited Children ("NCMEC") reporting that Lawshe was in possession of "Apparent Child Pornography (Unconfirmed)," which it described as the "lascivious exhibition" of a "prepubescent minor." Doc. 103, p. 3. After receiving the tip, Detective Mikayla Preston was assigned to the case, and she reviewed the image of unconfirmed child sex abuse material that accompanied the tip and initiated her investigation. Doc. 40, ¶¶ 45-55.

Detective Preston presented the possible CSAM photo to Dr. Dully on February 22, 2023, as part of the investigation to receive a medical evaluation of the depicted individual. Doc. 40, ¶¶ 94-96, 99. Before bringing the image to Dr. Dully, several investigators of the Sheriff's Office were already inclined to think that the image was CSAM. Doc. 85, *Exhibit I*, 15:13-25; *Exhibit J*, 263:17-264:3, 275:10-18. The investigators also understood that Dr. Dully's opinions could help as an initial assessment to analyze the appearance of the individuals in the unconfirmed CSAM. *Ex. I,* 15:8-12. Doc. 85, *Exhibit I*, 15:8-12.

When Detective Preston presented the first image [Doc. 85, *Exhibit A*] to Dr. Dully, she explained the image was the subject of a law enforcement investigation

4

into a NCMEC cyber tip. After reviewing the image, Dr. Dully offered her medical opinion that the individual "appear[ed] to be younger than the age of 18" and could have been as young as 12. Doc. 40, ¶ 106. Dr. Dully used SMR to evaluate the appearance of the individual in the image and provide an estimated age range; however, she did not attempt to state or estimate the exact chronological age of the individual. [Doc. 85, *Exhibit K,* 21 :2-23]. Dr. Dully also explained the limitations of SMR in determining the actual age of individuals depicted in photographs to Detective Preston when she provided her opinion. [Doc. 85, *Exhibit K, 33:6-13, 47:9-17*].

Dr. Dully provided a letter to Detective Preston on February 22, 2023, explaining that the developmental genital appearance of the individual in the image was SMR IV and would be achieved at 12-15 years of age. Doc. 85, *Exhibit F*. SMR IV, when considering genital appearance, is reached when pubic hair covers the entire triangle shape of the labia majora, the anterior commissure, and the mons pubis up to where the thighs join at the pelvis. Doc. 85, *Exhibit K*, 38:2-6. It is more likely than not that an individual evaluated at SMR IV for breast development is younger than 18 years old. Doc. 85, *Exhibit L*, 26:1-20.

### III.   The Search Warrant and Dr. Dully's Review of Additional Images.

Unbeknownst to Dr. Dully, Detective Preston proceeded to draft an affidavit for a search warrant on February 28, 2023, in order to obtain a search warrant for

Lawshe's Electronic Service provider and gain access to content on Lawshe's phone. The warrant was granted on April 4, 2023. Doc. 40, ¶¶ 118, 120; Doc 85, *Exhibit K,* 130: 16-23. Dr. Dully was not consulted during the drafting of the search warrant. Doc. 85, *Exhibit K,* 48:14-24.

After reviewing the hundreds of pornographic images downloaded to Lawshe's phone, Detective Preston returned to Dr. Dully on April 5, 2023, with additional images to review. Doc. 85, *Exhibits B and C*. Detective Preston told Dr. Dully that two of the images appeared to depict the same individual as the first image she reviewed, but Preston provided no further information from the investigation. Dr. Dully provided a second opinion letter to Detective Preston on April 5, 2023, explaining that Detective Preston showed her two additional images of the what appears to be the same individual depicted in the first image, and that Dr. Dully opined that the appearance of the individual in those images depicts development of SMR III or IV which would be achieved at 12-15 years of age. Doc. 85, *Exhibit G*.

The same day, Detective Preston presented two additional images to Dr. Dully that were retrieved from Lawshe's phone. Doc. 85, *Exhibits D and E*. After reviewing these images presented to her by Detective Preston, Dr. Dully offered her medical opinion that the individuals appeared to be "less than or equal to 9-13.5 years old." Doc. 85, Exhibit H. Dr. Dully provided a separate letter to Detective Preston on April 5, 2023, explaining that she made this opinion based on the depicted appearance of

6

the individuals' breasts and genital areas. Doc. 85, Exhibit H. Dr. Dully's opinions considered what age was being depicted in the images, or the appearance of the individuals' ages, not their actual, chronological age.[3] Doc. 66, p. 5.

**IV.    Dr. Dully's Involvement in the Criminal Case Against Lawshe.**

When offering her opinions, Dr. Dully assumed that other information outside of her opinions would be considered by Detective Preston in conducting the investigation, and Dr. Dully did not know that her opinions would be used in a probable cause affidavit to seek a search warrant. Doc. 85, *Exhibit K,* 48: 14-24. Moreover, Dr. Dully did not consider the opinions she offered about sexual maturity from the appearance of a model in a pornographic image to be reliable as the sole basis for law enforcement to base their decision to make an arrest, let alone for them to be a substitute for a full investigation. Doc. 85, *Exhibit K,* 32:9-19, 70: 13-17. Similarly, Lawshe's expert, Dr. Krugman, would have expected law enforcement agents who requested his medical opinion to do more than solely request and review that opinion in their investigation. Doc. 85, *Exhibit K,* 14:4-12.

Beyond reviewing the pornographic images and authoring opinions as to the developmental appearance of the individuals depicted in the images, Dr. Dully had no further involvement in the criminal case against Lawshe.  Doc. 85, *Exhibit K*, 84:

---

[3] In her deposition, Dr. Dully made this distinction clear when she explained that the "age [of the individual depicted] is indeterminant," but "[h]er appearance is under the age of 18 very clearly."

18-24. After April 5, 2023, Detective Preston and her office had no further meetings, phone calls, or correspondence of any sort with Dr. Dully concerning the images. Doc. 85, *Exhibit J,* 273 :21-274: 10. Moreover, Dr. Dully did not know Lawshe or his relation to the images she reviewed when she offered her medical opinions. Doc. 85, *Exhibit K,* 84: 18-24. Accordingly, the final and ultimate responsibility for the investigation and charges brought against Lawshe rested fully with the Sheriff's Office and Detective Preston. Doc. 85, *Exhibit J,* 105: 7-9; 286:7-20.

Although Lawshe's expert offers some criticism of Dr. Dully's application of the SMR scale, he offers no actual rebuttal of Dr. Dully's ultimate opinion that the individuals appear to be younger than 18. Lawshe offers no evidence that Dr. Dully knew or had any reason to know that the individuals were over the age of 18 at the time she completed her review. Doc. 85, *Exhibit L,* 33 :2.-34:8. Because Lawshe's expert failed to review the images in question, Dr. Dully is the only witness identified in this case with any medical training that has reviewed the images. Doc. 85, *Exhibit L,* 8:23-25.

Detective Preston arrested Lawshe for possession of CSAM pursuant to Florida Statute section 827.071(5) on April 12, 2023. Doc. 40, ¶ 12. This decision to bring charges against and arrest Lawshe was not made through exclusive reliance on the medical opinions provided by Dr. Dully. Doc. 85, *Exhibit J,* 274:22 - 275: 1. The probable cause necessary for this action was found through multiple factors,

including: (1) Detective Preston and others in her office understanding the images to be CSAM; (2) Dr. Dully's medical opinions; and (3) Detective Preston's findings from searching Lawshe's digital downloads and data. Doc. 85, *Exhibit. J,* 274: 11-21. The State Attorney's Office dropped the charges brought against Lawshe after an affidavit by the records custodian for the images suggested that the individuals depicted were adults at the time the photographs were taken. Doc. 103, p. 5.

**V.      Course of Proceedings and Case Disposition.**

On May 20, 2024, Lawshe filed his Second Amended Complaint against defendants in the United States District Court Middle District of Florida, Jacksonville Division. Doc. 40. A singular count of the Second Amended Complaint—Count VII—was brought against Dr. Dully in her individual capacity, alleging a violation of the 14th Amendment Due Process Clause pursuant to 42 U.S.C. § 1983. Doc. 40, ¶¶ 206-218. Lawshe moved for partial summary judgment for this claim against Dr. Dully on August 12, 2025. Doc. 66. Dr. Dully responded in opposition to Lawshe's motion on September 9, 2025, and she filed her own motion for summary judgment on September 12, 2025. Doc. 75 and 85. Dr. Dully moved for dismissal of Lawshe's claim against her by the district court because: (1) Dr. Dully is entitled to complete immunity from liability for civil and criminal claims against her in the matter pursuant to 34 U.S.C. § 20342; (2) Dr. Dully is entitled to qualified immunity; and (3) Lawshe effectively made a medical negligence claim

9

against Dr. Dully under the guise of a constitutional violation, but he failed to comply with the presuit notice requirements of a medical negligence claim pursuant to chapter 766, Florida Statutes. Doc. 85.

The district court denied Lawshe's motion for partial summary judgment and granted Dr. Dully's motion for summary judgment on December 18, 2025. Doc. 103. The district court found that "no reasonable juror could conclude that Dully offered false inculpatory evidence" because "[t]he record is clear that [Dr. Dully] offered her opinion as to the apparent age of the individuals in the Images and told Preston that her reports did not constitute reliable information as to their biological ages." Doc. 103, p. 10.

Lawshe then filed his notice of appeal to this Court on January 16, 2026. Doc. 108. Lawshe's opening brief was filed on February 25, 2026, arguing that the district court erred in its finding that the medical opinions Dr. Dully offered were not false or inculpatory. Brief of Appellant at 10. Appellee Dr. Dully hereby timely files her Answer Brief.

## Summary of the Argument

The district court properly granted summary judgment in favor of Dr. Dully because Lawshe failed to produce evidence that she fabricated evidence, violated a clearly established constitutional right, or acted outside the scope of her lawful duties. At most, Lawshe attempts to repackage criticism of Dr. Dully's methodology into a constitutional claim, but disagreement with a professional opinion is not equivalent to proof of deliberate falsification.

The undisputed record establishes that Dr. Dully's role in this matter was limited. At the request of law enforcement, she reviewed five images and authored three brief letters offering her medical opinion regarding the apparent developmental age of the individuals depicted. She expressly limited her opinions to appearance—not actual chronological age—and communicated the limitations of using sexual maturity ratings to assess individuals depicted in photographs. She had no role in drafting the search warrant affidavit, no role in determining probable cause, no role in Lawshe's arrest, and no involvement in the prosecution that followed. The ultimate investigative decisions remained solely with law enforcement.

Lawshe's claim fails because he cannot establish the threshold element of a fabricated-evidence claim: falsity. The record contains no evidence that Dr. Dully knowingly provided false information, intentionally misrepresented her conclusions, knew the actual chronological ages of the individuals in the images, or acted with

11

deliberate indifference to Lawshe's constitutional rights. To the contrary, even Lawshe's own expert conceded that he could not testify that Dr. Dully deliberately falsified information, conspired with law enforcement, or intentionally sought to produce false results. At most, Lawshe's expert suggested that aspects of Dr. Dully's methodology could be criticized as unreliable or negligent. That testimony is legally insufficient to sustain a constitutional claim under § 1983.

Lawshe's heavy reliance on *Aguirre-Jarquin* is misplaced. *Aguirre-Jarquin v. Seminole Cnty.*, 158 F4th 1276 (11th Cir. 2025). That case involved substantial evidence that a forensic examiner knowingly manipulated procedures, ignored contrary findings, and intentionally sought false verification of fingerprint matches. No comparable evidence exists here. Dr. Dully reviewed the images presented to her, applied a methodology commonly used in her field, disclosed its limitations, and rendered an opinion consistent with her professional judgment. Lawshe offers no evidence that she knew the individuals depicted were adults or that she intentionally attempted to mislead investigators.

Even if Lawshe could identify a constitutional violation, Dr. Dully is still entitled to qualified immunity because no clearly established law would have placed her on notice that providing a qualified medical opinion regarding the apparent age of individuals depicted in suspected CSAM images violated the Constitution. Existing law clearly distinguishes negligent conduct from intentional fabrication,

and Lawshe has failed to bridge that gap.

Finally, public policy strongly supports the lower court's decision. Dr. Dully was performing a statutorily authorized role in assisting law enforcement with child exploitation investigations. Imposing personal constitutional liability on medical professionals for offering qualified expert opinions in good faith would discourage experts from assisting in investigations involving child abuse and CSAM and would undermine the very public protections those statutes were designed to promote.

Because Lawshe failed to establish any genuine issue of material fact and failed to overcome Dr. Dully's entitlement to qualified immunity, the district court's judgment should be affirmed.

**ARGUMENT**

## I.    Standard of Review

This Court should review the district court's grant of summary judgment in favor of Dr. Dully *de novo*, by applying the same legal standard used by the district court in the first instance. *Estate of Malkin v. Wells Fargo Bank, NA*, 998 F.3d 1186, 1193 (11th Cir. 2021) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1395 (11th Cir. 1994).

### a.    Summary Judgment Standard

A motion for summary judgment should be granted when the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). An otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. *Butzer v. CoreCivic, Inc.,* 2018 WL 7144481 (M.D. Fla. Dec. 5, 2018). The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc. ,* 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record. Failure to do so allows the

court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(l)(A), (e)(2)).

A court is not obligated to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson,* 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson,* 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Moreover, when the record clearly contradicts the nonmovant's version of the facts, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris,* 550 U.S. 372, 380-81 (2007).

**II.      Lawshe failed to demonstrate any genuine issue of material fact that would preclude summary judgment.**

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering materiality, factual disputes that are irrelevant or unnecessary need not be considered. *Id*. at 248. Moreover, a dispute about a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmoving party. *Id*. At the summary judgment stage, a trial judge determines whether there is the need for a trial, or if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*.

The facts in this case related to Dr. Dully are clear and undisputed. As required by statute, Dr. Dully reviewed five images of unconfirmed CSAM and provided three, single-page letters offering her opinions regarding those images as a board-certified child abuse pediatrician. The letters and images are in the record, are undisputed, and speak for themselves. The parties similarly agree that Dr. Dully's use of SMR was unreliable for the purpose of providing the *actual or biological* age of an individual in a photograph, and they agree that Dr. Dully informed Defendant Preston of the limitations of SMR when she provided the letters. This constitutes the entirety of Dr. Dully's involvement in the investigation. The parties dispute the legal implications of these undisputed facts, but the district court properly found that no reasonable juror could conclude that the opinions Dr. Dully provided were false, and it was well within its authority to reach this conclusion from the undisputed facts of

this case.

Lawshe argued that there was a genuine issue of material fact as to whether Dr. Dully fabricated incriminating forensic opinions in violation of the due process clause of the Fourteenth Amendment. Brief of Appellant at 16. However, Lawshe—as the adverse party—failed to set forth any specific facts showing that there is a genuine issue for trial. Neither party disputes what Dr. Dully reviewed or the content of her opinions following that review. Accordingly, Lawshe failed to establish a genuine issue of material fact concerning Dr. Dully's fabrication of her opinions and violation of Lawshe's Fourteenth Amendment protections.

Rather than providing actual evidence of fabrication, Lawshe offers a litany of arguments that Dully's reports are misleading, unreliable, or unscientific in the hopes that some combination of critiques will add up to fabrication. In doing so, Lawshe places great weight on *Aguirre-Jarquin v. Seminole Cnty.*, 158 F4th 1276 (11th Cir. 2025). However, *Aguirre-Jarquin* is entirely factually distinguishable from the case at hand. The defendant in *Aguirre*, an expert fingerprint examiner, was faced with a comprehensive report showing systematic flaws in her analysis of five separate cases, two expert opinions from equally qualified fingerprint examiners disputing her conclusions—finding that the print in question *did not* match the plaintiff's, an admitted failure to follow mandatory agency procedures, and testimony of a co-worker casting doubt on her decision to use an incompetent

17

examiner to verify her match. The plaintiff provided evidence that the defendant failed to verify prints and spoke with potential suspects before making identifications. *Id.* at 1294. The court found that the plaintiff arguably established the defendant's *knowledge* through the following: (1) repeatedly sending print matches to an older analyst with medical issues who was considered to be incompetent with intent to receive an unquestioned verification; (2) violating policy by sending print matches for verification after other examiners in the office had expressly disagreed with the identification; (3) and failing to get prints verified by anyone else at all. *Id.* at *7. The logic of *Aguirre-Jarquin* does not extend to Dr. Dully's conduct because Dr. Dully—as repeatedly emphasized by Lawshe—did not and could not have had knowledge of the biological ages of the individuals depicted in the images, and she explained these limitations in both her opinion letters and her conversation with Detective Preston. Lawshe stands on the *principle* of the case but points to no similar *facts*. Lawshe relies on a single report from an expert who, in an astounding twist of hypocrisy, is admittedly, intentionally, and willfully ignorant of the most critical piece of evidence in the case: the CSAM images giving rise to the entire controversy.

Lawshe claims there was a genuine issue of material fact as to whether Dr. Dully knowingly violated applicable standards of care in offering her medical opinion. Brief of Appellant at 25. In support of this claim, Lawshe cited the

18

deposition of his expert, who did not actually justify his argument. When asked if Dr. Dully's actions in providing opinions in this matter were below the standard of care, Dr. Krugman responded by saying "I can't say what—I think that writing a report that is saying that this child is for sure under 18 when there's uncertainty is— it's problematic because—because it has consequences, right?" Doc. 85, *Krugman Depo* at 29. Dr. Krugman went on to affirm that he could not testify that Dr. Dully provided deliberately false information, he could not testify that she participated in some sort of conspiracy with law enforcement to achieve a specific result, and that he "think[s]" he could testify that her report could involve medical negligence. *Id.* at 30. Although the parties differ in their conclusions as to Dr. Dully's negligence, such a dispute does not constitute a genuine issue of material fact because medical negligence is not relevant to Lawshe's claim against Dr. Dully. His claim requires deliberate fabrication of false inculpatory evidence. Thus, Lawshe failed to establish a genuine issue of material fact concerning Dr. Dully's violation of standards of care.

Finally, Lawshe argued that Dr. Dully's deposition demonstrated that statements in her opinions were willfully misleading, which constituted a genuine issue of material fact contrary to the district court's finding. Brief of Appellant at 28. In support of this claim, Lawshe quoted Dr. Dully's response in deposition where she was asked if a person reading her April 5th opinion might interpret it as saying the individual depicted was an actual child; Dr. Dully responded "[w]ell, I hope so,

yes, but I don't know that." Doc. 85, Dully Depo at 51. However, Lawshe continues to ignore the questions and answers directly following this exchange that clarify that Dr. Dully understood the model's age to be indeterminant, but that her appearance was "well under the age of 18," which is what Dr. Dully intended to convey with her opinion. *Id*. at 52. Lawshe's argument misstates Dr. Dully's testimony and ignores the content of her opinions, her warning to Defendant Preston of the limitations of SMR, and other related testimony. Lawshe failed to establish a genuine issue of material fact concerning Dr. Dully being willfully misleading in her opinions.

### III. The district court's decision that Dr. Dully was entitled to qualified immunity against Lawshe's claim was proper.

Government officials are protected from civil lawsuits by qualified immunity unless their conduct violates a statutory or constitutional right that was clearly established when the alleged violation occurred. *Gilmore v. Hodges,* 738 F.3d 266, 272 (11th Cir. 2013). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar,* 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. See *Gonzalez v. Reno,* 325 F.3d 1228, 1230 (11th Cir. 2002). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. *Id.* Discretionary authority includes all actions that the official undertook as part of their duties that

20

were within the scope of their authority. See, e.g., *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir. 1994). "Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Beshers v. Harrison,* 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800,818 (1982)).

Pursuant to Section 768.28(9)(a), Fla. Stat., state officers, employees and agents are immune from lawsuits arising from "act[s], event[s], or omission[s] of action in the scope of [their] employment or functions." *Eiras v. State Dep 't of Bus. & Prof! Regulation Div. of Alcoholic Bevs. & Tobacco,* 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). This immunity "may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Id.* (quoting Fla. Stat.§ 768.28(9)(a)). Thus:

> In order for plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public office official either acted outside the scope of his employment or in bad faith. The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement. This duty cannot be satisfied by mere conclusory allegations. Without support, the complaint must fail.

*Id.* (quoting *Brown v. McKinnon,* 964 so.2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted)). In this case, Dr. Dully is entitled to a presumption of good faith. *34 US.CA.§ 20342(2).*

21

To overcome qualified immunity, a plaintiff must establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296 (11th Cir. 2025) (citation modified) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

As the Second Amended Complaint expressly stated that Dr. Dully was at all times "acting under the color of State Law" and "[with]in the course and scope of her role," the burden of proof necessarily shifts to Lawshe to show that Dr. Dully did violate a clearly established constitutional right in bad faith—meaning actual malice—when she provided her medical opinions to the Sheriff's Office. [Doc. 40 ¶¶ 146-148]. Lawshe has failed to prove either prong of this requirement to overcome Dr. Dully's qualified immunity.

> **a.    Lawshe failed to prove that Dr. Dully violated his clearly established constitutional right.**

To satisfy the clearly established constitutional right requirement of the exception to qualified immunity, a law should not be defined at a high level of generality, and this can be demonstrated in the following three ways: "(l) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional rights was clearly violated, even in the total absence of case law." *Perez v.*

22

*Suszczynski,* 809 F.3d 1213, 1222 (11th Cir. 2016). Lawshe alleged that Dr. Dully violated the 14th Amendment Due Process Clause by: (1) providing deliberately false and fabricated evidence which she knew would be used in the criminal charge and prosecution of Lawshe; (2) providing false or misleading evidence through deliberate indifference to Lawshe 's innocence which she knew would be used in the criminal charge and prosecution of Lawshe; and (3) intentionally applied techniques which would yield false information which was then used to charge or prosecute Lawshe. [Doc. 40, ¶¶ 213-215]. Lawshe argued that Dr. Dully's understanding that SMR is not reliable in determining actual, biological age of individuals in photographs is equivalent to false and fabricated evidence. Brief of Appellant at 24.

In making these arguments, Lawshe ignored the opinion of his expert who stated that he is unable to testify that Dr. Dully provided deliberately false information, conspired with law enforcement to achieve a specific result, or did anything beyond what he would consider to be negligently applying medical standards. [Doc. 85, Exhibit L, 30:2-21]. At face value, even if Dr. Dully negligently applied medical standards in preparing her opinions, the elements of Lawshe's claim against her would not be met.

Lawshe has pointed to no evidence to substantiate that Dully fabricated her opinion as to the apparent age of the individuals in the images. Lawshe's expert, Dr. Krugman, offers testimony that the SMR scale may not reliably be used to estimate

chronological age based on digital images. *See* Expert Report of Dr. Scott Krugman at 2, Doc. 66-5 (Aug. 12, 2025). He also testifies that it is within the standard of care when evaluating the age of any patient in any context to "go through" the SMR criteria and that it may be a "helpful piece of information" even if not conclusive. See Dep. of Dr. Scott Krugman at 27:12–28:6, Doc. 76-7 (Sep. 9, 2025). As Dr. Krugman himself acknowledges, this testimony does not establish that Dully fabricated her opinion as to the apparent age of the individuals in the images. *See id*. at 30:2–5 ("Q: [A]re you able to testify based on your review of the material that Dully provided deliberately false information? A: No.").

Lawshe's conclusion of willful or reckless fabrication of evidence is not supported by the plain language of the opinions Dr. Dully provided, the images themselves, Dr. Dully's testimony, or even Lawshe's own expert. Ultimately, the underlying facts of the case are not in dispute. Dr. Dully's written opinions, the testimony of Lawshe's expert, and the images speak for themselves; Dr. Dully was not acting with malice, nor did she fabricate evidence.

**IV. Lawshe failed to prove that he suffered any due process injury.**

Case law makes clear that "under the Fourteenth Amendment, there is no substantive due process right to be free from malicious prosecution without probable cause" because "[a] malicious prosecution claim arises under the Fourth Amendment, not Fourteenth Amendment substantive due process." *Rehberg v.*

24

*Pault*, 611 F.3d 828, 853 (11th Cir. 2010). Although the Third Circuit found that it is possible for a fabricated evidence claim to stand under the Fourteenth Amendment, the plaintiff must "draw a meaningful connection between [his] particular *due process injury* and the use of fabricated evidence against [him]." *Black v. Montgomery County,* 835 F.3d 358, 371 (3d Cir. 2016). at 371-72 (internal citations removed) (emphasis added). The Eleventh Circuit has held that a 14th Amendment claim of fabrication of evidence must allege a due process violation such as denying a plaintiff "the constitutionally required procedures necessary to challenge his indictments and arrest." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010). In fact, the Eleventh Circuit in *Rehberg* found that plaintiff's challenges to the indictments brought against him demonstrated there was no due process violation. *Id*.

It is true that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against the state actors under the due process clause of the Fourteenth Amendment ... " *Black v. Montgomery County,* 835 F.3d 358,371 (3d Cir. 2016). However, the court further explains that, for this fabricated evidence claim to stand under the Fourteenth Amendment, the plaintiff must "draw a meaningful connection between [his] particular due process injury and the use of fabricated evidence against [him]." *Id.* at 371-72 (internal citations removed) (emphasis added). This Court addressed the issue even more clearly by stating that

25

a Fourteenth Amendment claim of fabrication of evidence must allege a procedural due process claim such as denying a plaintiff "the constitutionally required procedures necessary to challenge his indictments and arrest." *Rehberg v. Pault,* 611 F.3d 828, 853 (11th Cir. 2010). In fact, this Court in *Rehberg* found that the plaintiff's successful challenges to the indictments brought against him demonstrated that there was no due process violation. *Id.* Similarly, Lawshe **successfully** used the legal system to challenge the allegations against him, and he made no procedural due process claims that would implicate the Fourteenth Amendment.

       **a.**     **Dr. Dully had no knowledge as to the biological age of the individuals depicted in the images.**

Even if Lawshe's allegations were to improperly be considered under the 4th Amendment, Dr. Dully's minimal involvement does not satisfy the requirements of a fabricated evidence or malicious prosecution claim. *See State v. Cayward,* 552 So. 2d 971 (Fla. 2d DCA 1989) (finding false evidence where police investigators deliberately manufactured/fake laboratory reports and presenting them to a suspect during an interrogation to secure a confession); *Napue v. People of State of Ill.,* 360 U.S. 264 (1959) (finding false evidence where a crucial witness for the State in a murder prosecution offered false testimony that the State Attorney recognized as false when it was given, and they chose to not correct that false testimony); *Ashley v. City of New York,* 992 F.3d 128 (2021) (finding false evidence where police

26

detective admitted to knowing the complaint was false when signed).

Each case cited by Lawshe in his Brief demonstrated that the state actor charged with fabricating evidence had *knowledge* of that evidence being false. For example, in *Aguirre-Jarquin* (although summary judgment on the fabrication of evidence claim in favor of the plaintiff was *still* denied) the court found that a state finger-print examiner could have violated the plaintiff's due process rights by fabricating evidence and that plaintiff arguably established knowledge through the following: (1) repeatedly sending print matches to an older analyst with medical issues who was considered to be incompetent with intent to receive an unquestioned verification; (2) violating policy by sending print matches for verification after other examiners in the office had expressly disagreed with the identification; (3) and failing to get prints verified by anyone else at all. No. 6:20-CV-25-RBD-DCI, 2023 WL 2558479 at *7 (M.D. Fla. 2023). Here, Dr. Dully did not and could not have had knowledge of the biological ages of the individuals depicted in the images, and she explained these limitations in both her opinion letters and her conversation with Detective Preston.

Disputed or even completely incorrect evidence does not constitute fabrication unless the defendant knows their statement was false at the time it was submitted. *Black v. Montgomery County,* 835 F.3d 358 (2016). In order to establish that Dr. Dully submitted "knowingly false" or "intentionally fabricated" evidence,

27

Lawshe must prove that Dr. Dully *knew* the girls depicted in the images were over the age of 18. It is not enough to call her opinions unscientific, ill-informed, overly limited, or negligent. The trial court correctly pointed out that unreliability is not equivalent to falsity. Lawshe cries foul that the proposition is unsupported by case law, but it needs none. They are different words with different meanings. Lawshe cannot substitute one for the other because it conveniently lowers the burden for his claims.

No evidence in this case demonstrates that Dr. Dully knew the images depicted adults prior to authoring her opinion. Dr. Dully reviewed the actual images under investigation and provided corresponding medical opinions based on her extensive experience and training. Dr. Dully explained the limitations of SMR analyses to Detective Preston and included language in her letters demonstrating that her review was based on appearances, and she fully anticipated that her opinion would be supplemented by a rigorous investigation by the Sheriff's Office. Moreover, the SMR analysis Dr. Dully used was not out of the ordinary for professionals in her field. Doc. 85, *Exhibit L,* 18: 1 7-19: 17. As such, it is unclear how Dr. Dully—in her limited involvement in the investigation—deliberately provided false or misleading evidence, was deliberately indifferent to Lawshe's innocence, or intentionally applied techniques to yield false information. Lawshe has provided no evidence to show that Dr. Dully violated his clearly established right.

In any event, Lawshe has not shown that the clearly established principle against creating or attesting to false evidence extends to negligently misleading statements. *Cf. Ross v. James*, 861 F. App'x 770, 780 (11th Cir. 2021) (per curiam) ("[E]ven if we agreed with [plaintiff] that the inclusion of this information was 'misleading,' he cites no authority in support of his argument that accurate, yet arguably potentially misleading, information must be stricken from a . . . search warrant affidavit."). Thus, the district court properly found that Dr. Dully did not violate Lawshe's clearly established constitutional right.

> **b.** **Dr. Dully was acting in good faith by assisting law enforcement in their task of preventing child abuse and the proliferation of CSAM.**

Even if Dr. Dully was considered to have violated a clearly established right by providing medical opinions to Detective Preston, she did not act in bad faith. The bad faith prong of § 768.28, Fla. Stat., has been construed using the actual malice standard, *Parker v. State Bd. of Regents ex rel. Fla. State Univ.,* 724 So.2d 163, 167 (Fla. 1st DCA 1998). This means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent." *Eiras,* 239 F. Supp. 3d at 1343 (quoting *Reed v. State,* 837 So.2d 366, 368-69 (Fla. 2002)). "Conduct meeting the wanton and willful standard is defined as "worse than gross negligence," *Sierra v. Associated Marine Insts., Inc.,* 850 So.2d 582, 593 (Fla. 5th DCA 2003), and "more reprehensible and

unacceptable than mere intentional conduct." *Eiras,* 239 F. Supp. 3d at 1343 (quoting *Richardson v. City of Pompano Beach,* 511 So.2d 1121, 1123 (Fla. 4th DCA 1987). Likewise, to establish that an official acted with deliberate indifference, the plaintiff must prove that the official was subjectively aware of a serious risk, that the official disregarded that risk, and that the official acted with subjective recklessness. *Wade v. McDade,* 106 F.4th 1251, 1255 (11th Cir. 2024).

Additionally, Dr. Dully is *entitled* to a presumption of good faith for her involvement in this matter. Title 34 U.S.C. § 20342 shields Dr. Dully from civil liability for providing her medical opinions in conjunction with law enforcement investigations related to child abuse or neglect. The broad protections of section 20342 apply because Dr. Dully is an individual who provided medical opinions through consultations with law enforcement regarding an investigation pursuant to a good faith report of CSAM. It is commonly understood that cases involving children who are unlawfully brought into the pornography industry constitute child abuse. *Dr. Krugman's Deposition*, 9:25-10:4. Because Dr. Dully's role in this matter is covered by section 20342, she *must* be excluded from any civil liability, and further, she is entitled to a presumption of good faith.

Actions have consequences. Lawshe frequently downloaded teen pornography, purportedly due to his erectile disfunction. Doc. 85, *Exhibit M*, 60:4-19. Thousands of pornographic images were captured on his personal cell phone.

Lawshe downloaded so many images so frequently that he routinely had to delete older images to make space for new downloads. Doc. 85, *Exhibit M*, 67:4- 11. One of those images was submitted to NCMEC, which led to an investigation. The images are obviously questionable as to their age and legality. Dr. Dully provided an opinion that matched what she saw in front of her. Lawshe's argument that something malicious, evil, or reckless had to occur for him to be arrested is untenable and fails upon a cursory review of the images.

Lawshe failed to meet his affirmative duty of making a good faith allegation that Dr. Dully acted with actual malice or knowledge of potential harm to Lawshe in rendering her opinions, relying instead on conclusory allegations to support his claims that Dr. Dully was acting in bad faith. As established above, Lawshe's expert—after a comprehensive review of Dr. Dully's involvement and medical opinions—could not testify that Dr. Dully acted with anything more than negligence. Doc. 85, *Exhibit L*, 30:2-21. There is no evidence that this negligence rose to the level of malice that would overcome the protections of qualified immunity. Therefore, the district court's finding that Dr. Dully is protected by qualified immunity from Lawshe's claim at the summary judgment stage was proper.

**V.      Lawshe's position would create a chilling effect for all expert witnesses, particularly those involved with reports of CSAM.**

While an expert and their opinions must be grounded "in the methods and

procedures of science," it "would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science." *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). "Absolute certainty" is not a requirement of expert opinions. *Diaz v. Carnival Corp.*, 544 F. Supp. 3d 1352, 1360 n.5 (S.D. Fla. 2021).

Lawshe argued in his Brief that unreliability in Dr. Dully's opinion *is equivalent* to falsity. Brief of Appellant at 24. This radical claim was made in spite of Lawshe's repeated recognition in his Brief that Dr. Dully informed Defendant Preston that her opinions were not reliable as to biological age. Dr. Dully's opinions also clearly demonstrate that she was speaking to the appearance of age based on the SMR scales.

When taken to its logical conclusion, Lawshe's position would result in the exclusion of expert opinions entirely from CSAM investigations if the expert cannot provide a one-hundred percent reliable biological age of the individuals depicted in photographs. As noted by Lawshe, such a high degree of certainty would be impossible. It would be contrary to public policy to impose such significant limitations on the ability of qualified—and statutorily-mandated—individuals to assist in and contribute to law enforcement investigations of possible child abuse and possession of CSAM. Moreover, Lawshe's position would improperly expose

experts like Dr. Dully to liability for variables outside of their control, and would have a chilling effect on their willingness to offer opinions.

## Conclusion

For the foregoing reasons, Appellee Kathleen Dully respectfully requests that this Court affirm the district court's order granting summary judgment in her favor and denying Appellant's motion for partial summary judgment, and grant such further relief as this Court deems just and proper.

Date: April 27, 2026

/s/ Jami M. Kimbrell
Jami M. Kimbrell
Florida Bar No. 0657379
**Howell, Buchan & Strong**
2898-6 Mahan Drive
Tallahassee, FL 32308
Phone: (850) 877-7776
Email: Jami@jsh-pa.com
*Attorney for Appellee*
*Kathleen Dully*

## Certificate Of Compliance

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 8,392 words.

/s/ Jami M. Kimbrell
Jami M. Kimbrell


## Certificate Of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed electronically and was sent by E-Mail from the Florida Courts' E-Filing Portal system on all counsel of record this 27th day of April, 2026.

/s/ Jami M. Kimbrell
Jami M. Kimbrell