APPEAL NO. 26-10155-DD

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

William Lee Lawshe,

Plaintiff-Appellant,

v.

Mikayla Preston and Kathleen Dully,

Defendants-Appellees.

_____

On Appeal from the United States District Court
for the Middle District of Florida
District Court Case No. 3:24-CV-00044-JAR-MCR

_____

**ANSWER BRIEF OF APPELLEE PRESTON**

_____

Matthew J. Carson (Florida Bar Number: 0827711)
Michael P. Spellman (Florida Bar Number: 0937975)
Christen A. Petruzzelli (Florida Bar Number: 1039528)

Attorneys for Appellee Preston

SPELLMAN LAW, P.A.
905 East Park Avenue
Tallahassee, Florida 32301
(850) 601-1983
mcarson@spellman.law; michael@spellman.law; cpetruzelli@spellman.law

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellees, through undersigned counsel, hereby disclose the following pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1: Appellee, MIKAYLA PRESTON, through undersigned counsel, hereby certifies that the following individuals have an interest in the instant matter:

1. Carson, Matthew J. – Attorney for Defendant-Appellee Preston

2. Dully, Dr. Kathleen – Defendant-Appellee

3. Florida Sheriffs Risk Management Fund – Insurer for Defendant-Appellee Preston

4. Howard, Judge Marcia Morales – District Judge

5. Howell, Buchan, & Strong – Attorneys for Defendant-Appellee Dully

6. Kimbrell, Jami – Attorney for Defendant-Appellee Dully

7. Lawshe, William Lee – Plaintiff-Appellant

8. Nooney, Jeffery S. – Attorney for Plaintiff-Appellant

9. Nooney, Roberts, Hewett & Nowicki – Attorneys for Plaintiff-Appellant

10. Petruzzelli, Christen A. – Attorney for Defendant-Appellee Preston

11. Preston, Mikayla – Defendant-Appellee

12. Restani, Judge Jane A. – District Judge

13. Richardson, Judge Monte C. – Magistrate Judge

14. Roberts, Michael K. – Attorney for Plaintiff-Appellant

15. Sniffen and Spellman, P.A. – Former Attorneys for Defendant-Appellee Preston

16. Spellman Law, P.A. – Attorneys for Defendant-Appellee Preston

17. Spellman, Michael P. – Attorney for Defendant-Appellee Preston

18. Wilson, John – Attorney for Defendant-Appellee Dully

The undersigned certifies that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

# **STATEMENT REGARDING ORAL ARGUMENT**

Appellee does not believe oral argument would benefit this Court. The record is not particularly complex and Appellee submits that the legal issues are not novel or complex such that oral argument would materially aid the Court's determination of the issues on appeal.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** .................................................................. C-1

**STATEMENT REGARDING ORAL ARGUMENT** .......................................... i

**TABLE OF CONTENTS** ..................................................................... ii

**TABLE OF AUTHORITIES** ............................................................... iv

**STATEMENT OF JURISDICTION** ...................................................... vii

**STATEMENT OF THE ISSUE** .............................................................. 1

**STATEMENT OF THE CASE** ................................................................ 2

    **I. Course of Proceedings and Disposition in the Court Below** ...................... 2

    **II. Statement of Facts** .................................................................. 3

    **III. Standard of Review** ............................................................... 11

**SUMMARY OF ARGUMENT** .............................................................. 12

**ARGUMENT** ................................................................................... 13

    **I. Lawshe's Unreasonable Search Claim Against Preston Fails (Count I)** 13

        **A.    Preston Had Probable Cause and Arguable Probable Cause to Seek the Subject Search Warrants** .............................................. 13

            **1.  Preston Could Rely on Greene's Statements about met-art.com** ................................................................ 14

            **2.  Dully's Reports were Reliable** ...................................... 16

            **3.  The CyberTips were not "Unreliable"** ............................ 17

    **II. Lawshe's False Arrest Claim Against Preston Fails (Count II)** .............. 21

        **A.    Preston Conducted a Reasonable Investigation** .......................... 23

            **1.  Preston did not have "Serious Doubts" of Culpability** ........... 23

            **2. Preston did not Refuse to Consider Information / was not Willfully Blind to Known Facts** ................................ 24

    **III. Lawshe Has Abandoned his First Amendment Claim against Preston (Count III)** .......................................................... 26

**IV. Preston Enjoys Qualified Immunity from Lawshe's Claims** ................ 26

**CONCLUSION** ........................................................................................... 32

**CERTIFICATE OF COMPLIANCE** ................................................................ 34

**CERTIFICATE OF SERVICE** ....................................................................... 35

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Access Now, Inc. v. Sw. Airlines Co.,*
385 F.3d 1324, 1331 (11th Cir. 2004) ................................................................. 23

*Ashcroft v. al-Kidd,*
563 U.S. 731 (2011) .............................................................................................. 29

*City of Escondido, Cal. v. Emmons,*
586 U.S. 38 (2019) ................................................................................................ 29

*Crosby v. Monroe Cty.,*
394 F.3d 1328 (11th Cir. 2004) ........................................................................... 14

*District of Columbia v. Wesby,*
138 S. Ct. 577 (2018) ........................................................................................... 13

*Florida v. Harris,*
568 U.S. 237 (2013) .............................................................................................. 20

*Gilmore v. Ga. Dep't of Corr.,*
No. 23-10343, --- F.4th ---, 2025 WL 1911728
(11th Cir. July 11, 2025) ...................................................................................... 28

*Grider v. City of Auburn,*
618 F.3d 1240 (11th Cir. 2010) ........................................................................... 14

*Hooks v. Brewer,*
818 Fed. Appx. 923 (11th Cir. 2020) ................................................................... 14

*Jordan v. Doe,*
38 F.3d 1559 (11th Cir. 1994) ............................................................................. 27

*Keating v. City of Miami,*
598 F.3d 753 (11th Cir. 2010) ............................................................................. 26

*Lee v. Ferraro,*
284 F.3d 1188 (11th Cir. 2002) ........................................................................... 26

*Maddox v. Stephens*,
727 F.3d 1109 (11th Cir. 2013) ...................................................................... 27

*Madiwale v. Savaiko*,
117 F.3d 1321 (11th Cir. 1997) ...................................................................... 14

*New York v. P.J. Video, Inc.*,
475 U.S. 868 (1986) ...................................................................................... 30

*Paez v. Mulvey*,
915 F.3d 1276 (11th Cir. 2019) ...................................................................... 13

*Pearson v. Callahan*,
555 U.S. 223 (2009) ................................................................................ 26, 27

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678, 681 (11th Cir. 2014) ............................................................... 26

*Saucier v. Katz*,
533 U.S. 194 (2001) ...................................................................................... 27

*Smith v. City of Fairburn, Georgia*,
679 Fed. Appx. 916(11th Cir. 2017) .............................................................. 15

*T.R. by and through Brock v. Lamar Cnty. Bd. Of Educ.*,
25 F.4th 877(11th Cir. 2022) ........................................................................ 28

*United States v. Battershell*,
457 F.3d 1048(9th Cir. 2006) ....................................................................... 31

*United States v. Gatherum*,
338 Fed. Appx. 271 (4th Cir. 2009)................................................. 29, 30, 31, 32

*United States v. Ross*,
963 F.3d 1056 (11th Cir. 2020) ..................................................................... 19

*United States v. Shorter*,
328 F.3d 167(4th Cir.2003) .......................................................................... 32

*United States v. Smith*,
459 F.3d 1276 (11th Cir. 2006) ...................................................................... 30

*United States v. Sparks*,
806 F.3d 1323 (11th Cir. 2015) ...................................................................... 19

*United States v. Ventresca*,
380 U.S. 102 (1965)........................................................................................ 15

*Vinyard v. Wilson*,
311 F.3d 1340 (11th Cir. 2002) ...................................................................... 28

*Washington v. Howard*,
25 F.4th 891 (11th Cir. 2022) ........................................................................ 13

*Whatley v. CNA Ins. Cos.*,
189 F.3d 1310 (11th Cir. 1999) ...................................................................... 11

# <u>STATEMENT OF JURISDICTION</u>

The District Court had jurisdiction over the underlying dispute pursuant to federal question jurisdiction, 28 U.S.C. §1331, as the case arose under 42 U.S.C. §1983. This Court has jurisdiction over this appeal as it is from a final decision of a district court disposing of all Plaintiff-Appellant's claims entered on December 18, 2025, and the judgment entered by the clerk on December 19, 2025. [Docs. 103 and 104]; 28 U.S.C. §1291. The notice of appeal was filed on January 16, 2026. [Doc. 108]; Fed. R. App. P. 4(a)(1)(A).

# <u>STATEMENT OF THE ISSUE</u>

Whether Appellee Detective Preston enjoys qualified immunity from Appellant's unreasonable search and false arrest claims.

## I.     Course of Proceedings and Disposition in the Court Below

Appellant, William Lee Lawshe, initiated this cause by filing a complaint in the United States District Court for the Middle District of Florida on January 1, 2024. [Doc. 1]. On May 20, 2024, Lawshe filed a second amended complaint naming three defendants: Robert Hardwick, in his official capacity as Sheriff of St. Johns County, Florida, Detective Mikayla Preston, and Dr. Kathleen Dully. [Doc. 40]. The second amended complaint contained causes of action under section 1983. [Id.].

Sheriff Hardwick filed a motion to dismiss the second amended complaint, which was granted. [Docs. 44, 53]. Dr. Dully filed a motion to dismiss the second amended complaint, which was denied. [Docs. 45, 53]. The litigated claims were:

Count I       Section 1983 Unreasonable Search – Preston

Count III     Fourth Amendment – Unreasonable Arrest – Preston

Count V:     First Amendment – Preston

Count VII:    Fourteenth Amendment – Due Process – Dully

[Docs. 40 and 53].

Lawshe filed motions for partial summary judgment. [Docs. 66, 67]. Preston and Dully filed motions for summary judgment. [Docs. 83, 85]. On December 18, 2025, the District Court entered an order granting Preston's motion

for summary judgment and Dully's motion for summary judgment and denying Plaintiff's motions for partial summary judgment. [Doc. 103]. The District Court engaged in a careful review of the record to reach a determination as to the undisputed material facts. [Id.]. Based on these facts, the district court granted Preston's motion for summary judgment. [Id.]. The Clerk entered Judgment in favor of Preston and Dully consistent with the summary judgment order. [Doc. 104]. This appeal followed. [Doc. 108].

II.   **Statement of Facts**

On February 20, 2023, the St. Johns County Sherriff's Office ("SJCSO") received a CyberTip from the National Center for Missing and Exploited Children ("NCMEC"). [Docs. 67-1, 67-2]. The CyberTip reported that Synchronoss Technologies – a cloud-based storage provider for Verizon – had reported an image with the filename "f6a487"[1] had been uploaded by a phone belonging to Lawshe. [Docs. 67-1, 67-2]. The CyberTip stated that the image depicted the "lascivious exhibition" of a "prepubescent minor," and characterized it as "CP-unconfirmed" and "Apparent Child Pornography (Unconfirmed)." [Doc. 67-2]. "CP-Unconfirmed" means that NCMEC determined the image depicted either a sex act or lewd and/or lascivious exhibition, but that they were not able to confirm the age

---

[1] Some of the filenames of the images at issue in this case are unwieldy in length. As a result, the parties and the District Court referred to some of these images by abbreviated filenames. [Doc. 77-1].

of the individual depicted. [Doc. 67-5].

SJCSO Sergeant Eugene Tolbert, the supervisor of SJCSO's Internet Crimes Against Children ("ICAC") division, reviewed the CyberTip image (f6a487) and assigned the CyberTip to Preston to investigate. [Docs. 67-1, 67-2, 67-3, 82-5 at 7:1-15[2]]. Tolbert believed the f6a487 image constituted child sexual abuse material ("CSAM"). [Doc. 82-5 at 7:1-10:7, 9:11-18, 10:25-11:24, 15:13-23, 16:12-13, 16:16-19, 17:13, 74:2-10.]

Tolbert and Preston then met with Dully to get "an extra layer of confirmation" that the individual depicted in the f6a487 image was a minor. [Doc. 82-5 at 11:14-17, 11:25-12:14, 15:3-12, 57:8-19]. Dully is the medical director of the Child Protection Team for the University of Florida. [Doc. 82-6 at 6:9-15]. Dully is board certified in both pediatrics and child abuse pediatrics. [Id. at 10:2-8]. Dully consults with law enforcement agencies on suspected CSAM cases to assist with determining the age of the individual in an image. [Doc. 82-7 at 78:24-79:20, 80:7-81:8]. Law enforcement often uses Dully's opinion, at least in part, in their decision-making process, such as whether to seek a search warrant. [Id., 82:11-83:14].

Preston believed Dully was a reliable source of information in estimating the age of the individuals in these images. [Doc. 82-3 at 101:1-4, 105:19-106:19,

---

[2] References to deposition transcripts that have been filed with the district court and are part of the record on appeal are to the page and line numbers assigned by the court reporter.

131:14-18]. Dully agreed that the individual in the f6a487 image appeared to be a child. [Doc. 82-5 at 15:22-25, Doc. 67-9 at p.1].

On February 22, 2023, Dully provided a written opinion letter to Preston that included the following:

> I have examined a single color photograph displayed on a law enforcement laptop entitled [f6a487] provided to me by yourself following a cybertip from NCMEC. This image depicts what appears to be a naked pubertal female child wearing pink earrings and white lace socks on her feet. She is sitting on a wood floor in a knees-to-chest position with her lower legs and ankles parted to expose her genitalia for the camera. This female child appears younger than 18 years of age. She would have achieved this developmental genital appearance of SMR IV at 12-15 years of age. She does not appear to be shaved as her anterior pubic hair is still present.

[Doc. 67-9 at p. 1].

If Dully had not been willing to render her services, Preston would have spoken to Tolbert, her Sergeant. [Doc. 82-3 at 192:6-193:22]. Tolbert had previously met with Dully several times for her assistance in his investigations of child pornography, and he understood her to be qualified to provide an expert opinion. [Doc. 82-5 at 56:15-22, 75:20-76:4, 59:4-21]. If Tolbert had learned that Dully said the individual depicted in the f6a487 image was not a minor, he "would have went with what Dr. Dully said." [Doc. 82-5 at 16:13-16, 18:8-12, 15:23-25]. The SJCSO ICAC Unit receives more CyberTips than it can investigate. [Id. at 35:7-12].

On or around February 28, 2023, Preston submitted an affidavit for search warrant for Lawshe's cell phone records. [Doc. 67-1]. Preston included in the

affidavit information taken verbatim from the NCMEC CyberTip and information taken verbatim from Dully's February 22, 2023, opinion letter. [Id.].

Preston also noted "there is a watermark of www.met-art.com on the offending image. This site has a known history of displaying CSAM images of teenage girls and CSAM content from this site has been encountered by other ICAC investigators in past investigations." [Doc. 67-1 at p. 3]. Preston recalls that she spoke with SJCSO Detective Kevin Greene who told her he had encountered met-art.com in other investigations. [Doc. 82-6 at 51:10-24, 54:2-22]. Tolbert also remembers Greene telling him that met-art.com had previously displayed images of underage females. [Doc. 82-5 at 39:21-40:8]. Greene recalls that he had read that met-art.com had "used 17 year old models from the Ukraine back years ago" when he "was doing investigations," although he doesn't specifically remember talking with Preston about it. [Doc. 82-4 at 52:2-11, 53:12-21].

Preston also consulted with Kaitlyn Payne, assistant state attorney with the State Attorney's Office for the 7th Judicial Circuit of Florida. [Doc. 82-5 at 182:20-183:10; Doc. 82-8 at ¶¶ 1-5]. Payne had prosecuted hundreds of cases involving internet crimes against children. [Doc. 82-8 at ¶ 3]. Payne routinely and regularly relied on Dully's opinions regarding the ages of individuals in these types of images. [Id. at ¶ 6]. Payne reviewed the unredacted version of the f6a487 image, and reviewed and approved Preston's affidavit for search warrant for Lawshe's cell

phone records. [Id. at ¶ 5]. Payne believed there was probable cause to seek a search warrant to obtain images on Lawshe's phone. [Id. at ¶ 5-7]. Payne believed there was probable cause even if Preston would have omitted references to metart.com in her affidavit for search warrant. [Id. at ¶ 5].

On or around February 28, 2023, a circuit court judge signed the warrant. [Doc. 67-1 at p. 8]. On or before April 4, 2023, Synchronoss complied with the search warrant. [Doc. 67-13 at p. 4, Doc. 82-3 at 134:5-9]. Preston reviewed numerous additional images provided by Synchronoss. [Doc. 82-3 at 135:17-136:2]. Preston found three images that she thought were potentially child pornography: 0065(1), 0059, and DuckDuckGo. [Doc. 82-3 at 136:13-17, 137:20-24, Doc. 67-9 at pp. 2, 3]. The 0065(1) and 0059 images appear to be of the same individual as depicted in the f6a487 image. [Doc. 82-3 at 138:5-10, Doc. 67-9 at p. 2].

On April 5, 2023, Preston met with Dully again and showed her the 0065(1), 0059, and DuckDuckGo images. [Doc. 67-9 at pp. 2, 3]. Dully provided written opinion letters to Preston wherein she described the images in some detail and stated her opinion that the "female child" in the 0065(1) and 0059 images "is depicted to be…≤12-15 years of age," and the "female child" in the DuckDuckGo image has the "developmental appearance" of "≤9-13.5 years of age." [Doc. 67-9 at pp. 2, 3].

Preston then consulted with Payne. [Doc. 82-3 at 192:2-5, 198:1-199:21, 201:2-5, Doc. 82-8 at ¶ 11]. Payne reviewed unredacted versions of the 0065(1),

0059, and DuckDuckGo images and confirmed to Preston that she would prosecute Lawshe for possession of those images. [Doc. 82-8 at ¶ 11]. The decision to arrest Lawshe passed also through a SJCSO command staff. [Doc. 82-3 at 192:2-5; 198:1-199:21; Doc. 82-5 at 30:8-31:6, 32:16-33:3, 33:23-34:5, 34:12-17].

Tolbert called Lawshe and asked him to come to the St. Johns County Sheriff's Office. [Doc. 82-5 at 28:23-25, 29:1-29:10, Doc. 82-9 at 23:16-24:1, 24:12-17]. Greene and Preston asked Lawshe about his cell phone. [Doc. 82-9 at 28:10-22]. Lawshe said he had forgotten it at his home. [Doc. 82-9 at 28:6-7]. Preston then sought and received a residential search warrant to enter Lawshe's residence and seize the target phone. [Doc. 82-3 at 251:6-12, Doc. 82-9 at 28:23-29:10]. Preston then arrested Lawshe. [Doc. 82-9 at 31:19-2, Doc. 82-3 at 6:21-7:1].

On May 5, 2023, Payne filed an Information charging Lawshe with three counts of possession of sexual performance by a child for the 0065(1), 0059, and DuckDuckGo images. [Doc. 82-8 at ¶ 12-13, Doc. 67-15]. The documents returned by Synchronoss pursuant to the search warrant did not include the f6a487 image, and the image was not located on his phone. [Doc. 82-4 at 137:25-138:4]. Accordingly, Lawshe was not criminally charged with possession of the f6a487 image. [Doc. 67-15; Doc. 82-3 at 252:1-13].

Following Lawshe's arrest, his criminal defense team contacted Jeffrey Douglas who purports to be the custodian of records for the website met-art.com.

[Doc. 67-8 at p. 7]. Douglas provided Lawshe's criminal defense team redacted photographs of individuals he identified as "Kasey Lane" and "Milena D." holding foreign passports. [Id. at p. 6]. The names (and other information) on the passports are redacted, and neither of these photographs identify the individuals by name. [Id.].

Three of the images at issue in this litigation (f6a487, 0059, and 0065(1)) contain a tiny "met-art.com" watermark. Throughout this litigation, Lawshe has referred to the individual in these images as "Milena D." [Doc. 67-8 at p. 6].

During the subject criminal prosecution, Douglas provided Plaintiff's criminal defense attorney with an affidavit Douglas executed in 2015 wherein he averred "to the best of his knowledge and belief" "Milena D." was born in June 1991, and "[t]he earliest photography of her was recorded in February 2010" when "[s]he was eighteen years (and seven months) old…" [Doc. 67-8 at p. 7]. Douglas did not provide Lawshe's criminal defense attorney with any concrete or meaningful information to establish: (1) her real name; (2) her date of birth; or, importantly (3) the date(s) on which the 0059 or 0065(1) (or, for that matter, f6a487) images were captured.

Douglas noted in his affidavit that "she has been the subject of many inquiries" and the subject of "cases…in England, Iowa, Holland, and France." [Id.

at p. 6].[3] In an email to Lawshe's criminal defense attorneys in 2023, Douglas stated he had to inquire as to "when [the] 'Top Model'[4] film shoot occurred…" [Id.]. This was despite Douglas purportedly serving as the records custodian for met-art.com. The record in this case remains silent as to when the "film shoot" occurred, or which pictures at issue in this litigation, if any, were taken as part of the "Top Model" "shoot."

Lawshe was also criminally charged based on the DuckDuckGo image. [Doc. 67-15]. Lawshe has referred to the individual in this image as "Kacey Lane." [Doc. 67-8 at p. 6]. There is no record evidence connecting the DuckDuckGo image to met-art.com. The record contains no admissible evidence to establish: (1) her real name; (2) her date of birth; or (3) the date on which the DuckDuckGo image was captured – or even that the individual in the DuckDuckGo image is, in fact, "Kacey Lane."[5]

To be sure, as it relates the age of the individual in the DuckDuckGo image, the record contains only Douglas' thin promise that "[t]he earliest images of her"

---

[3] The f6a487 image had been viewed by NCMEC staff prior to January 25, 2023. [Doc. 82-2 at 17:3-6, 110:13-111:2]. Prior to January 25, 2023, this image was the subject of more than 200 CyberTipline reports. [Id. at 15:12-16]. As of 2025, NCMEC <u>still</u> classified the image as "CP, unconfirmed." [Id. at 111:3-14].

[4] Lawshe's criminal attorney had requested information regarding "Milena D in 'Top Star'…" [Doc. 67-8 at p. 16].

[5] The image itself suggests her name is "Sanija." [Doc. 72-4]. The image also contains a QR code, although the record is silent as to where that QR code directs. Importantly, the web address "met-art.com" does not appear on the image.

(whatever those images may be) were taken when she was 18 years, 4 months, and 12 days old. [Doc. 67-8 at p. 15]. Douglas does not aver that the DuckDuckGo image was ever published on met-art.com, that he is the records custodian for any website that might have published the DuckDuckGo image, or that he ever reviewed the subject image. In fact, Douglas had to request the ID information for "Kacey Lane" from some unidentified source. [ECF No. 67-8 at p. 17].

Douglas did not assert that he personally knows the individuals in the images or when the images were captured. By all accounts, Douglas could only verify that these individuals with passports achieved the age of 18 at some point in time. But without evidence of the dates of when the images were captured, pictures of individuals holding passports are entirely useless to determine their age at the time of production.[6] Nonetheless, following receipt of the information provided by Douglas, the State Attorney's Office dropped the criminal charges against Lawshe. [Doc. 82-8 at ¶ 14, Doc. 67-16 at p. 5].

## III.    <u>Standard of Review</u>

*De novo*. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

---

[6]    Lawshe's criminal defense attorney acknowledged the import of dates of photography. As part of a discussion regarding "the possibility of a pretrial resolution," Lawshe's criminal defense attorney told the assistant state attorney that his investigators "believe they've been able to confirm the date of the photo shoot…" [ECF No. 96-2, p. 2].

## SUMMARY OF ARGUMENT

Lawshe is absolutely certain that the images at issue depict adult women. Everyone else who played a role in the underlying criminal prosecution is less sure, while most are certain that the images depict children. There is no record evidence to conclusively establish the chronological age of the individuals in these images at the time they were taken.

Below and on appeal, Lawshe attempts to manufacture factual disputes that are non-existent, immaterial, or both.

Applying the actual standards that govern law enforcement searches and arrests under the Fourth Amendment, Preston had probable cause to seek a search warrant, and probable cause to arrest Lawshe. At the very least, Preston had arguable probable cause, which insulates her from Lawshe's claims.

# ARGUMENT

## I.     Lawshe's Unreasonable Search Claim against Preston Fails (Count I)

### A. Preston Had Probable Cause and Arguable Probable Cause to Seek the Subject Search Warrants

Preston had probable cause to seek the subject search warrants. The District Court correctly held that Preston enjoys qualified immunity from Lawshe's unreasonable search claim. [Doc. 103 at p. 18 ("It is likely that there was no constitutional violation at all. But there was clearly qualified immunity because there was at least arguable probable cause to seek a search warrant on these facts")]. This ruling should be upheld here.

Probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish a probability or substantial chance of criminal activity. *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (*quoting District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). Probable cause "is not a high bar" and does not require an actual showing of criminal activity. *Wesby*, 583 U.S. at 57. It "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the

presence of *some conflicting evidence or a possible defense* will not vitiate a finding of probable cause." *Id.* (emphasis added).

Here, Preston has asserted the defense of qualified immunity. Accordingly, the court reviews for arguable probable cause, which asks whether a reasonable officer in the same circumstances and possessing the same knowledge as Preston could have believed that probable cause existed. *Hooks v. Brewer*, 818 Fed. Appx. 923, 929–30 (11th Cir. 2020) (*citing Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004); *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010)). Misstatements and omissions in affidavits are not entitled to qualified immunity only when the affidavit, as considered without the offending statements, lacks even arguable probable cause. *Hooks,* 818 Fed. Appx. at 929 (*citing Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997)).

Lawshe attempts to manufacture "misstatements" and "omissions" in the subject search warrant affidavit that are immaterial or simply don't exist. Even if there was a colorable argument that something material in the affidavit was false or omitted, if the allegedly false information was removed and the alleged omitted language replaced, the affidavit would still be supported by, at least, arguable probable cause.

### 1. Preston Could Rely on Greene's Statements about met-art.com

Lawshe overstates the import of the district court's finding that Preston's

statements about met-art.com "would likely constitute a reckless disregard for the truth." Appellant's Brief at p. 31 (citing ECF No. 103 at p. 16). As discussed above, Preston recalled that Greene told her he had encountered met-art.com in other CSAM investigations. And while Greene does not specifically recall talking with Preston about that, Tolbert – Preston's Sergeant – *also* remembers Greene telling *him* that met-art.com had previously displayed images of underage females. The fact that Preston learned that information from her fellow officers has no bearing on the Court's analysis regarding probable cause. "It is well established that '[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.'" *Smith v. City of Fairburn, Georgia*, 679 Fed. Appx. 916, 922 (11th Cir. 2017) (*quoting United States v. Ventresca*, 380 U.S. 102, 111 (1965)). Preston did not have any reason to question the reliability of Greene's statements. It certainly was not "reckless" for her to do so.

Nonetheless, the district court construed disputed facts in Lawshe's favor and found that because it was "unclear" whether Greene actually told Preston of his encounter with met-art.com, the statement would not be considered as supporting probable cause. Lawshe does not challenge that finding. Appellant's Brief at p. 31. Preston would argue that this was not genuine disputed fact, as Greene remembers learning the underlying information, and two witnesses recall him providing the

information. Of course, probable cause (and certainly arguable probable cause) existed even without the challenged statement.

## 2. Dully's Reports were Reliable

Lawshe argues that the district court erred in considering Dully's report in its arguable probable cause analysis. Appellant's Brief at p. 32. Lawshe asserts that Preston had *actual* knowledge that Dully's opinions regarding the age of the depicted individuals were not reliable forensic evidence. In support, Lawshe misstates Dully's testimony in this case.

Dully testified that she told Preston she could not provide "reliable information" or "scientifically reliable opinions" regarding the "*actual* age" of the individuals in the images. [ECF No. 67-10 at 47:12-17 ("Q. So when Detective Preston came to you with these images and she left, you would have told her that you cannot give her any reliable information about the *actual* age of this individual depicted in this image? A. Yes."), ECF No. 67-11 at 12:22-13:1 ("Q. All right. And when you met with her, you explained to her that you could not offer her scientific reliable opinions regarding the *actual* age of the models depicted in these images, correct? A. Yes.") (emphasis added)]. This is a non-issue. Of course Dully could not provide the *actual chronological* age of these individuals based on nothing more than viewing these images – nobody could. Even Dully's reports provide *ranges* of *apparent* ages. [ECF No. 67-9 at p. 1 ("This female child appears younger than 18

16

years of age."), p. 2 ("This female child appears younger than 18 years of age. … she is … again ≤ 12-15 years of age"), p. 3 ("This image shows a female child… This developmental appearance is also ≤ 9-13.5 years of age.")].

Dully knew that law enforcement agencies consult with her on suspected CSAM cases to assist with determining the age of an individual in an image. [ECF No. 67-11, 78:24-79:20, 80:7-81:8]. Dully also understood that law enforcement uses her opinions, at least in part, in their decision-making process, including whether to seek a search warrant. [Id., 82:11-83:14]. When obtaining search warrants, the criminal justice system (detective, assistant state attorneys, judges) is dealing with probabilities and chances not certainties that must be proven. *Wesby*, 138 S. Ct. at 586. It was not unreasonable for Preston to rely on Dully's reports and include them, verbatim, in her search warrant affidavits.

### 3. The CyberTips were not "Unreliable"

Lawshe argues that because NCMEC was unable to "confirm" the actual age of the individual in the image, Preston should have questioned the CyberTip's "credibility." Appellant's Brief at p. 33. Lawshe also argues that because the electronic service provider who reported the image to NCMEC had labeled the content as depicting a prepubescent minor and the individual in the image was not prepubescent, Preston should have known the veracity of the CyberTip was questionable. Appellant's Brief at p. 34. This argument misapprehends the process

by which these images are reported by electronic service providers to NCMEC, and the process by which NCMEC provides CyberTips to law enforcement. But it doesn't matter. That process is just about how the tip gets to law enforcement. Once Tolbert reviewed and assigned the subject CyberTip to Preston, Preston's responsibility was to move forward with the investigation as appropriate – not to second guess the process by which Verizon or Synchronoss Technologies or NCMEC reviewed or approved the image at each step.

In any event, Preston didn't rely solely on Verizon or Synchronoss or NCMEC's characterization of this image. To the contrary, Preston took independent investigatory steps to confirm that it was probable that the individuals in these images were minors. It seems unlikely that investigators could ever *confirm* the ages at the time of photography of unknown individuals in undated photographs. This is all the more true when these individuals live and are photographed in foreign countries. But NCMEC still forwards "unconfirmed" child pornography to investigators, arrests are still made, the state still prosecutes, and juries still convict defendants of possession of CSAM even when the *actual* ages of individuals cannot be confirmed. The specific age of the individual in the image is not a certainty that must be proven prior to obtaining a search warrant. Here, Preston only needs to establish arguable probable cause and not proof beyond a reasonable doubt. She met that burden.

In addition to those addressed above, elsewhere in his Brief Lawshe argues that Preston's search warrant affidavit contained other "material false and/or misleading statements [and] omitted material exculpatory evidence." Appellant's Brief at pp. 7-8.

First, Lawshe argues that Preston "did not attach or include the subject image" with the affidavit. Appellant's Brief at p. 7. The district court correctly found that "the omission of the CyberTip image was not intentional or reckless because Preston provided a description of the image." [ECF No. 103, p. 16, *citing United States v. Sparks*, 806 F.3d 1323, 1337-38 (11th Cir. 2015) ("An issuing judge need not personally view photographs or images which are alleged to be contraband if a reasonably specific affidavit describing the contents can provide an adequate basis to establish probable cause."), *overruled on other grounds by, United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020) (en banc)]. Plaintiff has not identified any caselaw to the contrary that would have informed Preston that she must include a copy of the actual image.[7]

Next, Lawshe argues that Preston improperly omitted from the affidavit that

---

[7] The district court judge did review the images for which Lawshe was criminally charged – two of which that appear to depict the same individual as in the CyberTip image and, according to Lawshe, were taken as part of "the same photoshoot" – and averred that "the individuals depicted … would appear childlike." [ECF No. 103, p. 22 n 26]. Accordingly, Lawshe cannot establish that not attaching or including the subject image somehow hoodwinked the state circuit court judge who signed the search warrant.

there was a disagreement among detectives regarding the age of individual in the image. Appellant's Brief at p. 7. The district court correctly rejected this argument, finding "[T]he omission of the lack of consensus was not intentional nor reckless. The court struggles to see how failure to report a disagreement between officers could be an intentional or reckless omission where probable cause requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." [ECF No. 103 at p. 17, *citing Florida v. Harris*, 568 U.S. 237, 244 (2013) (citation modified) (citation omitted)]. Plaintiff has not identified any caselaw that would have put Preston on notice that she must achieve investigator unanimity before seeking a search warrant, or, lacking unanimity, she must provide the reviewing judge with a tally of where various detectives might fall on an issue – especially after receiving an opinion from a pediatrician and the approval of the assistant state attorney.

The district court correctly held that "[i]t is likely that there was no constitutional violation at all. But there was clearly qualified immunity because there was at least arguable probable cause to seek a search warrant on these facts." [ECF No. 103, p. 18].[8] This Court should affirm summary judgment in favor of Preston on

---

[8] Below and on appeal, Lawshe focuses his unreasonable search claim on the February search warrant. The district court found that the evidence offered in support of the two warrants is materially similar, and held that the court's reasoning extends to arguments regarding both search warrants. [ECF No. 103 at p. 13 n 17].

this claim.

**II.  Lawshe's False Arrest Claim against Preston Fails (Count II)**

Lawshe takes umbrage with the district court's choice of words when it stated "[w]hile Preston did not attempt to contact met-art.com's custodian of records, Preston <u>did</u> take extra investigatory steps to confirm that the individuals in the Images were minors." Appellant's Brief at pp. 34-35. In ruling that "Preston likely had probable cause to arrest Lawshe…" the district court noted that Preston "personally reviewed the Images, received the opinion of a statutorily authorized medical professional as to the apparent age of the individuals involved in those Images, and received confirmation from her superiors as well as an assistant state attorney." [ECF No. 103, p. 22].

Lawshe's contention is that nothing Preston did *confirmed* that the individuals were minors. [Id., p. 35]. Respectfully, Lawshe makes too much out of this single sentence in the district court's order. Fairly read, the district court's statement stands for the notion that Preston took the identified steps which likely provided probable cause, and based on existing caselaw, certainly provided arguable probable cause. Focusing on the word "confirm" misses the forest for the trees.

Also, Lawshe acknowledges that "[a]pproval of probable cause by supervisors and prosecutors can weigh in favor of arguable probable cause." Appellant's Brief at p. 45. However, Lawshe argues that Tolbert (Preston's sergeant) and Payne

(assistant state attorney) relied on false and misleading information in Preston's affidavit before approving Lawshe's arrest. Id. Lawshe does not identify any record evidence to support this claim, and Tolbert and Payne did not testify that they were misled. Moreover, as discussed above, there was no false or misleading information in the affidavits. Finally, the record reflects that Tolbert and Payne supported Lawshe's arrest after considering Dully's opinions and reviewing the subject images. Lawshe cannot manufacture a dispute where none exists.

In a footnote, Lawshe avers that "[i]n an email directed to Lawshe's criminal attorney written after the inspection of the charged images, Payne confesses that she 'sees what you mean' about the appearance of the models." Appellant's Brief at p. 36 n 12. Lawshe cites ECF No. 67-16 as the source of this quote that he attributes to Payne. However, that quote does not appear in that document. The closest the undersigned could find in the record was from a December 13, 2023 email from Payne to Lawshe's criminal defense attorney where Payne states:

> Hey so Ben and I have been talking about the case and I do see where you are coming from I just feel like there is other information, like the various phone scrubbers, contained on the download that give me pause. That being said what do you think we could do to come to a resolution on this case? I would love to have a phone conference where we chat about potential resolutions. A straight up dropping of all charges is unlikely, but maybe we can come to terms on something.

[ECF No. 96-2 at p. 3].

There is nothing in that email to support Lawshe's claim that Payne told

Lawshe's criminal attorney that she reviewed the images and "sees what [he] means" about the appearance of the individuals. Again, Lawshe cannot create a disputed issue of fact where none exists.

### A. Preston Conducted a Reasonable Investigation

The district court rejected Lawshe's arguments against qualified immunity for Preston, holding that "even if the facts are construed in Lawshe's favor, no reasonable juror could conclude that Preston (1) harbored significant doubts about Lawshe's culpability; (2) refused to consider information offered to her; or (3) was willfully blind to known facts." [ECF No. 103 at 21]. Lawshe asserts there is both direct and circumstantial evidence which establishes a genuine dispute as to all three of these factual propositions. None of Lawshe's arguments deprive Preston of qualified immunity.

### 1. Preston did not have "Serious Doubts" of Culpability

Lawshe never raised this argument below, and he cannot raise it for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

Lawshe's argument fails, nonetheless. Lawshe identifies several issues with the underlying investigation that he claims evince Preston had "serious doubts"

regarding Lawshe's culpability.[9] In support, Lawshe notes that Preston had never sought Dully's opinions in any other case. Appellant's Brief at p. 38. Of course, as Lawshe notes elsewhere, Preston had only been a detective for a short time at the time of Lawshe's arrest. Id. at p. 3. Additionally, Preston would not consult with Dully when the individual "is obviously a child…" [ECF No. 66-7 at 91:24-92:1]. It is a stretch to now claim not consulting Dully in other cases is evidence of "significant doubt."

Lawshe also challenges the lack of evidence in the criminal investigation "to show that Lawshe believed models were minors, an element of the crime." Appellant's Brief at p. 38. Lawshe cites no caselaw for his argument that a detective must prove culpable state of mind before making an arrest for a possession-based crime – likely because there is none.

### 2. Preston did not Refuse to Consider Information / was not Willfully Blind to Known Facts

This portion of Lawshe's argument is based *entirely* on the demonstrably false assertion that "age verification documents" exist. They do not. Through Lawshe's criminal prosecution and the ensuing civil litigation, Lawshe *still* has not provided information that would verify the ages of the individuals in these images at the time

---

[9] Lawshe ignores Preston's deposition testimony wherein she states she *still* thinks the individuals in these images were minors when the photographs were taken. [ECF No. 66-7 at 8:8-9:6].

the images were captured.

Lawshe uses the word "verified" throughout his brief. Appellant's Brief at pp. i, 4, 10, 18, 36, 39, 40. Lawshe even calls certain documents "Age Verification Documents". [ECF No. 67-8].

*Nothing* has been "verified."

Even when pressed on the issue during the litigation below, Douglas – the purported records custodian for met-art.com – was unable to provide verification of when the two images that appear on met-art.com were captured. Importantly, Douglas provided *no* sworn or otherwise admissible evidence regarding the individual in the DuckDuckGo image. In the criminal case, the only thing Douglas provided was an email containing a photo of somebody who he claims goes by "Kacey Lane" (although that name does not appear on the photo) holding a blurred, redacted passport, and an *unsworn* assertion that she was born on April 28, 2001. [ECF No. 67-8 at pp. 6, 9].

Even assuming that "Kacey Lane" is the person in the DuckDuckGo image, Douglas has no possible way to credibly state with absolute certainty that "[t]he earliest images of her were recorded on October 10-13, 2019." [ECF No. 67-8 at p. 6]. Moreover, just like with the other individual, Douglas' unsworn email does not provide the date the image was captured. To call any of this "age verification" is, at best, imprecise, incomplete, and inartful.

## III. Lawshe Has Abandoned his First Amendment Claim against Preston (Count III)

Lawshe does not address the district court's ruling on his First Amendment claim against Preston. The claim has been abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

## IV. Preston Enjoys Qualified Immunity from Lawshe's Claims

The district court did not err in finding that there was likely no constitutional violation at all, but, in any event, Preston enjoys qualified immunity from Lawshe's claims.

The qualified immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted). Qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

26

To invoke qualified immunity, a public official must demonstrate that he was acting within the scope of his or her discretionary authority. *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013). The term discretionary authority "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted).

It has not been disputed that Preston was acting within the scope of her discretionary authority, as all of the challenged actions occurred while she was on duty as a law enforcement officer conducting investigative and arrest functions.

Because Preston was acting within the scope of her discretionary authority, the burden shifts to Lawshe to demonstrate that qualified immunity is inappropriate. To do that, Lawshe must show that, when viewed in the light most favorable to him, the facts demonstrate that Preston violated his constitutional right and that that right was "clearly established...in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officer's actions. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. 223. The Court may decide these issues in either order, but to survive a qualified immunity defense, a plaintiff must satisfy both showings. *Maddox*, 727 F.3d at 1120 (citation omitted).

A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Gilmore v. Ga. Dep't of Corr.*, No. 23-10343, --- F.4th ---, 2025 WL 1911728, at *8 (11th Cir. July 11, 2025) (en banc) (*quoting T.R. by and through Brock v. Lamar Cnty. Bd. Of Educ.*, 25 F.4th 877, 883 (11th Cir. 2022)).

As referenced by the district court below, Lawshe likely cannot establish that Preston violated his constitutional rights in the first instance. Accordingly, Detective Preston enjoys qualified immunity under the first prong.

Additionally, Lawshe cannot establish that the constitutional right allegedly violated was clearly established in light of the specific context of the case. In the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law. *Vinyard v. Wilson*, 311 F.3d 1340, 1352 (11th Cir. 2002). Such precedent must be found in decisions from the Supreme Court, the controlling circuit court of appeals, or the pertinent state supreme court. *Id.* at 1351. The Supreme Court has repeatedly warned that clearly established law must be defined with specificity. *See,*

28

*e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019).

No party has been able to locate any materially similar case from the Supreme Court of the United States, the Eleventh Circuit, or the Supreme Court of Florida. There is a similar case from the Fourth Circuit Court of Appeals that is instructive on this issue. In *United States v. Gatherum*, 338 Fed. Appx. 271, 272 (4th Cir. 2009) (unpublished), a law enforcement officer sought a search warrant for Gatherum's computer after observing images that the officer believed were child pornography. *Gatherum*, 338 Fed. Appx. at 272-73.

> When [the officer] described the pictures at issue to Gatherum, Gatherum explained that he had gotten the pictures from a website called "Mike18.com" and that the website had a disclaimer stating that all of the models were at least 18 years old. (Each of the images had a Mike18.com logo in the corner, although [the officer] was not aware of that fact at the time). [The officer] refused Gatherum's offer to log-on to Mike18.com to show the troopers the age certification for the model the troopers believed to be underage. At the [officer's] request, Gatherum accompanied them to the state police barracks for further questioning. Gatherum continued to maintain that the images all came from the Mike18.com website, and Gatherum told the troopers that the website included a picture of the apparently underage model holding a passport that showed his birth date.

*Id.* at 273.

The officer submitted an affidavit for search warrant that "did not include copies of the images themselves or otherwise describe the nature of the sexually explicit conduct pictured, nor did the affidavit recount Gatherum's claim about the

age disclaimer on Mike18.com." *Id*. A state-court judge concluded that the affidavit established probable cause. *Id*. Gatherum challenged the search warrant, raising many of the same arguments Lawshe raises here.

The Fourth Circuit "reject[ed] any suggestion that a search-warrant affidavit must include copies of images giving rise to the request for a warrant." *Id*. at 274. This is also the law in the Eleventh Circuit. *See, e.g., United States v. Smith*, 459 F.3d 1276, 1291 (11th Cir. 2006) ("We are satisfied, moreover, that the magistrate judge relied upon the testimony of a sex crimes and child abuse expert in determining whether it could have been obvious to Officer Mayo that the photographs were of young girls. While it may have been prudent for the magistrate judge to view the photos independently, we cannot say that, as a matter of law, the court must view the evidence to determine whether probable cause existed."); *see also New York v. P.J. Video, Inc.*, 475 U.S. 868, 874 n. 5 (1986) ("we have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the contrary, we think that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue." (citation omitted)).

The Fourth Circuit in *Gatherum* also found "it was entirely reasonable for the magistrate to accept the officers' estimation of the child's age when determining whether probable cause existed. While some 16– or 17–year–old models might be difficult to distinguish from 18–year–olds, the physical differences between a 12–year–old model and an 18–year–old model generally would be significant and readily apparent. That both troopers believed the model at issue might be so young provided the magistrate with a reasonable basis for concluding that the images at issue involved a minor." *Id*. at 275 (*citing United States v. Battershell*, 457 F.3d 1048, 1053–54 (9th Cir. 2006) (finding affidavit sufficient in child pornography case where officer described images as depicting "young female[s] (8–10 YOA)" and noting that "we have accepted, for purposes of an affidavit in support of a search warrant, the conclusory age estimates made by civilians and other untrained lay witnesses without demanding a detailed explanation of how the witnesses reached that conclusion")).

Finally, the Fourth Circuit in *Gatherum* rejected the argument that the search warrant must be voided under *Franks v. Delaware* "because [the officer] intentionally omitted from his affidavit any mention of the Mike18.com website or the website's disclaimer asserting that all of its models, including the one [the officer] believed to be a minor, were at least 18 years old." *Id*. at 277.

> Beyond the mere fact of omission, the record is devoid of evidence
> suggesting that [the officer] intentionally or recklessly failed to disclose

31

to the issuing magistrate the Mike18.com information. Moreover, even if information about the disclaimers on the website and Gatherum's belief about the age of the models had been included in the affidavit, their presence would not have defeated probable cause. As discussed above, [the officers] both looked at the images and concluded that one of the models was between 12 and 14 years old. That was enough to establish probable cause that the model was underage, even in the face of Gatherum's (and Mike18.com's) insistence to the contrary. The district court therefore properly denied Gatherum relief on his *Franks v. Delaware* claim. *See United States v. Shorter*, 328 F.3d 167, 171, n. 2 (4th Cir.2003) (explaining that "the fact of an omission, standing alone, is not sufficient to demonstrate intent or reckless disregard" in cases where the omitted material is not "clearly critical" to the probable-cause determination (internal quotation marks omitted)).

*Id*. at 277-78

Admittedly, *U.S. v. Gatherum* is an unpublished opinion from another Circuit, and therefore is neither binding nor persuasive to this Court. However, the facts and legal arguments in *Gatherum* are nearly indistinguishable from the case at bar. The existence of *Gatherum* and the apparent non-existence of caselaw from the Supreme Court of the United States, the Eleventh Circuit, or the Supreme Court of Florida to the contrary strongly suggests that Preston could not possibly have been on notice that her actions were potentially constitutionally problematic.

## **CONCLUSION**

Lawshe's claims against Preston rest on disagreement with investigative judgment, not constitutional misconduct. The record shows no fabrication and no material omission. Preston had at least arguable probable cause. Lawshe has not identified any clearly established law prohibiting Preston's actions. For these

reasons, Appellee Mikayla Preston respectfully requests that this Court affirm the district court's order and grant such further relief as this Court deems just and proper.

Respectfully submitted this 27th day of April 2026.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**
Florida Bar No. 0827711
Email: mcarson@spellman.law
**MICHAEL P. SPELLMAN**
Florida Bar No. 0937975
Email: michael@spellman.law
**CHRISTEN A. PETRUZZELLI**
Florida Bar No. 1039528
Email: cpetruzzelli@spellman.law

**SPELLMAN LAW, P.A.**
905 East Park Avenue
Tallahassee, Florida 32301
T: (850) 601-1983

***Counsel for Appellee Preston***

# CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B). This brief contains 7,561 words (within the limit of 13,000) including the parts of the brief exempted by Fed. R. App. P. 32(f).

I FURTHER CERTIFY that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April 2026, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will send an electronic copy to all counsel of record, including:

**Michael K. Roberts, Esquire**
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
*Counsel for Appellant*


**Jami M. Kimbrell, Esquire**
2898-6 Mahan Drive
Tallahassee, FL 32308
(850) 877-7776
jami@kimbrellfirm.com and jami@jsh-pa.com
*Counsel for Appellee Dully*

> */s/ Matthew J. Carson*
> **MATTHEW J. CARSON**