**No. 26-10155-D**
**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

WILLIAM LEE LAWSHE,
*Plaintiff-Appellant,*

v.

MIKAYLA PRESTON,
and
KATHLEEN DULLY,
*Defendants-Appellees.*

Appeal from the United States District Court for
the Middle District of Florida, Jacksonville
Division

3:24-cv-00044-MMH-MCR

**APPELLANTS' REPLY BRIEF**

**LAW OFFICES OF NOONEY,**
**ROBERTS, HEWETT, AND**
**NOWICKI**

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
*Counsel for Appellant*

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>
<u>**AND CORPORATE DISCLOSURE STATEMENT**</u>

In compliance with 11th Cir. R. 26.1-1, Appellant William Lawshe certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1.  William Lawshe, Plaintiff/Appellant

2.  Kathleen Dully, Defendant/Appellee

3.  Mikayla Preston, Co-Defendant/Appellee

4.  Jane A. Restani, Judge, United States Court of International Trade

5.  Marcia Morales Howard, United States District Judge

6.  Monte C. Richardson, United States Magistrate Judge

7.  Michael K. Roberts, Attorney for Plaintiff/Appellant

8.  Jami M. Kimbrell, Attorney for Defendant/Appellee

9.  John Wilson, Attorney for Defendant/Appellee

10. Howell, Buchan & Strong, Attorneys for Defendant/Appellee

11. Matthew J. Carson, Attorney for Co-Defendant/Appellee

_/s/ Michael K Roberts_

Attorney

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**…………………...………C-1

**TABLE OF AUTHORITY**………………………………………...…………i

**SUMMARY OF ARGUMENT** …………………………….………..1

**ARGUMENT** ………………………………………….…………...2

      I.     **DULLY FABRICATED INCULPATORY EVIDENCE**…………..2

      II.   **PRESTON VIOLATED CLEARLY ESTABLISHED RIGHTS**..12

**CONCLUSION** ………………………………………………………26

**CERTIFICATE OF COMPLIANCE** …………………………………..27

# **TABLE OF AUTHORITY**

*Aguirre-Jarquin v. Seminole Cnty.*, 158 F.4th 1276, 1299 (11th Cir. 2025)……………………………………………………………...**5,6**

*Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993) ….…..**7,8**

*Eiras v. State Dep't of Bus. & Prof'l Regualtion Div. Of Alchoholic Bevs. & Tobacco,* 239 F. Supp. 3d 1331 (M.D. Fla. 2017)………………..…….…..…**11**

*Elias v. State*, 308 So. 3d 1127,1131 (Fla 5TH DCA 2020)………..……….**4**

*Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021)….……**13,25**

*Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986)… **21**

*Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004)……..…… **21**

*Paez v. Mulvey*, 915 F 3d 1276, 1287 (11th Cir. 2019)  …………………..**14, 25**

*Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)…………….……… **21**

*Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.*, 684 F.2d 1383, 1386 (11th Cir. 1982)……………………………………….**11**

*Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002)…………………**11**

*Troxler v. Owens-Illinois, Inc*., 717 F.2d 530, 533 (11th Cir. 1983) ………...**11**

*United States v. Sparks*, 806 F.3d 1056 (11th Cit. 2020) …………………....**19**

*United States v. Gatherum*, 338 Fed. Appx. 271 (4th Cir. 2009)…………... **24,25**

*Zargari v. United States*, 658 F. App'x 501, 507 (11th Cir. 2016)…………..**22**

**Statutes Cited:**

Fla. Stat. Section 768.28(9)(a)…………………………………………… **10, 11**

34 U.S.C. § 20342…………………………………………………….. **10, 11**

18 U.S.C. §§ 2257, 2257A…………………………………………….. **22**

**Other Cited Authority**:

U.S. Department of Justice Website:

https://www.justice.gov/criminal/criminal-ceos/18-usc-2257-2257a-certifications......................................................................................**22**

## SUMMARY OF ARGUMENT

There is record evidence that Kathleen Dully fabricated inculpatory evidence, in the form of three forensic medical reports, which she knew was false and unsupported by medical science. In authoring these forensic reports, Dully exhibited a willful and reckless disregard for the truth. Such conduct violates the Fourteenth Amendment's prohibition against the use of fabricated evidence. It has long been the law, and any reasonable state forensic expert would know, that fabrication of inculpatory expert opinions violates the constitutional rights of the accused. Therefore, Dully has violated Due Process and her conduct is not protected by qualified immunity.

Likewise, Det. Preston is not protected by qualified immunity. It is clearly established that law enforcement officers cannot use material evidence which they know is false or unreliable to establish probable cause for a search warrant or effectuate an arrest. The evidence establishes that Det. Preston used materially false, fabricated and otherwise unreliable evidence to establish probable cause. Moreover, at the time she submitted her application for a search warrant, she knew that the information contained in the application was false and misleading. Qualified immunity cannot protect such behavior.

The district court's order should be reversed.

**ARGUMENT**

I.     **DULLY FABRICATED INCULPATORY EVIDENCE**

**A. Dully's Opinions were Knowingly False and Unreliable**

In answering Lawshe's Initial Brief, Dully concedes "the use of SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image." *Dully Answer Brief* at 3. Dully's admission that she communicated the unreliability to Preston at the time she produced the reports, is conclusive proof that Dully *knew* the opinions were unreliable at the time she produced the report. *Dully Answer Brief* at 16.

Despite this clear admission, Dully confesses that she "used SMR to evaluate the appearance of the individual in the image and provide an estimated age range." *Dully Answer* at 5. By definition, Dully offers an opinion on chronological age in her reports. She describes a "female child" "younger than 18 years of age." ECF 67-I at 1 (*Dully Reports*). The use of the word "appears" does not alter the fact that the opinion is an expression of chronological age.

In a somewhat confused response, Dully argues that she "did not attempt to state or estimate the exact chronological age of the individual." *Dully Answer Brief* at 11. But, in the same response, Dully states that she offered her medical opinion that "the individual 'appear[ed] to be younger than the age of 18' and could have been as young as 12." *Dully Answer Brief* at 5.  This is an estimate of

2

chronological age. Furthermore, her opinions are "exact" enough to establish the only relevant age distinction for the evaluation of criminal conduct: under the age of 18.

In her response to Lawshe's arguments, Dully attempts to perform a sort of forensic sleight of hand. In doing so, she invents the term "apparent age"[1] which is a sort of mashup between developmental appearance and chronological age.  Dully explains that she uses "the sexual maturity rating ("SMR") or Tanner scale to review pornographic images to estimate the sexual maturity of the appearance of the individuals who were depicted in them." *Dully Answer Brief* at 3.

Dully ignores the leap from "the appearance" of SMR to her offering an estimate of chronological age.  In essence Dully's position is this: There is *nothing about the appearance* of sexual maturity on the subject digital images that can be used to reliably estimate the age of the subject individuals but, *if the appearance of sexual maturity could* reliably estimate age, these individuals would appear less than 18.  But the assessment of SMR on a digital image *is not* a reliable method of estimating chronological age. Therefore, Dully's opinions about "apparent age" are probative of nothing. Dully admits as much when she acknowledges that the actual ages are, in fact, "indeterminate." *Dully Answer Brief* at 20.

---

[1] The term "apparent age" is not found in any of the reports written by Dully.  In fact, there is no record evidence that "apparent age" is even a term recognized by medical science.

**B. Intentionally False, Reckless Disregard for the Truth**

In any ethically objective universe, Dully's opinions are dishonest. They create a clear impression that the use of SMR applied by a medical expert has led to a reasonable conclusion that the models *were under the age of 18*. Not only is this not true, the opinion is inculpatory as a matter of law. *Elias v. State*, 308 So. 3d 1127,1131 (Fla 5TH DCA 2020).

What it so nefarious, is that when asked if she could understand how a reader might interpret her reports as reliable opinions that the models were actual minors: Dully responds that she "hopes so." "ECF 67-11 at 51: 17-22 (Dully June Depo.). The district court rightly recognizes that Lawshe places much emphasis on this testimony. This is because it is so extraordinary. Dully offers no explanation for this admission other than a further damaging admission that she knew the model was of an "indeterminate" age. It remains that a juror could very well accept this testimony as evidence of a desire to mislead and a reckless disregard for the truth of her opinions.[2]

Dully writes, "in order to establish that Dr. Dully submitted "knowingly false" or "intentionally fabricated" evidence, Lawshe must prove that Dr. Dully

---

[2] Lawshe has consistently alleged that a conspiracy existed between Dully and Preston for the purpose of manufacturing false, misleading, unsupported evidence in the form of fake or pseudo-scientific opinions." ECF 40, *Second Amended Complaint* at ¶85. Therefore, the fact that Dully told Preston the opinions were not reliable does not exonerate either Dully or Preston. Dully still wrote her reports without any warning to potential future readers.

*knew* the girls depicted in the images were over the age of 18." *Dully Answer Brief* at 28. This is incorrect.

First, this argument is predicated on the factual proposition that Dully offered an opinion that the models were, in fact, chronologically below the age of 18: the exact premise which she denies. This perfectly illustrates the shifting and contradictory nature of Dully's defense.

The actual question presented is whether Dully knew that she could not offer estimates of chronological (numerical) age simply from the appearance of SMR on a digital image. Dully may not have known that the models were adults, but she knew that she could not state with any degree of forensic reliability that they were minors. Therefore, affirmative opinions that the subject individuals *were* children who appeared younger than 18 are fairly characterized as willfully and recklessly false statements.

The holding of *Aguirre* is instructional on this point:

> The purposeful failure to properly verify the results of a positive comparison is not mere error or overconfidence in expressing a forensic conclusion; it is the absence of a step required to report incriminating forensic evidence. Any intentional transmittal to investigators of a positive identification without this step would thus be a fabrication of a forensic result, akin to reporting that a drug test confirms the identity of a substance even though the testing did not result in a confirmation. *Aguirre-Jarquin v. Seminole Cnty*., 158 F.4th 1276, 1299 (11th Cir. 2025)

This Court found that fabrication, for constitutional purposes, exists when the fingerprint examiner created "an ultimate forensic result incongruent with what she could actually determine from her examination of the murder weapon." *Id*. at1300.[3] This is exactly what Dully has done. She has fabricated an ultimate forensic result that is incongruent with what she could actually determine from her examination of the subject images.

### C. Dully's Opinions Lack Any Scientific Reliability

Dully, without any support in the record, suggests that Lawshe's issue with Dully's opinions is a lack of certainty: "When taken to its logical conclusion, Lawshe's position would result in the exclusion of expert opinions entirely from CSAM investigations if the expert cannot provide a one-hundred percent reliable biological age of the individuals depicted in photographs." *Dully Answer Brief* at 32. This is false.

---

[3] It should be noted that the Due Process analysis does not include an evaluation of arguable probable cause. The Court in Aguirre found that the arresting officer was protected by qualified immunity because arguable probable cause existed. *Aguirre-Jarquin v. Seminole Cnty*., 158 F.4th 1276, 1299 (11th Cir. 2025) However, Birks, the fingerprint examiner was not protected by this finding. Dully argues that the "images speak for themselves." Doc. 20-1, *Dully Answer Brief* at 24. The images are obviously questionable as to their age and legality. Dr. Dully provided an opinion that matched what she saw in front of her. Lawshe's argument that something malicious, evil, or reckless had to occur for him to be arrested is untenable and fails upon a cursory review of the images." Doc. 20-1 *Dully Answer Brief* at 31 However, the images themselves and people's subjective opinions about the perceived age of the models, does not affect the fabrication of forensic evidence claim. For arguments sake, there could be arguable probable cause and Dully could still be found liable for fabrication of evidence. *Aguirre-Jarquin v. Seminole Cnty*., 158 F.4th 1276, 1299 (11th Cir. 2025)

Experts are not required to offer opinions with absolute certainty. *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). However, they must offer opinions that are scientifically reliable, i.e. within a reasonable degree of scientific probability. *Id*. Dully has never testified that she offered opinions on age within a reasonable degree of medical probability or with recognized scientific reliability.

In fact, Dully has specifically denied that she was offering opinions on biological chronological age. She testifies that "it is not an opinion about chronological age, it is an opinion about the apparent appearance of the image and what its age may be. It's not the same thing." ECF67-10 at 32:11-13 (Dully April Deposition).

Even then, Dully denies offering opinions of "appearance" within a degree of medical probability. When asked what led her to the conclusion that sexual immaturity was the cause of lack of adequate or visible pubic hair, as opposed to grooming or digital alteration, Dully responds that "I am not saying how likely or unlikely it is, I'm only saying what the appearance is." ECF 67-10 at 78:25 - 80:15 (Dully April Depo.) She specifically denies that her opinions are offered with any degree of reliability as to chronological age. Id.

When experts offer a reliable opinion within a reasonable degree of scientific probability, they can be relied on by a finder of fact to make ultimate

determinations in a case. *Daubert v. Merrel Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993). Here, Dully denies that her opinion could form a reliable basis for a determination that the models were minors.  ECF 67-10 at 32: 9-19 (Dully April Depo)[4] In claiming that "apparent age" is different than "chronological age," Dully admits that "what I see on the image does not necessarily give an indication of the actual chronological age that may be discovered during investigations." ECF 67-10 at 35: 1-4 (Dully April Depo.)

For clarity, the issue is not whether SMR grades correlate with age ranges, in a clinical setting, they do. When evaluating actual patients, doctors use SMR to evaluate sexual development given the patient's chronological age. It is true that individuals who are truly SMR IV are *likely* to be under the age of 18, although some females are SMR IV their entire lives. *Dully Answer Brief* at 5.

However, as pointed out in the cited literature and by Dr. Krugman – the method of using SMR to correlate with age is *specifically unreliable* when evaluating digital images because it is difficult - if not impossible  - to accurately rate the sexual maturity of an individual from a photograph given modern grooming habits and digital altering. ECF 66-5 (Krugman Report); see also ECF 85-L at 52-53 (Krugman Deposition). This is the medical science that Dully freely

---

[4] In reviewing Appellant's Opening brief this testimony was incorrectly cited at page 30. It is in fact on page 32 of the April disposition of Dully.

admits. In other words, she does not deny that she has violated the medical standard of care. More importantly, she knew the standard when she violated it.

For example, as Krugman testifies, the lack of visible pubic hair in-and-of-itself does not support an assessment of SMR I. ECF 85-L at 53:14-19 (Krugman Depo.). But this is precisely what Dully is intentionally doing: Dully testifies that this opinion of "appearance" means that if a model does not appear to have pubic hair in a digital photograph, for whatever reason, then that model would be a SMR I or pre-pubescent:

> Q.· ·Well, I guess for whatever reason, right,
> I'm just asking, brunette, red head or whatever, if
> you look at an image and you do not see any pubic
> hair, that would result in a sexual maturity rating
> of one in terms of appearance?
>
> A.· ·Yes. ECF 67-10 at 72: 6-11 (Dully April Depo)

Dully goes on to admit that she does not consider the possibility of digital altering or grooming [ECF 67-10 at 72:12 – 73:4 (Dully April Depo)] and that such an appearance could equally be explained by both alternatives. ECF 67-10 at 76:23 - 78:1 (Dully April Depo). Dully admits that she has no ability to distinguish between these possibilities. Id.

**D. Dully Made False Statements Regarding Grooming**

Dully completely ignores Lawshe's argument that the record establishes a genuine dispute that Dully fabricated statements that the CyberTip model does not

appear to be shaved. To be clear, the issue is not only that Dully admits under oath that the model may have been groomed, Dully admits that she has no expertise in determining whether a model has been groomed from looking at a digital photograph.  ECF 67-10 at 72:16 – 73:12 (Dully April Depo). Offering seemingly forensic opinions without any expertise is tantamount to fabrication.

As Dully states quite clearly, although the lack of pubic hair or distribution of pubic hair in these images has the "appearance" of sexual immaturity, *it is also perfectly consistent with an adult who has practiced some form of grooming*. ECF 67-10 at 77:8 – 78:1; 72:16 – 73:12 (Dully April Depo) Simply ignoring alternative consistent explanations exhibits, by definition, a reckless disregard for the truth.

### E.  Chilling Effect

Dully argues that a ruling in favor of Lawshe would create a "chilling effect." *Dully Answer Brief* at 31. The evidence supports a jury finding that Dully knew that what she was offering was an incriminating opinion that was unreliable, false and misleading. Lawshe certainly hopes that the law dissuades experts from engaging in such conduct.

### F.  Waiver of Statutory Defense and Good Faith

Dully raises two statutory defenses: (1) Fla. Stat. Section 768.28(9)(a) and (2) 34 U.S.C. § 20342. Neither of these statutory defenses were raised or pled affirmatively by Dully in her responsive pleadings in this case. ECF 54. The first

time either statute was raised was after the closure of discovery during motions for summary judgement.

Statutory defenses must be raised as an affirmative defense and failure to raise the issue results in waiver of the statutory defense. *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 533 (11th Cir. 1983) (failure to raise workers compensation immunity as affirmative defense deemed a waiver.) *See Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.*, 684 F.2d 1383, 1386 (11th Cir. 1982); *see also Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (Qualified immunity is an affirmative defense that must be pled, or else it is deemed waived.)

As to the application of the statutory immunity found in Fla. Stat. Section 768.28(9)(a), this is a Florida statute which applies to Florida causes of action. It has no application to federal causes of action, such as the present case. *Eiras v. State Dep't of Bus. & Prof'l Regulation Div. Of Alcoholic Bevs. & Tobacco,* 239 F. Supp. 3d 1331 (M.D. Fla. 2017). However, even if the statute applies to the present action, there is ample evidence of bad faith and actual malice, as shown above.

As to 34 U.S.C. § 20342, even if the statutory defense had not been waived, the statute's plain language applies to reports of "child abuse," not criminal investigation of possession of images of child pornography. Although clearly

individuals can abuse and exploit children sexually – there was never an allegation that Mr. Lawshe had abused a child.

More importantly, no children were involved in this case. Dr. Dully admitted that there was no scientific basis for her to believe that the models were actually children and all of the evidence is that they were adults. She cannot now claim that she offered the opinion that they were *in fact* minors, solely for the purpose of invoking a statutory presumption. Therefore, there is no evidence which would bring this case within the scope of the statute.

Finally, even if the statute applied, as stated above, there is ample evidence of bad faith that would rebut the statutory presumption. Summary Judgement would still be inappropriate.

## II. PRESTON VIOLATED CLEARLY ESTABLISHED RIGHTS

Virtually all of the evidence establishes that the two individuals depicted in the subject images were of an indeterminate age and could be interpreted as appearing to be adults. The district court notes agreement on this point. NCMEC evaluated the CyberTip image as being of an indeterminate age. ECF 67-5 at 22: 18-24 (NCMEC Corp. Rep. Depo.) Multiple detectives interpreted the various images of the two models as potentially depicting an adult. ECF 67-6 at 96: 12-19, 101: 5-16, 172:20 – 173: 9, 169: 2-17, 181: 1-13 (Preston March Depo.) see also ECF 67-4 at 65: 7-13. (Greene Depo.).   Dully argues that the models in question

were of an indeterminate age. *Dully Answer Brief* at 20.   Even Det. Preston acknowledges that a reasonable person could interpret the images as depicting adults.  ECF 67-6 at 93: 6-23 (Preston March Depo.).  And yet, if one were to read the affidavits sworn to by Det. Preston – the only impression that could be reasonably drawn was that Lawshe possessed pornographic images of two children potentially less than 12 and 9 years of age.

The website where the original image came from, Metart.com, is a legal publisher of adult content. See *Affidavit of Jeffery Douglas*, ECF 67-8. The website is maintained in accordance with federal laws, overseen by an attorney and member of the California Bar. *Id*.  The website has never been accused of publishing child pornography (*Id*.) – and yet – if one reads Preston's probable cause affidavits, the only conclusion that one could draw would be that this website was a criminal enterprise with a reputation for publishing images of exploited children.

These misrepresentations were not the result of reasonable or good faith mistakes. Rather, they resulted from knowing fabrication and the use of evidence which Preston knew was unreliable. It has long been the law that law enforcement officers cannot offer willfully false, misleading and knowingly unreliable material information in an affidavit seeking a search warrant. *Goldring v. Henry*, 2021 U.S.

App. LEXIS 33621 (11th Cir. 2021); *Paez v. Mulvey*, 915 F 3d 1276, 1287 (11th Cir. 2019)

**A. History of Metart.com**

Preston argues that Lawshe overstates the importance of the evidence that Preston lied in her affidavit about the history of metart.com. *Preston Answer Brief* at 14. To the contrary, it cannot be overstated how troubling Preston's fabrication of this "history" is.

Prior to the initiation of this suit and dropping of the charges, Preston testified in a deposition (noticed in the underlying criminal case) that "I've seen different links on Google -- obviously can't believe everything you see on Google -- stating that underage females were used on the site." ECF 67-12 at 30:15-17 (Preston Nov. Depo.)

During her later deposition in this case, Preston was confronted with a printout of a google search with relevant search terms. ECF 67-6 at 43:21 – 47:19 (Preston March Depo.) The printout showed no relevant results. Id. Undersigned counsel offered her the use of his laptop to search for and produce these alleged sources. Id. Preston's attorney objected and refused to let her find the links which she had referred to. This exchange placed Preston on fair notice that Lawshe questioned the existence of any internet source supporting her statements.

To date, Preston has never produced the documents or links she claims her statements were based on. This failure creates an inference that the alleged criminal history of Metart.com was a fabrication.

Furthermore, Preston's alleged reliance on Det. Greene as the source of prior ICAC investigations is contradicted by the facts. Preston acknowledges that Greene denies telling Preston anything about metart.com. However, this is not the only issue. Greene's first involvement in this investigation was to assist Det. Preston in downloading the subpoena return from Synchronoss. ECF 67-4 at 23-24 (Greene Depo.) This makes sense as Det. Greene was not an ICAC investigator at the time and did not work in Preston's department. Rather he was a computer forensics examiner.

Given this timeline, Det. Greene did not become involved with this case until after Preston had sworn out the original probable cause affidavit. Therefore, Greene could not have been the source of the alleged history of metart.com, even if there was some subsequent conversation.

This is the case: Lawshe has never been able to find the alleged article or link referring to Metart.com. Mr. Douglas has affirmatively sworn in his affidavit that Metart.com has never been criminally accused of publishing child pornography and that to his knowledge no image has ever resulted in a conviction for possession of child pornography. *Affidavit of Jeffery Douglas*, ECF 67-8. He

states at some length the procedures that the website employs to ensure that all models are of age and his willingness to cooperate fully with law enforcement to verify that fact. Id. This creates a genuine dispute regarding the truthfulness of Preston and Greene regarding this alleged history of dealing in child pornography. Only a jury can resolve that dispute.

Finally, even if Greene is to be believed, he testifies that his only knowledge of Metart.com comes from "something" he read "somewhere" on the internet. ECF 67-4 at 52:2-22 (Greene Depo.). He cannot remember the source. He never investigated metart.com. ECF 67-4 at 80:24 – 81:4 (Greene Depo.). He admits he cannot say with any level of credibility that the allegation was true or false. ECF 67-4 at 52:2-22 (Greene Depo.). Greene's observations simply do not support the statement that Metart.com "has a known history of displaying CSAM images of teenage girls and CSAM content on this site has been encountered by other investigators in past investigations." ECF 67-1, 67-13 (Affidavits). Greene denies that he would make a statement like that based on the information he has. ECF 67-4 at 88:5-11 (Greene Depo.) The disparity between Greene's observations and the affirmative indictment of Metart.com laid out by Preston would still create a factual issue as to whether Preston materially misrepresented the information provided by Greene.

**B. Dully's Reports were not Reliable Estimations of Age**

Preston writes that "when obtaining search warrants, the criminal justice system (detective, assistant state attorneys, judges) is dealing with probabilities and chances not certainties that must be proven." *Preston Answer Brief* at 17. This is absolutely correct.

If Dully had offered an opinion on the age of the models in question within a reasonable degree of medical probability, it would be a different matter altogether. However, as explained in detail above, Dully admits that her reports were not a reliable forensic opinion of the age of the models in question *to any degree of medical probability*.

Describing this as a "non-issue," Preston's counsel writes that "of course Dully could not provide the *actual chronological* age of these individuals based on nothing more than viewing these images – nobody could." Preston at 16. This argument, although true, misses the point. Preston clearly testified that she considered Dully to be an expert in determining age and relied on Dully's opinions to make age determinations in this case. ECF 67-6 at 124:23 – 125:2; 126:1-13 (Preston March Depo.) This is precisely what Dully warned Preston could not be done with her opinions. When Preston ignored Dully's warning and used the reports to establish probable cause, she violated clearly established constitutional rights.

**C. The CyberTip**

There is no question that the CyberTip was "unconfirmed", and no one has ever argued that it established probable cause. Preston insists that she "took independent steps to confirm that it was probable that the individuals in these images were minors." *Preston Answer Brief* at 18. Preston fails to identify what steps led her to the conclusion that the individuals were "probable" minors. The CyberTip was "unconfirmed." Consultation with other officers at SJSO led to a disagreement about the perceived age of the models. Consultation with Dully led to a warning that Dully could not give her any reliable opinion on the age of the individuals. When she went to superiors and the ASA, she provided them with the probable cause affidavit which only repeated the fabricated and unreliable information discussed above.

Preston writes that "it seems unlikely that investigators could ever confirm the ages at the time of photography of unknown individuals in undated photographs." *Preston Answer Brief* at 18. This is a perplexing argument. The fact that investigations are difficult or complex does not lessen or obviate the need for probable cause. To the contrary, if an investigation is difficult, the answer is law enforcement officers who are willing to dedicate the time and effort necessary to complete the investigation.

While Lawshe cannot speak in generalities about CSAM investigations, this case proves the point. Preston could absolutely have identified the individual

models, verified their age and discovered when the photographs were taken. If she chose not to believe the records custodian, as Greene points out, metadata from the original photographs could reveal all relevant timing information. ECF 67-4 at 64:2-17 (Greene Depo.).

### D. Omission of the Images

Preston quotes the district court's ruling that "omission of the CyberTip image was not intentional or reckless because Preston included a description of the image." ECF 103 at 16; *Preston Answer Brief* at 19.   What Preston and the district court ignore, is that the description offered was completely misleading and unreliable.  As quoted by Preston, "an issuing judge need not personally view photographs or images which are alleged to be contraband if a reasonably specific affidavit describing the contents can provide an adequate basis to establish probable cause." *United States v. Sparks*, 806 F.3d 1056 (11th Cir. 2020). The only description of the image included in the affidavits was that of Dully, which Preston knew was unreliable as to the age of the individuals. This is reckless and cannot be characterized as a "reasonably specific" description of the image. At the very least, there is a genuine dispute about the accuracy of the description.

### E. Serious Doubts of Culpability

Preston claims that Lawshe never raised this argument.  In his Motion for Partial Summary Judgment and Response to Preston's Motion for Summary

Judgment Lawshe argued that Preston never had a subjective belief that Lawshe was guilty of possession of child pornography, because she never had any reason to believe that he knew the models were minors. This is an argument that Preston harbored substantial doubt as to Lawshe's culpability.

These doubts are amplified by the fact that Preston believed a reasonable person could interpret the image as depicting an adult and the fact that her colleagues believed the models may be adults. This doubt is clearly the reason Preston sought out "expert" opinion. It is unfathomable that an officer could acknowledge these facts and not harbor serious doubts that Lawshe was guilty of knowing possession of an image he knew to depict a minor.

### F. Review by Superiors

Preston provided her supervisor Tolbert and ASA Payne with a copy of her affidavit which included the reports and opinions of Dr. Dully. ECF 67-7 at 199:15-21 (Preston March Depo.). There is no evidence that Preston informed Tolbert or Payne that Dully had warned Preston against relying on these reports to establish the ages of the models. In fact, Tolbert testifies in regard to Dully's opinions that "I'm not aware of any issues, · · · you know, with any -- any kind of -- you know, for me to doubt that process or for me to doubt her reliability." ECF 67-3 at 59:18-21 (Tolbert Depo.). There certainly was a reason to doubt her

reliability and the fact that he and Payne did not know that raises a genuine factual dispute as to whether they were misled about the basis for probable cause.

### G. Willful Blindness to Known Facts

Preston argues that "Lawshe's argument is based entirely on the demonstrably false assertion that 'age verification documents' exist*." Preston Answer Brief* at 24. Preston insists that the law would require "absolute certainty" that the individuals were adults at the time of the photography, in order to establish liability. *Preston Answer Brief* at 24. This is not the standard. *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986), adopted by *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("Where it would appear to a "cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information."). A detective "may not close his or her eyes to facts that would help clarify the circumstances of probable cause," nor are they "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir 2004)

Records maintained pursuant to 18 U.S.C. §§ 2257, 2257A are referred to as "age verification" documents. See the United States Department of Justice's explanation of the statutory scheme:

> In order to protect children from sexual exploitation crimes, federal law imposes name- and age-verification, recordkeeping, and labeling requirements on producers of visual depictions of actual human beings engaged in actual or simulated sexually explicit conduct (See 18 U.S.C. §§ 2257, 2257A). This means that producers of pornography, or depictions of any sexual activity using actual people, are required to verify that the performers are of legal age (18–years–old or older) by maintaining records of the performers' names and ages.
>
> https://www.justice.gov/criminal/criminal-ceos/18-usc-2257-2257a-certifications.

The purpose of these documents is to assist law enforcement in verifying the age of published models.

Although Descartes suggests that we can never truly know anything, the law is not so philosophical. Copies of passports and statements from a licensed attorney whose job is to maintain records regarding the age of an individual would satisfy reasonable people's inquiries as to age. [5] But, whether conclusive or not, these documents raise a significant doubt about a crime having been committed, so much so that no reasonably prudent law enforcement officer would believe that

---

[5] Preston complains that the information was not sworn. This is incorrect to the extent that Douglas offered multiple sworn statements. However, records and information kept in the course of business are not normally hearsay. Fed. R. Evidence 803(6) Even if they were not considered business records, hearsay can be considered in the evaluation of probable cause. *Zargari v. United States*, 658 F. App'x 501, 507 (11th Cir. 2016)

probable cause for an arrest existed.  Certainly, Det. Tolbert, Preston's supervisor, did not believe that probable cause would have existed had the age verification documents been made available. ECF 67-3 at 67:7-23 (Tolbert Depo.) Det. Greene also testifies that the documents would have raised questions that needed to be investigated prior to any arrest. ECF 67-4 at 64:2-17 (Greene Depo.). This creates a genuine dispute as to arguable probable cause.

In responding to Lawshe's arguments. Preston presents no defense to Lawshe's argument that the known facts created a doubt that required further investigation. She does not dispute that this additional documentation was readily available. Preston knew that the image was watermarked. She knew that federal law required publishers of pornography to maintain age verification documentation. She knew that she could visit the website and request this information.  None of this is disputed and yet, Preston offers no evidence or argument about why she failed to take this simple investigative step.

### H. "Big Heart" Image

Preston suggests that one would have to "assume" that the information of "Kacey Lane" is the same as the model depicted in the "Big Heart" image.  This is objectively incorrect.  The only record evidence is that this is the same person. See *Affidavit of Crawford Peirce* ("The models identified by Mr. Douglas are the models depicted in the relevant images and images charged in the above referenced

criminal case."); see also, generally, ECF 67-8 and *Affidavit of Douglas*, ECF 67-8. The only evidence is that the model was an adult at the time the photographs were taken. Id. Additionally, Greene testifies that both models were displayed on multiple websites, all claiming the models were adults and compliance with federal age verification laws. ECF 67-4 at 33:12-35:11 (Greene Depo.).

This image illustrates the hollowness of Preston's arguments. While complaining about the lack of certainty as to the veracity of the age verification documents, Preston offers no evidence or argument as to why there was ever probable cause to believe the model of the "Big Heart" image was a minor. In fact, there is not one reasonably reliable piece of evidence to establish that this model was a minor at the time of photography. Preston cannot articulate any cogent reason she picked this cut-off, partial image out of all images in the subpoena return. Surely, the simple fact that the model did not have visible pubic hair is not enough to establish arguable probable cause of criminal possession of child pornography. Yet, this is the only articulated reason for even suggesting that the model was a minor. This is not only unscientific, it is absurd.

**I. Qualified Immunity**

Preston argues that "the facts and legal arguments in *Gatherum* are nearly indistinguishable from the case at bar" Preston Answer Brief at 32. This is incorrect. *Gatherum* is clearly distinguishable. *United States v. Gatherum*, 338 Fed.

Appx. 271 (4th Cir. 2009). *Gatherum* presented no facts that the officers fabricated a false history of criminal activity on the relevant website. Moreover, unlike *Gatherum*, Preston's impression or description of the images do not appear in the original probable cause affidavit.

Unlike *Gatherum*, the only opinion and description of age contained within the subject affidavit was that of Dully, a forensic expert. It is clearly material that Preston knew this description *was unreliable* as to the model's age. More to the point, there is no suggestion that the officers in Gatherum *knew* that reasonable persons could interpret the model(s) as being an adult. Quite the opposite, in fact. The court in *Gatherum* based its decision on the fact that both officers believed the models were very young (12 years old) and acknowledged that the result may be different if the age of the model was not so readily apparent. *Id*. at 275.

Lawshe's constitutional complaint against Preston is that the evidence establishes that she subjectively knew that the contents of her probable cause affidavit was unreliable and fabricated. The requirement that law enforcement officers present truthful, honest and good faith applications for probable cause is universal. *Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021); *Paez v. Mulvey*, 915 F 3d 1276, 1287 (11th Cir. 2019) This requirement is not limited by the nature of the criminal allegations. Any reasonable officer would know that such

conduct violates the constitutional rights of the accused, whether the allegations involve theft, battery, murder or, as in this case, possession of child pornography.

## <u>CONCLUSION</u>

The evidence establishes that Dully provided law enforcement forensic opinions which she knew were false and not supported by medical science. Preston, the officer who used these opinions and other fabricated evidence, knew her probable cause affidavit contained unreliable evidence, and she recklessly disregarded the known risk that her testimony was false. The creation and use of false and fabricated evidence cannot be tolerated under the Fourth and Fourteenth Amendments. For these reasons, Lawshe asks this Court to reverse the Judgment of the district court and remand for a trial on the merits.

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
*Counsel for Appellant*

# <u>CERTIFICATE OF COMPLIANCE</u>

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 6145 words, not including items excluded by Rule 32(f).

/s/ Michael K. Roberts

**Michael K. Roberts, Esquire**