No. 26-10155-D
# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

WILLIAM LEE LAWSHE,
*Plaintiff-Appellant,*

v.

MIKAYLA PRESTON,
and
KATHLEEN DULLY,
*Defendants-Appellees.*

Appeal from the United States District Court for
the Middle District of Florida, Jacksonville
Division

3:24-cv-00044-MMH-MCR

## CORRECTED APPENDIX VOLUME V

**LAW OFFICES OF NOONEY,
ROBERTS, HEWETT, AND
NOWICKI**

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 0077974
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
*Counsel for Appellant*

# INDEX

## VOLUME 1

Docket Sheet

Complaint against All Defendants with Jury Demand………..…………………….…1

Motion to Dismiss for Failure to State a Claim by Katheen Dully ……………..…10

Amended Complaint against Kathleen Dully, Robert Hardwick, Mikayla Preston with Jury Demand filed by Willam Lee Lawshe……………………………… …26

Answer and affirmative defenses with Jury Demand to 26 Amended Complaint by Mikayla Preston……………………………………………………………………...34

Second Amended Complaint against Kathleen Dully, Robert Hardwick, Mikayla Preston with Jury Demand filed by William Lee Lawshe………………………...40

Answer and affirmative defenses with Jury Demand to 40 Amended Complaint by Mikayla Preston……………………………………………………………...........43

Answer and affirmative defenses with Jury Demand to 40 Amended Complaint by Kathleen Dully……………………………………………………………………….54

Motion of Partial Summary Judgment Against Preston by William Lee Lawshe...66

Zoom Videotaped Deposition Transcript of Kathleen Dully M.D dated April 28, 2025…………………………………………………………………….…66 – 1

Letter to Mikayla Preston from Kathleen Dully M.D dated February 22, 2023..66-2

Letter to Mikayla Preston from Kathleen Dully M.D dated April 5, 2023……66 – 3

## VOLUME 2

Docket Sheet

Letter to Mikayla Preston from Kathleen Dully M.D dated April 5, 2023……66 – 4

Expert Report of Dr. Scott Krugman……………………………………………..66 – 5

Continued Remote Video Deposition Transcript of Kathleen Dully M.D dated June 18, 2025……………………………………………………………………66 – 6

Motion of Partial Summary Judgment Against Preston by William Lee Lawshe...67

Affidavit for Search Warrant dated February 28, 2023............................67 – 1

Cyber Tipline Report 153739160.........................................…..67 – 2

Remote Deposition Transcript of Eugine Tolbert dated December 17, 2024…67 – 3

Remote Deposition Transcript of Kevin Greene dated December 17, 2024……67-4

## VOLUME 3

Docket Sheet

Videotaped Deposition Transcript of Fallon McNulty dated June 12, 2025…....67-5

Video-Recorded Deposition Transcript of Mikayla Preston dated March 13, 2025
..........................................................................67-6

Remote Deposition Transcript of Dennis Camden dated December 17, 2024….67-7

Affidavit of Jeffrey J. Douglas………………………………………67-8

Letter to Mikayla Preston from Kathleen Dully M.D dated February 22, 2023..67-9

## VOLUME 4

Docket Sheet

Zoom Videotaped Deposition Transcript of Kathleen Dully MD dated April 28,
2025…………………………………………………………...…..67-10

Continued Remote Video Deposition Transcript of Kathleen Dully M.D dated June
18, 2025………………………………………………………..67-11

Deposition Transcript of Mikayla Preston dated November 21, 2023…………..67-12

Affidavit for Search Warrant dated April 12, 2023...…………………...……...67-13

St. Johns County Sheriffs Office Arrest Report……...…..……………...…..67-14

Felony Information Sheet…………………………………………………...67-15

Email Correspondence re Nolle Prosse dated December 22, 2023………..……..67-16

Response in Opposition re 66 Motion for Partial Summary Judgment filed by Kathleen Dully..................................................................................75

Response in Opposition re 67 Motion for Partial Summary Judgment filed by Mikayla Preston....................................................................................78

Motion for Summary Judgment filed by Mikayla Preston........................... 83

## VOLUME 5

Docket Sheet

Motion for Summary Judgment filed by Kathleen Dully.............................85

Reply to Response to Motion re 67 Motion for Partial Summary Judgment filed by William Lee Lawshe........................................................................90

Reply to Response to Motion re 66 Motion filed by William Lee Lawshe..........91

Response to Motion re 85 Motion for Summary Judgment filed by William Lee Lawshe......................................................................................95

Response to Motion re 83 Motion for Summary Judgment filed by William Lee Lawshe......................................................................................96

Report of Patrick Siewert......................................................... 96-1

Reply to Response to Motion re 85 Motion for Summary Judgment filed by Kathleen Dully...................................................................................100

Reply to Response to Motion re 83 Motion for Summary Judgment filed by Mikayla Preston................................................................................101

Opinion and Order re: Cross Motion for Summary Judgment; denying 66 Motion for Partial Summary Judgment; denying 67 Motion for Partial Summary Judgment; denying as moot 71 Motion in Limine; granting 83 Motion for Summary Judgment; granting 85 Motion for Summary Judgment.........................103

Judgment is entered in favor of Defendants and against Plaintiff...................104

APPEAL,CLOSED,MEDIATION,SL DOC,STAYED,TANGIBLE

# U.S. District Court
## Middle District of Florida (Jacksonville)
## CIVIL DOCKET FOR CASE #: 3:24-cv-00044-JAR-MCR

| | |
|---|---|
| Lawshe v. Hardwick et al | Date Filed: 01/12/2024 |
| Assigned to: Judge Jane A. Restani | Date Terminated: 12/19/2025 |
| Referred to: Magistrate Judge Monte C. Richardson | Jury Demand: Both |
| Case in other court: 11th Circuit, 26-10155-D | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**William Lee Lawshe**
*an individual*

represented by　**Michael Keith Roberts , II**
Law Offices of Nooney & Roberts
1680 Emerson St
Jacksonville, FL 32207
904/398-1992
Fax: 904/858-9943
Email: mroberts@nooneyandroberts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey Scott Nooney , Jr.**
The Law Offices of Nooney & Roberts
1680 Emerson St.
Jacksonville, FL 32207
904-398-1992
Fax: 904-858-9943
Email: jnooney@nooneyandroberts.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Robert A. Hardwick**
*in his official capacity as Sheriff of St. Johns County*
*TERMINATED: 10/29/2024*

represented by　**Michael P. Spellman**
Spellman Law, P.A.
905 East Park Avenue
Tallahassee, FL 32301
850-601-1983
Email: michael@spellman.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christen Ann Petruzzelli**
Spellman Law, P.A.
905 E. Park Avenue
Tallahassee, FL 32301
850-601-1983
Email: cpetruzzelli@spellman.law
*ATTORNEY TO BE NOTICED*

Matthew Joseph Carson
Spellman Law, PA
905 East Park Avenue
Tallahassee, FL 32301
850-601-1983
Email: mcarson@spellman.law
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mikayla Preston**
*in her induvial capacity as a Detective for*
*St. Johns County Sheriff's Office*

represented by **Michael P. Spellman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christen Ann Petruzzelli**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jami McFatter Kimbrell**
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, FL 32308
850-877-7776
Email: jami@kimbrellfirm.com
*ATTORNEY TO BE NOTICED*

**Matthew Joseph Carson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**University of Florida Board of Trustees**
*TERMINATED: 03/28/2024*

represented by **Todd Anderson Wright**
Alexander DeGance Barnett, P.A.
1500 Riverside Avenue
Jacksonville, FL 32204
904-345-3284
Fax: 904-345-3294
Email: todd.wright@adblegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kathleen Dully**
*in her individual capacity as medical*
*director of the UF Child Protection Team*

represented by **Jami McFatter Kimbrell**
(See above for address)
*LEAD ATTORNEY*

**Robert B. Buchanan**
Banker Lopez Gassler P.A.
1900 SE 18th Street
Suite 300
Ocala, FL 34475-8237
352-629-4099
Fax: 352-629-3975
Email: aperry@bankerlopez.com

*TERMINATED: 05/27/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amy Shevlin**
Buchanan & Buchanan, P.A.
1900 SE 18th Avenue
Suite 300
Ocala, FL 34471
352-629-4099
Email: ashevlin@rbtrial.com
*ATTORNEY TO BE NOTICED*

**John Wilson**
Howell, Buchan and Strong
2898-6 Mahan Drive
Tallahassee, FL 32308
850-877-7776
Email: johnwilson@jsh-pa.com
*ATTORNEY TO BE NOTICED*

**Mediator**

| | |
|---|---|
| **Thomas H. Bateman, III**<br>*TERMINATED: 08/07/2025* | represented by **Thomas H. Bateman , III**<br>Messer Caparello, PA<br>2618 Centennial Place<br>Tallahassee, FL 32308<br>850/222-0720<br>Fax: 850/558-0674<br>Email: tbateman@lawfla.com<br>*TERMINATED: 08/07/2025*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 01/12/2024 | 1 | STRICKEN per 23 Order; COMPLAINT against All Defendants with Jury Demand (Filing fee $405 receipt number AFLMDC-21652226) filed by William L Lawshe. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Hardwick Summons, # 3 Proposed Summons Preston Summons, # 4 Proposed Summons UF BOT Summons, # 5 Proposed Summons Dully Summons)(Roberts, Michael) Modified on 4/2/2024 to edit docket text (JDR). (Entered: 01/12/2024) |
| 01/12/2024 | 2 | NEW CASE ASSIGNED to Judge Marcia Morales Howard and Magistrate Judge Monte C. Richardson. New case number: 3:24-cv-44-MMH-MCR. (JCG) (Entered: 01/12/2024) |
| 01/16/2024 | 3 | NOTICE of Local Rule 3.02(a)(2), which requires the parties in every civil proceeding, except those described in subsection (d), to file a case management report (CMR) using the uniform form at www.flmd.uscourts.gov. The CMR must be filed (1) within forty days after any defendant appears in an action originating in this court, (2) within forty days after the docketing of an action removed or transferred to this court, or (3) within seventy days after service on the United States attorney in an action against the United States, its agencies or employees. Judges may have a special CMR form for certain types of cases. These forms can be found at www.flmd.uscourts.gov under the Forms tab for each judge. (Signed by Deputy Clerk). (JW) (Entered: 01/16/2024) |

| 01/16/2024 | 4 | SUMMONS issued as to Kathleen Dully, Robert Hardwick, Mikayla Preston, University of Florida Board of Trustees. (MCB) (Entered: 01/16/2024) |
|---|---|---|
| 02/08/2024 | 5 | NOTICE TO ALL COUNSEL of Local Rule 2.02(a), which states, "The first paper filed on behalf of a party must designate only one lead counsel who - unless the party changes the designation - remains lead counsel throughout the action." Counsel must file a **Notice of Lead Counsel Designation** identifying lead counsel. (Signed by Deputy Clerk). (GL) (Entered: 02/08/2024) |
| 02/15/2024 | 6 | NOTICE of Lead Counsel Designation by Michael Keith Roberts, II on behalf of William Lee Lawshe. Lead Counsel: Michael K Roberts, Esq.. (Roberts, Michael) (Entered: 02/15/2024) |
| 02/19/2024 | 7 | PROOF of service by William Lee Lawshe (Nooney, Jeffrey) (Entered: 02/19/2024) |
| 02/19/2024 | 8 | PROOF of service by William Lee Lawshe (Nooney, Jeffrey) (Entered: 02/19/2024) |
| 02/19/2024 | 9 | NOTICE of Appearance by Robert B. Buchanan on behalf of Kathleen Dully (Buchanan, Robert) (Entered: 02/19/2024) |
| 02/19/2024 | 10 | MOTION to Dismiss for Failure to State a Claim by Kathleen Dully. (Buchanan, Robert) (Entered: 02/19/2024) |
| 02/20/2024 | 11 | **ORDER directing Defendant to file a supplement to her [Doc. 10] Motion to Dismiss Plaintiff's Complaint on or before February 27, 2024. See Order for details. Signed by Judge Marcia Morales Howard on 2/20/2024. (JPA)** (Entered: 02/20/2024) |
| 02/20/2024 | 12 | MOTION to Dismiss Count VIII of Plaintiff's Complaint by University of Florida Board of Trustees. (Wright, Todd) (Entered: 02/20/2024) |
| 02/22/2024 | 13 | MOTION for Clerk's Default against Robert Hardwick, Mikayla Preston by William Lee Lawshe. (Nooney, Jeffrey) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 02/22/2024) |
| 02/27/2024 | 14 | Amended MOTION to Dismiss Count VII *or, alternatively, Motion for More Definite Statement* by Kathleen Dully. (Buchanan, Robert) (Entered: 02/27/2024) |
| 02/27/2024 | 15 | NOTICE of Appearance by Michael P. Spellman on behalf of Robert Hardwick, Mikayla Preston (Spellman, Michael) (Entered: 02/27/2024) |
| 02/27/2024 | 16 | MOTION for Extension of Time to File Response/Reply as to 1 Complaint , MOTION to Set Aside Clerk Default *(Deny Entry)* by Robert Hardwick, Mikayla Preston. (Attachments: # 1 Exhibit Declaration of Trae Wylie)(Spellman, Michael) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 02/27/2024) |
| 02/28/2024 | 17 | NOTICE of supplemental authority re 16 MOTION for Extension of Time to File Response/Reply as to 1 Complaint MOTION to Set Aside Clerk Default *(Deny Entry) RE: Local Rule 3.01(g) Conferral* by Robert Hardwick, Mikayla Preston. (Spellman, Michael) (Entered: 02/28/2024) |
| 03/08/2024 | 18 | NOTICE of voluntary dismissal by William Lee Lawshe (Roberts, Michael) (Entered: 03/08/2024) |
| 03/08/2024 | 19 | RESPONSE in Opposition re 14 Amended MOTION to Dismiss Count VII *or, alternatively, Motion for More Definite Statement* filed by William Lee Lawshe. (Roberts, Michael) (Entered: 03/08/2024) |
| 03/13/2024 | 20 | RESPONSE to 16 MOTION to Deny Entry of Default filed by William Lee Lawshe. (Roberts, Michael) Modified text on 3/14/2024 (BD). (Entered: 03/13/2024) |

| | | |
|---|---|---|
| 03/13/2024 | 21 | NOTICE of Supplemental Authority to 16 MOTION to Deny Entry of Clerk's Default and for Extension of Time by Robert Hardwick, Mikayla Preston. (Attachments: # 1 Exhibit Savoia-McHugh v. Glass)(Spellman, Michael) Modified text on 3/14/2024 (BD). (Entered: 03/13/2024) |
| 03/28/2024 | 22 | **ORDER dismissing, without prejudice, the claims raised against Defendant University of Florida Board of Trustees; terminating 12 Motion to Dismiss; and directing the Clerk of the Court to terminate this Defendant. Signed by Judge Marcia Morales Howard on 3/28/2024. (JW)** (Entered: 03/28/2024) |
| 04/02/2024 | 23 | **ORDER striking 1 Complaint filed by William Lee Lawshe. Plaintiff shall file a corrected complaint on or before April 22, 2024. Signed by Judge Marcia Morales Howard on 4/2/2024. (JPA)** (Entered: 04/02/2024) |
| 04/12/2024 | 24 | CASE MANAGEMENT REPORT. (Spellman, Michael) (Entered: 04/12/2024) |
| 04/15/2024 | 25 | **CASE MANAGEMENT AND SCHEDULING ORDER AND REFERRAL TO MEDIATION:** **Disclosure statements due by 4/26/2024. Discovery due by 6/20/2025. Dispositive motions due by 7/21/2025. Conduct mediation hearing by 8/15/2025. Final Pretrial Conference set for 12/15/2025 at 10:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Jury Trial set for trial term commencing on 1/5/2026 at 09:00 AM in Jacksonville Courtroom 10 B before Judge Marcia Morales Howard. Signed by Judge Marcia Morales Howard on 4/15/2024. (Attachments: # 1 Mediation Report Form, # 2 Court Docket)(JW)** (Entered: 04/15/2024) |
| 04/16/2024 | 26 | AMENDED COMPLAINT against Kathleen Dully, Robert Hardwick, Mikayla Preston with Jury Demand. filed by William Lee Lawshe.(Roberts, Michael) (Entered: 04/16/2024) |
| 04/19/2024 | 27 | **ORDER denying as moot 13 Plaintiff's Motion for Entry of Clerk's Default; denying as moot 14 Defendant Kathleen Dully's Motion to Dismiss; denying as moot 16 Motion to Deny Entry of Clerk's Default and for Extension of Time to Respond to Complaint. Signed by Judge Marcia Morales Howard on 4/19/2024. (JW)** (Entered: 04/19/2024) |
| 04/26/2024 | 28 | CORPORATE Disclosure Statement by Kathleen Dully. (Buchanan, Robert) (Entered: 04/26/2024) |
| 04/29/2024 | 29 | CORPORATE Disclosure Statement by Mikayla Preston. (Spellman, Michael) (Entered: 04/29/2024) |
| 04/29/2024 | 30 | CORPORATE Disclosure Statement by Robert Hardwick. (Spellman, Michael) (Entered: 04/29/2024) |
| 04/29/2024 | 31 | ***INCORRECT EVENT. COUNSEL TO REFILE AS "CORPORATE DISCLOSURE STATEMENT"***AMENDED document by Kathleen Dully. *Defendant Kathleen Dully's Amended Corporate Disclosure Statement.* (Buchanan, Robert) Modified on 4/30/2024 (LSS). (Entered: 04/29/2024) |
| 04/30/2024 | 32 | AMENDED Disclosure Statement Under Rule 7.1, Federal Rules of Civil Procedure, and Local Rule 3.03 by Kathleen Dully. (Buchanan, Robert) (Modified on 4/30/2024, to edit text) (BGR). (Entered: 04/30/2024) |
| 04/30/2024 | 33 | NOTICE of Appearance by Matthew Joseph Carson on behalf of Robert Hardwick, Mikayla Preston (Carson, Matthew) (Entered: 04/30/2024) |

| 04/30/2024 | 34 | ANSWER and affirmative defenses with Jury Demand to 26 Amended Complaint by Mikayla Preston.(Carson, Matthew) (Entered: 04/30/2024) |
|---|---|---|
| 04/30/2024 | 35 | MOTION to Dismiss for Failure to State a Claim by Robert Hardwick. (Carson, Matthew). Added MOTION to Strike on 5/2/2024 (AM). (Entered: 04/30/2024) |
| 05/02/2024 | 36 | **ORDER directing Plaintiff to show cause why this case should not be dismissed for failure to prosecute or sanctions imposed due to his failure to comply with the Local Rules and this Court's Order. Show Cause Response due by 5/16/2024. Signed by Judge Marcia Morales Howard on 5/2/2024. (JW)** (Entered: 05/02/2024) |
| 05/02/2024 | 37 | CORPORATE Disclosure Statement by William Lee Lawshe. (Roberts, Michael) (Entered: 05/02/2024) |
| 05/02/2024 | 38 | RESPONSE TO ORDER TO SHOW CAUSE re 36 Order to show cause filed by William Lee Lawshe. (Roberts, Michael) Modified on 5/3/2024 to edit text (ELM). (Entered: 05/02/2024) |
| 05/03/2024 | 39 | **ENDORSED ORDER discharging 36 Order to Show Cause. Signed by Judge Marcia Morales Howard on 5/3/2024. (JW)** (Entered: 05/03/2024) |
| 05/20/2024 | 40 | SECOND AMENDED COMPLAINT against Kathleen Dully, Robert Hardwick, Mikayla Preston with Jury Demand. filed by William Lee Lawshe.(Roberts, Michael) Modified text on 5/21/2024 (BD). (Entered: 05/20/2024) |
| 05/20/2024 | 41 | NOTICE of Filing 40 Second Amended Complaint by William Lee Lawshe (Roberts, Michael) Modified text on 5/21/2024 (BD). (Entered: 05/20/2024) |
| 05/23/2024 | 42 | **ORDER denying as moot 35 Defendant Sheriff Hardwick's Motion to Dismiss and Motion to Strike. Signed by Judge Marcia Morales Howard on 5/23/2024. (JW)** (Entered: 05/23/2024) |
| 06/03/2024 | 43 | ANSWER and affirmative defenses with Jury Demand to 40 Amended Complaint by Mikayla Preston. (Attachments: # 1 Exhibit CybeTip Report, # 2 Exhibit Dully Opinion f6a487, # 3 Exhibit Dully Opinion 59 and 65, # 4 Exhibit Dully Opinion Screenshot Duckduckgo)(Carson, Matthew) (Entered: 06/03/2024) |
| 06/03/2024 | 44 | MOTION to Dismiss for Failure to State a Claim by Robert Hardwick. (Carson, Matthew) (Entered: 06/03/2024) |
| 06/19/2024 | 45 | MOTION to Dismiss Count VII of Plaintiff's Second Amended Complaint *or Alternatively, Motion for a More Definite Statement* by Kathleen Dully. (Buchanan, Robert) (Entered: 06/19/2024) |
| 06/24/2024 | 46 | RESPONSE to Motion re 44 MOTION to Dismiss for Failure to State a Claim filed by William Lee Lawshe. (Roberts, Michael) (Entered: 06/24/2024) |
| 07/12/2024 | 47 | RESPONSE to Motion re 45 MOTION to Dismiss Count VII of Plaintiff's Second Amended Complaint *or Alternatively, Motion for a More Definite Statement* filed by William Lee Lawshe. (Roberts, Michael) (Entered: 07/12/2024) |
| 08/16/2024 | 48 | NOTICE of Appearance by Christen Ann Petruzzelli on behalf of Robert A. Hardwick, Mikayla Preston (Petruzzelli, Christen) (Entered: 08/16/2024) |
| 08/16/2024 | 49 | MOTION for Extension of Time to File Response/Reply *to Plaintiff's First Request for Production* by Mikayla Preston. (Spellman, Michael) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/16/2024) |
| 08/17/2024 | 50 | SUPPLEMENT re 49 MOTION for Extension of Time to File Response/Reply *to Plaintiff's First Request for Production* by Mikayla Preston. (Spellman, Michael) |

| | | |
|---|---|---|
| | | (Entered: 08/17/2024) |
| 08/19/2024 | 51 | **ENDORSED ORDER granting 49 Defendant Preston's Motion for Extension of Time to Respond to Plaintiff's First Request for Production. Defendant shall have until August 26, 2024, to respond to Plaintiff's First Request for Production. Signed by Magistrate Judge Monte C. Richardson on 8/19/2024. (JRC)** (Entered: 08/19/2024) |
| 10/03/2024 | 52 | **ORDER: To the extent that Plaintiff requests affirmative relief from the Court, 46 Plaintiff's Response to Defendant Hardwick's Motion to Dismiss is denied without prejudice. See Order for details. Signed by Judge Marcia Morales Howard on 10/3/2024. (JPA)** (Entered: 10/03/2024) |
| 10/29/2024 | 53 | **ORDER granting 44 Motion to Dismiss for Failure to State a Claim and denying 45 Motion to Dismiss. The Clerk of the Court is directed to terminate Defendant Robert Hardwick. Defendant Kathleen Dully shall respond to Plaintiff's Second Amended Complaint on or before November 13, 2024. See Order for details. Signed by Judge Marcia Morales Howard on 10/29/2024. (JPA)** (Entered: 10/29/2024) |
| 11/13/2024 | 54 | ANSWER and affirmative defenses with Jury Demand to 40 Amended Complaint by Kathleen Dully.(Buchanan, Robert) (Entered: 11/13/2024) |
| 02/01/2025 | 55 | MOTION to Compel Production of Documents by William Lee Lawshe. (Attachments: # 1 Exhibit Ex A - Plaintiff RTP, # 2 Exhibit Ex B - Def RTP response, # 3 Exhibit Ex C - Email Correspondence)(Roberts, Michael) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 02/01/2025) |
| 02/05/2025 | 56 | NOTICE of Withdrawal Motion to Compel Production of Documents by William Lee Lawshe. (Roberts, Michael) Modified on 2/6/2025 to edit text (ELA). (Entered: 02/05/2025) |
| 05/16/2025 | 57 | MOTION to Substitute Attorney by Kathleen Dully. (Kimbrell, Jami) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 05/16/2025) |
| 05/19/2025 | 58 | **ENDORSED ORDER denying without prejudice 57 Defendant Kathleen Dully's Motion for Substitution of Counsel because it fails to comply with Local Rule 3.01(g). Signed by Magistrate Judge Monte C. Richardson on 5/19/2025. (SBL)** (Entered: 05/19/2025) |
| 05/22/2025 | 59 | Amended MOTION to Substitute Attorney by Kathleen Dully. (Kimbrell, Jami) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 05/22/2025) |
| 05/27/2025 | 60 | **ENDORSED ORDER granting 59 Defendant Kathleen Dully's Amended Motion for Substitution of Counsel. Robert B. Buchanan, Esq. is relieved of any further responsibility as counsel for Defendant in this matter, but he shall comply with all applicable obligations on withdrawing counsel, including any applicable Bar rules. Jami Kimbrell, Esq. is substituted as counsel of record for Defendant. Signed by Magistrate Judge Monte C. Richardson on 5/27/2025. (SBL)** (Entered: 05/27/2025) |
| 05/27/2025 | 61 | NOTICE of Appearance by John Wilson on behalf of Kathleen Dully (Wilson, John) (Entered: 05/27/2025) |
| 06/06/2025 | 62 | Unopposed MOTION for Extension of Time to Complete Discovery by Kathleen Dully. (Wilson, John) Motions referred to Magistrate Judge Monte C. Richardson. Modified on 6/9/2025 to edit the docket text (MLB). (Entered: 06/06/2025) |
| 06/09/2025 | 63 | **ORDER granting 62 Unopposed Motion for Extension of Deadlines to Complete Discovery and File Dispositive Motions. Discovery deadline is 8/4/2025. Dispositive and Daubert motions due 9/5/2025. Final pretrial conference continued to 1/20/2026, at 10:00 a.m. Jury trial set for trial term commencing on 2/2/2026, at 9:00 a.m. See** |

| | | |
|---|---|---|
| | | **Order for additional deadlines. Signed by Judge Marcia Morales Howard on 6/9/2025. (JW)** (Entered: 06/09/2025) |
| 06/09/2025 | | Set / Reset Scheduling Order Deadlines/Hearings per 63: Discovery due by 8/4/2025. Dispositive motions due by 9/5/2025. All other motions due by 12/29/2025. Final Pretrial Conference set for 1/20/2026 at 10:00 AM before Judge Marcia Morales Howard. Jury Trial set for 2/2/2026 at 09:00 AM before Judge Marcia Morales Howard. (EVK) (Entered: 06/10/2025) |
| 06/18/2025 | 64 | NOTICE of mediation conference/hearing to be held on 8/6/25 at 10AM before Thomas H. Bateman, III. (Carson, Matthew) (Entered: 06/18/2025) |
| 08/06/2025 | 65 | MEDIATION report Hearing held on 8-6-2025. Hearing outcome: Impasse.. (Bateman, Thomas) (Entered: 08/06/2025) |
| 08/12/2025 | 66 | MOTION for Partial Summary Judgment by William Lee Lawshe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Roberts, Michael) (Entered: 08/12/2025) |
| 08/12/2025 | 67 | MOTION for Partial Summary Judgment by William Lee Lawshe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P)(Roberts, Michael) (Entered: 08/12/2025) |
| 08/13/2025 | 68 | **SUMMARY JUDGMENT NOTICE AND COURTESY COPIES. Signed by Deputy Clerk on 8/13/2025. (JW)** (Entered: 08/13/2025) |
| 08/29/2025 | 69 | Unopposed MOTION for Extension of Time to File Response/Reply as to 67 MOTION for Partial Summary Judgment , 66 MOTION for Partial Summary Judgment Set / Reset Scheduling Order Deadlines/Hearings *and Extension of Time to File Motions for Summary Judgment* by All Defendants. (Kimbrell, Jami) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 08/29/2025) |
| 09/03/2025 | 70 | **ENDORSED ORDER granting 69 Defendants' Joint Unopposed Motion for Extension of Time. Defendants shall respond to Plaintiff's Motions for Partial Summary Judgment on or before September 9, 2025. The deadline for Defendants to file dispositive motions is extended until September 12, 2025. The granting of this Motion shall not serve as a basis for seeking to extend any other deadlines in the Case Management and Scheduling Order. Signed by Magistrate Judge Monte C. Richardson on 9/3/2025. (SBL)** (Entered: 09/03/2025) |
| 09/05/2025 | 71 | MOTION In Limine regarding Plaintiff's Expert, Patrick Siewert (Daubert) by Mikayla Preston. (Attachments: # 1 Exhibit 1 = Siewert CV, # 2 Exhibit 2 - Siewert Report) (Carson, Matthew) (Entered: 09/05/2025) |
| 09/08/2025 | 72 | Unopposed MOTION to file DOCUMENT under seal by Kathleen Dully, Mikayla Preston (Attachments: # 1 Proposed Sealed Item Redacted f6a487, # 2 Proposed Sealed Item Redacted 0065(1), # 3 Proposed Sealed Item Redacted 0059, # 4 Proposed Sealed Item Redacted DuckDuckGo, # 5 Proposed Sealed Item Redacted VVFQ_o, # 6 Appendix Unredacted File Names and Sizes)(Carson, Matthew).Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 09/08/2025) |
| 09/08/2025 | 73 | Consent MOTION to File Excess Pages in Response to Motion for Partial Summary Judgment by Kathleen Dully. (Kimbrell, Jami) Modified text on 9/9/2025 (MGB). (Entered: 09/08/2025) |

| | | |
|---|---|---|
| 09/09/2025 | 74 | RESPONSE in Opposition re 66 MOTION for Partial Summary Judgment filed by Kathleen Dully. (Kimbrell, Jami) (Entered: 09/09/2025) |
| 09/09/2025 | 75 | RESPONSE in Opposition re 66 MOTION for Partial Summary Judgment filed by Kathleen Dully. (Kimbrell, Jami) (Entered: 09/09/2025) |
| 09/09/2025 | 76 | NOTICE by Kathleen Dully re 75 Response in Opposition to Motion *Filing Exhibits to* (Attachments: # 1 Exhibit F, # 2 Exhibit G, # 3 Exhibit Exhibit H, # 4 Exhibit I, # 5 Exhibit J, # 6 Exhibit K, # 7 Exhibit L)(Kimbrell, Jami) Modified text on 9/10/2025 (ABM). (Entered: 09/09/2025) |
| 09/09/2025 | 77 | NOTICE by Mikayla Preston *documents in support of her response in opposition to Plaintiff's motion for partial summary judgment* (Attachments: # 1 Exhibit Chart of Subject Images, # 2 Exhibit Deposition of Fallon McNulty, # 3 Exhibit Deposition of Detective Mikayla Preston, # 4 Exhibit Deposition of Detective Kevin Greene, # 5 Exhibit Deposition of Sergeant Eugene Tolbert, # 6 Exhibit Deposition of Dr. Kathleen Dully I, # 7 Exhibit Deposition of Dr. Kathleen Dully II, # 8 Exhibit Affidavit of Kaitlyn M. Paine, # 9 Exhibit Deposition of Plaintiff William Lee Lawshe)(Carson, Matthew) (Entered: 09/09/2025) |
| 09/09/2025 | 78 | RESPONSE in Opposition re 67 MOTION for Partial Summary Judgment filed by Mikayla Preston. (Carson, Matthew) (Entered: 09/09/2025) |
| 09/10/2025 | 79 | **ENDORSED ORDER granting 73 Defendant Kathleen Dully's Motion for Leave to Exceed the Page Limit and accepting as filed 75 Defendant Kathleen Dully's response to Plaintiff's Motion for Partial Summary Judgment. Signed by Judge Marcia Morales Howard on 9/10/2025. (JW)** (Entered: 09/10/2025) |
| 09/10/2025 | 80 | NOTICE by Kathleen Dully re 74 Response in Opposition to Motion *to Disregard* (Kimbrell, Jami) (Entered: 09/10/2025) |
| 09/11/2025 | 81 | **ORDER granting 72 Defendant's Unopposed Motion to Seal. See Order for details. Signed by Magistrate Judge Monte C. Richardson on 9/11/2025. (SBL)** (Entered: 09/11/2025) |
| 09/12/2025 | 82 | NOTICE by Mikayla Preston *of filing documents in support of her motion for final summary judgment* (Attachments: # 1 Exhibit Chart of Subject Images, # 2 Exhibit Deposition of Fallon McNulty (corporate representative for the National Center for Missing and Exploited Children) taken June 12, 2025 (excerpts), # 3 Exhibit Deposition of Detective Mikayla Preston taken March 13, 2025 (excerpts), # 4 Exhibit Deposition of Detective Kevin Greene taken December 17, 2024 (excerpts), # 5 Exhibit Deposition of Sergeant Eugene Tolbert taken December 17, 2024 (excerpts), # 6 Exhibit Deposition of Dr. Kathleen Dully taken April 28, 2025 (excerpts), # 7 Exhibit Deposition of Dr. Kathleen Dully taken June 18, 2025 (excerpts), # 8 Exhibit Affidavit of Kaitlyn M. Paine dated August 28, 2025, # 9 Exhibit Deposition of Plaintiff William Lee Lawshe taken March 14, 2025 (excerpts))(Carson, Matthew) (Entered: 09/12/2025) |
| 09/12/2025 | 83 | MOTION for Summary Judgment by Mikayla Preston. (Carson, Matthew) (Entered: 09/12/2025) |
| 09/12/2025 | 84 | MOTION to File Excess Pages by Kathleen Dully. (Kimbrell, Jami) (Entered: 09/12/2025) |
| 09/12/2025 | 85 | MOTION for Summary Judgment by Kathleen Dully. (Kimbrell, Jami) (Entered: 09/12/2025) |
| 09/12/2025 | 86 | NOTICE of Filing Exhibits by Kathleen Dully re 85 MOTION for Summary Judgment. (Attachments: # 1 Exhibit F, # 2 Exhibit G, # 3 Exhibit H, # 4 Exhibit I, # 5 Exhibit J, # 6 |

| | | |
|---|---|---|
| | | Exhibit K, # 7 Exhibit L, # 8 Exhibit M)(Kimbrell, Jami) Modified docket text on 9/15/2025 (JOS). (Entered: 09/12/2025) |
| 09/16/2025 | 88 | **ENDORSED ORDER granting 84 Defendant Kathleen Dully's Motion for Leave to File an Over-Length Motion for Summary Judgment and accepting as filed 85 Defendant Kathleen Dully's Motion for Summary Judgment. Signed by Judge Marcia Morales Howard on 9/16/2025. (JW)** (Entered: 09/16/2025) |
| 09/16/2025 | 90 | REPLY to Response to Motion re 67 MOTION for Partial Summary Judgment filed by William Lee Lawshe. (Roberts, Michael) (Entered: 09/16/2025) |
| 09/16/2025 | 91 | REPLY to Response to Motion re 66 MOTION for Partial Summary Judgment filed by William Lee Lawshe. (Roberts, Michael) (Entered: 09/16/2025) |
| 09/19/2025 | 92 | RESPONSE to Motion re 71 MOTION In Limine regarding Plaintiff's Expert, Patrick Siewert (Daubert) filed by William Lee Lawshe. (Attachments: # 1 Exhibit A)(Roberts, Michael) (Entered: 09/19/2025) |
| 09/24/2025 | 93 | SEALED DOCUMENT re 81 Sealed Order on Motion to Seal by Mikayla Preston (Attachments: # 1 Exhibit Redacted f6a487, # 2 Exhibit Redacted 0065(1), # 3 Exhibit Redacted 0059, # 4 Exhibit Redacted DuckDuckGo, # 5 Exhibit Redacted VVFQ_o) (Carson, Matthew). (Entered: 09/24/2025) |
| 10/03/2025 | 94 | MOTION to File Excess Pages by William Lee Lawshe. (Roberts, Michael) (Entered: 10/03/2025) |
| 10/03/2025 | 95 | RESPONSE to Motion re 85 MOTION for Summary Judgment filed by William Lee Lawshe. (Attachments: # 1 Exhibit A)(Roberts, Michael) (Entered: 10/03/2025) |
| 10/03/2025 | 96 | RESPONSE to Motion re 83 MOTION for Summary Judgment filed by William Lee Lawshe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Roberts, Michael) (Entered: 10/03/2025) |
| 10/06/2025 | 97 | **ENDORSED ORDER granting 94 Plaintiff's Unopposed Motion for an Extension of Page Limit and accepting as filed 96 Plaintiff's Response to Defendant Preston's Motion for Summary Judgment. Signed by Judge Marcia Morales Howard on 10/6/2025. (JW)** (Entered: 10/06/2025) |
| 10/16/2025 | 98 | **ORDER REASSIGNING CASE to Senior Judge Jane A. Restani. Signed by Judge Marcia Morales Howard on 10/16/2025. (MHM)** (Entered: 10/16/2025) |
| 10/17/2025 | 99 | Case Reassigned to Judge Jane A. Restani. New case number: 3:24-cv-44-JAR-MCR. Judge Marcia Morales Howard no longer assigned to the case. (MDC) (Entered: 10/17/2025) |
| 10/17/2025 | 100 | REPLY to Response to Motion re 85 MOTION for Summary Judgment filed by Kathleen Dully. (Wilson, John) (Entered: 10/17/2025) |
| 10/17/2025 | 101 | REPLY to Response to Motion re 83 MOTION for Summary Judgment filed by Mikayla Preston. (Carson, Matthew) (Entered: 10/17/2025) |
| 11/17/2025 | 102 | Notice to counsel that pursuant to the summary judgment notice 68, the parties must submit courtesy copies of any motion, response, and authorized reply that exceeds twenty-five (25) pages (including exhibits or other supporting evidentiary materials) in length. Courtesy copies should be mailed by United States mail or other reliable service to Hon. Jane A. Restani, United States Court of International Trade, 1 Federal Plaza, Suite 694, New York, NY 10278-0001 (jkl) (Entered: 11/17/2025) |
| 12/18/2025 | 103 | **OPINION AND ORDER re: Cross Motion for Summary Judgment; denying 66 Motion for Partial Summary Judgment; denying 67 Motion for Partial Summary** |

| | | |
|---|---|---|
| | | **Judgment; denying as moot [71](#) Motion in Limine; granting [83](#) Motion for Summary Judgment; granting [85](#) Motion for Summary Judgment. The Clerk shall enter judgment in favor of Defendants Preston and Dully and against Plaintiff Lawshe, terminate any pending motions, and close the case. Signed by Judge Jane A. Restani on 12/18/2025. (SJW)** (Modified on 12/18/2025)(SJW). (Entered: 12/18/2025) |
| 12/19/2025 | [104](#) | **JUDGMENT is entered in favor of Defendants and against Plaintiff. Signed by Deputy Clerk on 12/19/2025. (JTM)** (Entered: 12/19/2025) |
| 12/19/2025 | 105 | NOTICE of Local Rule 1.11(e), which provides that, unless an order states another time, a seal under Rule 1.11 expires ninety days after a case is closed and all appeals are exhausted. To prevent the content of a sealed item from appearing on the docket after the seal expires, a party or interested non-party must move for relief before the seal expires. (Signed by Deputy Clerk). (JTM) (Entered: 12/19/2025) |
| 01/06/2026 | [106](#) | NOTICE of change of address by Christen Ann Petruzzelli (Petruzzelli, Christen) (Entered: 01/06/2026) |
| 01/06/2026 | [107](#) | MOTION for Extension of Time to File Motion for Entitlement to Costs by Mikayla Preston. (Petruzzelli, Christen) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 01/06/2026) |
| 01/16/2026 | [108](#) | NOTICE OF APPEAL as to [103](#) Order on Motion for Partial Summary Judgment Order on Motion in Limine, Order on Motion for Summary Judgment, [104](#) Judgment by William Lee Lawshe. Filing fee $605, receipt number AFLMDC-24340578. ***Case Stayed. (Roberts, Michael) (Entered: 01/16/2026) |
| 01/16/2026 | [109](#) | TRANSMITTAL of initial appeal package to the U.S. Court of Appeals - 11th Circuit re [108](#) Notice of Appeal,. Filing fee paid. (JDR) (Entered: 01/16/2026) |
| 01/20/2026 | [110](#) | RESPONSE in Opposition re [107](#) MOTION for Extension of Time to File Motion for Entitlement to Costs filed by William Lee Lawshe. (Roberts, Michael) (Entered: 01/20/2026) |
| 01/20/2026 | | ***11th Circuit Case Number: 26-10155-D for [108](#) Notice of Appeal, filed by William Lee Lawshe. (SJW) (Entered: 01/22/2026) |
| 01/30/2026 | 111 | **ENDORSED ORDER granting [107](#) Defendant Mikayla Preston's Motion for Extension of Time. The Court has considered Plaintiff's arguments but finds that good cause exists for the requested extension. Defendant shall file the subject Motion on or before February 5, 2026. Signed by Magistrate Judge Monte C. Richardson on 1/30/2026. (SBL)** (Entered: 01/30/2026) |
| 01/30/2026 | [112](#) | TRANSCRIPT information form filed by William Lee Lawshe re [108](#) Notice of Appeal USCA number: 26-10155-D. No transcript(s) requested. (Roberts, Michael) (Entered: 01/30/2026) |
| 02/05/2026 | [113](#) | MOTION for Taxation of Costs by Mikayla Preston. (Attachments: # [1](#) Affidavit of Matthew Carson, # [2](#) Exhibit Bill of Costs)(Petruzzelli, Christen) Motions referred to Magistrate Judge Monte C. Richardson. (Entered: 02/05/2026) |
| 02/06/2026 | [114](#) | NOTICE by Mikayla Preston re [113](#) MOTION for Taxation of Costs *of Filing Supplement Pursuant to M.D. Fla. Loc. R. 3.01(g)*. (Petruzzelli, Christen) (Entered: 02/06/2026) |
| 02/19/2026 | [115](#) | MEMORANDUM in opposition re [113](#) Motion for Taxation of Costs filed by William Lee Lawshe. (Roberts, Michael) (Entered: 02/19/2026) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/04/2026 09:26:31 | | | |
| **PACER Login:** | mroberts00779741 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00044-JAR-MCR |
| **Billable Pages:** | 11 | **Cost:** | 1.10 |

# ECF 85

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

**WILLIAM LEE LAWSHE,
an individual,**

     **Plaintiff,**

**v.**                                      **CASE NO: 3:24-cv-00044-MMH-MCR**

**MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office,
and KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,**

     **Defendants.**
_____/

**<u>DEFENDANT KATHLEEN DULLY'S</u>
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Kathleen Dully ("Dr. Dully" or "Defendant"), by and through her undersigned counsel and pursuant to Federal Rules of Civil Procedure 56, hereby moves for summary judgment in her favor as to the claims in Plaintiff's Second Amended Complaint [Doc. 40]. In support therefore, Defendant states the following:

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

On May 20, 2024, Plaintiff filed his Second Amended Complaint against defendants. [Doc. 40]. A singular count of the Second Amended Complaint—Count VII—was brought against Dr. Dully in her individual capacity, alleging a violation of the 14th Amendment Due Process Clause pursuant to 42 U.S.C. § 1983. [Doc. 40,

1

¶¶ 206-218]. This matter arose out of an investigation into Plaintiff's possession of child pornographic materials, and his subsequent arrest. Dr. Dully reviewed five images (*Exhibits A - E*) and authored three opinions (*Exhibits F - H*) at the request of law enforcement. Each opinion states that the individual pictured appears to be under 18 years of age based on their visible anatomical signs of sexual maturity.

Defendant Dully respectfully requests that this Court dismiss Count VII of the Second Amended Complaint alleging a violation of the Due Process Clause of the 14th Amendment by Dr. Dully for the following reasons: (1) Dr. Dully is entitled to complete immunity from liability for civil and criminal claims against her in this matter pursuant to 34 U.S.C. § 20342; (2) Dr. Dully is entitled to qualified immunity; and (3) Plaintiff effectively made a medical negligence claim against Dr. Dully under the guise of a constitutional violation, but he failed to comply with the presuit notice requirements of a medical negligence claim pursuant to chapter 766, Florida Statutes.

## II.    STATEMENT OF FACTS

### A. The St. Johns County Sheriff's Office initiated an investigation into Plaintiff's possession of child pornography and enlisted the aid of Dr. Kathleen Dully in offering her medical opinion regarding the images.

On or about February 20, 2023, the St. Johns County Sheriff's Office (the "Sheriff's Office") received a cyber tip (#153739160) from the National Center for Missing and Exploited Children reporting that Plaintiff was in possession of

"Apparent Child Pornography (Unconfirmed)." [Doc. 40, ¶¶ 35-36]. After receiving the tip, Detective Mikayla Preston was assigned to the case, and she reviewed the image of unconfirmed child sex abuse material ("CSAM") that accompanied the tip and initiated an investigation. [Doc. 40, ¶¶ 45-55].

Detective Preston presented the image to Dr. Dully on February 22, 2023, as part of the investigation to receive a medical evaluation of the images. [Doc. 40, ¶¶ 94-96, 99]. Before bringing the image to Dr. Dully, several investigators of the Sheriff's Office were already inclined to think that the image was CSAM. *Exhibit I - Eugene Tolbert's Deposition*, 15:13-25; *Exhibit J - Detective Preston's Deposition*, 263:17-264:3; 275:10-18. The investigators also understood that Dr. Dully's opinions could help as an initial assessment to analyze the appearance of the individuals in the unconfirmed CSAM. *Ex. I*, 15:8-12.

At all times relevant to this issue, Dr. Dully was the medical director of the University of Florida Child Protection Team, an agency of the State of Florida. [Doc. 40, ¶ 208]. The University of Florida Child Protection Team is an organization authorized and established by Florida Statute section 39.303 to aid state investigations into allegations of child abuse. [Doc. 40, ¶ 207]; Section 39.303, F.S.

Dr. Dully remains employed by the University of Florida College of Medicine as the medical director of the Child Protection Team ("CPT"), which assists with suspected or advertised child maltreatment cases for much of northern Florida.

3

*Exhibit K - Dr. Dully's Deposition*, 6:9-7:5. Dr. Dully and the CPT provide their services to law enforcement—both in this matter and in other matters—gratuitously. *Ex. I*, 75:10-13; *Ex. J*, 268: 14-16. Before assuming this position, Dr. Dully worked in various occupations related to child maltreatment starting as early as 1989 when she passed the general pediatric specialty board examinations, and she proceeded to receive her board certification in child abuse pediatrics in 2009. *Ex. K*, 7:6-10:8. Starting in 1994, Dr. Dully began using the sexual maturity rating ("SMR") or Tanner scale to review pornographic images to estimate the sexual maturity of the appearance of the individuals who were in them. *Ex. K*, 23:15-21.

**B. Dr. Dully reviewed the first image of CSAM and opined that the individual depicted appeared to be underage.**

When Detective Preston presented the first image (*Exhibit A – Filename f6a487 (last six characters)*) to Dr. Dully, she explained the image was the subject of a law enforcement investigation into a NCMEC cyber tip. That is all Dr. Dully knew before viewing the image. After reviewing the image, Dr. Dully offered her medical opinion that the individual "appear[ed] to be younger than the age of 18" and could have been as young as 12. [Doc. 40, ¶ 106]. Dr. Dully used the SMR to evaluate the appearance of the individual in the image and provide an estimated age range; however, she did not attempt to state or estimate the exact chronological age of the individual. *Ex. K*, 21:2-23. It is within the standard of care for medical professionals to use SMR when evaluating the age of a patient in any context. *Exhibit*

*L - Dr. Krugman's Deposition*, 27:12-17. Dr. Dully provided a letter to Detective Preston on February 22, 2023, explaining that the developmental genital appearance of the individual in the image was SMR IV and would be achieved at 12-15 years of age. *Exhibit F – February 22 Letter*. SMR IV, when considering genital appearance, is reached when pubic hair covers the entire triangle shape of the labia majora, the anterior commissure, and the mons pubis up to where the thighs join at the pelvis. *Ex. K*, 38:2-6. It is more likely than not that an individual evaluated at SMR IV for breast development is younger than 18 years old. *Ex. L*, 26:1-20. This process of reviewing images to determine the SMR that Dr. Dully followed is the same—or at least similar to—the process the Plaintiff's expert, Dr. Krugman, follows when working with law enforcement on CSAM issues. *Ex. L*, 18:17-19:17.

## C. Search Warrant

Detective Preston proceeded to draft an affidavit for a search warrant on February 28, 2023, in order to obtain a search warrant from Plaintiff's Electronic Service provider and gain access to content on Plaintiff's phone, and the warrant was granted on April 4, 2023. [Doc. 40, ¶¶ 118, 120]; *Ex. K*, 130: 16-23. Dr. Dully was not consulted during the drafting of the search warrant. *Ex. K*, 48:14-24.

## D. Additional Images

Detective Preston returned to Dr. Dully on April 5, 2023, with additional images to review. *Exhibit B – Filename 0065(1) and C – Filename 0059*. Detective

5

Preston told Dr. Dully that two of the images appeared to depict the same individual as the first image she reviewed, but provided no other investigative information. Dr. Dully provided a second opinion letter to Detective Preston on April 5, 2023, explaining that Detective Preston showed her two additional images of the what appears to be the same individual in the first image, and that Dr. Dully opined that the appearance of the individual in those images depicts development of SMR III or IV which would be achieved at 12-15 years of age. *Exhibit G – First April 5 Letter.*

The same day, Detective Preston presented two additional images to Dr. Dully that were retrieved from Plaintiff's phone. *Exhibit D – Filename DuckDuckGo (last phrase) and E – Filename VVFQ_o (last six characters)*. After reviewing these images presented to her by Detective Preston, Dr. Dully offered her medical opinion that the individuals appeared to be "less than or equal to 9-13.5 years old." *Exhibit H – Second April 5 Letter*. Dr. Dully provided a separate letter to Detective Preston on April 5, 2023, explaining that she made this opinion based on the depicted appearance of the individuals' breasts and genital areas. *Exhibit H.*

**E. Dr. Dully offered her opinion only on the appearance of the individuals in the images and did not opine as to their chronological ages.**

When offering these opinions, Dr. Dully assumed that other information outside of her opinions would be considered by Detective Preston in conducting the investigation, and Dr. Dully did not know that her opinions would be used in a probable cause affidavit to seek a search warrant. *Ex. K*, 48:14-24. Moreover, Dr.

Dully did not consider the opinions she offered about sexual maturity from the appearance of a model in a pornographic image to be reliable as a sole basis for law enforcement to base their decision to make an arrest, let alone for them to be a substitute for a full investigation. *Ex. K*, 32:9-19, 70:13-17. Similarly, the Plaintiff's expert, Dr. Krugman, would have expected law enforcement agents who requested his medical opinion to do more than solely request and review that opinion in their investigation. *Ex. K*, 14:4-12.

As required by statute, Dr. Dully provided assistance in a law enforcement investigation of suspected child abuse. She did not endeavor to establish as a scientific certainty, solely by her application of the SMR scales, the ultimate facts of a child pornography prosecution. The use of a SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image, so Dr. Dully did not offer any medical opinions on the actual age of the individuals in the images she examined. *Ex. K,* 46:13-18, 71:5-10. As such, the letters Dr. Dully wrote to Detective Preston speak only to the appearance and depiction of the individuals in the images. *Ex. F, G, and H*.  When providing her opinion to Detective Preston and any other law enforcement officers, Dr. Dully explained these limitations. *Ex. K*, 33:6-13, 47:9-17. The medical opinions Dr. Dully provided in this matter were not the driving factor in the investigation; instead, Detective Preston stated that, even

if Dr. Dully had refused to provide her services by reviewing the images, the case would not have stopped there. *Ex. J*, 192:6-195:7.

### F. Dr. Dully had no role in the continued investigation of Plaintiff.

After Dr. Dully provided her opinion letters to Detective Preston on April 5, 2023, she had no further involvement in the case. *Ex. K*, 84: 18-24. After April 5, 2023, Detective Preston and her office had no further meetings, phone calls, or correspondence of any sort with Dr. Dully concerning the images. *Ex. J*, 273:21-274:10. Moreover, Dr. Dully did not know Plaintiff or his relation to the images she reviewed when she offered her medical opinions. *Ex. K*, 84: 18-24. Accordingly, the final and ultimate responsibility for the investigation and charges brought against Plaintiff rested fully with the Sheriff's Office and Detective Preston. *Ex. J*, 105: 7-9; 286:7-20.

Detective Preston arrested Plaintiff for possession of CSAM pursuant to Florida Statute section 827.071(5) on April 12, 2023. [Doc. 40, ¶ 12]. This decision to bring charges against and arrest Plaintiff was not made through exclusive reliance on the medical opinions provided by Dr. Dully. *Ex. J*, 274:22 - 275:1. The probable cause necessary for this action was found through multiple factors, including: (1) Detective Preston and others in her office understanding the images to be CSAM; (2) Dr. Dully's medical opinions; and (3) Detective Preston's findings from searching Plaintiff's digital downloads and data. *Ex. J*, 274: 11-21.

**G. Summary of Dr. Dully's Involvement in the Investigation**

Dr. Dully reviewed five images. *Exhibits A-E*. Dr. Dully employed her training and experience as a board-certified child abuse pediatrician to provide an opinion on the possible age of the individuals depicted based on the appearance of the image. She provided her opinions in the form of three single-page letters. *Exhibits F, G, and H*. Dr. Dully is the only witness identified in this case with any medical training that has reviewed the images. *Ex. L*, 8:23-25. Dr. Dully admits that the application of SMR is not an exact science, but she remains confident in her medical evaluation. While Plaintiff's expert offers some criticism of Dr. Dully's application of the SMR scale, Plaintiff offers no actual rebuttal of Dr. Dully's ultimate opinion that the individuals appear to be younger than 18. Plaintiff offers no evidence that Dr. Dully knew or had any reason to know that the individuals were over the age of 18 at the time she completed her review. *Ex. L*, 33:2.-34:8.

<div align="center">

**MEMORANDUM OF LAW**

</div>

### III.    SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when the moving party shows that "…there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted); Fed. R. Civ. P. 56(c). An

otherwise correctly supported motion for summary judgment cannot be defeated simply due to the existence of some factual disputes between the parties. *Butzer v. CoreCivic, Inc.*, 2018 WL 7144481 (M.D. Fla. Dec. 5, 2018). The precise requirement is that there be "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A party asserting that a fact is genuinely disputed must support the assertion by citing to specific materials in the record. Failure to do so allows the court to consider the facts as undisputed for summary judgment purposes. Fed. R. Civ. P. 56(c)(1)(A), (e)(2)).

The Court is not obligated, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990) (quoting *Anderson*, 477 U.S. at 242). "[C]onclusory allegations without specific supporting facts have no probative value," and are legally insufficient to defeat summary judgment. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

10

party, there is no 'genuine issue for trial,'" and a court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Moreover, when the record clearly contradicts the nonmovant's version of the facts, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## IV.    ARGUMENT

Plaintiff's single Count against Dr. Dully claiming a violation of the Due Process Clause of the 14th Amendment alleges the following: (1) Dr. Dully provided deliberately false and fabricated evidence which she knew would be used in the criminal charge and prosecution of Plaintiff; (2) Dr. Dully was deliberately indifferent to Plaintiff's innocence; (3) Dr. Dully was motivated by a malicious or reckless indifference to Plaintiff's rights; and (4) Dr. Dully intentionally applied techniques to yield false information. [Doc. 1, ¶¶ 151-155]. However, the evidence in this case has consistently shown that Dr. Dully was acting both in good faith and within the standard of care when she provided her medical opinions in this matter.

In Plaintiff's Motion for Partial Summary Judgment [Doc. 66], he makes the case that Dr. Dully's willingness to use SMR scales, an inexact science, in a criminal case is malicious as a matter of law. In doing so, he conveniently forgets the testimony of his own expert pediatrician and instead favors stacking up inferences and insinuations. Plaintiff argues Dr. Dully's honesty about the limitations of her

11

opinion demonstrates malice, and points to no other evidence establishing that she knew her opinion was unsupported.

Dr. Dully's conclusion – that the individuals in the images appear to be children – has not even been challenged by a contrary medical expert. She did not withhold any evidence, as the sole basis of her opinion is the images themselves. She honestly concedes that she cannot provide an exact age estimation due to the inherent limitations of the available medical science and the possibility an image has been altered. Since Dr. Dully concluded that the individuals in the images bore the appearance of children based on her medical evaluation and there was no contrary evidence available to her, then she cannot have deliberately or maliciously fabricated her opinion. A facial review of the images (*Exhibits A – E*) and Dr. Dully's reports (*Exhibits F – H*) supports the obvious conclusion that nothing malicious or constitutionally offensive occurred here.

Because Plaintiff has failed to provide any facts that support the allegations made in the Complaint against Dr. Dully, his legal claims must fail. Moreover, Dr. Dully is entitled to the following protections:

## A. 34 U.S.C. § 20342 provides a presumption of good faith and complete immunity from civil liability.

Title 34 U.S.C. § 20342 acts as a complete bar in this case to the imposition of any civil liability on the part of Dr. Dully for providing her medical opinions in this matter. Section 20342 states as follows:

12

**(1) In general**

Notwithstanding any other provision of law, any individual making a good faith report to appropriate authorities of a suspected or known instance of child abuse or neglect, or who otherwise, in good faith, provides information or assistance, including medical evaluations or consultations, in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect shall not be subject to civil liability or criminal prosecution, under any Federal law, rising from making such report or providing such information or assistance.

**(2) Presumption of good faith**

In a Federal civil action or criminal prosecution brought against a person based on the person's reporting a suspected or known instance of child abuse or neglect, or providing information or assistance with respect to such a report, as described in paragraph (1), there shall be a presumption that the person acted in good faith.

**(3) Costs**

If the defendant prevails in a Federal civil action described in paragraph (2), the court may award costs and reasonable attorney's fees incurred by the defendant. *34 U.S.C.A. § 20342*.

Dr. Dully's involvement in this matter is explicitly included within the broad protections of section 20342 because she is an individual who provided medical opinions through consultations with law enforcement regarding an investigation pursuant to a good faith report of CSAM. It is commonly understood that cases involving children who are unlawfully brought into the pornography industry constitute child abuse. *Ex. L*, 9:25-10:4. Because Dr. Dully's role in this matter is covered by Section 20342, she **must** be excluded from any civil liability.

In providing her medical opinions to the Sheriff's Office, Dr. Dully was acting in good faith, and Plaintiff has yet to provide any evidence to overcome this statutory

13

presumption. The very limitations that form the foundation of Plaintiff's attack against Dr. Dully, that SMR is an inexact science, preclude his argument that she acted in bad faith. There was absolutely no way she could know, based on the images themselves, that the individuals were adults. If Dr. Dully did not know that the images were adults, she could not have provided knowingly false or fabricated evidence. In fact, Plaintiff's expert stated that he is unable to testify that Dr. Dully provided deliberately false information, conspired with law enforcement to achieve a specific result, or did anything beyond what he would consider to be negligently applying medical standards. *Ex. L*, 30:2-21. When explaining where Dr. Dully negligently erred in offering her medical opinion, Dr. Krugman stated:

> At a minimum in her report, having a line about the potential uncertainty of the images being altered, the child -- or adult in this case -- being, you know, groomed, whether it's waxing, shaving, or whatever, to look like a younger child should have been mentioned. And, additionally, I do think when there is such a discrepancy between genitals and breasts, you're probably better off not making the conclusion that there -- with certainty that this was a child and that this could be an adult. And I think if there was hedging, if there -- I don't mean hedging. If there was some sort of, you know, caveat to these conclusions, that these conclusions are based on what I saw, it just was too concrete and certain given the data that was presented.

*Ex. L*, 31:1-14. This is not a description of malicious conduct. It is also important to note that, in providing his expert report on Dr. Dully's review of the unconfirmed CSAM images in this case, Dr. Krugman did not review any of the images himself. *Ex. L*, 8:23-9:4. He does not and cannot make the claim that Dr. Dully's evaluation

14

was wrong, or that she should have been able to identify the individuals as adults. Plaintiff and his expert have not shown in any way that Dr. Dully was working in bad faith. This case is analogous to *Miami-Dade Cnty. v. Asad*, where the Florida's 3rd District Court overruled the trial court's denial of summary judgment on a malicious prosecution claim that proceeded to trial despite Plaintiff's own expert denying any malice on the part of the defendant. 78 So. 3d 660 (Fla. 3d DCA 2012). The Court provided the following evaluation of Plaintiff's decision to pursue his claim of malice despite the contrary conclusions of his own expert:

> The Plaintiffs presented absolutely no evidence of malice. In fact, the Plaintiffs' own expert, Philip Sweeting, admitted that Sgt. Sedano acted without malice. The Plaintiffs were not surprised by Mr. Sweeting's testimony because he unequivocally testified in his videotaped testimony, prior to trial, that there was no malice. Thus, the Plaintiffs should not, in good faith, have pursued their malicious prosecution claims, and the trial court erred in denying the Defendants' motion for summary judgment and their subsequent motion for a directed verdict as to the malicious prosecution claims.

*Miami-Dade Cnty. v. Asad,* 78 So. 3d 660, 664–65 (Fla. 3d DCA 2012).

Additionally, section 20342 specifically creates a presumption of good faith for individuals like Dr. Dully who assisted in investigations related to child abuse or neglect. *34 U.S.C.A. § 20342(2)*. At the time of her assistance in the investigation, Dr. Dully was the medical director of the CPT at the University of Florida, an organization expressly established by statute to aid state investigations into allegations of child abuse. Dr. Dully reviewed the images and provided her medical

15

opinions without payment, without knowledge of who the individuals in the images were, and without knowledge of Plaintiff's identity or why Detective Preston asked her to review the images. Despite Plaintiff's allegations in the Second Amended Complaint that Dr. Dully was motivated by a malicious or reckless indifference to Plaintiff's rights and that she provided deliberately false and fabricated evidence to be used to prosecute Plaintiff, the evidence does not support Plaintiff's claims, much less overcome a presumption of good faith. [Doc. 40, ¶¶ 213-217].

Dr. Dully did not know the ultimate goals of the detective's investigation, and she did not know Plaintiff's identity or what his connection might be to the images she reviewed for the Sheriff's Office. Moreover, there is no evidence that Dr. Dully created false evidence or fabricated images or evidence to be used against Plaintiff as alleged. Rather, Dr. Dully provided her medical opinion describing the appearance of individuals in the images that were brought to her by the Sheriff's Office. Dr. Dully reviewed the images through the use of SMR and her ample professional experience. Due to the inherent limitations of SMR, Dr. Dully's opinions both could not give and did not give the exact chronological age of the individuals in the images; instead, the opinions described the appearance of those individuals with SMR classifications. Because there is no evidence showing that Dr. Dully was acting in bad faith by assisting the Sheriff's Office in this investigation, Plaintiff failed to overcome the presumption of good faith provided by section 20342 through his

16

conclusory and unsupported allegations of malice and Dr. Dully is thus entitled to complete immunity from related civil claims brought against her as no reasonable jury could find that she was acting in bad faith.

Finally, section 20342 expressly states that a defendant who is found to be entitled to its protections from liability in a federal civil action may be awarded by the court costs and reasonable attorney's fees incurred. *34 U.S.C.A. § 20342(3)*. Because Dr. Dully has effectively been punished for making good faith efforts to assist law enforcement in a possible child abuse investigation, regardless of the outcome of that investigation, Dr. Dully respectfully requests that this Court grant her reasonable costs and fees incurred in her defense.

**B. Dr. Dully is entitled to Qualified Immunity.**

Government officials are protected from civil lawsuits by qualified immunity unless their conduct violates a statutory or constitutional right that was clearly established when the alleged violation occurred. *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would

17

have known.'" *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. See *Gonzalez v. Reno*, 325 F.3d 1228, 1230 (11th Cir. 2002). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. *Id*. Discretionary authority includes all actions that the official undertook as part of their duties that were within the scope of their authority. See, e.g., *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).

Pursuant to Section 768.28(9)(a), Fla. Stat., state officers, employees and agents are immune from lawsuits arising from "act[s], event[s], or omission[s] of action in the scope of [their] employment or functions." *Eiras v. State Dep 't of Bus. & Prof'l Regulation Div. of Alcoholic Bevs. & Tobacco*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017). This immunity "may be pierced only if state agents either act outside the scope of their employment, or act 'in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.'" *Id*. (quoting Fla. Stat.§ 768.28(9)(a)). Thus:

> In order for plaintiff to succeed in piercing the statutory immunity defense, he must make a good faith allegation in the complaint that the public office official either acted outside the scope of his employment or in bad faith. The statute places an affirmative duty on the plaintiff to satisfy this pleading requirement. This duty cannot be satisfied by mere conclusory allegations. Without support, the complaint must fail.

18

*Id*. (quoting *Brown v. McKinnon*, 964 so.2d 173, 175 (Fla. 3d DCA 2007) (internal citations omitted)). In this case, Dr. Dully is entitled to a presumption of good faith. *34 U.S.C.A. § 20342(2)*.

As the Second Amended Complaint expressly states that Dr. Dully was at all times "acting under the color of State Law" and "[with]in the course and scope of her role," the burden of proof necessarily shifts to Plaintiff to show that Dr. Dully did violate a clearly established constitutional right in bad faith—meaning actual malice—when she provided her medical opinions to the Sheriff's Office. [Doc. 40 ¶¶ 146-148]. Plaintiff has failed to prove either prong of this requirement to impose liability.

### a. Plaintiff fails to assert a clearly established constitutional right

To satisfy the clearly established constitutional right requirement of the exception to qualified immunity, a law should not be defined at a high level of generality, and this can be demonstrated in the following three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional rights was clearly violated, even in the total absence of case law." *Perez v. Suszczynski*, 809 F.3d 1213, 1222 (11th Cir. 2016). Plaintiff alleged that Dr. Dully violated the 14th Amendment Due Process Clause by: (1) providing deliberately

19

false and fabricated evidence which she knew would be used in the criminal charge and prosecution of Plaintiff; (2) providing false or misleading evidence through deliberate indifference to Plaintiff's innocence which she knew would be used in the criminal charge and prosecution of Plaintiff; and (3) intentionally applied techniques which would yield false information which was then used to charge or prosecute Plaintiff. [Doc. 40 ¶¶ 213-215].

The Complaint brings only a 14th Amendment Due Process claim against Dr. Dully. The claim against Dr. Dully is constitutionally distinct from the claims against Detective Preston, which find their basis in the 1st and 4th Amendments. [Doc. 40 ¶¶ 132-205]. While a fabrication of evidence claim most certainly is a "species of malicious prosecution," they are not the same. *Watkins v. Officer Davlin Session*, No. 19-60810-CIV, 2021 WL 66372 at *10 & n.6 (S.D. Fla. 2021); see *McDonough v. Smith*, 588 U.S. 109, 114-15 (2019); see also *Foulke v. Morgan*, No. 3:20-CV-5506-MCR-EMT, 2021 WL 12170573 at *5 (N.D. Fla. 2021). Moreover, "under the Fourteenth Amendment, there is no substantive due process right to be free from malicious prosecution without probable cause" because "[a] malicious prosecution claim arises under the Fourth Amendment, not Fourteenth Amendment substantive due process." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010).

It is true that "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against the state actors under the due process clause of the

20

Fourteenth Amendment…" *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016). However, the Court further explains that, for this fabricated evidence claim to stand under the Fourteenth Amendment, the plaintiff must "draw a meaningful connection between [his] particular **due process injury** and the use of fabricated evidence against [him]." *Id*. at 371-72 (internal citations removed) (emphasis added). The Eleventh Circuit addressed this even more clearly by stating that a Fourteenth Amendment claim of fabrication of evidence must allege a procedural due process claim such as denying a plaintiff "the constitutionally required procedures necessary to challenge his indictments and arrest." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010). In fact, the Eleventh Circuit in *Rehberg* found that the plaintiff's successful challenges to the indictments brought against him demonstrated that there was no due process violation. *Id*.  Similarly, Plaintiff successfully used the legal system to challenge the allegations against him, and he made no procedural due process claims that would implicate the Fourteenth Amendment.

Even if Plaintiff's allegations were to improperly be considered under the 4th Amendment, Dr. Dully's minimal involvement does not satisfy the requirements of a fabricated evidence or malicious prosecution claim. See *State v. Cayward*, 552 So. 2d 971 (Fla. 2d DCA 1989) (finding false evidence where police investigators deliberately manufactured *fake* laboratory reports and presenting them to a suspect

21

during an interrogation to secure a confession); *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) (finding false evidence where a crucial witness for the State in a murder prosecution offered false testimony that the State Attorney ***recognized as false when it was given***, and they chose to not correct that false testimony); *Ashley v. City of New York*, 992 F.3d 128 (2021) (finding false evidence where police detective ***admitted to knowing the complaint was false*** when signed);

Each case cited by Plaintiff in his Motion for Partial Summary Judgment show that the state actor charged with fabricating evidence had ***knowledge*** of that evidence being false. For example, in *Aguirre-Jarquin* (although summary judgment on the fabrication of evidence claim in favor of the plaintiff was *still* denied) the court found that a state finger-print examiner could have violated the plaintiff's due process rights by fabricating evidence and that Plaintiff arguably established knowledge through the following: (1) repeatedly sending print matches to an older analyst with medical issues who was considered to be incompetent; (2) violating policy by sending print matches for verification after other examiners in the office had expressly disagreed with the identification; (3) and failing to get prints verified by anyone else at all. No. 6:20-CV-25-RBD-DCI, 2023 WL 2558479 at *7 (M.D. Fla. 2023).

### a. There is no evidence Dr. Dully knew her opinions were false

The cases above present a critical distinction to the case against Dr. Dully: each allege and prove actual knowledge that the defendant submitted false evidence. Disputed or even completely incorrect evidence does not constitute fabrication unless the defendant knows their statement was false at the time it was submitted. *Black v. Montgomery County*, 835 F.3d 358 (2016). In order to establish that Dr. Dully submitted "knowingly false" or "intentionally fabricated" evidence, Plaintiff must prove that Dr. Dully *knew* the girls depicted in the images were over the age of 18. It is not enough to call her opinions unscientific, ill-informed, overly limited, or negligent.

No evidence in this case demonstrates that Dr. Dully knew the images depicted adults prior to authoring her opinion. Dr. Dully reviewed the actual images under investigation and provided corresponding medical opinions based on her extensive experience and training. Dr. Dully explained the limitations of SMR analyses to Detective Preston and included language in her letters demonstrating that her review was based on appearances, and she fully anticipated that her opinion would be supplemented by a rigorous investigation by the Sheriff's Office. Moreover, the SMR analysis Dr. Dully used was not out of the ordinary for professionals in her field. *Ex. L*, 18:17-19:17. As such, it is unclear how Dr. Dully— in her limited involvement in the investigation—deliberately provided false or misleading evidence, was deliberately indifferent to Plaintiff's innocence, or

23

intentionally applied techniques to yield false information. Plaintiff has provided no evidence to show that Dr. Dully violated a clearly established right.

### b. Dr. Dully Acted in Good Faith

Even if Dr. Dully was considered to have violated a clearly established right by providing medical opinions to Detective Preston, she did not act in bad faith. The bad faith prong of § 768.28, Fla. Stat., has been construed using the actual malice standard, *Parker v. State Bd. of Regents ex rel. Fla. State Univ.*, 724 So.2d 163, 167 (Fla. 1st DCA 1998). This means the conduct must be committed with "ill will, hatred, spite, [or] an evil intent." *Eiras*, 239 F. Supp. 3d at 1343 (quoting *Reed v. State*, 837 So.2d 366, 368-69 (Fla. 2002)). "Conduct meeting the wanton and willful standard is defined as "worse than gross negligence," *Sierra v. Associated Marine Insts., Inc.*, 850 So.2d 582, 593 (Fla. 5th DCA 2003), and "more reprehensible and unacceptable than mere intentional conduct." *Eiras*, 239 F. Supp. 3d at 1343 (quoting *Richardson v. City of Pompano Beach*, 511 So.2d 1121, 1123 (Fla. 4th DCA 1987). Likewise, to establish that an official acted with deliberate indifference, the plaintiff must prove that the official was subjectively aware of a serious risk, that the official disregarded that risk, and that the official acted with subjective recklessness. *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024).

Sometimes, actions have consequences. Plaintiff frequently downloaded teen pornography, purportedly due to his erectile disfunction. *Exhibit M - Plaintiff's*

24

*Deposition, 60:4-19*. Thousands of pornographic images were captured on his personal cell phone. Plaintiff downloaded so many images so frequently that he routinely had to delete older images to make space for new downloads. *Ex. M, 67:4-11*. One of those images was submitted to NCMEC, which led to an investigation. The images are *obviously* questionable as to their age and legality. Dr. Dully provided an opinion that matched what she saw in front of her. Plaintiff's argument that something malicious, evil, or reckless had to occur for him to be arrested is untenable.

Plaintiff failed to meet his affirmative duty of making a good faith allegation that Dr. Dully acted with actual malice or knowledge of potential harm to Plaintiff, relying instead on conclusory allegations to support his claims that Dr. Dully was acting in bad faith. As shown above, even Plaintiff's expert—after reviewing Dr. Dully's medical opinions—did not testify that Dr. Dully acted with anything more than negligence. *Ex. L*, 30:2-21. Even if this Court were to find that Dr. Dully acted negligently in providing her medical opinions, there is no evidence that this negligence rose to the level of malice that would overcome the protections of qualified immunity. Therefore, Dr. Dully is protected by qualified immunity and should be dismissed from this case in her individual capacity.

**C. The underlying factual allegations to Plaintiff's claims sound in medical negligence, and Plaintiff did not comply with the presuit requirements of a medical negligence claim pursuant to Chapter 766 of the Florida Statutes.**

25

Even though Plaintiff's singular Count against Dr. Dully arises entirely from Dr. Dully's medical judgment regarding the use of SMR and her decision to apply that judgment in a medical opinion concerning CSAM, Plaintiff improperly attempted to couch what is clearly a medical negligence claim into a 14th Amendment violation in an attempt to skirt the presuit requirements[1] of Chapter 766 of the Florida Statutes. Standard medical practices and their accompanying standards of care encompass medical professionals evaluating images and videos of patients. *Ex. L*, 23:9-18.

These presuit notice requirements are not limited by the labels of particular counts in a complaint because "when the factual allegations belie the conclusory legal allegations, the trial court is permitted to, indeed must, apply the law to the well-pleaded factual allegations and decide the legal issue of whether the complaint sounds in simple or medical negligence." *Dr. Navarro's Vein Ctr. of Palm Beach, Inc.*

---

[1] Chapter 766 of the Florida Statutes requires the following presuit actions: (1) a presuit investigation must be made by claimant pursuant to section 766.203 to ascertain that there are reasonable grounds to believe that the defendant was negligent and that the negligence resulted in injury to the claimant; (2) a notice of intent to initiate litigation must be mailed to each prospective defendant by verifiable means as specified in section 766.106(2); (3) a verified written medical expert opinion from a medical expert as described in section 766.202(6) must be provided at the time the notice of intent to initiate litigation is mailed; and (4) defendants must be allowed a 90-day tolling period to conduct their own investigation and respond to the claimant.

*v. Miller*, 22 So.3d 776, 778 (Fla. 4th DCA 2009) (quoting *Brandon v. Pinellas County*, 141 So.2d 278, 279 (Fla. 2d DCA 1962).

Likewise, in 2019, the First District Court of Appeals affirmed the ruling of trial court judge James Fensom in the Fourteenth Judicial Circuit when he held that the intentional infliction of emotional distress claim "ar[o]se out of the medical treatment and decisions made" by the Defendants who had allegedly performed a medical procedure without Plaintiff's consent. *Freeman v. Desilva*, 2018 Cir. LEXIS 8220, aff'd 266 So.3d 140 (2019). Judge Fensom and the First District Court of Appeals disagreed with Plaintiff's broad argument that, because he was alleging an intentional tort, his claims were not subject to the presuit requirements of Chapter 766. *Id*.

As pointed out by Judge Fensom, "It is well settled that a claim falls under medical negligence or medical malpractice when the claim arises out of "the rendering of or the failure to render, medical care or services." *J.B. Sacred Heart Hosp. of Pensacola*, 635 So.2d 945, 949 (Fla. 1994). The allegations of Plaintiffs' Second Amended Complaint in this case center around the rendering of Dr. Dully's medical services. Specifically, the Second Amended Complaint speaks to Dr. Dully's use of SMR to review the sexual development of the appearances of the individuals in the images presented to her by Detective Preston. [Doc. 40, ¶¶ 104-106, 213-215]. Plaintiff's expert affirms that this is a contention of medical negligence that

27

clearly qualifies as medical care or services under § 766.106(1)(a), Florida Statutes. *Ex. L*, 23:9-18. Even more directly, the Second Amended Complaint alleges that Dr. Dully "applied techniques which would yield false information…" [Doc. 40, ¶ 215]. These claims fit squarely within the rendering of medical services, and thus should be considered allegations of medical negligence in lieu of Plaintiff's stated 14th Amendment Due Process claim, and Plaintiff was required to comply with the presuit requirements of Chapter 766. Plaintiff did not comply with any of the presuit requirements of Chapter 766.

Moreover, Plaintiff can no longer initiate or engage in the required presuit process because the statute of limitations and the statute of repose have lapsed. Because Plaintiffs' claims against Dr. Dully sound in medical negligence and not in constitutional violations, the presuit screening process was required.  Due to Plaintiff's noncompliance with the presuit screening process and because Plaintiff cannot now engage in the presuit screening process due to the expiration of the statute of limitations and statute of repose, the claims against said Defendant are subject to dismissal with prejudice.

## V.    CONCLUSION

There can be no genuine dispute of material fact regarding Dr. Dully's involvement in Plaintiff's investigation. Plaintiff has not and cannot provide any evidence to support his claims of false and fabricated evidence provided deliberately

by Dr. Dully to be used against Plaintiff for the reasons stated above. Dr. Dully is entitled to qualified immunity and the complete protections of 34 U.S.C. § 20342. Additionally, Plaintiff failed to comply with the presuit requirements his claims necessitate, therefore Dr. Dully is entitled to summary judgment.

WHEREFORE, Defendant respectfully requests this Court enter final summary judgment in its favor and grant such other relief as the Court deems proper.

Respectfully submitted,

*/s/ Jami M. Kimbrell*
Jami M. Kimbrell, Esq.
Florida Bar No. 0657379
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Jami@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

*/s/ John Wilson*
John Wilson, Esq.
Florida Bar No. 84798
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Johnwilson@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by e-filing on September 12, 2025.

<div align="center" style="margin-left:40%">

*<u>/s/ Jami M. Kimbrell</u>*
Jami M. Kimbrell, Esq.

*<u>/s/ John Wilson</u>*
John Wilson, Esq.

</div>

# ECF 90

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

   Plaintiff,

v.           Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

   Defendants.

_____/

## PLAINTIFF'S REPLY TO PRESTON'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF 78)

In opposing Partial Summary Judgment, Counsel for Preston attempts to minimize the significance of the documentation and information provided by Jeffry Douglas. (ECF 78 P.2-3) This ignores Preston's testimony that the age verification documents "obviously would have changed the entirety of the investigation." (*Preston Deposition, March 13th 2025*, P.154, ln. 12-20, ECF 67 Exhibit F)

Within a period of less than 24 hours, Douglas produced photographs of the two models holding passports. (see ECF 67, Exhibit H) The passports, although redacted to protect the privacy of the models[1], clearly show the birth date of the models. *Id.* Mr. Douglas produced a sworn statement and email, which outlines

_____

[1] Mr. Douglas has unredacted copies of the passport images, as indicated in his reference to the FBI investigation regarding the Milana D model. (see ECF 67, Exhibit H)

1

Metart.com's policy and procedures regarding compliance with age verification laws and, again, states that he has reviewed the relevant documents and states when the earliest photographs of Milana D and Kacey Lane were taken, observing that they were adults. *Id.*  Mr. Douglas indicated that he had requested additional information and provided direct evidence that FBI Agent Terri Botterbush had previously investigated the identity of Milania D. *Id.*

If true, this information would be definitive proof of innocence and there is no record evidence to support that it is not true. However, without any evidence or basis, Preston questions the veracity of the information, while fully conceding that she has never done anything to investigate the age documentation provided. (Response ECF P.4) For example, she never went to the website (*Preston Deposition, March 13th 2025*, P.55, ln. 113-14, ECF 67 Exhibit F) or contacted Mr. Douglas. (Affidavit of Douglas may 8, 2025, ECF 67 Exhibit H ¶12). Neither Defendant choose to depose Mr. Douglas.

The information is not hearsay. Mr. Douglas is a records custodian. He provided testimony in the form of an affidavit that the information is kept pursuant to legal requirements and business policy at or near the time the event occurred. *Fed R. Evid*. 803(6). Not only is this admissible evidence, it is the only evidence of the models' chronological age.

In fact, the only evidence which would prove that the models depicted were adults at the time of the images would be (1) evidence of their birthdate and (2) evidence that the date of the subject photography occurred more than 18 years after the date of birth. Mr. Douglas, whose job it is to be the records custodian, provided

2

both pieces of information, *along with a willingness to fully cooperate*. Preston fails to articulate what more information or cooperation she would have expected with less than 24 hours notice, 5 days before Christmas. No objective officer in possession of this information could reasonably find probable cause that the models were in fact under the age of 18.

Additionally, in responding to the Motion for Partial Summary Judgment, Preston ignores the fact that there is not a reliable medical method for estimating the chronological age of an individual depicted in a digital photograph. Rather, she argues, without any factual basis that "Dr. Dully's opinions were reliable." (ECF 78 P. 9-10) Preston cannot successfully oppose Plaintiff's motion by simply ignoring one of the central facts of this case.

Preston is not a doctor. Tolbert is not a doctor. Payne is not a doctor. These witnesses cannot establish Dr. Dully is an expert in age estimation or that her opinions were reliable. Tolbert's suggestion to consult with Dully does not make her opinions scientifically reliable. The fact that Payne or any other law enforcement officer has previously relied on Dr. Dully's opinions about chronological age, does not make the opinions reliable. This testimony only confirms that other criminal suspects have been subjected to potentially false and fabricated evidence from Dr. Dully.

Dully, as a medical doctor, is the only person involved in this criminal investigation with the ability to state the reliability her opinions. *Moore v. Inuitive Surgical, Inc.* 995 F.3d 839 (Experts must be qualified to offer expert opinions.) She unequivocally and repeatedly testifies that she warned Preston that her opinions

3

were not scientifically reliable, *and Preston does not deny this*. Preston does not recall any of the contents of her conversation or discussion with Dully. (Preston Deposition March 13, 2025, p. 102 ln.1-23; p.114; p.276 ln. 8, ECF 67, Exhibit F) Preston recalls nothing about Dr. Dully's qualifications, methods or reliability in estimating the chronological age of a model from review of digital images. (*Preston Deposition, March 13, 2025* see generally p.101-106, ECF 67, Exhibit F) When asked why she thought Dully's opinions regarding age was reliable, Preston confesses that it's a "personal opinion… which I don't know." (*Preston Deposition, March 13, 2025* p.103 ln. 22 – 104 ln.18, ECF 67, Exhibit F) There is no evidence that Dully ever told Preston that the reports contained reliable medical opinions. Preston's "personal opinion" that Dr. Dully's medical opinions are reliable does not create a material dispute of fact.

Det. Preston has not refuted or contradicted the testimony of Dr. Dully regarding her verbal warning about the lack of reliability of her medical opinions. The only evidence is that Preston ignored the warning that the opinions were not reliable, just as she continues to ignore the lack of reliability of Dr. Dully's opinions in her opposition to Plaintiff's Motion.

Former ASA Payne's affidavit adds nothing to the material facts. She explicitly states that she relied on Dr. Dully's opinions of age, in this and other cases, to support her probable cause analysis. (ECF 77-8) Her complaints about Mr. Douglas's response to the initial requests for age verification is equally meaningless. There is no evidence that Payne tried to do any of things she raises as issues with the documentation. Mr. Douglas has testified in his affidavit that no law

4

enforcement officer from St. John's County has contacted him attempting to verify the age of any model. (Affidavit of Douglas may 8, 2025, ECF 67 Exhibit H ¶12) Payne received the email from Mr. Peirce on December 20, 2025 with documentation (*Affidavit and emails of Crawford Pierce,* ECF 67 Exhibit H) and dropped the case just seven days later without any request for additional information. *Id.*

The evidence, even without the age verification documentation, did not support probable cause. As outlined in the Motion, Preston had reason to question the validity of the "unconfirmed" NCMEC Cybertip report[2], the model was not pre-pubescent as described, and the image was available publicly which was a contradiction. She had reason to question her own interpretation of the image as being a minor, as other detectives disagreed with her. She knew that the statements about met-art.com from google may not be reliable. (*Preston Deposition, March 13, 2025* ECF 67, Exhibit F 53 12-17)  She has admitted that she did not know if the statements from Det. Green regarding met-art.com were reliable. (*Preston Deposition, March 13, 2025* P.54 9-12 ECF 67, Exhibit F) She knew that pornographic images on the internet were almost always portrayed as adults to the public (*Preston Deposition, March 13th, 2025,* P. 67, ln 23 – P.68, ln.1, ECF 67, Exhibit F) and could not say Mr. Lawshe believed the models were minors.[3]

---

[2] Preston argues that "unconfirmed" CP means something different than is shown in the evidence of this case. (ECF 78 P.18). The NCMEC corporate representative testifies clearly that unconfirmed means "when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibit, but that NCMEC was not able to confirm the age of the individual depicted."  (NCMEC Corp. Rep. Deposition p. 22 ln.18-24, ECF 67 Exhibit E) According to NCMEC, the CyberTip image is age indeterminate. *Id.*

[3] Preston argues that a "reasonable officer could infer Plaintiff's intention from his actions. (ECF 78 P. 19) However, Det. Preston did not testify that she inferred any intent or knowledge. She testified that she did not

(*Preston Deposition, March 13th, 2025*, P.172, ln. 20 – P.174, ln. 9, ECF 67 Exhibit F) This fact, in and of itself, would give a reasonable person reason to question whether there was probable cause to believe that Mr. Lawshe had committed the crime of possession of CSAM. Possession of an image which portrays a model of indeterminate age, without more, cannot establish probable cause of possession of child pornography, especially when the image is published on the public internet. At the most, these facts would indicate to a "cautious man' that further investigation is justified before instituting a proceeding. See <u>Rankin v. Evans, 133 F.3d 1425</u> (1998)

As to qualified immunity, Plaintiff essentially raises three constitutional rights which he claims were violated. First, that a search or arrest requires probable cause. (ECF 76 P.17) Second, that the constitution requires a reasonable investigation. (ECF 76 P.17-18) Third, officers cannot support an affidavit for a warrant with deliberately false statements or omissions of material fact. (ECF 76 P.18-19)   Other than being dismissive, Preston does not seriously contend that these rights were not clearly established at the time of this case.  They clearly were.

Preston's argument that Plaintiff is merely making "investigative suggestions" ignores the actual evidence of this case. Preston's own supervisor – not the Plaintiff - has described Preston's failure to attempt to identify the individuals as "sloppy police work." (*Tolbert Deposition,* P.46, ln. 9-16 ECF 67 Exhibit C) Det. Greene expressed the opinion that Preston should have taken more time and visited the

---

make any inference, and that such guess would be speculation. (*Preston Deposition, March 13th, 2025*, P.172, ln. 20 – P.174, ln. 9, ECF 67 Exhibit F) Such an inference would be inherently problematic – given that Det. Preston readily acknowledges that other officers did not believe that the images clearly depicted a minor and cannot say that they were wrong.[3] (*Preston Deposition, March 13th 2025*, P.93, ln. 6-23, ECF 67 Exhibit F)

websites. *(Greene* P. 14 Ln. 2-13 ECF 67 Exhibit D). This testimony must be understood in the context of a material disagreement among SJSO detectives about how to interpret the age of the model depicted in the images. (*Preston Deposition, March 13th 2025*, P. 101, ln.5-16; P.96, ln.17-19; P.169, ln. 2-17). Preston knew that federal law required age documentation (*Preston Deposition, March 13th, 2025*, P.141 ln.15-21) and concedes in her testimony that the information was readily available. (*Preston Deposition, March 13th, 2025* p.147 ln.12-18). She offers no explanation as to why she ignored this potential evidence.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on September 16, 2025, and the foregoing document is being served this day on all counsel or parties of record.

*/s/ Michael K. Roberts*

_____

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff

7

# ECF 91

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

   Plaintiff,

v.             Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

   Defendants.
_____/

### PLAINTIFF'S REPLY TO DULLY'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF 75)

Defendant Dully has conceded every material fact supporting Plaintiff's

Motion for Partial Summary Judgment. Plaintiff's case against Dr. Dully is

relatively straight forward:

1. "The use of SMR is not scientifically reliable in determining the

   actual chronological age of a model depicted in an image." (ECF 75

   P.8)

2. From the perspective of medical science, the chronological age of the

   subject models was "indeterminate." (ECF 75 P.12)

3. Dr. Dully knew that there was no reliable method, including SMR, of

   estimating chronological age from a digital photograph at the time

   she produced the reports. (ECF 75 P.18)

1

4. Despite this knowledge, Dr. Dully offered the "medical opinion that the individual 'appear[ed] to be younger than the age of 18' and could have been as young as 12." (ECF 75 P. 5)

There is no dispute Dully fabricated evidence in this case. Dr. Dully freely admits that she "hoped" readers of her reports would believe that she was offering an opinion of the chronological age of the subject models, knowing that this was not true.

Contesting Plaintiff's interpretation of this evidence, Defendant writes in her response, "Dr. Dully clarified that the chronological ages were indeterminate." (ECF 75 P.12) What Defendant misrepresents is that Dr. Dully clarified this point in her testimony given over two years after she produced the reports - but she plainly does not clarify this in her reports.

The truth, from a medical standpoint, was that the chronological age of the models was indeterminate. If her reports had been truthful they would have said: the ages of the models are indeterminate. But they did not. To the contrary, her reports clearly express an opinion about the chronological age of the models in question, specifically that they are children under the age of 18.

The alleged fabrication is not, as Dully suggests, that she knew the models were *adults* but maliciously described them *as minors*. (ECF 75 P.13) The fabrication is this: Dully knew that the chronological age of the models was *indeterminate* and yet, she offered an inculpatory opinion that the models were *under 18 years old*, in total disregard of what she knew to be the truth.

<u>Immunity and Presumptions Relating to 34 U.S.C. § 20342</u>

2

Dully raises, for the first time, in her response to Plaintiff's Motion for Partial Summary Judgement a legal defense contained in 34 U.S.C. § 20342. Statutory defenses must be raised as an affirmative defense and failure to raise the issue results in waiver of the statutory defense. *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 533 (11th Cir. 1983) (failure to raise workers compensation immunity as affirmative defense deemed a waiver.) *See Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.*, 684 F.2d 1383, 1386 (11th Cir. 1982); *Freeman*, 517 F.2d at 204; *see also* 5 C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1278, at 339 (1969) (failure to plead affirmative defense results in waiver and exclusion of defense from case); *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (Qualified immunity is an affirmative defense that must be pled, or else it is deemed waived.) Discovery has ended and Plaintiff was not apprised of this statute prior to the present Response.

Even if the statutory defense had not been waived, the statute's plain language applies to reports of "child abuse," not criminal investigation of possession of images of child pornography. Although clearly individuals can abuse and exploit children sexually – there was never an allegation that Mr. Lawshe had abused a child.

Dr. Dully admitted that there was no scientific basis for her to believe that the models were actually children. In other words, her defense in this case is that she never claimed that the models were chronologically minors. She cannot now claim that she offered the opinion that they were *in fact* minors, solely for the purpose of invoking a statutory presumption.

3

<u>Fabrication of Evidence Claim and Qualified Immunity</u>

Dully argues in her response that the fabrication of evidence claim arises out of the Fourth Amendment, not the Fourteenth. However, Defendant does not contest that a cause of action exists for fabrication of evidence under §1983 and has not suggested any flaw in the substantive factual elements pled. Despite this argument, as explained in *Aguirre*: "It has long been clearly established that fabricating incriminating evidence violates the right to due process." *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023) Prior to ruling on the defendant's motions for summary judgment, the court in ruling on defendant's motions to dismiss, stated:

> The fabrication of evidence by itself can constitute a due process violation in some circumstances. "[U]sing or planting false evidence in an effort to obtain a conviction violates the Constitution." *Jones v. Cannon*, 174 F.3d 1271, 1289-90 (11th Cir. 1999) (citations omitted); *see also Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1253 (11th Cir. 1997); *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977). And "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *See Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) (citations omitted). So allegations that Print Examiner Birks fabricated palmprint evidence used to convict him are enough to allege a due process violation. (*See* Doc. 45, ¶¶ 65-68, 154); *see also Jones*, 174 F.3d at 1289-90.

> Mr. Aguirre-Jarquin alleged a violation of his constitutional rights based on Print Examiner Birks' fabrication of evidence, next is whether the right was clearly established. The answer here is simple: Yes... for the general fabrication-of-evidence due process violation, "[i]t was well-established in 1979 that fabricating evidence violates constitutional rights." *Diaz-Martinez*, 2009 U.S. Dist. LEXIS 88994, 2009 WL 2970471, at *11 (citing *Riley*, 104 F.3d at 1253). At bottom, it's hard to imagine any reasonable law enforcement official or analyst

4

could believe fabricating evidence used to convict someone was constitutional—the question is far beyond debate. *See Priester*, 208 F.3d at 927; *Mullenix*, 136 S. Ct. at 308. So Print Examiner Birks is not protected by qualified immunity at this stage— Count I may proceed against her. *See Diaz-Martinez*, 2009 U.S. Dist. LEXIS 88994, 2009 WL 2970471, at *11-12.

Aguirre-Jarquin v. Hemmert, 2020 U.S. Dist. LEXIS 269370 (Fla M.D. 2020)

*See, e.g., Schneider,* 552 F.2d at 595 (police officer's manufacturing of evidence violates due process right to fair trial regardless of prosecutor's ignorance of the falsified evidence)  *Riley v. City of Montgomery*, 104 F.3d 1247, 1253 (11th Cir. 1997) (It was well established in 1989 that fabricating incriminating evidence violated constitutional due process rights to a fair trial.); Fabricating evidence used to deprive the rights of individuals violates due process and this has been clearly established for decades. *Id.*

In attempting to distinguish these cases, Dully argues that in order to succeed on the claim, Plaintiff must prove that Dully knew that the evidence was false when she produced the reports. This overstates the law. Plaintiff must prove that Dully intentionally *or recklessly* fabricated the reports. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023)

Here, Dully concedes in her testimony and opposition to the present motion that she knew that SMR could not be used to estimate the chronological age of the individuals depicted. She admitted that from a medical perspective the model's age was "indeterminate." And to the extent that Dully is attempting to make a distinction of semantics, she admitted that her opinion of the "appearance" would not be a reliable basis to support a determination on whether

5

the model depicted was, in fact, a minor. (*Dully Deposition, April 28,2025* p.30 ln.9-19, ECF 66 Exhibit A) These facts are not in dispute.  Neither is it in dispute that she proceeded, thereafter, to write a report expressing the very opinions she knew were not supported by medical science. This is an intentional, knowing fabrication.

Contrary to Defendant's arguments, Plaintiff does not suggest that Dully intended to deceive Preston. Dully clearly explained the lack of reliability of these opinions to Preston. Rather, Dully intended, by her own admission, that anyone reading the report would believe that she had expressed an opinion that the models were in fact minors. This is not only her testimony, it is obvious from the reports themselves. No reasonable juror could read these reports and come to any other conclusion than Dully has expressed opinions that the models were children under the age of 18.

Finally, Dully admits that she knew these reports were part of a criminal investigation and may be used in front of a judge. (*Dully, April 28, 2025* P. 50 ln.6-10, ECF 66 Exhibit A) Setting aside for the moment the evidence of intent to deceive, it is reckless to produce a knowingly false, or at the very least unreliable, inculpatory report which one knows will be used in a criminal investigation. Again, there is no plausible conclusion other than Dully consciously disregarded the risk that her reports may be used to support the contention that the models were in fact minors – when she knew that the reports were not reliable evidence upon which to make that determination.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on February 15, 2024, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Michael K. Roberts*

_____

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
**Jeffery S. Nooney, Esquire**
Florida Bar No. 1011565
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorneys for Plaintiff

7

# ECF 95

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                              Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

       Defendants.

_____/

**PLAINTIFF'S RESPONSE TO DULLY'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Dully moves for summary judgment on three grounds: (1)

application of 34USC § 20342 (2) qualified immunity and (3) failure to complete

the pre-suit notice requirements of Florida's medical negligence statute. (MSJ ECF

85 P.2) None of the arguments are supported by application of the law to the

undisputed facts and pleadings of this case. Therefore, Defendant Dully is not

entitled to summary judgment.

**I.**    **STATEMENT OF FACT**

    a) <u>The Reports</u>

On February 22, 2023, Defendant produced a report offering opinions about

the age and sexual maturity of a model depicted in a single image reported through

1

the NCMEC CyberTip system. (*Dully Report February 22, 2023*; ECF 66  Exhibit B)
This report was addressed to co-Defendant Det. Preston in her capacity as law
enforcement officer and made on Child Protection Team letterhead. *Id.* Dully's
opinions are as follows: "This female child appears younger than 18 years of age.
She would have reached this genital appearance of SMR IV at 12-15 years of age.
She does not appear to be shaved as her anterior pubic hair is still present." *Id.*

On April 5, 2023, Preston met once again with Dr. Dully to review four
additional images.  First, Preston identified two additional photographs from the
same photoshoot which was the subject of the CyberTip Report #153739160. *Id.*
These images depicted the same model in different poses. (see *Dully Report #1
April 5*, ECF 66; Exhibit C) These are identified as files 0059 and 0065(1). *Id.*
Again, Dr. Dully opined that the model initially depicted in NCMEC CyberTip
Report#153739160 was "at most SMR III or IV and therefore again ≤ 12-15 years of
age." *Id.*

At this April 5, 2023 meeting, Det. Preston presented another image of who
Dully believed was the same person depicted in the CyberTipline Report
#153739160.  (*Dully Deposition June 18, 2025* P.69 ln.16 – 70 ln.12; ECF 66 Exhibit
F) This image is identified as ycbLVVFQ_0.jpg. *Id.* (see *Dully Report #2 April 5*,
Exhibit D) This model was later identified by the name "Milena D."  (Age
Verification Exhibit; ECF 67 Exhibit H). Despite the fact that she appeared to have
adult breast, Dully opined that, in this picture, Milena D. was SMR I or
prepubescent. This is strikingly different than the SMR IV appearance of the same
model in the original NCMEC image.

2

Finally, Preston identified one last image. This image depicted a model's body from the stomach to the knees, along with a partially exposed vagina. This image was identified as "Screenshot_20230122_174408_DuckDuckGo.jpg." *Id*. Again, Dully opined that because there appeared to be no pubic hair development, the model was SMR I, pre-pubescent, and therefore, was developmentally less than 9-13.5 years old. (*see Dully Report #2 April 5*; ECF 66 Exhibit D) She described this model as a "female child." *Id*. This model was identified as "Sonija" on the image itself but also goes by the name Kacey Lane. (see Emails and Affidavit of Crawford Pierce, Age Verification Exhibit; ECF 67 Exhibit H)

In her Motion for Summary Judgment, Defendant Dully concedes that in the February 22, 2023 report, she "offered her medical opinion that the individual "appear[ed] to be younger than the age of 18." (Dully MSJ P.4) Dully admits that she "used SMR to evaluate the appearance of the individual in the image and provide an estimated age range." Id. See also (*Dully Deposition April 28, 2025* P.61 ln.20 – p.62 ln.21; ECF 66 Exhibit G)

Paradoxical, Dully claims, in her motion, that she "did not attempt to state or estimate the exact chronological age of the individual." (*Dully MSJ* ECF 85 P.4) This statement is incompressible in light of her prior admissions and the plain language of her report. The only relevant question of age in this investigation was whether the model was under the age of 18 and therefore, a child. This is the issue upon which Dr. Dully opines. She makes the affirmative statement that the child is under 18 *chronological* years of age. Furthermore, in regard to Milena D., Dully states that she is "at most SMR III or IV and therefore again ≤ 12-15 years of age."

3

This is clearly an estimated chronological age range.  As to the model depicted in the "DuckDuckGo.jpg.", Dully describes the model as a "prepubescent" "female child" and provides the age range of less than 9-13.5. Again, a reasonable person would read this as an opinion that the model was not 18 years old.

    b)  <u>Sexual Maturity Rating and Chronological Age</u>

Despite the fact that Dully admits to offering a medical opinions of the age of the models depicted, Dully concedes that "the use of a SMR[1] is not scientifically reliable in determining the actual chronological age of a model depicted in an image" (*Dully MSJ* ECF 85  P.7).  There is no factual dispute on this point (*Dully Deposition, April* P.46 ln.13-18; ECF 66 Exhibit G) and Dully has known there is no scientific support for age estimation using SMR for years prior to the subject events. (*Dully Deposition April 28, 2025* p. 45 ln. 19 – p.46 ln.18; ECF 66 Exhibit G)

At the time the reports were written, Dully did not believe that she had produced a reliable medical opinion of the ages of the models in the reviewed photographs.  Dully testifies:

> Q. You have not -- in these -- in these three
> reports that I have that you produced in this case,
> you have not rendered a reliable medical opinion on
> the actual age of the individuals depicted in this --
> in these images, correct?
>
> A.· ·Correct.

---

[1] Sexual Maturity Rating (SMR) (sometimes referred to as the Tanner Scale) is a clinical assessment designed to help doctors monitor a patient's progress through puberty. (*Dully Deposition April 28, 2025* p.19; ECF 66 Exhibit G) It is not designed to estimate chronological age. (*Dully Deposition April 28, 2025* p.21 ln.5-17; ECF 66 Exhibit G) SMR applies Grade levels of 1-5 to both breast development (in females) and pubic hair growth. Grade 1 is pre-pubescent to Grade 5, which is fully developed. Although it should be noted that adult women, depending on certain variables, can appear Grade 4 for their entire life. (*Dully Deposition April 28, 2025* p.35-43: ECF 66 Exhibit G)

4

(*Dully Deposition April 28, 2025* p.71 ln.5-10; ECF 66 Exhibit G) Dully testifies that "What I see on the image does not necessarily give an indication of the actual chronological age that may be discovered during investigations." (*Dully Deposition, April* 28, 2025 p.35 ln 1-4, ECF 66 Exhibit G). There is no warning or disclaimer about the lack of reliability or scientific method underlying the "opinions" contained in these reports.

    c)  <u>"Appearance" of SMR and Age</u>

In an attempt to defend the opinions expressed in these reports, Dully employes a rhetorical device. She claims that she was not offering an opinion about the actual age of the individuals, but rather, an opinion about the "appearance of age." (*Dully Deposition April 28,2025* p.21 ln.5-13; ECF 66 Exhibit G) Such a distinction does not exist and, whatever Dully chooses to call it, her opinion of the "appearance of age" is an equally unreliable basis to determine whether an individual depicted in a photograph is a minor or an adult. When asked about the value of such an opinion, Dully testifies:

> Q. If I was someone who was being
> asked to make a factual determination about whether
> or not a model depicted in a pornographic image on
> the internet was a minor; in fact, a minor, would
> your opinion about the appearance be a reliable
> opinion for me to base that decision on?
>
> A. No, that's what the investigation is for.

(*Dully Deposition, April 28,2025* p.30 ln.9-19; ECF 66 Exhibit G)

Shockingly, Dully testifies that this opinion of "appearance" means nothing more than if a model does not appear to have pubic hair in a digital photograph, for whatever reason, then that model would be a SMR I or pre-pubescent:

> Q.· ·Well, I guess for whatever reason, right,
> I'm just asking, brunette, red head or whatever, if
> you look at an image and you do not see any pubic
> hair, that would result in a sexual maturity rating
> of one in terms of appearance?
>
> A.· ·Yes.

(*Dully Deposition April 28, 2025* p.72 ln.6-11; ECF 66 Exhibit G) Such an opinion is patently unscientific and, in today's world, not remotely credible. Dully acknowledges this in a series of questions directed to the effects of cosmetic grooming and digital altering on photographs. (*Dully Deposition April 28, 2025* p. 78 ln.25 – p.80 ln.8; ECF 66 Exhibit G) Dully concedes that grooming or digital altering are plausible explanations for a lack of visible pubic hair on a photograph. *Id.* When asked why she felt sexual maturity was a more likely explanation for a lack of pubic hair than grooming or altering, Dully responds that "I am not saying how likely or unlikely it is, I'm only saying what the appearance is." *Id.* Dully knew her opinions were meaningless speculation and added no weight to an inquiry about the age of an individual depicted in a pornographic image.

This testimony shows that even offering an opinion about SMR, irrespective of what that means for chronological age, is inherently unreliable.  This is the point made by Plaintiff's expert, Dr. Scott Krugman. (*Report of Scott Krugman*, attached as Exhibit A to this Response) Dr. Krugman points to relevant scholarship that has tested this method of age estimation. (*Report of Scott Krugman*, attached as

Exhibit A to this Response) The medical professionals in this study incorrectly labeled models as a minor at rates as high as two thirds of the time. Even in the best instances (including lay people), the results were no better than a coin toss. The researchers write that the study "aims at stressing the problems and dangers associated with the postpubertal/sexually mature stages – which happen to be the developmental "scenario" most late teenagers and young adult women share (by adult we intend over 18 years of age). Much pornographic/pedo-pornographic material depicts women who seem sexually mature, and who may be late teenagers or women over 18 years of age. Our study in fact proves that *it is nearly impossible to say that adults who look like subadults are indeed adults – which obviously may apply to all those subadults who seem sexually mature."* (see The Difficult Issue of Age Assessment on Pedo-Pornographic Material, ECF 66 Exhibit D)  Dr. Krugman testifies that Dr. Dully participates in a list-serve email chain of medical doctors where these concerns have been repeatedly raised. (*Report of Scott Krugman*, attached as Exhibit A to this Response)

       d) <u>Willfully False Information Contained in Dully's Report</u>

Dully understood that the ages of the models were "indeterminate" from a medical perspective.  (ECF 75 P.12; see also *Dully Deposition June 18, 2025* p.52 ln.2: ECF 66 Exhibit F)  In fact, she testifies in her original deposition that law enforcement does not "bring the little kids, they bring these borderline kids to be looked at..." (*Dully Deposition April 28, 2025* P. 33 ln. 23-24; ECF 66 Exhibit G) Dully knew these images were age difficult and she fully understood that she had the ability to tell law enforcement that she cannot help them with medical opinions

7

about SMR or age. (*Dully Deposition April 28, 2025* p.67; ECF 66 Exhibit G).

Instead of offering truthful opinions, Dully fabricated reports that she knew would

be used in judicial proceedings.  In fact, she fabricated probable cause.

If there was any doubt about her knowledge of the lack of scientific support or

reliability in her opinions, Dully testifies that she contemporaneously warned Det.

Preston of the lack of reliability prior to giving her the reports.  (*Dully Deposition

June 18, 2025* P. 12 ln.18 – p.13 ln.1; ECF 66 Exhibit F)

   e) <u>Plaintiff's Expert</u>

Dully selectively quotes Dr. Krugman's testimony. Dr. Krugman testifies that:

> I don't think any of us have been trained to determine the age of a
> pers- -- like it's not -- I'm trying to think of a scenario -- like if
> someone came in as, like, a Jane Doe in a car crash and someone
> needs to know an age, you're
> still just going to be like guessing, right, based on height, weight,
> size, things like that. But there is no scenario in which I can think
> of where I would be like,
> "Okay, that's a 12-year-old, that's a" -- I don't know if you can. I
> mean, there are 12-year-olds out there who look like they're 18,
> and there's 18-year-olds out
> there who look like they're 12, and it's really hard. You can't just
> determine that.

(*Deposition of Krugman* P.33 ln.3-15; ECF 86 Exhibit 7) As pointed out by Dully,

Dr. Kruman does not testify that there is no correlation between age ranges and

SMR, although he clearly questions the strength of the correlations. What he

testifies to is that it is not scientifically reliable to make an accurate SMR from

digital pornographic material. (*Deposition of Krugman* P.51-55; ECF 86 Exhibit 7)

In other words, if the model depicted in the "DuckDuckGo.jpg." image was *in fact*

SMR I, everyone would agree that she would almost certainly be a minor. The

problem is, no one can say she is SMR I simply because there is no visible pubic

hair. Obviously, when the judicial officer read the opinion that an individual depicted is pre-pubescent, there is no question they could reasonably find that the individual is far younger than 18.  This is what makes Dully's opinions so dangerous.

f)  <u>False Statements Regarding Grooming</u>

In all three reports, Dr. Dully offers the opinion that the models "do not appear to be shaved."  Despite offering this opinion, Dully does not consider herself an expert in grooming or appearance of grooming.  (*Dully Deposition June 18, 2025* P.44 ln.2-4; ECF 66 Exhibit F)  The willingness to offer opinions on topics without any expertise raises the inference that Dully has displayed a reckless indifference to the truth.

This point is not academic. Dully admits that the evidence suggests that at least one of the two models had practiced some form of grooming. (*Dully Deposition June 18, 2025* P.1-17 and P.70-73; ECF 66 Exhibit F).  This directly contradicts the affirmative statements that the models did not appear to be shaved: the basis for all her opinions of age and SMR.

g)  <u>Intent to Deceive</u>

Dully intended for anyone reading her reports to believe that she was offering a medical opinion about the actual age of the individuals. First, in regards to the images depicting Milena D., Dr. Dully explicitly offers the opinion that she is younger than 18 years of age. This statement is clearly intended to communicate a factual assertion that the model is a child.

9

In regards to the "DuckDuckGo.jpg." image, Dully describes the model as pre-pubescent and a "female child."  Although the use of these terms infers the chronological age of the model, Dully offers direct proof of intent to communicate chronological minority:

> Q· · ·Right.· But did you call her a female
> child?· Do you see if I read that sentence how a
> person might interpret that as you saying that this
> person is a child, an actual child?
>
> A· · ·Well, I hope so, yes, but I don't know
> that.
>
> Q· · ·Wait, wait, wait, wait.· You hope that
> someone would interpret this as you -- as you
> offering the opinion that this was actually a child,
> like her actual age was under the age of 18?
>
> A· · ·Her age is indeterminant.· But she is well
> under the age of 18, and that is her appearance.

(*Dully Deposition June 18, 2025*  p.51-52: ECF 66 Exhibit F) Dully fully understood and intended to communicate that the models were children under the age of 18.

Contesting Plaintiff's interpretation of this evidence, Defendant writes in her response, "Dr. Dully clarified that the chronological ages were indeterminate." (ECF 75 P.12) What Defendant misses is that Dr. Dully clarified this point in her testimony given over two years after she produced the reports - *but she plainly does not clarify this in her reports*.

The truth was that from a medical standpoint, the chronological age of the models *was indeterminate.*  If her reports had been truthful, they would have said: the ages of the models are indeterminate.  But they did not.  To the contrary, her

10

reports clearly express an opinion about the chronological age of the models in question, specifically that they are children under the chronological age of 18.

The fabrication is not, as Dully suggests, that she knew the models were *adults* but maliciously described them *as minors*. The fabrication is that Dully knew that the chronological age of the models was *indeterminate*. Yet, she offered an inculpatory fabricated medical opinion that the models were *under 18 years old*, in total disregard of what she knew to be the truth.

h) <u>Reliance on Dully's Opinion for Criminal Charges</u>

Dully knew that her opinions were part of a criminal investigation and they may be presented to a judge and or jury. (*Dully Deposition April 28, 2025* P.50 ln.6-19; ECF 66 Exhibit G)  There is no factual dispute that Dr. Dully's opinions were critical factors in deciding to move forward with the investigation, search warrant and charges.  The opinions expressed in her reports were directly quoted in both search warrants. Tolbert testifies that Dr. Dully's opinion was the deciding factor and SJCO would have "gone with" Dully's determination, one way or the other.  Preston testifies that she relied on Dully's opinion to make a probable cause determination. (*Preston Deposition April 28, 2025* p.125 ln.6 – p.125 ln.13; ECF 66 Exhibit G) Finally, ASA Payne indicates in her affidavit that she relied on Dully's opinions.

**MEMORANDUM OF LAW**

<u>Immunity and Presumptions Relating to 34 U.S.C. § 20342</u>

Dully has waived any immunity or defense contained in 34 U.S.C. § 20342. Dully raised, for the first time, in her response to Plaintiff's Motion for Partial

11

Summary Judgement this legal defense**.** She now raises it for the second time in her Motion for Summary Judgment (ECF 85 P.2)   Statutory defenses must be raised in an affirmative defense and failure to raise the issue results in waiver of the statutory defense. *Troxler v. Owens-Illinois, Inc.*, 717 F.2d 530, 533 (11th Cir. 1983) (failure to raise workers compensation immunity as affirmative defense deemed a waiver.) *See Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.*, 684 F.2d 1383, 1386 (11th Cir. 1982); *Freeman*, 517 F.2d at 204; *see also* 5 C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1278, at 339 (1969) (failure to plead affirmative defense results in waiver and exclusion of defense from case); *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (Qualified immunity is an affirmative defense that must be pled, or else it is deemed waived.) The matter is not properly before the Court.  Discovery has ended and Plaintiff was not apprised of this statutory defense prior to the dispositive motion practice in this case.

Even if the statutory defense had not been waived, the statute's plain language applies to reports of "child abuse," not criminal investigation of possession of images of child pornography. Although clearly individuals can abuse and exploit children sexually – there was never an allegation that Mr. Lawshe had abused a child. In fact, there was never a child involved in this case. Pornographic images of adults is not a form of "abuse" or "neglect."   The only question is whether the individual was a minor and there is no reliable record evidence that the individual's depicted were minors.

Dully has admitted that the chronological ages of the individuals was indeterminate. She had no *medical* reason to believe that children were involved in

this case.  Her defense in this case is that she never claimed that the models were chronologically minors. Dully cannot now claim that she offered the opinion that they were *in fact* actual minors, solely for the purpose of invoking a statutory immunity and it is not a credible argument that this statute applies to adults who merely subjectively "appear" to be children but in fact are adults.

Even if the Court were to apply the statute to this case, there is ample evidence that Dr. Dully has acted in bad faith.  In fact, all of the evidence, including the testimony of Dr. Dully, establishes that she offered medical opinions that she knew were inherently unreliable and not probative of the actual chronological age of the persons depicted in the subject images.  In fact, she knew the images depicted models of an indeterminate age and, in spite of this knowledge, offered the opinion that they were minors. This can fairly be characterized by a jury to be bad faith.

<div align="center">Qualified Immunity</div>

Dully raises several arguments regarding qualified immunity.  First, she raises a statutory immunity found in Fla. Stat. Section 768.28(9)(a) and quotes *Eiras v. State Dep't of Bus. & Prof'l Regualtion Div. Of Alchoholic Bevs. & Tobacco,* 239 F. Supp. 3d 1331 (M.D. Fla. 2017).  This statutory defense was not raised in any affirmative defense and, for the reasons stated above, has been waived.

However, a review of *Eiras*, shows that the Florida Statute is only relevant to claims brought pursuant to Florida law.  Florida law does not operate to provide immunity from federal causes of action. *Id.*  Even if the statute applies to the present action, there is ample evidence of bad faith and actual malice, as shown above.

<div align="center">13</div>

Next, Dully argues that Plaintiff "fails to assert a clearly established constitutional right." (Dully MSJ, ECF 85 P.19). In making this argument, Dully does not suggest that fabricating evidence does not violate the constitution or that such a rule has not been clearly established. In fact, Dully cites to multiple cases which hold that fabrication of evidence has long held to violate the constitution. Rather, Dully suggests that her "minimal involvement does not satisfy the requirements of a fabricated evidence claim" and that there is no evidence that Dully "knew her opinions were false." Her involvement was not minimal and she knew her opinions were false.

Government officials sued for violating constitutional rights under § 1983 may invoke qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The inquiry has two steps: first, the government official must show she was engaged in a discretionary function. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Second, the plaintiff must show: (1) the official violated his constitutional right; and (2) the right was clearly established at the time of the violation. *Id*. To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). *Aguirre-Jarquin v. Hemmert*, 2023 U.S. Dist. LEXIS 46013, *21 (Fla. M.D. 2023)

In the Eleventh Circuit, a fabrication-of-evidence claim is a species of malicious prosecution. *Watkins v. Session*, No. 19-60810, 2021 U.S. Dist. LEXIS 31032, 2021 WL 663762, at *10 & n.6 (S.D. Fla. Feb. 19, 2021) The right a

fabrication-of-evidence claim vindicates is the right not to be prosecuted with fabricated evidence. *See, e.g.*, *Kingsland*, 382 F.2d at 1234 ("Kingsland also asserts a § 1983 claim for malicious prosecution based on the defendants' alleged fabrication of evidence against her.) see also *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) ("Williams's malicious prosecution claim against Baaske is based upon Baaske's alleged act of fabricating evidence, which resulted in the prosecutor being presented with false and [*27] misleading evidence."). *accord Ashley v. City of New York*, 992 F.3d 128, 2021 WL 1149115, at *1 n.1 (2d Cir. 2021) ("[A] claim for fabricated evidence does not require that a plaintiff have been subjected to trial; it is enough that the fabrication results in a deprivation of the plaintiff's liberty."); [*16] *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) ("The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" (citation omitted)); *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016) ("[W]e hold that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged.")" *Foulke v. Morgan*, 2021 U.S. Dist. LEXIS 270319, *15-16.

When forensic experts, working as state employees, fabricate evidence used by law enforcement to bring charges, there is a violation of due process. The case of *Aguirre-Jarquin v. Hemmert,* although not binding, illustrates the application of

15

this principle. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023)  In that case, the District Court was presented with allegations that an FDLE forensic fingerprint expert had fabricated a false match with the plaintiff in an underlying criminal investigation and prosecution.    In denying summary judgment, for the defendant, the court writes that drawing all "inferences from this evidence in the light most favorable to Aguirre, reasonable jurors could conclude that Birks [the fingerprint expert] intentionally sent the print in Aguirre's case to McQuay for an unquestioned verification—indicating Birks knew the match was false or harbored serious doubts about the veracity of her findings." *Id.*  Unlike the defendant in *Aguirre,* Dully admits that she knew her reports were not reliable.

Dully argues that the fabrication of evidence claim arises out of the Fourth Amendment, not the Fourteenth. However, Defendant does not contest that a cause of action exists for fabrication of evidence under §1983 and has not suggested any flaw in the substantive factual elements pled.  Despite this argument, as explained in *Aguirre*: "It has long been clearly established that fabricating incriminating evidence violates the right to due process." *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023) Prior to ruling on the defendant's motion for summary judgment, the court in Aguirre summarized the relevant law:

> The fabrication of evidence by itself can constitute a due process violation in some circumstances. "[U]sing or planting false evidence in an effort to obtain a conviction violates the Constitution." *Jones v. Cannon*, 174 F.3d 1271, 1289-90 (11th Cir. 1999) (citations omitted); *see also Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1253 (11th Cir. 1997); *Schneider v. Estelle*, 552 F.2d 593, 595 (5th Cir. 1977). And "it is established that a conviction obtained through use of false evidence,  known to be such by representatives of the State, must fall under the

16

Fourteenth Amendment." *See Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) (citations omitted). So allegations that Print Examiner Birks fabricated palmprint evidence used to convict him are enough to allege a due process violation. (*See* Doc. 45, ¶¶ 65-68, 154); *see also Jones*, 174 F.3d at 1289-90.

Mr. Aguirre-Jarquin alleged a violation of his constitutional rights based on Print Examiner Birks' fabrication of evidence, next is whether the right was clearly established. The answer here is simple: Yes... for the general fabrication-of-evidence due process violation, "[i]t was well-established in 1979 that fabricating evidence violates constitutional rights." *Diaz-Martinez*, 2009 U.S. Dist. LEXIS 88994, 2009 WL 2970471, at *11 (citing *Riley*, 104 F.3d at 1253). ***At bottom, it's hard to imagine any reasonable law enforcement official or analyst could believe fabricating evidence used to convict someone was constitutional—the question is far beyond debate.*** *See Priester*, 208 F.3d at 927; *Mullenix*, 136 S. Ct. at 308. So Print Examiner Birks is not protected by qualified immunity at this stage—Count I may proceed against her. *See Diaz-Martinez*, 2009 U.S. Dist. LEXIS 88994, 2009 WL 2970471, at *11-12. [emphasis added]

Aguirre-Jarquin v. Hemmert, 2020 U.S. Dist. LEXIS 269370 (Fla M.D. 2020) *See, e.g., Schneider,* 552 F.2d at 595 (police officer's manufacturing of evidence violates due process right to fair trial regardless of prosecutor's ignorance of the falsified evidence) *Riley v. City of Montgomery, 104 F.3d 1247, 1253* (11th Cir. 1997) (It was well established in 1989 that fabricating incriminating evidence violated constitutional due process rights to a fair trial.); Fabricating evidence used to deprive the rights of individuals violates due process and this has been clearly established for decades. *Id.*

In attempting to distinguish these cases, Dully argues that in order to succeed on the claim, Plaintiff must prove that Dully knew that the evidence was false when she produced the reports. While she did know that they were false, Dully overstates

17

the law. Plaintiff must prove that Dully intentionally *or recklessly* fabricated the reports. *Aguirre-Jarquin v. Hemmert,* 2023 U.S. Dist. LEXIS 46013, *21 (Fla M.D. 2023)

Here, Dully concedes in her testimony and opposition to the present motion that she knew that SMR could not be used to estimate the chronological age of the individuals depicted. She admitted that from a medical perspective the model's age was "indeterminate." And to the extent that Dully is attempting to make a distinction of semantics, she admitted that her opinion of the "appearance" would not be a reliable basis to support a determination on whether the model depicted was a minor. (*Dully Deposition, April 28,2025* p.30 ln.9-19, ECF 66 Exhibit A) With this knowledge, she proceeded to write a report expressing the very opinions she knew were not supported by medical science. This is an intentional, knowing fabrication. At the very least, it is reckless.

Plaintiff does not suggest that Dully intended to deceive Preston. As Dully admits, she explained the lack of reliability of these opinions to Preston. Rather, Dully intended, by her own admission, that anyone *reading* the report would believe that she had expressed an opinion that the models were in fact minors. This is not only her testimony, it is obvious from the reports themselves. No reasonable juror could read these reports and come to any other conclusion than Dully has expressed opinions that the models were children, under the age of 18.

Finally, Dully admits that she knew these reports were part of a criminal investigation and may be used in front of a judge. (*Dully, April 28, 2025* P. 50 ln.6-10, ECF 66 Exhibit A) Setting aside for the moment the evidence of intent to

deceive, it is reckless to produce a knowingly false, or at the very least unreliable, inculpatory report which one knows will be used in a criminal investigation. Again, there is no plausible conclusion other than Dully consciously disregarded the risk that her reports may be used to support the contention that the models were in fact minors – when she knew that the reports were not reliable evidence upon which to make that determination.

<u>Compliance with Florida's Medical Malpractice<br>Pre-Suit Notice Requirements</u>

This is not a medical malpractice case. First, the issue was not raised in the affirmative defenses and, again, has been waived. Irrespective of the wavier, the mere fact that a doctor is involved in claim does not make it medical negligence. *McManus v. Gamez*, 276 So. 3d 1005, 1007 (Fla 2nd DCA 2019) In order to determine whether a claim is one grounded in medical malpractice, a court must first consider "whether the action arose out of 'medical . . . diagnosis, treatment, or care" of the Plaintiff. *Id.*  Plaintiff has not alleged that there was a doctor-patient relationship with Dr. Dully or that Dully rendered him medical care or treatment of any kind. These are the most basic tenants of medical malpractice claims. *Id.*

Plaintiff has alleged conduct which violated the United States Constitution resulting in a deprivation of liberty and consequential injuries.  The claim has been brought under 42 U.S.C. § 1983. Florida's medical negligence statute simply has nothing to do with the facts or allegations of this case.

## CONCLUSION

Dully does not deny the lack of scientific reliability in her reports.   Rather, she states plainly that they are not scientific or medically reliable opinions about the age of the models in question. Moreover, she admits that they would not be useful to a finder of fact in determining whether the models in question were in fact under the age of 18.

Despite this knowledge, she clearly and unequivocally labels the models as children and below the age of eighteen in her written report to law enforcement. When confronted in her deposition with the risk that readers may interpret these reports as an opinion on chronological age, Dully unabashedly acknowledges her intent and hope that they would. This conduct violates clearly established constitutional rights. Summary Judgment should be denied.

Dated: October 3, 2025

/s/ Michael K. Roberts
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

   Plaintiff,

v.           Case No. 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

   Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT PRESTON'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Detective Preston's Motion for Summary Judgment should be denied. Defendant Preston has ignored the material facts of this case and mischaracterized those facts she claims to be undisputed. When considered in their totality, the facts of this case show that probable cause, or arguable probable cause, did not exist to effectuate a search or arrest of Mr. Lawshe. Moreover, the evidence proves that Det. Preston has offered false testimony and fabricated evidence which are material to a finding of probable cause. Her actions violate clearly established and fundamental principles of constitutional law.

1

## **UNDISPUTED FACTS**

In moving for summary judgment, Det. Preston ignores the material facts of this case and instead focuses on those self-serving facts which she insists, without evidentiary support, establish probable cause.

a) <u>Lack of Training</u>

At the time of this investigation, Preston had been an ICAC detective for only a "couple of months." (*Preston Deposition, March 13th 2025*, p.88 ln.2 – P.89 ln.1 ECF 67 Exhibit F). She had not completed ICAC training (*Id.)* and had no specialized training in distinguishing images of minor children from those of adults. (*Preston Deposition, March 13th 2025*, P.88 ln2 – P.89 ln.1; ECF 67 Exhibit F) Likewise, Det. Tolbert had no training or expertise regarding distinguishing images of minors from those of adults. (Tolbert P.13 ln. 10 – P.15 ln. 12; ECF 67 Exhibit C)

b) <u>The Depiction of Age Difficult or Age Indeterminate Models</u>

The models depicted in the subject images were "age-difficult" or of an indeterminate age from visual inspection. "Age-difficult" is a term used to describe an individual who may appear to be an adult. (*Preston Deposition, March 13th, 2025*, P.57, ln.25 – P.58, ln.3; p.181, ln.1-13; ECF 67 Exhibit F) There was no articulable reason to believe, from simply looking at the image that it depicted a minor, as opposed to legal and constitutionally protected adult material.

This investigation began when SJSO received the CyberTipline Report #153739160 from the National Center for Missing and Exploited Children (NCMEC). (*see Affidavit for Search Warrant February 28, 2023*; ECF 67 Exhibit

A) The CyberTipline Report, involved a single image characterized as "CP-unconfirmed."[1] (see *CyberTipline Report #153739160*; ECF 67 Exhibit B)

"Unconfirmed" "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted." (*NCMEC Corp. Rep. Deposition* p. 22 ln.18-24; ECF 67 Ex. E) In other words, NCMEC made the determination that it was not possible to look at the image and determine "whether they are under the age of 18 or over the age of eighteen." (*NCMEC Corp. Rep. Deposition* p. 28 ln.9-22; ECF 67 Ex. E)[2]

In her motion, Preston ignores the fact that at least two other detectives believed the subject models were potentially adults. Det. Preston testifies there was a material disagreement in SJSO about how to interpret the image. (*Preston Deposition, March 13th 2025*, P. 101, ln.5-16) An unidentified detective thought that the model was "age-difficult." (*Preston Deposition, March 13th, 2025*, P.96, ln.17-19; P.169, ln. 2-17; ECF 67 Ex. F). Although Det. Preston cannot recall who, among her colleagues, questioned whether the model was a minor, SJSO Det. Kevin Greene believed the model was age-difficult and that a reasonable person could view the model to be an adult or a minor. (*Greene Deposition* p.65 ln. 7-13; ECF 67 Ex. D)

---

[1] Preston did not understand what unconfirmed meant. (*Preston Deposition, March 13th, 2025*, P.27-28; P.169, ln. 2-17; ECF 67 Ex. F).

[2] Unconfirmed does not "indicated that the image appears to be child pornography," as Preston quotes from an unrelated case. That language is not the evidence of this case and clearly not an accurate recitation of NCMEC's definition of its terminology.

3

In fact, Det. Preston concedes that other people could have interpreted the individual depicted in the subject image as at least 18 years old. (*Preston Deposition, March 13th 2025*, P.93, ln. 6-23; ECF 67 Ex. F) She also agrees that those people would not be "wrong" in that opinion. *Id.* Likewise, the model in the image was not portrayed as or pretending to be a minor. (*Preston Deposition, March 13th 2025*, P.62, ln.7-25; ECF 67 Ex. F)

### c)  Publication on a Public Website

The evidence then known to Det. Preston suggested that in all likelihood, the model had been portrayed as an adult. Based on the watermark, Preston had reason to believe that this image was published on a public website. Virtually all models published on public pornographic websites are represented to the public as being adults. (*Preston Deposition, March 13th, 2025*, P. 67, ln 23 – P.68, ln.1; ECF 67 Ex. F) Likewise, Det. Eugine Tolbert, testifies that the fact that a model is being represented to the public as an adult or a verified adult is an important factor in reaching a probable cause decision. (*Tolbert Deposition,* P.26 Ln. 1-12; ECF Ex. C) Her current supervisor, Det. Dennis Camden, also acknowledges that public websites almost always portray models as adults to the consumer. (*Camden Deposition* p. 23 ln.7-15, attached as Exhibit G)

### d)  No Evidence to Support Material Element of the Crime

A conviction for the crime of possession of child pornography requires the State to prove beyond a reasonable doubt that the defendant knowingly possess a photograph or other presentation which, in whole or in part, he or she knows to

4

include any sexual conduct by a child. *§ 827.071(5), Fla. Stat.  Elias v. State*, 308 So. 3d 1127, 1131 (Fla. 5th DCA 2020)

Det. Preston had no evidence to support a reasonable belief that Mr. Lawshe knew or believed that the image (*CyberTipline Report#*153739160, ECF 67 Ex. B) depicted a minor.  In fact, given the indeterminate age of the image, any cautious officer would doubt that such evidence would ever exist. Preston testifies that she could not say whether he thought the model was an adult or "something else." *Preston Deposition, March 13th, 2025*, P.172, ln. 20 – P.174, ln. 9; ECF 67 Ex. F) She states that any guess as to his knowledge or opinion of the model's age would require her to "speculate," something she was unwilling to do. *Id.*

e)  Reason for Consult with Dr. Dully.

In her Motion for Summary Judgment, Preston suggests that the reason for consulting Dr. Dully was to gain an "extra layer of confirmation." (Preston MSJ; ECF 83 P.2). This is only half true. As Preston explained in her testimony, the reason she went to Dr. Dully was because there was a *disagreement among detectives about how to interpret the image*: "If it was one that I felt, hey, this is a child and I had somebody like in this case that had a difference of opinion, just to cover our bases, I would go to Dr. Dully." (Preston March 13, 2025 P.100 ln. 1-5; p.101 ln. 1-12; ) In fact, Dr. Dully confirms that law enforcement only brings her "borderline" cases for review. (Dully April P.33 ln.24)

f)  Dully's Fabricated Medical Report

There is no dispute that Preston presented the opinions of Dully to the judicial officer in her sworn probable cause affidavit.  Even now, after Plaintiff has

5

explicitly raised this issue in his Motion for Partial Summary Judgment (ECF 67), Preston does not acknowledge the fact that Dr. Dully's opinions regarding estimated chronological age were not reliable. (*Dully Deposition, April 28, 2025 p.*46 ln.13-18, attached as Exhibit J) Dully testifies:

> Q        If I was someone who was being
> asked to make a factual determination about whether
> or not a model depicted in a pornographic image on
> the internet was a minor; in fact, a minor, would
> your opinion about the appearance be a reliable
> opinion for me to base that decision on?
>
> A.       No, that's what the investigation is for.

(*Dully Deposition, April 28,2025* p.30 ln.9-19) Dully has conceded in her filed papers that from a medical science perspective, "the chronological ages were indeterminate" (ECF 75 P.12) and that "the use of a SMR is not scientifically reliable in determining the actual chronological age of a model depicted in an image." (ECF 85 P.7)

Preston claims that she "believed Dr. Dully was a reliable source of information in estimating the age of the individuals in these images." (Preston MSJ ECF 83 P.3) However, this statement is merely colorable. Preston does not recall any of the contents of her conversation or discussion with Dully. (Preston Deposition March 13, 2025, p. 102 ln.1-23; p.114; p.276 ln. 8: ECF 67 Ex. F) Other than knowing that Dully was a medical doctor, Preston knew almost nothing about Dully's qualifications, methods or reliability in estimating the chronological age of a model from review of digital images prior to the meeting. (*Preston Deposition, March 13, 2025* see generally p.101-106; ECF 67 Ex. F) She does not understand

6

what a Sexual Maturity Rating (SMR) is or how it relates to the opinions of Dr. Dully. (*Preston Deposition, March 13, 2025* see generally p.116; p.206;ECF 67 Ex. F) She does not think that Dr. Dully is an expert on grooming of pubic hair or determining whether a model is groomed from a digital image. (*Deposition of Preston, March 13, 2025* P.119, ln 1-11; P.120, ln.22 – P.121, ln.18; ECF 67 Ex. F) Preston admits that digital images are often modified or edited for aesthetic reasons, and she does not know whether the subject images were edited or modified. (*Preston Deposition, March 13, 2025* p.77-78; ECF 67 Ex. F*)

When asked why she thought Dully's opinions regarding age was reliable, Preston confesses that it's a "personal opinion... which I don't know." (*Preston Deposition, March 13, 2025* p.103 ln. 22 – 104 ln.18: ECF 67, Exhibit F) This is not a basis for a professional law enforcement officer to accept scientific opinions in a probable cause investigation.

Preston is not a doctor. Tolbert is not a doctor. Payne is not a doctor. These witnesses cannot establish Dr. Dully is an expert in age estimation or that her opinions were reliable. Tolbert's suggestion to consult with Dully does not make her opinions scientifically reliable. The fact that Payne or any other law enforcement officer has previously relied on Dr. Dully's opinions about chronological age, does not make the opinions reliable.  The evidence in this case is that it is "not part of the ICAC Investigative Guidelines or training standards to obtain an opinion from a medical doctor as to the age of an individual, when the images involve age difficult

persons, published on the public internet." (Report of Siewert, attached as Exhibit A to this Response)

g) <u>Lack of Pubic Hair</u>

A trained ICAC investigator should know that the lack of visible pubic hair on a digital image is not a scientifically reliable basis to estimate the age of a model in a pornographic image. *(Report of Siewert, attached as Exhibit A to this Response)* Every detective involved in this case has admitted that the mere lack of visible pubic hair, in-and-of-itself, is not a basis upon which to estimate the age of a female model. (*Greene Deposition* p.75 ln. 1-15; ECF 67 Ex. D) Even Preston acknowledges this fact (*Preston Deposition, March 13, 2025* p.123-124; ECF 67 Ex. F*)* and admits that the appearance of pubic hair can easily be altered by grooming or digital altering. *Id.*

Any reasonable Detective would know that the opinions expressed by Dully, to the extent that they purport to be based on pubic hair, were not scientifically reliable.  This is borne out by testimony of Det. Tolbert when questioned about Dully's opinions regarding the ycbLVVFQ_o.jpg image (Dully's Report April 5, 2023 ECF  Exhibit F[3])

> Q. Okay. Does that give you concern as an investigator, that this model has what may be interpreted as adult breasts, but this doctor, because of the lack of appearance of pubic hair, is saying that she is prepubescent, does that give you concern, as an investigator?
>
> A. So it's certainly a conversation I would want to have with her, to try to get that hashed out.·

---

[3] Quote the report

(*Tolbert Deposition,* P.65 Ln. 8-22; ECF Ex. C) Tolbert clearly understands the problem. This opinion does not pass the proverbial "smell test." When confronted with these facts, Tolbert agrees that Preston should have spent more time on this case prior to making a probable cause decision. (*Tolbert Deposition,* P.66 Ln. 18-23; ECF Ex. C)

It is important to note that this one image (ycbLVVFQ_0.jpg) was the only image found on Mr. Lawshe's phone and reviewed by Dully that was not charged in the criminal case. Under oath, Preston could not explain why. (*Preston Deposition, March 13, 2025* P.257 ln.15 259 - ln.2; ECF 67 Ex. F) However, a reasonable inference can be made that Preston understood that there was a complete lack of credibility to the opinion and, therefore, chose not to charge that image.  Such an act would evidence malicious conduct and there is no other explanation offered by Preston.

h) Dr. Dully's Warning to Preston

Dully unequivocally and repeatedly testifies that she warned Preston that her opinions were not scientifically reliable:

> Q· · ·All right.· And when you met with her, you
> explained to her that you could not offer her
> scientific reliable opinions regarding the actual age
> of the models depicted in these images, correct?
>
> A· · ·Yes.

(*Dully Deposition June 18, 2025* p. 12 ln.18 – p.13 ln.1, attached as Exhibit K)

Det. Preston has not refuted or contradicted the testimony of Dully regarding her verbal warning about the lack of reliability of her medical opinions.  If anything,

9

Preston's conspicuous lack of any recollection of the conversations she had with Dully raises an inference that she is being untruthful about the warnings she received.

        i)  <u>History of Metart.com</u>

Contrary to Preston's sworn affidavit, Metart.com is not a known source of CSAM and does not have a history of publishing child pornography.  (*Douglas Affidavit*; ECF 67 Exhibit H)

Preston testified that she did not know if the statements about met-art.com from google were reliable. (*Preston Deposition, March 13, 2025* P.53 Ln. 12-17: ECF 67 Exhibit F)[4] Preston had no personal knowledge about whether or not there is a known history of illegal content on this site. (*Preston Deposition, March 13, 2025* P.5421-22;ECF 67 Ex. F) She had never heard of the website. *Id*.  When questioned, she states that she got the information from a "google" search.  (*Preston Deposition November 21, 2023* p.30 ln.3-19, attached as Exhibit L) She cannot recount any details of the source or the accuracy of this statement. In fact, she freely acknowledges, specifically regarding the history of metart.com, "you can't believe everything you read on google." *Id*.

Preston also identifies Det. Greene as a source of her statement. In her motion for summary judgement, she argues that it is "well established that observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their

---

[4] Preston never identified or produced this article from the supposed google search.

10

number." (Preston MSJ;ECF 83 P.11) While this may be a correct statement of the law, it is not supported by the facts of this case.

Preston admitted in her deposition testimony that she did not know if the statements from Det. Greene regarding met-art.com were reliable. (*Preston Deposition, March 13, 2025* P.54 9-12; ECF 67, Exhibit F).  Det. Greene has no personal knowledge of whether illegal content has ever been published on met-art.com.  (*Greene Deposition* p.52-53; p.80 ln24 – p.81 ln.4; p.87 ln.22 – p.88 ln.11; ECF 67 Ex. D) Greene claims to have read something about metart.com in an unknown source on the internet, over 10 years ago. *Id*. He does not know if the claims were credible. *Id*. Furthermore, he testifies that he would not be willing to swear to the truth of those assertions regarding metart.com. (*Greene Deposition* P.88 ln.5-11; ECF 67 Ex. D)  Preston's repeating of unreliable information, in the form of a sworn affidavit, does not make the information reliable.

### j)  Assistant State Attorney Kaitlyn Payne

The affidavit of Kaitlyn Payne adds little, if anything, to the material question of (1) whether or not Preston presented fabricated evidence in her affidavit or (2) whether Preston conducted a reasonable investigation under the circumstances. Ms. Payne, like Preston, ignores the glaring problem with the reliability of Dr. Dully's medical opinions.

In her affidavit, Payne insists that she believed the images were CSAM.  This is not true or least it is not the whole story. *Before learning of the age verification documents produced by metart.com*, Ms. Payne wrote to Mr. Peirce that "Ben and I have been talking about the case and I do see where you are coming from."  (Emails

11

from Payne attached as Exhibit B to this Response) Payne goes on to state that "I just feel like there is other information, like the various phone scrubbers, contained on the download that give me pause." Id. Thereafter, she began to attempt to resolve the case in earnest. *Id.* As called out in Mr. Pierce's response, this was a complete fabrication, designed to create leverage. Id. There was never any "scrubbers" on Mr. Lawshe's phone.

Moreover, after dropping the case, Payne consented to returning all evidence, including the images to Plaintiff. (Emails from Payne attached as Exhibit C to this Response) This is not the action of someone who believed the content was CSAM.  Payne knew the models were adults and suspected as much prior to the age verification documents being produced.

### k) Unreasonable Investigation

Despite knowing that there was a reasonable disagreement about how to interpret the image, Preston never went to the website watermarked on the subject image (metart.com).  (*Preston Deposition, March 13th 2025*, P.55, ln. 3-14; ECF 67 Ex. F) She has no explanation for this omission in her investigation. (*Preston Deposition, March 13th, 2025*, P.67, ln. 4-9; P.185, ln.25 – P.186, ln.13; ECF 67 Ex. F) When asked why she did not go to the website to further her investigation, Preston simply replies, "I don't know." *Id.*

A reasonable investigation would include visiting the website where the image was published. This is the testimony of Patrick Siewert, a former ICAC detective and the Plaintiff's retained expert.  *(Report of Siewert, attached as Exhibit A to this Response)*  SJSO officers have testified that a reasonable investigation of possession

12

of CSAM, under these circumstances, would include visiting the website identified on the images themselves. (*Greene Deposition, December 17th, 2024,* P.46, ln. 13-19; *Camden Deposition* p40 ln. 20-24)  ICAC investigators are trained to attempt to identify suspected victims of child sexual abuse. (*Tolbert Deposition, December 17th,* 2024, p.46, ln. 5-8; ECF 67 Ex. C) and every effort should be made to identify the victim in these cases. (*Greene Deposition* p. 61 ln. 15-24: ECF 67 Ex. D)

When asked about Preston's failure to attempt to identify the alleged victims, Tolbert described her conduct as "sloppy police work." (*Tolbert Deposition, December 17th,* 2024, P.46, ln. 9-16; ECF 67 Ex. C). Her colleague, Det. Greene expressed regret over the investigation and admitted *"I think they should have taken more time. Honestly, I think they have probably rushed a little bit and, you know, taken more time and -- and gone through things a little longer." (Greene P. 14 Ln. 2-13)*

This is not the argument of Plaintiff's counsel.  This is not an investigative "suggestion."  Experts and SJSO officers believe that additional investigation *should* have been done prior to making probable cause decisions.  Det. Preston refused to take a position on whether it was reasonable or not to investigate the image on met-art.com. (*Preston Deposition, March 13th, 2025,* P.185 ln. 25 – P.186 ln.13)

In other investigations of NCMEC CyberTips, Preston has visited pornographic websites as part of her investigation. (*Preston Deposition, March 13th 2025,* P. 66, ln. 18 – P.67, ln. 9; P.145, ln. 1-7;ECF 67 Ex. F) Furthermore, Preston admits that she had the ability to go to the website in this case and could have easily

13

verified that the subject model was on the website. (*Preston Deposition, March 13th, 2025*, P.68, ln.21 – P.69, ln. 1;ECF 67 Ex. F) Preston further admits that she was aware that federal age verification law requires producers and publishers of child pornography to maintain age documentation. (*Preston Deposition, March 13th, 2025*, P.141 ln.15-21; ECF 67 Ex. F)

### l) Exculpatory Information Readily Available

Only after Mr. Lawshe was arrested, did someone from SJSO attempt to locate the model(s) on the internet. (*Greene Deposition*, December 17th, 2024, p.33 ln.12 - p.35 ln.11: ECF 67 Ex. D) It took Det. Greene approximately 20-30 minutes to locate both models on two or three websites. *Id*. All of the information needed to locate the models on the internet was available and included on the images, themselves.  Each of the websites described the subject models (both models) as verified adults and purported to comply with federal age verification laws.  *Id*.

After the meeting with Det. Greene, Mr. Lawshe's criminal defense team located the contact information of the website's records' custodian (published on the website) and promptly received records with documentation of the models' age. The website's records custodian provided a statement that the models were adults at the time of the photographs. In the statement, the records custodian states that it is the policy of metart.com to obtain age verification documents at the time any content is obtained. (*Age Verification Documents,* ECF 67 Ex. H) He also provided redacted copies of photographs of the models holding passports. (*Age Verification Documents*, ECF 67 Ex. H)

Probable cause would not have existed for a search warrant or an arrest had SJSO been in possession of the age verification documentation from the records custodian. (*Tolbert Deposition* p. 53 ln.22 – p.54 ln. 13; ECF 67 Ex. C) Preston acknowledges that the age verification documents "obviously would have changed the entirety of the investigation." (*Preston Deposition, March 13th 2025*, P.154, ln. 12-20: ECF 67 Ex. F)

This age verification information was readily available, prior to the probable cause determination. (*Tolbert Deposition* p.54 ln. 14-24; ECF 67 Ex. C and *Greene Deposition* p. 41 ln. 6-11; ECF 67 Ex. D)  Even Det. Preston admits that she had all of the information that she needed readily available in order to reach out to met-art.com's record custodian to request age verification information prior to making a probable cause decision. (*Preston Deposition, March 13th, 2025* p.147 ln.12-18: ECF 67 Ex. F)

      m) <u>The DuckDuckGo Image</u>

The fact that Det. Preston chose this image from Mr. Lawshe's phone and described it as CSAM is frankly outrageous. (ECF 72-4) There is nothing about this image that would lead any reasonable person to suspect that it portrayed a child. It's a cut-off image which was clearly not the subject of the screenshot. Because the image is cut-off, there is no face and no breasts shown.  It is marked with a publisher's name and appears to be the cover of a virtual magazine. It identifies the model by a stage name. It has a QR code on the image. The other images on the screenshot appear to be of adults.

Preston offers no cogent explanation of what made her think this cut-off image was CSAM. (*Preston Deposition, March 13th, 2025* P.157-159; ECF 67 Ex. F) The only suggestion ever produced that this model was a minor, was Dully's patently false opinion that because she did not appear to have pubic hair, she was prepubescent.  No reasonable person could look at this image and form an honest opinion that the individual depicted was pre-pubescent.

Preston now complains that it is difficult to confirm that the model Kacey Lane is the same model depicted in the "DuckDuckGo" image. This is because (1) the images is cut-off and (2) Preston never attempted to locate the complete image or identify this model. This is a problem of her own making. During her deposition, when shown the photograph of the model holding her passport, Preston admitted that she could be as old as 20. (*Preston Deposition, March 13th, 2025* P166 ln. 5-6; ECF 67 Ex. F) The fact that this image was picked out, apparently at random, and charged as criminal contraband raises an inference of malice.

n) Age Verification Documentation

Counsel for Preston attempts to minimize the significance of the documentation and information provided by Jeffry Douglas. (ECF 78 P.2-3) However, within a period of less than 24 hours, Douglas produced photographs of the two models holding passports along with additional relevant information. (see ECF 67, Exhibit H) The passports clearly show the birth date of the models. *Id.*  Mr. Douglas produced a sworn statement and email, which outlines metart.com's policy and procedures regarding compliance with age verification laws and, again, states that he has reviewed the relevant documents and states when the earliest

16

photographs of Milena D and Kacey Lane were taken, observing that they were an adults. *Id.*  Mr. Douglas indicated that he had requested additional information and indicated that FBI Agent Terri Botterbush had previously investigated the identity of Milena D.[5] *Id.* The case was dropped without a request for additional information from the ASA.

If true, this information would be definitive proof of innocence and there is no evidence that it is not true. Preston questions the veracity of the information but has never done anything to investigate its veractity. (Response ECF P.4)

The only evidence which would prove that the models depicted were adults at the time of the images would be (1) evidence of their birthdate and (2) evidence that the date of the subject photography occurred more than 18 years after the date of birth. Mr. Douglas, whose job it is to be the records custodian, provided both pieces of information, along with a willingness to fully cooperate. Preston fails to articulate what more or additional information she would have expected with less than 24 hours notice, 6 days before Christmas. Crawford Pierce, Mr. Lawshe's criminal defense lawyer, has produced emails and an affidavit in this case, which clearly articulate the timeline and investigation of these images. (see ECF 67, Exhibit H) No objective officer in possession of this information could reasonably find probable cause that the models were in fact under the age of 18.

## II.    MEMORANDUM OF LAW AND INCORPORATED ARGUMENT

---

[5] The volume of Cybertip Reports is explained by the fact that the image has been erroneously included in an unknown CSAM hash list.

There exists material factual disputes in the evidence presented by Defendant which prohibits entry of summary judgment in favor of Det. Preston. In seeking summary judgement on any issue, the moving party bears the burden of establishing there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) Preston has not met this burden.

    a)  <u>Probable Cause</u>

Probable cause was required to effectuate both the search warrants and arrest of Mr. Lawshe.  *Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003); *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983) Probable cause exists if the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing a criminal offense. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). However, mere speculation is insufficient to establish probable cause. *Whitaker v. Estelle*, 509 F.2d 194, 196 (5th Cir. 1975) "Probable cause requires more than mere suspicion..." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) It is clear that an inchoate and unparticularized suspicion or hunch of criminal activity is not enough to satisfy the minimum level of objectivity required to establish probable cause. <u>United States v. Perkins, 348 F.3d 965, 967</u> (11th Cir. 2003)

Here, there was never more than a possibility or suspicion that the images depicted minors. Even accepting Preston and Tolbert's self-serving testimony that they subjectively thought the models were minors, this is nothing more than a hunch or a gut-feeling. Defendant has not offered any reliable evidence to suggest that her hunch was more probable than those who disagreed with her. In fact, Preston concedes that others might have reasonably believed the models were adults. She also testifies that she could not conclude that Mr. Lawshe knew the images depicted minors.

Virtually all young adults are age-difficult. It is not possible to distinguish between a 19-year-old from a 17-year-old by just looking at them. Everyone knows this. If simply eye-balling age difficult images can establish probable cause, then millions of people in possession of vast qualities of legal adult content would be subject to search and arrest. This cannot be sufficient to warrant a prudent person to believe that an individual had committed a criminal offense.

b) The Search Warrants - False and Fabricated Affidavit

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a search warrant violates the Fourth Amendment if the affidavit supporting the warrant contains statements are deliberately false or made with reckless disregard for the truth and such statements are necessary to a finding of probable cause. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). The rule in *Franks* extends to omissions "made intentionally or with a reckless disregard for the accuracy of the affidavit" if the inclusion of such omissions "would have prevented a finding of probable

19

cause." *Id.* at 1326-27. More succinctly, officers may not lie about or conceal critical information. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019)

"When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing." *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003) (emphasis in original). While this condition does not dictate that the statements be objectively accurate, it does require that they "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

Defendant argues that "there is nothing to suggest that Detective Preston deliberately falsified or omitted any information with reckless disregard for truth or an intent to mislead the judge reviewing and signing the search warrant." (MSJ, ECF 83, P.14) Of course, this ignores the fact that at the time Preston swore out the affidavit, she knew that fellow law enforcement officers believed that the image possibly depicted an adult. It ignores evidence that Preston knew that Dr. Dully's opinions were not reliable estimates of the model's age. It also ignores the fact that Preston had no reliable source for her false assertions about metart.com's history.

The record evidence shows that Dully informed Preston the reports were not accurate or reliable opinions of the model's age prior to the submission of the affidavit. She knew the evidence and estimates of age were fabricated.

Likewise, the record evidence proves Preston did not subjectively believe that metart.com was a known source of CSAM at the time she submitted the affidavits for search warrants. She was just repeating uncorroborated information from an

20

unknown source. Preston's flippant remark that "you can't believe everything you read on google" is no joke. Rather, it shows her willingness to swear to assertions without regard for her obligation to present truthful reliable information to the court.

Preston omitted from the probable cause affidavit that NCME categorized the content as "unconfirmed." Finally, Preston knew at the time she submitted the affidavit that a reasonable person could interpret the image as depicting an adult and there was a disagreement about how to interpret this image within SJSO. This was obviously critical information for the judicial officer, who was asked to make a fair and impartial determination, without ever seeing the images in question.

When these false and fabricated statements are removed and the omitted evidence is considered, all that is left is evidence that Mr. Lawshe possessed a pornographic image which depicted a model of indeterminate age. The affidavit did not contain Preston, Tolbert or Payne's personal subjective opinions about the model's age. Preston knew, without having to go the website in question, that the image(s) was likely published on a public website and likely described the model as an adult on that website. She knew that the model was not portrayed or pretending to be a minor. In reality, without Dr. Dully's fabricated reports, Det. Preston would never have even sought a search warrant.

The facts supporting the second search warrant are substantially the same as those presented in the original affidavit. This affidavit fails for the same reasons the original affidavit fails.

c) <u>Qualified Immunity - The Search Warrants</u>

The law was clearly established that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest." <u>*Cannon*, 174 F.3d at 1285</u>. *See also* <u>Kelly, 21 F.3d at 1554</u>; <u>*Garmon v. Lumpkin County*, 878 F.2d 1406, 1410-11 (11th Cir. 1989)</u> (holding Lumpkin County sheriff was not entitled to qualified immunity where he directed an investigator to submit a warrant application that contained knowingly false statements). Holmes v. Kucynda, 321 F.3d 1069, 1083 "It is clearly established that officers cannot knowingly make false statements in a warrant application where those misstatements are necessary to probable cause. ..." *Goldring v. Henry*, 2021 U.S. App. LEXIS 33621 (11th Cir. 2021)

Preston suggests that the right violated was not clearly established. Defendant cites specifically the case of *U.S. v. Gatherum*, 338 F. App'x 271, 272 (4th Cir. 2009).  This case, and the few other cases cited, do not deal with false and fabricate evidence claims. There is no suggestion in the facts of *Gatherum* that the officer submitted knowingly false or fabricated evidence to the judicial officer. There is no suggestion that the arresting officer concealed other law enforcement officers' opinions that the images portrayed adults or were "age-difficult." There are no spurious accusations about the publishing website. The undisputed facts of that case seem to suggest unanimity that the image depicted a 12-14 year old child. That statement was not questioned or impeached by the evidence. To the contrary, the Court's decision turns on the observation that "while some 16- or 17-year-old

models might be difficult to distinguish from 18-year-olds, the physical differences between a 12-year-old model and an 18-year-old *model generally would be significant and readily apparent.*" [emphasis added] *Id.*  This illustrates the problem with Preston's conduct: she knew the age of the model(s) was not readily apparent and concealed that fact from the court.

Materially false statements, fabricated evidence and concealment of critical facts in a probable cause affidavit are patently unconstitutional and have long been recognized as such.  Any reasonably competent officer would be well aware of this.

d) Probable Cause  - False Arrest

As outline above, the totality of the circumstances known to Det. Preston did not support probable cause that Mr. Lawshe had committed the crime of knowing possession of CSAM. The mere possibility or suspicion that a pornographic model of indeterminate age may appear to be under the age of 18 to some untrained people, cannot establish probable cause.

The probable cause analysis does not end with the facts known to Detective Preston at the time of the search warrant or arrest.  In establishing probable cause, an arresting officer is required to conduct a reasonable investigation. Rankin v. Evans, 133 F.3d 1425 (11th Cir. 1998) quoting *Tillman,* 886 F.2d at 321 and *Harris v. Lewis State Bank,* 482 So. 2d 1378, 1382 (Fla. 1st DCA 1986) ("Where it would appear to a "cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of

the information.").  In evaluating probable cause, an officer may not 'unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her or electing not to obtain easily discoverable facts' that might tend to exculpate a suspect." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004)). In other words, a detective "may not close his or her eyes to facts that would help clarify the circumstances of probable cause," nor are they "permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Kingsland v. City of Miami, 382 F.3d 1220, 1228* (11th Cir 2004)  *cf. Hernandez v. United States*, 939 F.3d 191, 208 (2d Cir. 2019) see also *Alcocer v. Mills, 800 Fed. Appx. 860, 866* (11th Cir. 2020) *also Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) ("Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest . . . must charge him with possession of all the information *reasonably discoverable* by an officer acting reasonably under the circumstances." (emphasis added)

Plaintiff has proffered expert testimony that under these circumstances, "standard investigative practice would involve visiting the website in question." *(Report of Siewert, attached as Exhibit A to this Response)* Plaintiff's expert, Mr. Siewert, goes on to state that "after visiting the website, Det. Preston should have requested age verification documentation from the website's record custodian. Investigators trained and experienced in the investigation of CSAM, should be aware of the potential availability of Federally mandated age verification

documentation. Compliance with these age verification laws makes this evidence readily available to investigators, such as Det. Preston." *Id*.  Det. Greene corroborates this testimony. Tolbert describes Preston's efforts as sloppy police work.  This testimony establishes that the investigation was not reasonable.

When one considers the exculpatory evidence readily available to Det. Preston at the time of her probable cause determinations, it quickly becomes apparent that probable cause never existed in this case. As cited above, Detective Greene establishes that both models could be located on multiple public websites within 20 -30 minutes. All of these websites described both models as "verified adults." All of these websites claimed compliance with federal age verification laws. The records custodian of metart.com promptly provided documents and affidavits that the models were adults.  Possession of this information would have prevented any objective police officer from seeking probable cause for an arrest.

e)  Qualified Immunity – Arguable Probable Cause

Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) However, a qualified immunity analysis must charge the officer with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances. *Kingsland v. City of Miami*, 382 F.3d 1220, 1222 citing  *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988)

25

As stated above, no reasonable officer would have believed probable cause existed under these circumstances and with all of the information readily available. Preston's sole argument that she is entitled to qualified immunity based on arguable probable cause is "there is little question that a reasonable officer in Detective Preston's position could have credited Dr. Dully's opinions and determined probable cause existed to arrest Plaintiff." (Motion ECF P. 24) Again, this argument is entirely detached from the evidence of this case. Dr. Dully warned Preston that her opinions are not reliable estimates of the ages of the models depicted. No objectively reasonable officer would credit an unreliable expert report after being warned that it was not scientifically reliable *by the author of the report*.

    f)  <u>First Amendment</u>

Preston's motion fails as to Plaintiff's First Amendment claim, as there was neither probable cause nor arguable probable cause.

WHEREFORE, Plaintiff requests an order denying Preston's Motion for Summary Judgment.

Submitted this 3rd Day of October 2025

*/s/ Michael K. Roberts*
**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff

26

# ECF 96-1

## EXPERT REPORT OF PATRICK SIEWERT

**(i) a complete statement of all opinions the witness will express and the basis and reasons for them;**

> a.) The models depicted in photographs are appropriately described as "age difficult," meaning that it is not possible for a law enforcement investigator to determine whether the individual is over or under the age of 18 by simply looking at the models.

> b.) The fact that a nude image is published on the public internet and on a legitimate modeling website makes it likely that the model is being portrayed to viewers as an adult.

> c.) Det. Preston identified the likely source of the image prior to application for a search warrant, as Met-Art.com and included this information in her initial probable cause affidavit. Standard investigative practice would involve visiting the website in question. The purpose of visiting the website would include, but not be limited to: 1) learning whether or not the model was portrayed as an adult to the public 2) verifying the publication of potential CSAM on the public website, 3) to request age verification documentation of the model, 4) to identify the ownership and legal contact(s) for the website and 5) potentially identify the suspected victim. This investigative technique would be standard for any image which was discovered to be published on a public website.

> d.) After visiting the website, Det. Preston should have requested age verification documentation from the website's record custodian. Investigators trained and experienced in the investigation of CSAM, should be aware of the potential availability of Federally mandated age verification documentation. Compliance with these age verification laws makes this evidence readily available to investigators, such as Det. Preston.

> e.) Investigators specializing in CSAM should be aware that the practice of grooming body hair is common in the adult pornography industry. Additionally, investigators should be aware that the practice

1

of cosmetically altering digital images is common in the pornography industry.

f.) It is not part of the ICAC Investigative Guidelines or training standards to obtain an opinion from a medical doctor as to the age of an individual, when the images involve age difficult persons, published on the public internet.

<u>These opinions are preliminary and subject to change pending review of requested documentation and, potentially, additional deposition testimony.</u>

**(ii) the facts or data considered by the witness in forming them:**

I have reviewed the contents of the documents produced in discovery by Plaintiff. These include the criminal investigative file, the photographs and documents from Met-Art.com's records custodian and the deposition transcripts of Det. Greene, Det. Tolbert and Det. Camden. My opinions are based on this review and my experience and training in investigations of possession of CSAM.

**(iii) any exhibits that will be used to summarize or support them;**

None at this time.

**(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;**

Please see attached C.V.

**(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and**

Please see attached C.V, which includes retained cases.

**(vi) a statement of the compensation to be paid for the study and testimony in the case.**

Please see attached.

2

Patrick Siewert

# ECF 100

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

Plaintiff,

v.                                                  CASE NO: 3:24-cv-00044-MMH-MCR

MIKAYLA PRESTON,
in her induvial capacity as a Detective for St. Johns County Sheriff's Office,
and KATHLEEN DULLY, in her individual capacity as
medical director of the UF Child Protection Team,

   Defendants.
_____/

### DEFENDANT KATHLEEN DULLY'S REPLY TO PLAINTIFF'S RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT

Dr. Dully asserts that she provided good faith assistance to law enforcement Plaintiff has failed to provide any evidence showing otherwise and has consistently ignored the totality of the evidence, including testimony from his own expert. Both public policy and relevant law support the conclusion that Dr. Dully should not and cannot be held liable for offering her opinion in this matter.

### I.    Defendant Dully's defenses were not waived.

Plaintiff relied on the decision in *Troxler v. Owens-Illinois, Inc.*, to support his claim that a statutory immunity defense pursuant to 34 U.S.C. § 20342, a qualified immunity defense, and a defense noting Plaintiff's failure to comply with medical negligence presuit notice requirements, could not be raised in Dr. Dully's

1

Motion for Summary Judgment, as they were not included as affirmative defenses in the answer. 717 F.2d 530, 533 (11th Cir. 1983); Doc. 95, pp. 12-13, 19. Although Dr. Dully did—contrary to Plaintiff's assertions—include affirmative defenses of good faith and qualified immunity, Plaintiff's argument is not supported by the relevant case law, even if Dr. Dully had never raised said defenses until her Motion for Summary Judgment was filed. Doc. 54, ¶¶ 220, 222.

Plaintiff failed to apprise this Court that the defendant claiming statutory immunity in *Troxler* was raising it for the first time **on appeal**. *Troxler* at 532. Moreover, that court still recognized that the waiver of defenses under Rule 8(c), Fed. R. Civ. P., was not absolute and could be overcome. *Id*. at 533. Just a few years later, the 11th Circuit clarified that the purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 350 (1971). The 11th Circuit recognized that a court does not err in considering such a defense when its consideration "does not cause the plaintiff any prejudice," and found that raising a defense for the first time in a motion for summary judgment approximately one month before trial still fully informed the plaintiff of the defense and was not prejudicial, so the defense was not waived under Rule 8(c). *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797-98 (11th Cir. 1989). This understanding of the

2

purpose and limitations of Rule 8(c) in waiving defenses has been consistent. *See Easterwood v. CSX Transp, Inc.*, 933 F.2d 1548, 1551 (11th Cir. 1991) (noting the 11th Circuit has "been reluctant to enforce strictly the harsh waiver requirement where the plaintiff [cannot] demonstrate any prejudice due to the lack of notice")

In this case, Dr. Dully is not raising defenses for the first time on appeal or after a jury verdict, nor in close temporal proximity to trial, but rather in summary judgment proceedings. Plaintiff has made no claim of prejudice, and this Court's consideration of the defenses Dr. Dully raised in her Motion for Summary Judgment would not be prejudicial because no further discovery would assist in reviewing or rebutting the defenses. Accordingly, the purpose of Rule 8(c) has already been accomplished, and there should be no waiver of Dr. Dully's defenses.

## II.    Plaintiff's rebuttals are not supported by evidence.

Plaintiff's argument against Dr. Dully is built upon inferences loosely tied together in order to reach his ultimate conclusion that "[i]nstead of offering truthful opinions, Dully fabricated reports that she knew would be used in judicial proceedings… she fabricated probable cause." Doc. 95, p. 8. In making these speculations, Plaintiff ignores the opinion of his expert who stated that he is unable to testify that Dr. Dully provided deliberately false information, conspired with law enforcement to achieve a specific result, or did **anything** beyond what he would consider to be negligently applying medical standards. Doc. 85, Ex. L, 30:2-21. At

3

face value, even if Dr. Dully negligently applied medical standards in preparing her opinions, the elements of Plaintiff's claim against her would not be met.

Although Plaintiff denounced Dr. Dully's use of "semantics[1]" and a "rhetorical device", those same semantics are the only evidence that Plaintiff has brought forward to support his claims. Doc. 95, pp. 5-6. Plaintiff argues that Dr. Dully's choice to use the words "a female child" or similar language when describing the individuals in the images she reviewed, without adding a disclaimer of the limitations of her review in each opinion, shows her intent to deceive and willful fabrication of evidence. Doc. 95, pp. 3, 5, 9.

Plaintiff's conclusion of willful or reckless fabrication of evidence is not supported by the plain language[2] of the opinions Dr. Dully provided, the images themselves, Dr. Dully's testimony, or even Plaintiff's own expert. Plaintiff misrepresents Dr. Dully's testimony[3] by claiming she intended "that anyone reading

---

[1] "Appearance of age" is not semantic. It is an acknowledgement of the undisputed fact that Dr. Dully **only** reviewed the images and therefore can **only** speak to the appearance of the images. Plaintiff's insistence that Dr. Dully was constitutionally bound to consider hypothetical digital alteration and personal grooming practices not observable within the image has no basis in law or fact.

[2] Dr. Dully's written opinions offer no determination of a specific age of the images, only age ranges are provided. Hence, she acknowledges that chronological age is "indeterminate." Plaintiff's characterization of "indeterminate" meaning Dr. Dully could not reasonably estimate their age or offer an opinion on whether they appeared to be adults or children is a gross mischaracterization of the evidence.

[3] In deposition, Dr. Dully said she hoped that a reader would interpret her opinions as saying the individual depicted in the image was a child. Plaintiff's counsel asked

4

the report would believe that she had expressed an opinion that the models were in fact minors." Doc. 95, p. 18. Plaintiff also misrepresents Dr. Dully's testimony by stating "Dully knew her opinions were meaningless speculation and added no weight to an inquiry about the age of an individual depicted in a pornographic image[4]," and "she knew her opinions were false." Doc. 95, pp. 6, 14. Instead, the evidence shows that Dr. Dully offered her undisputed opinion that the pictured individuals appeared to be minors, that she discussed the limitations of her opinions with Detective Preston, and that she had no knowledge of or further involvement with the investigation. Ultimately, the underlying facts of the case are not in dispute. Dr. Dully's written opinions, the testimony of Plaintiff's expert, and the images speak for themselves; Dr. Dully was not acting with malice, nor did she fabricate evidence.

## III.     Plaintiff failed to prove a violation of a clearly established right.

Case law makes clear that "under the Fourteenth Amendment, there is no substantive due process right to be free from malicious prosecution without probable cause" because "[a] malicious prosecution claim arises under the Fourth

---

the question again, and Dr. Dully immediately clarified her first response by stating two times that her opinion and what she hoped to convey to the reader of her opinions was that the appearance of the individual pictured was under the age of 18 and that her actual age is indeterminant. *Dr. Dully's Deposition* 50:15-52:9.
[4] Not only does Plaintiff ignore Dr. Dully's testimony that her opinions did contribute value, but he disregards the testimony of his own expert who explained that he would use the same or similar methods to what Dr. Dully employed when working with law enforcement on CSAM issues. Doc. 85, *Ex. L*, 18:17-19:17.

5

Amendment, not Fourteenth Amendment substantive due process." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010). Although the Third Circuit found that it is possible for a fabricated evidence claim to stand under the Fourteenth Amendment, the plaintiff must "draw a meaningful connection between [his] particular **due process injury** and the use of fabricated evidence against [him]." *Black v. Montgomery County,* 835 F.3d 358, 371 (3d Cir. 2016). at 371-72 (internal citations removed) (emphasis added). The Eleventh Circuit has held that a 14th Amendment claim of fabrication of evidence must allege a due process violation such as denying a plaintiff "the constitutionally required procedures necessary to challenge his indictments and arrest." *Rehberg v. Pault*, 611 F.3d 828, 853 (11th Cir. 2010). In fact, the Eleventh Circuit in *Rehberg* found that plaintiff's challenges to the indictments brought against him demonstrated there was no due process violation. *Id*.

Plaintiff's only response to the glaring flaw in his 14th Amendment case is that "Defendant does not contest that a cause of action exists for fabrication of evidence under §1983 and has not suggested any flaw in the substantive factual elements pled." Doc. 95, p. 16. Ignoring the flaws that Dr. Dully **has** pointed out, *the simple fact that fabricated evidence claims exists and can be pursued through § 1983 does not mean that Plaintiff has stated a claim against Dr. Dully upon which relief can be granted*. It's not as though Plaintiff is confused about the nature of his constitutional claims. He lays out fifty paragraphs of 4th Amendment claims against Detective

6

Preston and the SJSO in his First Amended Complaint. Plaintiff pursued a separate constitutional claim against Dr. Dully because he knew that she had *absolutely no input in the decision to arrest or prosecute him at the conclusion of the investigation.* Plaintiff may point to legitimate constitutional interests under the 4th and 14th Amendments, but his claims must be dismissed because he has neither alleged nor proven Dr. Dully *violated* a clearly established right under either amendment.

WHEREFORE, Defendant Dully respectfully requests this Court enter final summary judgment in its favor and grant such other relief as the Court deems proper.

Respectfully Submitted,

*/s/ John Wilson*
John Wilson, Esq.
Florida Bar No. 84798
Howell, Buchan & Strong
2898-6 Mahan Drive
Tallahassee, Florida 32308
Telephone: (850) 877-7776
Johnwilson@jsh-pa.com
*Attorney for Defendant,*
*Kathleen Dully*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by e-filing on October 17, 2025.

*/s/ John Wilson*
John Wilson, Esq.

7

# ECF 101

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,

     Plaintiff,

v.                             Case No. 3:24-CV-00044-JAR-MCR

MIKAYLA PRESTON, et al.,

     Defendants.

_____/

**DEFENDANT DETECTIVE PRESTON'S
REPLY TO PLAINTIFF'S RESPONSE TO
DETECTIVE PRESTON'S MOTION FOR SUMMARY JUDGMENT**

Defendant MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sheriff's Office, through undersigned counsel, and pursuant to Local Rule 3.01(d), files her reply to Plaintiff's response to Detective Preston's motion for final summary judgment [ECF No. 96].

**There Is No Readily-Available Exculpatory Evidence To "Ignore"**

Plaintiff's complaint against Detective Preston is based largely on the alleged availability of exculpatory evidence – namely, documentary information that the individuals depicted in the investigated and criminally charged images were over 18 years old at the time the images were captured. ECF No. 40, ¶¶ 28, 33, 56, 59, 60, 61, 62, 63, 72, 75, 76, 87, 130, 131. Plaintiff has asserted that the designated records custodian of met-art.com "maintains records verifying the age of all models and makes those records available to any appropriate investigating authority." Id., ¶ 56(d), (e).

However, through the completion of discovery in this case and Plaintiff filing a motion for partial summary judgment against Detective Preston [ECF No. 67] and a reply [ECF No. 90], and a response to Detective Preston's motion for final summary judgment [ECF No. 96] – as well as filing voluminous exhibits in support of same – Plaintiff still has not established when the subject images were captured.

Remarkably, despite repeatedly stating that "Detective Preston ignored readily available exculpatory evidence," Plaintiff has not identified any such evidence. In fact, Plaintiff has only established that the evidence was not readily available, and a reasonable inference is that the evidence does not exist at all.

Make no mistake, Plaintiff has alleged that met-art.com – the alleged source of three of the images at issue in this litigation – "maintains records verifying the age of all models…" as required by 18 U.S.C. § 2257. ECF No. 40, ¶¶ 56(e), 59. Plaintiff has alleged further that all one needs to do is contact the records custodian of met-art.com, and the records verifying the age of the individuals depicted in these images would be "readily available…" Id., ¶¶ 59, 60. However, even as of today, there has been no documentary evidence to establish the dates upon which these images were captured.

Sure, the records custodian has provided redacted images purporting to be the individuals depicted in these photographs holding their foreign passports. ECF No. 67-8, p. 6. But that only tells half of the story. These passports provide, at most, dates

2

of birth associated with these still unnamed[1] individuals. Without documentary evidence establishing when the images were <u>captured</u>, dates of birth are meaningless. Establishing that the individuals are over 18 years old now does not mean they were over the age of 18 when the images were captured. Even the met-art.com records custodian himself had to inquire when a certain "film shoot" occurred. Id. Moreover, during the criminal case, Plaintiff's criminal defense team contemplated needing a "foreign subpoena" to obtain information regarding the date of the "photo shoot." ECF No. 96-2, p. 2. The record evidence in this case does not contain an update to either of these inquiries.

Additionally, the record evidence establishes that the DuckDuckGo image [ECF No. 93-4] was not from met-art.com. ECF No. 86-8, 72:8-15. Plaintiff has not identified the records custodian of the website from which he allegedly obtained that image.

So, as it turns out, the met-art.com records custodian cannot provide evidence that one of these individuals was over 18 years old at the time the images were captured. All he can provide is something akin to: "I promise she was an adult." And <u>nobody</u> can speak to the age of individual in the DuckDuckGo image when it was captured.

Exculpatory evidence does not exist now. It did not exist when Detective

---

[1] Notably, 18 U.S.C. § 2257 also requires the records custodian to maintain the names of the individuals depicted. That information has been redacted. Only "professional" names were provided.

Preston was conducting her investigation. Detective Preston cannot "ignore" the fictional.

**Detective Preston Enjoys Qualified Immunity**

Plaintiff does not really challenge Detective Preston's argument that she enjoys qualified immunity from Plaintiff's claims. As noted in Detective Preston's motion for final summary judgment, undersigned counsel could not identify a materially similar case from the Supreme Court of the United States, the Eleventh Circuit, or the Supreme Court of Florida. ECF No. 83, p. 17. When challenged, neither could Plaintiff. Plaintiff cites only to general, non-specific caselaw prohibiting the inclusion of knowingly false information in a warrant application. ECF No. 96, p. 22.

As discussed in more detail in Detective Preston's motion for final summary judgment, there was no "knowingly false" information included in the search warrant. ECF No. 83, pp. 12-14. Detective Preston reasonably relied on statements provided by her fellow detective. Id., p. 11. And while Plaintiff makes hay of Dr. Dully's assertion that she told Detective Preston she could not offer a scientifically reliable opinion regarding the <u>actual</u> age of the individuals depicted in these images [ECF No. 96, p. 9], the fact remains that each of Dr. Dully's written opinions clearly state, without limitation, that the "female <u>child</u>" depicted in each of these images "<u>appears</u> younger than 18 years of age." ECF No. 67-9, pp. 1, 2, 3 (emphasis added).

Detective Preston did reference in her motion *United States v. Gatherum*, 338 Fed. Appx. 271, 272 (4th Cir. 2009) (unpublished). There, law enforcement officers conducted less of an investigation than Detective Preston did here. Additionally, law

4

enforcement officers in *Gatherum* were unmoved by the plaintiff's proclamations that he obtained the subject images from a "public" website, that the website had a disclaimer stating that all models were at least 18 years old, or that the website included a picture of the model holding a passport that showed his birth date. *Id.*, at 273.

Plaintiff does not really attempt to distinguish *Gatherum* other than to assert that the officers in *Gatherum* seemed to be in agreement that the individual in the image was 12-14 years old, and that the officers did not include spurious accusations about the publishing website. ECF No. 96, p. 22. Plaintiff misses the point. The existence of *Gatherum* and the complete absence of similar case law applicable to law enforcement officers in Florida eviscerates Plaintiff's argument that because the images were available on a "public" website that purported to comply with federal age verification laws (and which purportedly included pictures of a model with a passport), law enforcement could not have probable cause to believe that Plaintiff knowingly possessed one or more images comprising CSAM.

Moreover, the analysis the Court must undertake requires first that it set aside the allegedly false material and determine if probable cause still exists. *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). If the Court ignores Detective Green's statements regarding met-art.com, and considers Dr. Dully's assertion that her opinions cannot establish the <u>actual,</u> <u>chronological</u> age of the individual depicted in the image, what is left? That some detectives and the assistant state attorney think the individual is under 18 years old while some detectives are not sure, and that Dr. Dully, a dual-board certified medical doctor, has opined <u>only</u> that the individual <u>appears</u> to

be younger than 18 years old (and developmentally appears to be 12-15 years old). That would satisfy the low bar of probable cause – or, in the case of qualified immunity, arguable probable cause.

## CONCLUSION

For the above reasons and those presented in her motion, Detective Preston is entitled to final summary judgment in her favor. Detective Preston had, at least, arguable probable cause to seek the subject search warrant. Detective Preston had, at least, arguable probable cause to arrest Plaintiff. Detective Preston respectfully requests this Honorable Court grant her motion, enter final summary judgment in her favor, and grant any other relief this court deems proper.

Respectfully submitted this 17th day of October, 2025.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**
Florida Bar Number: 0827711
mcarson@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Attorneys for Detective Mikayla Preston*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2025, a true and correct copy of the foregoing was electronically filed in the United States District Court for the Middle District of Florida using the CM/ECF system, which will serve counsel of record.

*/s/ Matthew J. Carson*
**MATTHEW J. CARSON**

# ECF 103

**UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF FLORIDA**

**JACKSONVILLE DIVISION**

| | |
|---|---|
| WILLIAM LEE LAWSHE, an individual, Plaintiff, v. MIKAYLA PRESTON, in her individual capacity as a Detective for St. Johns County Sherriff's Office, and KATHLEEN DULLY, in her individual capacity as medical director of the UF Child Protection Team, Defendants. | 3:24-cv-00044-JAR-MCR OPINION AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

**INTRODUCTION**

Before the court are the parties' cross-motions for summary judgment[1] and responses and replies thereto.[2] Plaintiff William Lee Lawshe ("Lawshe") moves for partial summary judgment

---

[1] Mot. for Partial Summ. J. Against Def. Dully by William Lee Lawshe, ECF No. 66 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Dully"); Mot. for Partial Summ. J. Against Def. Preston by William Lee Lawshe, ECF No. 67 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Preston"); Mot. for Summ. J. by Mikayla Preston, ECF No. 83 (Sep. 12, 2025) ("Preston S.J. Mot."); Mot. for Summ. J. by Kathleen Dully, ECF No. 85 (Sep. 12, 2025) ("Dully S.J. Mot.").

[2] Resp. to Lawshe Mot. for Partial Summ. J. by Kathleen Dully, ECF No. 75 (Sep. 9, 2025) ("Dully Resp."); Resp. to Lawshe Mot. for Partial Summ. J. by Mikayla Preston, ECF No. 78 (Sep. 9, 2025) ("Preston Resp."); Reply as to Preston by William Lee Lawshe, ECF No. 90 (Sep. 16, 2025) ("Lawshe Reply to Preston"); Reply as to Dully by William Lee Lawshe, ECF No. 91 (Sep. 16, 2025) ("Lawshe Reply to Dully"); Resp. to Dully Mot. for Summ. J. by William Lee Lawshe, ECF No. 95 (Oct. 3, 2025) ("Lawshe Resp. as to Dully"); Resp. to Preston Mot. for Summ. J. by William Lee Lawshe, ECF No. 96 (Oct. 3, 2025) ("Lawshe Resp. as to Preston"); Reply to Lawshe Resp.

Case No. 3:24-cv-00044-JAR-MCR

on his 42 U.S.C. § 1983 claims against Defendant Dr. Kathleen Dully ("Dully") under the Due Process Clause of the Fourteenth Amendment and against Defendant Detective Mikayla Preston ("Preston") under the First and Fourth Amendments.  See Mot. for Partial Summ. J. Against Def. Dully by William Lee Lawshe, ECF No. 66 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Dully"); Mot. for Partial Summ. J. Against Def. Preston by William Lee Lawshe, ECF No. 67 (Aug. 12, 2025) ("Lawshe S.J. Mot. as to Preston").  Dully and Preston oppose Lawshe's respective motions and individually move for final summary judgment.  See Resp. to Lawshe Mot. for Partial Summ. J. by Kathleen Dully, ECF No. 75 (Sep. 9, 2025) ("Dully Resp."); Resp. to Lawshe Mot. for Partial Summ. J. by Mikayla Preston, ECF No. 78 (Sep. 9, 2025) ("Preston Resp."); Mot. for Summ. J. by Kathleen Dully, ECF No. 85 (Sep. 12, 2025) ("Dully S.J. Mot."); Mot. for Summ. J. by Mikayla Preston, ECF No. 83 (Sep. 12, 2025) ("Preston S.J. Mot.").

The court denies Lawshe's respective motions for partial summary judgment as to Defendants Dully and Preston and grants Defendant Dully's and Defendant Preston's respective motions for summary judgment.[3]

**BACKGROUND**

The court takes the following facts as undisputed from the parties' various motions.  On February 20, 2023, the St. Johns County Sherriff's Office ("SJSO") received a CyberTip from the National Center for Missing and Exploited Children ("NCMEC").  See CyberTipline Report, ECF No. 67-2 (Aug. 12, 2025) (the "CyberTip"); February 28, 2023 Search Warrant at 2, ECF 67-1 (Aug. 12, 2025) ("Feb. Search Warrant").  This CyberTip stated that Lawshe was in possession of

---

by Kathleen Dully, ECF No. 100 (Oct. 17, 2025) ("Dully Reply"); Reply to Lawshe Resp. by Mikayla Preston, ECF No. 101 (Oct. 17, 2025) ("Preston Reply").

[3] Because the court grants Defendant Dully's Motion for Summary Judgment, the court denies as moot Dully's Motion to Exclude the Expert Testimony of Patrick J. Siewert, ECF No. 71 (Sep. 5, 2025).

OPINION AND ORDER - 2

Case No. 3:24-cv-00044-JAR-MCR

a single image, "f6a487" (the "Cyber Tip Image"), which it described as the "lascivious exhibition" of a "prepubescent minor," but otherwise characterized as "CP-unconfirmed."[4]  See CyberTip. This image included a watermark for "met-art.com."[5]  See Feb. Search Warrant at 3.  Detective Tolbert, the supervisor of SJSO's Internet Crimes Against Children ("ICAC") division, reviewed the CyberTip before assigning the investigation to Defendant Detective Preston.  See Dep. of Eugene Tolbert at 7:1–15, ECF No. 67-3 (Aug. 12, 2025) ("Tolbert Dep.").  There was not a consensus at the Sherriff's Office as to whether the CyberTip Image depicted a minor or an adult. See, e.g., Mar. Dep. of Mikayla Preston at 96:12–19, 101:5–16, 169:2–17, ECF No. 67-6 (Aug. 12, 2025) ("Preston Dep.").

As customary in the SJSO when faced with a lack of consensus as to the age of an individual in a suspect image, Preston sought the opinion of Defendant Dully.  See Tolbert Dep. at 57:8–19; Dep. of Kevin Greene at 43:2–25, ECF No. 67-4 (Aug. 12, 2025) ("Greene Dep."). Dully is the medical director of the Child Protection Team for the University of Florida ("CPT"), Apr. Dep. of Kathleen Dully at 6:9–7:5, ECF No. 66-1 (Aug. 12, 2025) ("Apr. Dully Dep."), an organization authorized and established pursuant to Fla. Stat. § 39.303 to aid state investigations into allegations of child abuse.  Second Am. Compl. ¶ 207, ECF No. 40 (May 20, 2024).  Dully employs the sexual maturity rating ("SMR") scale[6] to review pornographic images to estimate the sexual maturity of the appearance of the individuals who are in them.  Apr. Dully Dep. at 18:7–

---

[4] "CP-Unconfirmed" means that an image "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted."  Dep. of Fallon McNulty at 22:18–24, ECF No. 67-5 (Aug. 12, 2025).

[5] Met-art.com is a publicly accessible website that published various images relevant to this case. See Second Am. Compl. at ¶¶ 51–52, 122, ECF No. 40 (May 20, 2024).

[6] The sexual maturity rating scale is "a way of stating how close to puberty or in the middle of puberty or completed puberty [an individual] may be progressing."  Apr. Dully Dep. at 18:7–13.

OPINION AND ORDER - 3

Case No. 3:24-cv-00044-JAR-MCR

24, 21:5–10, 23:15–21.  Dully offered her medical opinion that the CyberTip Image "depict[ed]

what appears to be a naked pubertal female child . . . younger than 18 years of age."  Assorted

Letters from Kathleen Dully at 1, ECF No. 67-9 (Aug. 12, 2025) ("Dully Rpts.").  Dully also told

Detective Preston that she could not offer reliable information as to the actual age of the individual

depicted in the image.  See Apr. Dully Dep. at 47:12–17; June Dep. of Kathleen Dully at 12:18–

13:1, ECF No. 66-6 (Aug. 12, 2025) ("June Dully Dep.").

On February 28, 2023, Preston submitted an affidavit for a search warrant for Lawshe's

cell phone records, which Preston's superior, Sgt. Eugene Tolbert ("Tolbert"), as well as then-

assistant state attorney, Kaitlyn M. Payne ("Payne"), both reviewed before submission.  See Feb.

Search Warrant; see also Tolbert Dep. at 28:9–22; Aff. of Kaitlyn M. Payne ¶ 5, ECF No. 82-8

(Sep. 12, 2025) ("Payne Aff.").  On the search warrant affidavit, Preston listed information from

the CyberTip and from Dully's opinion.  Feb. Search Warrant at 2–3.  Preston further noted that

the CyberTip Image included a watermark of "met-art.com" and stated that "[t]his site has a known

history of displaying CSAM [Child Sexual Abuse Material] images of teenage girls" which had

"been encountered by other ICAC investigators in past investigations."  Id. at 3.  A state circuit

court judge signed the warrant on February 28, 2023.  See id. at 8.

On April 4, 2023, Lawshe's cell provider complied with the search warrant.  See Apr. 12,

2023 Search Warrant at 4, ECF No. 67-13 (Aug. 12, 2025) ("Apr. Search Warrant").  Lawshe's

phone records uncovered three[7] additional images that Preston thought were CSAM, and for which

Lawshe was later criminally charged: (1) the "0065(1)" image; (2) the "0059" image; and (3) the

"DuckDuckGo" image (collectively, the "Images").  See Preston Dep. at 136:13–17; May 5, 2023

---

[7] Preston reviewed additional images for which she requested Dully's opinion.  See Dully Rpts. at
2–3.  No charges were brought in connection with these images.  See May 5, 2023 Information,
ECF No. 67-15 (Aug. 12, 2025).

OPINION AND ORDER - 4

Case No. 3:24-cv-00044-JAR-MCR

Information at 1, ECF No. 67-15 (Aug. 12, 2025) ("Information").  Both the 0065(1) and 0059 images included a met-art.com watermark and appeared to depict the same individual as the CyberTip Image.  See Redacted Images, ECF Nos. 72-2, 72-3 (Sep. 8, 2025); Apr. Search Warrant at 3–4.  The DuckDuckGo image contained a QR code and depicted a different individual.[8]  See Redacted Image, ECF No. 72-4 (Sep. 8, 2025).

On April 5, 2023, Preston sought Dully's opinion as to the age of the individuals in the three Images.  Dully Rpts. at 2–3.  Dully opined that the 0059 and 0065(1) images depicted "the same female child" as the CyberTip Image, and that the DuckDuckGo image "show[ed] a female child" whose "developmental appearance" was under the age of 18.  Id.  Preston subsequently sought a search warrant for Mr. Lawshe's home.  See Apr. Search Warrant.  Payne confirmed to Preston that Payne would prosecute Lawshe for possession of these image.  Payne Aff. ¶ 11.  Following confirmation from SJSO command staff, Preston arrested Lawshe on April 12, 2023.  Preston Dep. at 192:2–5; Tolbert Dep. at 33:20–34:5.

On May 5, 2023, Payne filed an Information charging Lawshe with possession of the Images.  See Information.  After Lawshe was charged, his defense counsel contacted the records custodian for met-art.com, Jeffrey Douglas ("Douglas").  See Aff. of Jeffrey Douglas at 16–17, ECF No. 67-8 (Aug. 12, 2025) ("Douglas Aff.").  Douglas provided an affidavit stating that the two individuals in the images were adults at the time the photographs were taken.  See id. at 2, ¶ 9.  He also provided images of two individuals, purportedly those photographed, holding redacted copies of their passports.  Id. at 9–10.  After Lawshe's criminal defense counsel presented these

---

[8] The record is not clear as to where the DuckDuckGo image was published.  See Preston S.J. Mot. at 9 n.4.  While the image contains a QR code, it is not established to what website that code links.  See Redacted Image, ECF No. 72-4 (Sep. 8, 2025).  That said, met-art.com's custodian of records provided documents regarding the individual in the DuckDuckGo Image.  See Aff. of Jeffrey Douglas at 13, ECF No. 67-8 (Aug. 12, 2025) ("Douglas Aff.").

OPINION AND ORDER - 5

Case No. 3:24-cv-00044-JAR-MCR

documents to Payne, the State Attorney's Office dropped the charges.  See Emails from Kaitlyn Payne at 1, ECF No. 67-16 (Aug. 12, 2025).

## LEGAL STANDARDS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law."  Kerr v. McDonald's Corp., 427 F.3d 947, 951 (11th Cir. 2005) (per curiam) (citation modified) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue of fact is genuine if the record taken as a whole could lead a reasonable juror to find for the nonmoving party.  Anderson, 477 U.S. at 248.

On summary judgment, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving party]."  Scott v. Harris, 550 U.S. 372, 378 (2007) (citation modified) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); Saucier v. Katz, 533 U.S. 194, 201 (2001)).  When parties jointly move for summary judgment, the court has three options: grant summary judgment for the plaintiff under the defendant's best case, grant summary judgment for the defendant under the plaintiff's best case, or deny both motions for summary judgment and proceed to trial.[9]  FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F.4th 939, 959 (11th Cir. 2023), cert. denied, 144 S. Ct. 103 (2023).

---

[9] The principles governing summary judgment do not change when the parties file cross-motions for summary judgment.  The court views the facts "in the light most favorable to the non-moving party on each motion."  Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012).

OPINION AND ORDER - 6

Case No. 3:24-cv-00044-JAR-MCR

**DISCUSSION**

Lawshe asserts one claim against Defendant Dully and three claims against Defendant Preston pursuant to 42 U.S.C § 1983.  Specifically, Lawshe avers that Dully fabricated evidence in contravention of his Fourteenth Amendment due process rights, and that Preston committed an unreasonable search and an unreasonable arrest in contravention of his First and Fourth Amendment rights.  See Second Am. Compl. ¶¶ 132–44, 154–66, 183–92, 206–18.  He moves for partial summary judgment on the issue of liability for his Fourth and Fourteenth Amendment claims.  See Lawshe S.J. Mot. as to Dully; Lawshe S.J. Mot. as to Preston.  In turn, Dully and Preston move individually for summary judgment, arguing that they committed no constitutional violations and that they enjoy qualified immunity from Lawshe's claims.  See Dully S.J. Mot. at 17–25; Preston S.J. Mot. at 15–21, 23–25.

Qualified immunity protects public officers "from undue interference with their duties and from potentially disabling threats of liability."  Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982).  To establish qualified immunity, a defendant "first must show that she was acting within the scope of her discretionary authority at the time of the alleged misconduct."  Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019).  Once a defendant has established that she was acting within her discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Id. (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).  The plaintiff must establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  Aguirre v. Seminole Cnty., 158 F.4th 1276, 1296 (11th Cir. 2025) (citation modified) (citing Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).  To be clearly established, "a legal principle must have a sufficiently clear foundation in then-existing precedent" such that "every reasonable official would interpret it to

OPINION AND ORDER - 7

Case No. 3:24-cv-00044-JAR-MCR

establish the particular rule the plaintiff seeks to apply." D.C. v. Wesby, 583 U.S. 48, 63 (2018)

(citing Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam)).  The court may decide which of

the two prongs of this analysis to address first in the light of the circumstances in the case at hand.

Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first considers whether to grant Dully's and Preston's motions for summary

judgment under Lawshe's "best case," considering the evidence "in the light most favorable" to

him and "draw[ing] all inferences in [his] favor.  FCOA LLC, 57 F.4th at 959 (citing Nunez v.

Superior Oil Co., 572 F.2d 1119, 1123–24 (5th Cir. 1978)).  Here, the parties agree that Dully and

Preston were acting within the scope of their discretionary authority at the time of the alleged

misconduct.[10]  See Second Am. Compl. ¶¶ 134, 156, 185, 209–10; Preston's Ans. to Pl.'s Am.

Compl. ¶¶ 134, 156, 185, ECF No. 43 (June 3, 2024); Dully's Ans. to Pl.'s Am. Compl. ¶¶ 209–

10, ECF No. 54 (Nov. 13, 2024).  The court thus considers whether Lawshe has established that

either Dully or Preston violated a clearly established constitutional right.  The court addresses each

count in turn.

### A.  Lawshe's Fourteenth Amendment claim against Dully fails

Lawshe asserts that Dully fabricated inculpatory evidence used to incriminate him in

violation of the Due Process Clause of the Fourteenth Amendment.  Lawshe S.J. Mot. as to Dully

at 16–20.  He argues that "fabricating evidence used to deprive the rights of individuals violates

due process" and that "this has been clearly established for decades."  Lawshe Resp. as to Dully

at 17 (citing Riley v. City of Montgomery, 104 F.3d 1247, 1253 (11th Cir. 1997)).  Lawshe first

asserts that Dully "clearly and unequivocally label[ed] the models as children" in her written

---

[10] Lawshe and Dully also agree that the University of Florida Child Protection Team, of which
Dully was medical director, is an agency of the state of Florida.  See Order at 19, ECF 53 (Oct. 29,
2024); Second Am. Compl. ¶ 208; Dully's Ans. to Pl.'s Am. Compl. ¶ 208, ECF No. 54 (Nov. 13,
2024).

OPINION AND ORDER - 8

Case No. 3:24-cv-00044-JAR-MCR

reports while acknowledging the risk that readers may have interpreted those reports as an opinion on biological age.[11]  Lawshe S.J. Mot. as to Dully at 19.  Second, he maintains that Dully's opinions as to the "appearance of age" are unreliable given that there is "no reliable scientific method to determine or estimate the chronological age of a model from a digital photograph."  Id. at 9; see also Lawshe Resp. as to Dully at 5–7.  In opposition to Lawshe's motion for partial summary judgment and in her cross-motion for summary judgment, Dully argues, in part, that she did not violate Lawshe's Fourteenth Amendment rights because she did not offer willfully or knowingly false information in her reports.  Dully S.J. Mot. at 11–12, 22–24; Dully Resp. at 9–15.

The Due Process Clause is "implicated when a state law enforcement officer offers false inculpatory evidence that the State uses to incriminate a suspect."  Aguirre, 158 F.4th at 1298 (citing Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977)).  Thus, "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the Due Process Clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."  Black v. Montgomery Cnty., 835 F.3d 358, 371 (3d Cir. 2016), as amended (Sep. 16, 2016) (citation modified).  The plaintiff must "draw a meaningful connection between her particular due process injury and the use of fabricated evidence against her."  Id. (citation modified).  It is "clearly established" in the Eleventh Circuit "that it is unlawful to knowingly incriminate a suspect by

---

[11] Lawshe also asserts that Dully offered a false opinion that the individuals "do not appear to be shaved."  See Lawshe Resp. to Dully at 9.  This argument is contradicted by the record.  See June Dully Dep. at 73:1–11 ("Q:  And yet you told Detective Preston that it did not appear that she had been shaved, right?  A:  It does not appear that she was shaved.  It does not appear, no.  Q:  But now your testimony is that it does appear that she may be shaved.  A:  No . . . . she does not appear to be shaved in this image.").

OPINION AND ORDER - 9

Case No. 3:24-cv-00044-JAR-MCR

falsely creating or falsely attesting to the existence of inculpatory evidence." Aguirre, 158 F.4th at 1298.

Dully authored three reports during Preston's investigation.  In her first report, dated February 22, 2023, Dully opined that the CyberTip Image "depicts what appears to be a naked pubertal female child . . . [who] appears younger than 18 years of age.  She would have achieved this developmental genital appearance of SMR IV at 12-15 years of age."  Dully Rpts. at 1.  On April 5, 2023, she authored two subsequent reports.  In the first of these, Dully opined that the 0059 and 0065(1) images were also "of the same female child" and that these two images "confirm my previous determination that she is depicted to be . . . ≤12-15 years of age." Id. at 2.  In the second of these, Dully opined that the DuckDuckGo image "shows a female child" with a "developmental appearance [of] ≤9-13.5 years of age." Id. at 3.  Alongside these reports, Dully told Preston that her opinions did not constitute "reliable information about the actual age" of the individuals depicted. See Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1.

While it is clearly established that officers may not "knowingly incriminate a suspect by falsely creating or falsely attesting to the existence of inculpatory evidence," Aguirre, 158 F.4th at 1299, no reasonable juror could conclude that Dully offered false inculpatory evidence.  The record is clear that she offered her opinion as to the apparent age of the individuals in the Images and told Preston that her reports did not constitute reliable information as to their biological ages.  See Dully Rpts.; Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1.  Lawshe has pointed to no evidence to substantiate that Dully fabricated her opinion as to the apparent age of the individuals in the Images.[12]

---

[12] Lawshe's expert, Dr. Krugman, offers testimony that the SMR scale may not reliably be used to estimate chronological age based on digital images.  See Expert Report of Dr. Scott Krugman at 2, ECF No. 66-5 (Aug. 12, 2025).  He also testifies that it is within the standard of care when

OPINION AND ORDER - 10

Case No. 3:24-cv-00044-JAR-MCR

Lawshe's arguments to the contrary are belied by the record or otherwise not supported by law. While Lawshe zeroes in on the phrase "female child" in Dully's reports, he plucks this phrase from its context. Lawshe S.J. Mot. as to Dully at 12, 19; Lawshe Resp. as to Dully at 3–4, 10. In the February 22, 2023, report, Dully clearly states that the CybertTip image <u>depicts what appears to be</u> a . . . female child." Dully Rpts. at 1 (emphasis added). Dully then goes on to use the subjunctive mood—the "female child" "<u>would have</u> achieved this [] appearance"—to underscore that this is an opinion as to her appearance, not her actual age. Id. (emphasis added). The first April 5, 2023, report incorporates the February 22 report and again confirms that the individual is "<u>depicted</u> to be" underage. Id. at 2 (emphasis added). Likewise, the second April 5, 2023, report states that the image "<u>shows</u>" an underage individual with an underage "developmental <u>appearance</u>." Id. at 3 (emphasis added). While the court must take all inferences in Lawshe's favor, it is not beholden to an interpretation of the facts that is "blatantly contradicted by the record, so that no reasonable jury could believe it." See Harris, 550 U.S. at 378. Given these modifiers,[13] no reasonable juror could conclude that Dully was opining as to the actual age of those depicted.[14]

---

evaluating the age of any patient in any context to "go through" the SMR criteria and that it may be a "helpful piece of information" even if not conclusive. See Dep. of Dr. Scott Krugman at 27:12–28:6, ECF No. 76-7 (Sep. 9, 2025). As Dr. Krugman himself acknowledges, this testimony does not establish that Dully fabricated her opinion as to the apparent age of the individuals in the Images. See id. at 30:2–5 ("Q: [A]re you able to testify based on your review of the material that Dully provided deliberately false information? A: No.").

[13] See depict, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/depict (to represent by or as if by a picture); appear, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/appear (to have an outward aspect); appearance, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/appearance (outward aspect); show, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/show (to give indication or record of).

[14] Lawshe also places much emphasis on Dully's answer during her June 18, 2025, deposition that she would "hope so" when asked whether she could "see . . . how a person might interpret [the phrase "this image shows a female child"] as you saying that this person is a child, an actual child." See Lawshe S.J. Mot. as to Dully at 12–13. While this answer may be probative of negligence, it does not establish that Dully fabricated evidence. Irrespective, the record is undisputed that Dully

OPINION AND ORDER - 11

Case No. 3:24-cv-00044-JAR-MCR

And though Lawshe finds Dully's methodology unreliable, see Lawshe S.J. Mot. as to Dully at 9, unreliability is not equivalent to falsity. Further, the record does not support a conclusion that her statements were "willfully misleading." See id. To the contrary, it is undisputed that Dully explicitly told Preston that her opinions were not reliable information as to biological age. See Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1. In any event, Lawshe has not shown that the clearly established principle against creating or attesting to false evidence extends to negligently misleading statements.[15] Cf. Ross v. James, 861 F. App'x 770, 780 (11th Cir. 2021) (per curiam) ("[E]ven if we agreed with [plaintiff] that the inclusion of this information was 'misleading,' he cites no authority in support of his argument that accurate, yet arguably potentially misleading, information must be stricken from a . . . search warrant affidavit."). Dully accordingly is entitled to summary judgment on Lawshe's Fourteenth Amendment claim.[16]

---

gave a warning to Preston that her opinions were not a substitute for determining the actual age of the individuals depicted. See Apr. Dully Dep. at 47:12–17; June Dully Dep. at 12:18–13:1.

[15] Lawshe draws a parallel between this case and Aguirre-Jarquin v. Hemmert, 2023 WL 2558479 (M.D. Fla. Feb. 22, 2023), aff'd in part, rev'd in part, dismissed in part sub nom., Aguirre, 158 F.4th 1276, in which the Middle District of Florida denied summary judgment on qualified immunity for a fabrication-of-evidence claim. There, a forensic print examiner sent finger-print matches for verification to an older analyst with medical issues whom she "considered incompetent" and evidence suggested she did so to receive an unquestioned verification. Id. at *7. The court finds this parallel unconvincing. The Eleventh Circuit recently clarified that "[t]he purposeful failure to properly verify the results of a positive comparison" constituted "the absence of a step required to report incriminating forensic evidence" and thus was a "fabrication of a forensic result." Aguirre, 158 F.4th at 1299 (emphasis added). Aguirre's logic does not extend to Dully's conduct. Even construed in Lawshe's favor, the record does not show that Dully deviated from a required process in authoring her reports.

[16] Dully also asserts that she is entitled to federal immunity under 34 U.S.C. § 20342 and asks the court to award costs and reasonable attorney's fees pursuant to subsection 20342(3). See Dully S.J. Mot. at 17. Lawshe opposes the request, maintaining that Dully waived any defense under Section 20342 by failing to raise it as an affirmative defense. Lawshe Resp. to Dully at 11–12. 34 U.S.C. § 20342 provides immunity to certain persons who either report or who assist in the reporting of suspected child abuse or neglect. The court may award costs and reasonable attorney's fees where a defendant prevails in a federal civil action brought against them for their provision of

OPINION AND ORDER - 12

Case No. 3:24-cv-00044-JAR-MCR

### B. Lawshe's unreasonable search claim against Preston fails

Lawshe asserts that Preston violated his Fourth Amendment right to be free from an unreasonable search and seizure by making materially false statements and omissions on the search warrant affidavit.[17]  Second Am. Compl. ¶¶ 132–44; Lawshe S.J. Mot. as to Preston at 20–24. Specifically, he contends that Preston intentionally or recklessly (1) included Dully's opinion "as though [it] contained reliable opinions"; (2) stated that met-art.com had a known history of illegal content and that past investigators had encountered the website in question while lacking personal knowledge thereof; (3) omitted the CyberTip Image; (4) omitted that the NCMEC CyberTip had categorized the image as "unconfirmed" child pornography; (5) omitted that there was a disagreement among detectives about whether the image depicted an adult; and (6) omitted that the image was published on a publicly available website that claimed compliance with federal age verification laws.  Lawshe S.J. Mot. as to Preston at 12–13; see also Second Am. Compl. ¶ 111.

Lawshe contends that Preston is not protected by qualified immunity for these omissions and misstatements because it is "clearly established" that intentionally or recklessly omitting material information from a warrant affidavit violates the Fourth Amendment.  Lawshe S.J. Mot. as to Preston at 18.  In opposition to Lawshe's motion for partial summary judgment and in her cross-motion for summary judgment, Preston argues that she is immune from an unreasonable

---

"information or assistance" with respect to a "good faith report . . . of a suspected or known instance of child abuse."  34 U.S.C. § 20342(3).  It is not necessary to reach these issues in order to resolve the substance of this matter in Dully's favor.  Because the court would in its discretion deny attorney's fees in these circumstances, if the statute were to apply, it will not address these issues further.

[17] While Preston sought two search warrants, one in February for Lawshe's cell phone records and the other in April for Lawshe's residence, Lawshe focuses his claims on the February search warrant.  See Lawshe S.J. Mot. as to Preston at 1, 12–13.  To the extent he also asserts an unreasonable search claim in connection with the April affidavit, the evidence offered in support of the two warrants is materially similar.  Compare, Feb. Search Warrant, with Apr. Search Warrant.  See also Lawshe S.J. Mot. as to Preston at 15; Lawshe Resp. as to Preston at 21. Accordingly, the court's reasoning extends to any argument regarding the April search warrant.

OPINION AND ORDER - 13

Case No. 3:24-cv-00044-JAR-MCR

search claim because Lawshe has failed to assert a clearly established constitutional right which she has violated. Preston S.J. Mot. at 16–21; Preston Resp. at 13–16. She further denies making any materially false statement or omission and argues that, even absent these offending statements, the warrant would still be valid. Preston Resp. at 9–13.

The Fourth Amendment prohibits officers from making statements or omissions in a warrant application that are (1) material and (2) deliberate or made with reckless disregard for the truth. See Franks v. Delaware, 438 U.S. 154, 171 (1978); Ross, 861 F. App'x at 778 (citation omitted). A reckless disregard for the truth may be inferred where the affiant "should have recognized the error, or at least harbored serious doubts" about her representations. United States v. Kirk, 781 F.2d 1498, 1502–03 (11th Cir. 1986). To determine whether a misstatement or omission in a search warrant affidavit amounts to a Fourth Amendment violation, the court conducts a two-part test. First, "we ask whether there was an intentional or reckless misstatement or omission. Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." Paez, 915 F.3d at 1287. Allegations of deliberate falsehood or of reckless disregard for the truth must be accompanied by an offer of proof; allegations of negligence or innocent mistake are insufficient. Franks, 438 U.S. at 171.

Where qualified immunity is asserted as a defense, the court reviews for "arguable" probable cause, which asks whether a reasonable officer in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed.[18] Hooks v.

---

[18] The parties argue at length as to whether there was a clearly established right at play. Lawshe maintains that reckless or intentional misstatements or omissions of material information on a warrant affidavit are violations of clearly established constitutional rights. Lawshe S.J. Mot. as to Preston at 18. Preston counters that Lawshe has failed to identify precedent showing that Lawshe enjoyed a clearly established right here. Preston S.J. Mot. at 17. Preston maintains that there is

OPINION AND ORDER - 14

Case No. 3:24-cv-00044-JAR-MCR

Brewer, 818 F. App'x 923, 929–30 (11th Cir. 2020) (citing Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004); Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010)). Misstatements and omissions in affidavits are not entitled to qualified immunity only when the affidavit, as considered without the offending statements, lacks even arguable probable cause. Id. at 929 (citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997)).

Preston cited the following evidence in her warrant affidavit as establishing probable cause: (1) the CyberTip which advised that Lawshe "uploaded one (1) image of possible CSAM"; (2) an excerpt of the February 22, 2023 report of Dully, which included a description of the CyberTip image; (3) the "met-art.com" watermark, given that met-art.com "has a known history of displaying CSAM images of teenage girls and CSAM content from this site has been encountered by other ICAC investigators in past investigations."[19]  Feb. Search Warrant at 2–3.

---

no instructive precedent on point, and cites to United States v. Gatherum, 338 F. App'x 271 (4th Cir. 2009), a Fourth Circuit case, to underscore that no clearly established right exists in the Eleventh Circuit. Id. at 17–20.  Lawshe paints with too broad a brush and Preston too narrow.  In the Eleventh Circuit, it is clearly established that constitutional rights are implicated where a warrant affidavit, devoid of intentional or reckless misstatements and omissions, lacks even arguable probable cause.  See Paez, 915 F.3d at 1288; Hooks v. Brewer, 818 F. App'x 923, 929 (11th Cir. 2020) (citing Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997)).  Accordingly, the court frames its analysis as whether the search warrant, absent intentional or reckless misstatements and omissions, lacked arguable probable cause.

[19] A potential issue of fact exists as to Preston's knowledge of met-art.com's alleged prior history of publishing CSAM.  Lawshe asserts that Preston had no personal knowledge of whether met-art.com had a history of publishing CSAM and that she did not know any investigators who had encountered the website during previous investigations.  See Lawshe S.J. Mot. as to Preston at 13. Lawshe supports these assertions with deposition testimony from Preston that she obtained knowledge of met-art.com's alleged history from a Google search, the contents of which she cannot recall.  Id. at 13, 23–24.  Further, Lawshe cites the deposition testimony of Detective Kevin Greene ("Greene"), who does not recall telling Preston about his past investigation.  Id. at 13; Lawshe Resp. as to Preston at 10–11.  Preston responds that Detective Greene did in fact encounter met-art.com during a previous investigation and that both she and Sgt. Tolbert recalled Greene recounting this previous investigation.  See Preston S.J. Mot. at 4.

OPINION AND ORDER - 15

Case No. 3:24-cv-00044-JAR-MCR

The court first considers whether Preston's affidavit contained intentional or reckless misstatements or omissions.  Paez, 915 F.3d at 1287.  Starting with the alleged misstatements, as already discussed, no reasonable juror could conclude that Dully's report offered false inculpatory evidence.  Accordingly, the court rejects Lawshe's argument that Preston falsely or recklessly included Dr. Dully's opinion.  The court, however, concludes that Preston's statement that met-art.com had a known history of illegal content encountered by other ICAC investigations is a potentially reckless misstatement.  Construing facts in Lawshe's favor, Preston's knowledge was premised upon a Google search, the specifics of which she does not recall and the veracity of which she disclaims.  See Lawshe S.J. Mot. as to Preston at 23–24.  Asserting the contents of a cursory Google search as a "known" fact on a search warrant affidavit without investigative corroboration would likely constitute a reckless disregard for the truth.  Whether corroboration existed is unclear because whether Detective Greene actually told Preston of his encounter with that website is disputed.  See id. at 13; Preston S.J. Mot. at 4.  Accordingly, this statement will not be considered as supporting probable cause.

The court now considers the remaining asserted defects, namely (1) the exclusion of the CyberTip Image itself; (2) the failure to state that the image was categorized as CP-unconfirmed; (3) the failure to mention the lack of consensus among investigators as to the age of the individual depicted; and (4) the failure to state that met-art.com was a public website that claimed compliance with federal law.  In so doing, the court examines the information that undisputedly was included on the search warrant affidavit.  See Feb. Search Warrant at 2–3.  First, the omission of the CyberTip image was not intentional or reckless because Preston provided a description of the image.  See Feb. Search Warrant at 2–3; United States v. Sparks, 806 F.3d 1323, 1337–38 (11th Cir. 2015) ("An issuing judge need not personally view photographs or images which are alleged

OPINION AND ORDER - 16

Case No. 3:24-cv-00044-JAR-MCR

to be contraband if a reasonably specific affidavit describing the contents can provide an adequate basis to establish probable cause."), overruled on other grounds by, United States v. Ross, 963 F.3d 1056 (11th Cir. 2020) (en banc).  Second, the omission of CP-unconfirmed was not an intentional or reckless omission because the search warrant affidavit clearly states that the image at issue constituted possible CSAM.[20]  Feb. Search Warrant at 2.  In any event, this court has previously held that a misrepresentation that "NCMEC classified [] files as child pornography when NCMEC actually designated those images as 'CP (unconfirmed)' . . . do[es] not undermine the validity of" an otherwise valid warrant.  See United States v. Williamson, 2023 WL 4056324, at *17 (M.D. Fla. Feb. 10, 2023).  Third, the omission of the lack of consensus was not intentional nor reckless.  The court struggles to see how failure to report a disagreement between officers could be an intentional or reckless omission where probable cause requires only "the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act."  Florida v. Harris, 568 U.S. 237, 244 (2013) (citation modified) (citation omitted).  And fourth, the omission that met-art.com was a public website that claimed compliance with federal age verification laws was not intentional or reckless.  Preston included the fact that the image was watermarked with "met-art.com" which establishes that it was published on that site.  See Feb. Search Warrant at 3.  Moreover, the fact that a site claims compliance with federal laws does not remove probable cause. See Washington v. Howard, 25 F.4th 891, 902 (11th Cir. 2022) (officers are "not required to

---

[20] Compare, Dep. of Fallon McNulty at 22:18–24, ECF No. 67-5 (Aug. 12, 2025) ("CP-Unconfirmed" means that an image "indicates that when this file was being reviewed and categorized, it depicted either a sex act or lewd and/ or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted."), with possible, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/possible (being something that may or may not be true or actual).

OPINION AND ORDER - 17

Case No. 3:24-cv-00044-JAR-MCR

believe" a statement that, "if true," would be exculpatory nor "to weigh the evidence in such a way as to conclude that probable cause d[oes] not exist").

Second, the court determines whether the affidavit, excised of misstatements and omissions, lacks probable cause. Paez, 915 F.3d at 1287. Even omitting statements regarding met-art.com's prior CSAM investigations, there is clearly arguable probable cause to authorize a search warrant. Preston sought the warrant in investigating whether Lawshe violated Fla. Stat. § 827.071(5).[21] Feb. Search Warrant at 1. Construed without the statements regarding met-art.com's prior CSAM investigation, the affidavit includes (1) a description of the CyberTip from NCMEC; (2) a description of the CyberTip Image, including the met-art.com watermark; and (3) an opinion from a statutorily authorized medical professional that the individual depicted in the image appeared younger than 18. A reasonable officer could have believed that probable cause existed on this record given the CyberTip itself, which characterizes the image as "possible" child pornography, the detailed description of the CyberTip Image as depicting a nude individual who appears underage, and the opinion from a statutorily authorized medical professional that the individual in the Image appeared younger than eighteen.[22] See Brewer, 818 F. App'x at 929. It is likely that there was no constitutional violation at all. But there was clearly qualified immunity because there was at least arguable probable cause to seek a search warrant on these facts. Accordingly, the court grants Detective Preston summary judgment on Lawshe's unreasonable search claim.

---

[21] Fla. Stat. § 827.071(5) makes it unlawful for "any person to knowingly solicit, possess, control, or intentionally view a photograph, motion picture, exhibition, show, representation, image, data, computer depiction, or other presentation which, in whole or in part, he or she knows to include child pornography."

[22] The question of what amounts to probable cause is purely a question of law. United States v. Allison, 953 F.2d 1346, 1350 (11th Cir. 1992).

OPINION AND ORDER - 18

Case No. 3:24-cv-00044-JAR-MCR

### C. Lawshe's unreasonable arrest claim against Preston fails

Lawshe next argues that Preston violated his Fourth Amendment rights by making an arrest without probable cause.  Specifically, Lawshe contends that Preston "unreasonably disregard[ed] certain pieces of evidence by choosing to ignore" readily available exculpatory information and thus lacked probable cause.  Lawshe S.J. Mot. as to Preston 20–22.  Lawshe maintains that Preston does not enjoy qualified immunity from suit because Preston did not act with "arguable probable cause" in making the arrest.  Id. at 22; Resp. to Preston Mot. for Summ. J. at 25–26, ECF No. 96 (Oct. 3, 2025) ("Lawshe Resp. as to Preston").  He argues that it is clearly established in the Eleventh Circuit that an officer may not "ignore" readily available information "in the face of obviously ambiguous facts."  See Lawshe S.J. Mot. as to Preston at 19, 22–24 (citing Rankin v. Evans, 133 F.3d 1425 (11th Cir. 1998), Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989), and Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004)).[23]  In opposition to Lawshe's motion and in her cross-motion for summary judgment, Preston argues that she is immune from an unreasonable arrest claim because she acted with arguable probable cause.  Preston S.J. Mot. at 23–24; Preston Resp. at 19–20.

An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause to make the arrest.  Garcia v. Casey, 75 F.4th 1176, 1186 (11th Cir. 2023) (citing Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007)).  Probable cause is established where facts, "derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  Id. (citing Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)).

---

[23] Lawshe also relies on Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988), see Lawshe S.J. Mot. as to Preston at 22, but that is a Fourth Circuit decision, and "only decisions of the United States Supreme Court, this Court, or the highest court in a state can clearly establish the law." Crocker v. Beatty, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation modified) (citation omitted).

OPINION AND ORDER - 19

Case No. 3:24-cv-00044-JAR-MCR

To "evaluate whether an officer had probable cause to seize a suspect," the court must "ask whether a reasonable officer could conclude . . . that there was a substantial chance of criminal activity." Washington, 25 F.4th at 902 (citation modified) (citing Wesby, 583 U.S. at 61).

Where an officer asserts the defense of qualified immunity for a false arrest claim, she "need not have actual probable cause, but only 'arguable' probable cause." Garcia, 75 F.4th at 1186 (11th Cir. 2023) (citation modified) (citing Brown, 608 F.3d at 734). An officer has arguable probable cause if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests here." Id. (citation modified) (citing Wesby, 583 U.S. at 68). An officer may lack probable cause because (1) an existing precedent establishes there was no actual probable cause for an arrest on similar facts; (2) the text of an applicable statute precludes arrest under that statute; or (3) the officer may have been so lacking in evidence to support probable cause that the arrest was obviously unconstitutional. Id. at 1187.

Here, Lawshe was criminally charged for the Images provided by Lawshe's cell service provider in compliance with the search warrant. See Information. Other detectives in the SJSO thought the individuals in the Images were potentially adults, and the parties agree that reasonable people could have thought the individuals were adults. See, e.g., Preston Dep. at 96:17–19; 101:5–16, 169:1–13. Preston thought these Images constituted child pornography. Id. at 136:13–15. She sought Dully's opinion as to the apparent age of the individuals in the Images. Dully Rpts. at 2–3. Preston further met with assistant state attorney Payne who confirmed that she would prosecute Lawshe for these images. Payne Aff. at ¶ 11. The decision to arrest Lawshe passed through Preston's superiors as well. Preston Dep. at 192:2–5; Tolbert Dep. at 33:23–34:5. Preston did not, however, attempt to visit met-art.com. Preston Dep. at 55:3–14. After Lawshe was arrested, Detective Kevin Greene was able to locate the source of the Images in a short amount of time.

OPINION AND ORDER - 20

Case No. 3:24-cv-00044-JAR-MCR

Greene Dep. at 34:1–5.  Lawshe's team located the contact information of met-art.com's custodian of records, who provided a statement that the individuals in the Images were adults when the images were taken.  See Douglas Aff. at 1–3.

Preston enjoys qualified immunity from Lawshe's claim because Lawshe has pointed to no existing precedent finding that probable cause would be lacking in similar circumstances.  His reliance on Rankin, 133 F.3d 1425, Tillman, 886 F.2d 317, and Kingsland, 382 F.3d 1220 is misplaced.  See Lawshe S.J. Mot. as to Preston at 19, 22–24.  In Rankin, the court found that probable cause existed.  133 F.3d at 1443.  Relevant here, the court rejected plaintiffs' argument that the "information available to [the arresting officer] at the time of the arrest should have created doubts as to the existence of probable cause and should have prompted further investigation" because "the evidence on which [the arresting officer] based his decision to arrest [the plaintiff] was sufficient to create probable cause as a matter of law."  Id. at 1437.  Moreover,

> [n]either [Kingsland nor Tillman] clearly establishes that every failure by an officer to discover 'easily discoverable facts' violates the Fourth Amendment.  Rather, Kingsland makes clear that officers cannot 'conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts . . . . [nor] choose to ignore information that has been offered to him or her . . . . Tillman, too, makes clear that an officer cannot be willfully blind to known facts that are exculpatory and give rise to 'serious doubts.'

Washington v. Rivera, 939 F.3d 1239, 1248 (11th Cir. 2019) (citation modified).

These cases do not extend to Preston's conduct.  Even when the facts are construed in Lawshe's favor, no reasonable juror could conclude that Preston (1) harbored significant doubts about Lawshe's culpability; (2) refused to consider information offered to her; or (3) was willfully blind to known facts.[24]

---

[24] Construing facts in favor of Lawshe, Preston knew that met-art.com was a publicly available website and should have known that it purported to comply with federal age verification laws.  See Lawshe S.J. Mot. as to Preston at 20–21.  By itself, this is not enough to defeat probable cause.

OPINION AND ORDER - 21

Case No. 3:24-cv-00044-JAR-MCR

Moreover, considering the totality of the circumstances, Preston likely had probable cause to arrest Lawshe.[25]  While Preston did not attempt to contact met-art.com's custodian of records, Preston <u>did</u> take extra investigatory steps to confirm that the individuals in the Images were minors. She personally reviewed the Images,[26] received the opinion of a statutorily authorized medical professional as to the apparent age of the individuals involved in those Images, and received confirmation from her superiors as well as an assistant state attorney.  <u>Cf.</u> <u>Poulakis v. Rogers</u>, 341 F. App'x 523, 533 (11th Cir. 2009) ("[I]t is altogether consistent with a totality of the circumstances analysis to consider pre-arrest consultation and advice of a district attorney as being one circumstance contributing to the objective reasonableness of an officer's conduct.").  While Preston's investigation may not have been exemplary, a reasonable officer could have interpreted the law as permitting Lawshe's arrest on these facts.  Because no clearly established precedents prevented arrest in these circumstances, Preston enjoys qualified immunity from Lawshe's unreasonable arrest claim.  Preston is therefore entitled to summary judgment on this issue.

**D. Preston enjoys qualified immunity from Lawshe's First Amendment claim**

Finally, Preston moves for summary judgment on Lawshe's First Amendment claim.  She argues that Lawshe's First Amendment claim falls within his Fourth Amendment claims and that she enjoys qualified immunity as a result.  Preston S.J. Mot. at 24–25.  Lawshe raises a First Amendment count in his complaint, Second Am. Compl. ¶¶ 183–92, but does not move for

---

Officers making a probable cause determination are not required "to rule out a suspect's innocent explanation for suspicious facts." <u>Wesby</u>, 583 U.S. at 61; <u>Davis v. City of Apopka</u>, 78 F.4th 1326, 1342 (11th Cir. 2023) ("[T]he Supreme Court and this Court have consistently held in decisions spanning more than thirty years that where the initial facts show probable cause, officers are not required to forego making an arrest because the suspect offers an innocent explanation for those facts.").

[25] Whether probable cause exists is a question of law.  <u>See</u> <u>supra</u>, note 22.

[26] To a non-expert the individuals depicted in the Images would appear childlike.  <u>See</u> Redacted Images, ECF Nos. 72-2–4 (Sep. 8, 2025).

OPINION AND ORDER - 22

Case No. 3:24-cv-00044-JAR-MCR

summary judgment on his First Amendment claim.  <u>See</u> Lawshe S.J. Mot. as to Preston; Preston Resp. at 1 n.1.  He does, however, devote a single, conclusory sentence in opposition to Preston's First Amendment argument, contending that "there was neither probable cause nor arguable probable cause" as to the First Amendment violation.  Lawshe Resp. as to Preston at 26.

"When an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest."  <u>Gates v. Khokhar</u>, 884 F.3d 1290, 1298 (11th Cir. 2018).  As the court has already discussed, Lawshe's Fourth Amendment claims fail.  The court's analysis on the Fourth Amendment claims accordingly extends to the First Amendment claim.  Preston is therefore entitled to summary judgment on Lawshe's First Amendment claims.

Case No. 3:24-cv-00044-JAR-MCR

## CONCLUSION

For the foregoing reasons, the court:

1.      **GRANTS** Defendant Dully's Motion for Summary judgment, ECF No. 85 (Sep. 12, 2025);

2.      **GRANTS** Defendant Preston's Motion for Summary Judgment, ECF No. 83 (Sep. 12, 2025);

3.      **DENIES** Plaintiff Lawshe's Motion for Partial Summary Judgment as to Defendant Dully, ECF No. 66 (Aug. 12, 2025);

4.      **DENIES** Plaintiff Lawshe's Motion for Partial Summary Judgment as to Defendant Preston, ECF No. 67 (Aug. 12, 2025); and

5.      **DENIES AS MOOT** Defendant Preston's Motion to Exclude the Expert Testimony of Patrick J. Siewert, ECF No. 71 (Sep. 5, 2025).

The **Clerk** shall enter judgment in favor of Defendants Preston and Dully and against Plaintiff Lawshe, terminate any pending motions, and close the case.

So **ORDERED** this 18th day of December, 2025.

/s/ Jane A. Restani
Jane A. Restani, Judge[*]

Dated: December 18, 2025
New York, New York

---

[*] Judge Jane A. Restani, of the United States Court of International Trade, sitting by designation.

OPINION AND ORDER - 24

# ECF 104

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

      Petitioner,

v.

                                Case No   3:24-cv-44-MMH-MCR

MIKAYLA PRESTON, in her individual
capacity as a Detective for St. Johns
County Sherriff's Office, and
KATHLEEN DULLY, in her individual
capacity as medical director of the UF
Child Protection Team,

      Defendants.

_____

**JUDGMENT IN A CIVIL CASE**

**Decision by the Court.**     This action came before the Court and a decision has been rendered.

    **IT IS ORDERED AND ADJUDGED** that a judgment is entered in favor of Defendants

Preston and Dully and against Plaintiff Lawshe.

    **Any motions seeking an award of attorney's fees and/or costs must be filed within**

**the time and in the manner prescribed in Local Rule 7.01, United States District Court**

**Middle District of Florida.**

Date: December 19, 2025,

                                  ELIZABETH M. WARREN, CLERK

                                    s/JM, Deputy Clerk

## <u>CIVIL APPEALS JURISDICTION CHECKLIST</u>

1.     **<u>Appealable Orders</u>**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)     **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." <u>Pitney Bowes, Inc. V. Mestre</u>, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)     **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), <u>Williams v. Bishop,</u> 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. <u>Budinich v. Becton Dickinson & Co.</u>, 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 837 (11th Cir. 1998).

    (c)     **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)     **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5:** The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)     **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: <u>Cohen V. Beneficial Indus. Loan Corp.</u>, 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); <u>Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.</u>, 890 F. 2d 371, 376 (11th Cir. 1989); <u>Gillespie v. United States Steel Corp.</u>, 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.     **<u>Time for Filing:</u>** The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)     **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD - no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

    (b)     **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)     **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)     **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)     **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.     **<u>Format of the notice of appeal</u>**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See also</u> Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.     **<u>Effect of a notice of appeal</u>**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of

Court for the U.S. Court of Appeals for the Eleventh Circuit by using the appellate

CM/ECF system on March 4, 2026.

*/s/ Michael K. Roberts*
**MICHAEL K. ROBERTS**